MICHELLE M. LA MAR (SBN 163038)
mlamar@loeb.com
PATRICK N. DOWNES (SBN 186461)
pdownes@loeb.com
ERIN M. SMITH (SBN 235039)
esmith@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STEVEN HELDT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>　　　　Defendant. | Case No.: 15-cv-01696-YGR<br><br>**CLASS ACTION**<br><br>**DEFENDANT TATA CONSULTANCY SERVICES, LTD. REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:　August 11, 2015<br>TIME:　2:00 p.m.<br>CTRM:　1, 4th Floor<br>JUDGE:　Hon. Yvonne Gonzalez Rogers<br><br>Complaint Filed:　April 14, 2015 |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO C.D. CAL.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 3

    A.    The Chosen Forum Is Entitled To Minimal Deference ................................. 3

        1.    The Choice Of Forum Should Be Afforded Minimal Deference Notwithstanding The Title VII Special Venue Provision ........................................................................................... 3

        2.    Each Named Plaintiff Lacks Significant Contact (Or Any Contact) With The Chosen Forum ...................................................... 6

        3.    Should The Court Determine That The Chosen Forum Is Entitled To Greater Deference, The Court Should Still Grant The Motion ................................................................................................ 7

    B.    Convenience of the Parties And Litigation Costs ......................................... 9

    C.    Convenience of Party Witnesses ................................................................ 11

    D.    Convenience of Non-Party Witnesses ........................................................ 13

    E.    Ease of Access to the Evidence .................................................................. 15

    F.    Neutral Factors ............................................................................................ 15

III. CONCLUSION ............................................................................................................ 15

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

i

REPLY IN SUPPORT OF MOTION TO
TRANSFER VENUE TO C.D. CAL.

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                          **Pages**

*Brown v. Abercrombie & Fitch Co.*,
  4:13-CV-05205 YGR, 2014 U.S. Dist. LEXIS 19414
  (N.D. Cal. Feb. 14, 2014) ............................................................................................... 12, 13, 14

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*,
  472 F.Supp.2d 1183 (S.D. Cal. 2007) ...................................................................................... 12

*Ellis v. Costco Wholesale Corp.*,
  372 F.Supp.2d 530 (N.D. Cal. 2005) ...................................................................................... 3, 4

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 910 (9th Cir. 2011) ....................................................................................................... 4

*Hawkes v. Hewlett-Packard Co.*,
  CV-10-05957 EJD, 2012 U.S. Dist. LEXIS 19026
  (N.D. Cal. Feb. 15, 2012) ........................................................................................................ 3, 14

*Hendricks v. Starkist Co.*,
  No. 13-cv-729 YGR, 2014 U.S. Dist. LEXIS 41718
  (N.D. Cal. Mar. 25, 2014) .................................................................................................... 3, 6, 12

*Hong v. Morgan Stanley & Co.*,
  C12-01756 TEH, 2012 U.S. Dist. LEXIS 150382
  (N.D. Cal. Oct. 18, 2012) ............................................................................................. 7, 9, 14, 15

*In re Horseshoe Entm't.*,
  337 F.3d 429 (5th Cir. 2003) ..................................................................................................... 11

*Hotchkiss v. CSK Auto, Inc.*,
  C11-1646 MJP, 2012 U.S. Dist. LEXIS 14086
  (W.D. Wash. Feb. 3, 2012) ................................................................................................. 7, 8, 9

*King v. Novartis Pharms. Corp.*,
  CV-07-00018-PHX-DGC, 2014 U.S. Dist. LEXIS 81467
  (D. Ariz. June 16, 2014) ............................................................................................................ 12

*LightMed Corp. v. Ellex Med. Pty. Ltd.*,
  13-CV-03933-WHO, 2013 U.S. Dist. LEXIS 174216
  (N.D. Cal. Dec. 12, 2013) .......................................................................................................... 15

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

ii

REPLY IN SUPPORT OF MOTION TO
TRANSFER VENUE TO C.D. CAL.

*Machado v. CVS Pharm. Inc.*,
  13-cv-04501-JCS, 2014 U.S. Dist. LEXIS 20049
  (N.D. Cal. Feb. 18, 2014) .................................................................................... 7, 9, 14

*Ruiz v. Darigold, Inc.*,
  14-cv-02054 WHO, 2014 U.S. Dist. LEXIS 113832
  (N.D. Cal. Aug. 14, 2014) ............................................................................................ 11

*Vu v. Ortho-McNeil Pharm., Inc.*,
  602 F. Supp.2d 1151 (N.D. Cal. 2009) ........................................................................ 11

*Ward v. Flour Enterprises, Inc.*,
  2011 U.S. Dist. LEXIS 24705 (N.D. Cal. Mar. 1, 2011) ..................................... 6, 7, 10

*Wellens v. Daiichi Sankyo Co.*,
  No. C 13-00581 CW, 2013 U.S. Dist. LEXIS 89831
  (N.D. Cal. June 25, 2013) ........................................................................................ 3, 4

*Williams v. Bowman*,
  157 F.Supp.2d 1103 (N.D. Cal. 2001) ......................................................................... 12

**Statutes**

28 U.S.C. § 1404 ................................................................................................................ 8, 9

28 U.S.C. § 1404(a) ................................................................................................................ 1

42 U.S.C. § 2000e-5(f)(3) ....................................................................................................... 1

**Other Authorities**

Fed. R. Civ. P. 45(c)(1) ......................................................................................................... 14

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

iii

REPLY IN SUPPORT OF MOTION TO
TRANSFER VENUE TO C.D. CAL.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

As demonstrated by defendant Tata Consultancy Services, Ltd.'s ("TCS") motion (the "motion"), this matter should be transferred to the Central District of California because: (1) Plaintiff Steven Heldt ("Heldt") never resided in the Northern District of California; (2) the majority of Heldt's employment events occurred in the Central District of California; and (3) Heldt resides in the Central District of California. Heldt does not even dispute that the Central District of California is a district where this action "might have been brought." 28 U.S.C. § 1404(a); *see also* 42 U.S.C. § 2000e-5(f)(3).[1] Instead, Heldt points to mere "convenience factors," but never asserts, much less demonstrates, that the Northern District has a stronger connection than the Central District on any factor (apart from Heldt filing suit here).

As previously stated in TCS' motion, the convenience of non-party witnesses is typically the most important factor to consider when determining a motion to transfer venue. In the instant case, this factor strongly favors TCS' motion to transfer venue to the Central District.

The crux of Heldt's claim of discrimination in this case relies upon the facts surrounding Heldt's removal from providing services to TCS' customers, and TCS' alleged failure to find Heldt a new allocation. During his employment with TCS, Heldt was allocated to provide services to four TCS customers. Two of those customers are

---

[1] 42 U.S.C § 2000e-5(f)(3) provides, in pertinent part, "[s]uch an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office." Here, the Central District satisfies the Title VII special venue provision insofar as it is a judicial district in California where the unlawful employment practice is alleged to have been committed, where some of the employment records are maintained and administered, and where Heldt worked. It is also the district in which Heldt elected to file his Title VII charge.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

1

REPLY IN SUPPORT OF MOTION TO
TRANSFER VENUE TO C.D. CAL.

located in the Central District, another is located in the Northern District, and lastly, one is located in Kentucky. As shown in TCS' motion, the Central District is where the majority of the significant non-party witnesses are located. Furthermore, in an attempt to retain Heldt as an employee and find him a new allocation, TCS submitted Heldt's profile to several of its clients in Southern California, per Heldt's explicit request that he was looking to remain in Southern California. In addition, the Human Resources Representative of TCS who was integral in the decision to terminate Heldt's employment resides in the Central District. Thus, venue in the Central District is proper.

In addition, immediately prior to TCS' submission of this reply, an amended complaint was filed in this matter identifying two additional named plaintiffs. The amended complaint reinforces all of the reasons why venue should be transferred to the Central District. Newly added plaintiff Brian Buchanan ("Buchanan") allegedly worked for a southern California utility company from 1986 until the company transferred its IT operations to TCS in 2014. (First Amended Complaint ("FAC"), ¶¶ 31-38.) Buchanan alleges that his employment with the Southern California utility company ended on February 6, 2015 after TCS was hired. (FAC ¶ 42.) Buchanan alleges that he attended a job fair in Arcadia in 2014 during which he was told by a TCS regional manager that TCS sought to fill vacancies both with the utility and "for other positions in the Greater Los Angeles area." (FAC ¶ 39.) Buchanan claims that he was not contacted for any of these positions despite submitting his resume to TCS, allegedly because TCS preferred applicants of South Asian descent. Buchanan's claims squarely concern events, witnesses and records that are located in the Central District—thus militating in favor of transfer. Likewise, the claims of the other newly added plaintiff, Christopher Slaight ("Slaight"), do not support venue in the Northern District. In fact, Mr. Slaight allegedly received training from TCS in Ohio and India, and was then assigned to a TCS client in New Jersey. Neither of the newly added plaintiffs allege any connection to the Northern District, and indeed, Buchanan's allegations are concentrated exclusively in the Central District.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

2

REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO C.D. CAL.

In short, the motion to transfer should be granted because Heldt and now Buchanan, as well as, a majority of the witnesses (both party and non-party) reside in the Central District.

## II.

## ARGUMENT

### A. The Chosen Forum Is Entitled To Minimal Deference

Heldt does not dispute that his residence in the Central District cuts against placing significant consideration on his choice of forum. The motion also demonstrated that Heldt's putative class action further diminishes relying on his preferred forum, as does the fact that this forum has a significantly weaker connection to the operative facts than the Central District. Notwithstanding the foregoing, the opposition asserts that the choice of forum factor should weigh in favor of this District for two reasons. First, plaintiffs rely on *Wellens v. Daiichi Sankyo Co.*, No. C 13-00581 CW, 2013 U.S. Dist. LEXIS 89831 (N.D. Cal. June 25, 2013) and *Ellis v. Costco Wholesale Corp.*, 372 F.Supp.2d 530 (N.D. Cal. 2005) to support the argument that the chosen forum is entitled to greater deference because of Title VII's special venue provision. Second, plaintiffs rely on *Hendricks v. Starkist Co.*, No. 13-cv-729 YGR, 2014 U.S. Dist. LEXIS 41718 (N.D. Cal. Mar. 25, 2014) to support the argument that the Northern District has significant contacts with Heldt and TCS, and as such, there is no evidence of forum shopping. These arguments do not prevail, and the Court should grant minimal deference to the choice of forum.

#### 1. The Choice Of Forum Should Be Afforded Minimal Deference Notwithstanding The Title VII Special Venue Provision

First, the choice of forum should be afforded minimal deference notwithstanding the Title VII special venue provision based upon the facts that: (1) Heldt does not reside in the forum, (2) Heldt spent only two months during his year and a half tenure with TCS in the forum, and (3) the operative facts are not located in the forum. *See Hawkes v. Hewlett-Packard Co.*, CV-10-05957 EJD, 2012 U.S. Dist. LEXIS 19026 at *10-*11 (N.D. Cal. Feb. 15, 2012) (affording "minimal consideration" to a plaintiff's choice of forum in a

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

3

REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO C.D. CAL.

Title VII action because the plaintiff did not reside in the forum, her employment had not occurred in the forum, and the operative facts of her case occurred outside of her chosen forum). Tellingly, Heldt chose to file this Title VII claim with an EEOC office located in the Central District, Los Angeles, and identified his employer's location as being within the Central District.

Moreover, any reliance on *Wellens* and *Ellis* is completely misplaced, even more so given the addition of Buchanan and Slaight to this action. In *Wellens*, the defendant sought to radically disrupt the plaintiffs' choice of forum by transferring the case across the country, notwithstanding that "all of the named plaintiffs live[d] and work[ed] in California and the effects of [defendant's] discriminatory policies, practices and actions were implemented in California and felt by plaintiffs in California." *Id.* at *8. Unlike in *Wellens*, TCS seeks to transfer this matter three hundred miles south to the forum where Heldt resides (and consistently resided throughout his employment with TCS), where Heldt was interviewed, hired, terminated, and performed the majority of his assignments while employed by TCS; and where TCS' alleged discriminatory policies, practices and actions were implemented and allegedly felt by Heldt. (*See* Mot. at 8:1-10). The Central District is also where newly added plaintiff Buchanan worked his entire career, and where he claims he sought but was rejected for employment by TCS. The defendant in *Wellens* sought to transfer venue from a forum with very significant contacts to a forum with limited contacts. TCS seeks to transfer venue from a forum with limited contacts to a forum with very significant contacts for Heldt, and the only contacts for Buchanan. Accordingly, *Wellens* is inapposite to the current matter.

Likewise in *Ellis*, another case relied upon by plaintiffs, the defendant sought to upset the plaintiffs' choice of forum by transferring the case from the Northern District of California to any one of three potential forums: Washington, Colorado, or Southern California. *Ellis,* 372 F.Supp.2d at 533.[2] The *Ellis* Court rejected defendant's motion

---

[2] *Ellis* was overruled in part on other grounds by *Ellis v. Costco Wholesale Corp.*, 657 F.3d 910, 988 (9th Cir. 2011).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

4

REPLY IN SUPPORT OF MOTION TO
TRANSFER VENUE TO C.D. CAL.

because the Northern District was the forum with the most significant contacts to *all three named plaintiffs*. *Id*. at 542-543.[3]  One named plaintiff had particularly significant contacts because she lived and worked in the Northern District, and had worked for defendant in the Northern District for 22 out of her 23 years of employment. *Id*. at 541.  In addition, all of the record and testimonial evidence relating to her claims were in the Northern District, her "employment records relating to her work performance, expressions of interest in promotion, and her consideration for various openings" were within the Northern District, and three of the most relevant witnesses to her claims were located in that district. *Id*. at 542-543.  The court found that the other two named plaintiffs also had at least limited contacts insofar as one had contacted a Regional Vice President located in the Northern District to express her interest in a promotion, and the other had expressed a general interest in promotion outside of San Diego. *Ellis,* 372 F.Supp.2d at 534, 543.

Here, unlike in *Ellis*, the Northern District has no connection whatsoever to the claims of Buchanan and Slaight, and has no significant connection to the claims of Heldt. According to the amended complaint, Slaight's relationship with TCS transpired in New Jersey (except for his training in Ohio and India).  (FAC ¶¶ 62-66.)   Buchanan's interaction with TCS occurred in Southern California (where he worked since 1986) and sought employment with TCS in 2014.  (FAC ¶¶ 31-43.)  As for Heldt, for the majority of Heldt's employment with TCS, he resided in and worked out of the Central District of California; Heldt lived and worked in Northern California for *only two months* out of his

---

[3] Washington was not an adequate forum because while defendant had significant contacts there, "[n]one of the three named plaintiffs lived, worked, or had contacts with this district" and it housed the location of only "some" of plaintiffs' employment records. *Id*. at 540.  Colorado was also an improper forum because two of the named plaintiffs did not have "any contacts with Colorado," nor were any "witnesses, documents, or facts pertinent to their cases housed there." *Id.* at 539 ("[i]ndependent of Ellis's claims, none of the Title VII bases for venue would establish venue for Horstman or Sasaki in Colorado"). And, in Southern California one of the named plaintiffs did "not have a significant nexus with the Southern District." *Id*. at 541.  Indeed, her only connection was that for one year out of her 23-year history working for the defendant, she was working in a region that was overseen by regional headquarters based in the Southern District.  The court found this insufficient because "divisional headquarters do not represent significant contacts with plaintiffs' causes of action, because Executive Vice Presidents are weak participants in the selection process for promotions to General Managers." *Id*. at 541-542.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

5

REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO C.D. CAL.

nineteen month tenure with TCS.  The Central District, not the Northern District, is the most appropriate forum in terms of Heldt's record and testimonial evidence relating to his claims of discrimination.  Though Heldt did spend two months on one assignment in the Northern District, it is his two assignments in Southern California, his months spent unallocated (which he spent at his residence in the Central District), and the termination of his employment (proposed by Human Resources in the Central District), that are considered to be the most pivotal events with regard to Heldt's claims of discrimination.  Moreover, the Central District is where Srinivas Malladi ("Mr. Malladi"), the most relevant party witness to Heldt's cause of action for discrimination, resides, and where Heldt sought other assignments while he was unallocated and living at his home.  The Central District has such strong ties to this matter that even Heldt chose an EEOC office in Los Angeles as his administrative venue when he filed his EEOC and DFEH charges for this very matter.

Based on the foregoing, TCS has adequately demonstrated that the chosen forum should be afforded minimal deference.  Accordingly, the Court should grant TCS' motion and transfer the venue in this matter to the Central District.

### 2. Each Named Plaintiff Lacks Significant Contact (Or Any Contact) With The Chosen Forum

Second, a contention that any named plaintiff has "extensive" contacts with the chosen forum is not supported by the facts.  As detailed above and in the motion, Heldt's contacts with this forum are limited, and Buchanan's and Slaight's contacts are non-existent.  It follows that plaintiffs' reliance on *Hendricks v. StarKist Co.*,13-cv-729 YGR, 2014 U.S. Dist. LEXIS 41718 (N.D. Cal. March 25, 2014) is misplaced insofar as the defendant in *Hendricks* conceded that both parties had "significant contacts" with the forum.  *Id.* at *8.  TCS makes no such concession.[4]  Accordingly, this argument lacks merit.

---

[4] Rather, it is clear that plaintiffs contacts with this forum are insignificant or non-existent.  *See, e.g., Ward v. Flour Enterprises, Inc.,* C 10-04361 SBA, 2011 U.S. Dist.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

6

REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO C.D. CAL.

Because (1) plaintiffs lack significant contact (and **any** contact in the cases of Buchanan and Slaight) with the chosen forum, (2) the vast majority of the events giving rise to this action occurred in the Central District, and (3) two of the three plaintiffs reside in the Central District, plaintiffs' choice of forum should be afforded minimal deference.

### 3. Should The Court Determine That The Chosen Forum Is Entitled To Greater Deference, The Court Should Still Grant The Motion

Even if the Court does determine that the chosen forum is entitled to considerable deference and weighs against transfer, this determination is not outcome determinative, as courts routinely hold that the convenience of essential witnesses and parties trump the plaintiff's choice of forum. *See, e.g., Hong v. Morgan Stanley & Co.*, C12-01756 TEH, 2012 U.S. Dist. LEXIS 150382 (N.D. Cal. Oct. 18, 2012); *Hotchkiss v. CSK Auto, Inc.*, C11-1646 MJP, 2012 U.S. Dist. LEXIS 14086 (W.D. Wash. Feb. 3, 2012); *Machado v. CVS Pharm. Inc.*, 13-cv-04501-JCS, 2014 U.S. Dist. LEXIS 20049 (N.D. Cal. Feb. 18, 2014).

In *Hong,* a plaintiff residing in the Northern District of California brought discrimination claims in that district based on gender, race, national origin, and disability under Title VII. *Hong,* 2012 U.S. Dist. LEXIS 150382 at *4. The plaintiff had been employed in the Central District during her four-year period of employment with the defendant. *Id*. at *1-*2. It was in the Central District where she was subjected to a hostile and demeaning environment, and where the vast majority of the discriminatory conduct occurred. *Id*. at *2-*4  The plaintiff also alleged three incidents occurring outside of the

---

LEXIS 24705 at *6-*9 (N.D. Cal. Mar. 1, 2011) (holding that chosen forum had "no significant or material connection" to the plaintiffs or their claims because the plaintiffs did not reside in the chosen forum, and although one of the plaintiffs lived and worked for the defendant in the Northern District for seven months, it was undisputed that the plaintiff worked for a longer period in the Central District, and the plaintiffs' claims related to work performed on projects in an array of locations across the country). *Id*. Similar to *Ward*, Heldt's contacts with this forum consist of living and working for the defendant in the Northern District for two months. It is undisputed that he lived and worked for a longer period in the Central District. But, unlike the plaintiffs in *Ward*, the majority of Heldt's claims are related to his activities in the Central District. Any assertion that TCS engaged in forum shopping by seeking to transfer this action to the forum where Heldt was hired, employed, terminated and lives is absurd.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

7

REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO C.D. CAL.

Central District: (1) that she suffered sexual harassment during a training trip to San Francisco, (2) she suffered sexual harassment during a training trip to Dallas, and (3) her supervisor telephoned her after she moved to San Francisco which "frightened her." *Id*. at *4. The defendant moved to transfer the case from the Northern District to the Central District pursuant to 28 U.S.C. § 1404. While the court found that the plaintiff's choice of forum was entitled to "considerable deference" and weighed against transfer because, not only was she bringing Title VII claims, but she was also an individual plaintiff who was residing in the chosen forum (unlike plaintiff here), it still granted the defendant's motion. *Id*. at *8-*10, *17. The court concluded that "[t]he convenience of the vast majority of the essential witnesses to the conduct alleged in this case favors transfer, as does the stronger connection of the Central District to this case." *Id*. at *17.

In *Hotchkiss*, a plaintiff residing in or near the Eastern District of Washington, brought discrimination claims under Title VII alleging that his co-workers harassed him about his sexual orientation while working for defendant in the Eastern District of Washington. *Hotchkiss,* 2012 LEXIS 14086 at *1, *7-*8. "Based on this treatment and a lack of corrective measures taken by store managers," the plaintiff quit his job. *Id*. at *1-*2. After quitting, he asked to be transferred to a different store in the Western District of Washington. *Id*. The defendant informed the plaintiff that "his prospects were dim." *Id*. at *2. Thereafter, the plaintiff placed four to five phone calls to other employees in an effort to get a job in the Western District. *Id*. The plaintiff did not get another job with the defendant. *Id*. Subsequently, the plaintiff filed his Title VII suit in the Western District of Washington. *Id*. The defendant moved to transfer venue to the Eastern District of Washington pursuant to 28 U.S.C. § 1404. *Id*. The court found that the plaintiff's chosen forum weighed against transfer, but still granted the motion. *Hotchkiss,* 2012 U.S. Dist. LEXIS 14086 at *5-*6, *9-*10. The court concluded that "[defendants] have made a strong showing that trial in [the Western District of Washington] would inconvenience not only the defense, but also a number of witnesses. Because all of the parties, evidence, and

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

8

REPLY IN SUPPORT OF MOTION TO
TRANSFER VENUE TO C.D. CAL.

a majority of the witnesses are located in the Eastern District it would be unfair to make the parties and witnesses litigate in this District." *Id.* at *9-*10.

Finally, in *Machado*, a plaintiff residing in the Northern District of California filed a complaint under Title VII alleging race and national origin discrimination by his former employer, defendant. *Machado,* 2014 U.S. Dist. LEXIS 20049 at * 1. The plaintiff worked for the defendant in Hawaii, where he suffered the majority of the alleged discriminatory acts. *Id*. at *2-*7. His only contact with California was an alleged meeting with the defendant's Director of Human Resources while the two of them were in Sacramento. *Id*. at *4-*5. The defendant moved to transfer venue to Hawaii pursuant to 28 U.S.C. § 1404. *Id*. at *7. The court afforded the plaintiff's choice of forum substantial weight, but still granted the motion to transfer based on the convenience of the witnesses. *Id*. at *12, *15-*16 ("[t]he convenience of non-party witnesses is often the most important factor in a transfer analysis"). The court concluded that the "vast majority of the witnesses" were located in Hawaii, "where really all of the events in this case occurred." *Machado,* 2014 U.S. Dist. LEXIS 20049 at *13, *15-*16. The court noted that "the individual tasked with investigating complaints of harassment and discrimination in Defendant's Hawaii stores…is located in Hawaii; and, most of the party witnesses were located in Hawaii. *Id*. at *13-*14. Thus, the court concluded "[r]equiring all but plaintiff and party witnesses to travel from Hawaii to California [would] cause significant inconvenience." *Id*. at *14.

Similarly, here, as set forth in the motion and below, the convenience of the vast majority of the essential witnesses to the conduct alleged in the complaint favors transfer, as does the venue of residence for the named plaintiffs. In sum, even if this court affords plaintiffs' choice of forum considerable deference, it should still, pursuant to *Hong*, *Hotchkiss*, and *Machado*, **grant** the motion.

B. <u>**Convenience of the Parties And Litigation Costs**</u>

In the motion, TCS demonstrated that Heldt, TCS' decision maker in the case of Heldt, and TCS' managers for Heldt's last two allocations would have to travel to the

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

9

REPLY IN SUPPORT OF MOTION TO
TRANSFER VENUE TO C.D. CAL.

Northern District during the litigation of this case.  (Mot. at 3:13-14.)  In response, it is asserted that Heldt and TCS have "extensive contacts with this district," however, nowhere is it explained how Heldt's contacts are "extensive."  (Response To Motion To Transfer Venue ("Oppo."), at 7:9-10.)  Rather the opposition generically states, "[d]uring the relevant time period, Mr. Heldt has lived in and worked for Tata in this district."  (Oppo. at 7:15-16.)  The opposition makes no mention of the plaintiffs who were added to this action after the opposition was filed, let alone how they have any connection to the Northern District—a notion that is defied by the allegations in the amended complaint.

As stated in detail above and in TCS' motion papers, Heldt lived and worked for TCS in the Northern District for two months out of his nineteen month tenure.  Heldt's contacts can, therefore, hardly be called "extensive."  Moreover, even if the court should find that those two months in the Northern District are extensive contacts, where Heldt lived or worked three years ago has little influence on what forum may be convenient for him now.  *See, e.g., Ward,* 2011 U.S. Dist. LEXIS 24705 at *7 ("venue questions are based on factors existing at the time an action is commenced, rather than when the claim for relief arose").  Heldt currently resides in the Central District.  TCS has a regional office located in Burbank, and its decision maker and managers for Heldt's last two allocations are located in Southern California.  Southern California is also where plaintiff Buchanan worked for almost thirty years before his former employer transitioned its IT functions to TCS, and where he allegedly sought to obtain employment with TCS (in the Los Angeles area).  Hence, the convenience of the parties again weighs in favor of transfer.

It is also argued that transfer is not appropriate because it would shift the costs onto the party with more limited means.  As support for this argument, Heldt contends that because one of the firms representing plaintiffs is located in Berkeley, that firm would incur significant travel costs if the case was transferred.  This argument is without merit.

Given that plaintiffs' lead counsel is located in Washington, D.C., any claim of concern about the "significant travel costs" of their *local* counsel in Berkeley is surprising.  Also, plaintiffs could easily find competent local counsel in the Central District.  In the

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

10

REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO C.D. CAL.

current state of this case, Heldt, who resides in the Central District, and Buchanan, who is also believed to reside in the Central District, must travel extensively to attend court (or meetings) in the Northern District, which is costly and burdensome.  To the extent Heldt and Buchanan purport to represent a putative class, it will clearly be easier for them (and the class) to meet with their attorneys in the forum closest to where they reside.

Finally, courts typically hold that the location of the plaintiff's counsel is not an appropriate factor for the Court to consider when deciding a motion to transfer.  *See, e.g., Vu v. Ortho-McNeil Pharm., Inc.,* 602 F. Supp.2d 1151, 1157 (N.D. Cal. 2009); *Ruiz v. Darigold, Inc.,* 14-cv-02054 WHO, 2014 U.S. Dist. LEXIS 113832 at *10 (N.D. Cal. Aug. 14, 2014); *In re Horseshoe Entm't.*, 337 F.3d 429, 434 (5th Cir. 2003) ("The factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue").  Hence, plaintiffs' litigation cost argument is without merit.  Because the cognizable litigation costs are lower if the case is transferred to the Central District, this factor weighs strongly in favor of transfer.

In sum, the convenience of the parties and costs of litigation weigh in favor of transfer.

### C. Convenience of Party Witnesses

The motion identifies six relevant witnesses, states their location, and describes their testimony and its relevance.[5]  (Mot. at 9:14-10:28.)  The motion is also supported by the declaration of Narasimhan Srinivasan, TCS' Head of Human Resources for North America.  The opposition argues that TCS has failed to carry its burden because Mr. Srinivasan's declaration is inadequate insofar as it does not identify whether these six

---

[5] The motion was submitted before the amended complaint was filed.  Given the allegations proffered on behalf of newly added plaintiff Buchanan, TCS anticipates that several more witnesses who live and work in Southern California will be called upon to testify in this action.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

11

REPLY IN SUPPORT OF MOTION TO
TRANSFER VENUE TO C.D. CAL.

1  individuals will be "key witnesses" and does not provide "a generalized statement of their
2  anticipated testimony." (Oppo. at 12:23-25.) This argument is unavailing and incorrect.[6]

3  Courts in the Northern District follow the *Williams v. Bowman*, 157 F.Supp.2d
4  1103, 1108 (N.D. Cal. 2001) standard which states: "To demonstrate inconvenience of
5  witnesses, the moving party must identify relevant witnesses, state their location and
6  describe their testimony and its relevance." *See, e.g., Brown v. Abercrombie & Fitch Co.*,
7  4:13-CV-05205 YGR, 2014 U.S. Dist. LEXIS 19414 at *15-*16 (N.D. Cal. Feb. 14,
8  2014); *Hendricks,* 2014 LEXIS 41718 at *11; *Costco Wholesale Corp. v. Liberty Mut. Ins.
9  Co.*, 472 F.Supp.2d 1183, 1193 (S.D. Cal. 2007). Pursuant to this standard, TCS has
10 carried its burden—it has specifically identified six potential witnesses, provided their
11 locations, and described their testimony and its relevance. (Mot. at 9:14-10:28.)
12 Additional witnesses in the Central District are anticipated in light of Buchanan's claims.

13 Moreover, the six party witnesses who have been identified are listed ***in the
14 Complaint*** as individuals who either participated in or witnessed the alleged
15 discriminatory acts. (Mot. at 9:14-10:28.) As such, Heldt ***agrees*** these individuals are
16 "key witnesses" despite protestations to the contrary now. Further, TCS' identification of
17 its witnesses is consistent with this court's jurisprudence. *See, e.g., Williams v. Bowman*,
18 157 F.Supp.2d 1103, 1108 (N.D. Cal. 2001) (finding that the plaintiffs' identification of
19 two witnesses, statement of their location, and description of their anticipated testimony
20 and its relevance was sufficient); *King v. Novartis Pharms. Corp.*, CV-07-00018-PHX-
21 DGC, 2014 U.S. Dist. LEXIS 81467 at *6 (D. Ariz. June 16, 2014). Conversely, the
22 opposition is devoid of the identity of a single witness in support of plaintiffs' argument
23 that the Northern District is the proper forum.

24 In sum, the convenience of the party witnesses still weighs in favor of transfer.

---

[6] The Rule 26 conference is approaching on August 17, 2015. To the extent the Court requires additional information on witnesses, particularly given that the amended complaint was submitted on the due date of this reply, the Court may obviously defer ruling on the instant motion until after that conference.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

12

REPLY IN SUPPORT OF MOTION TO
TRANSFER VENUE TO C.D. CAL.

### D. Convenience of Non-Party Witnesses

As set forth in the motion, the majority of potential non-party witnesses are based in the Central District. (Mot. at 11:17-12:8.) Plaintiffs do not dispute that the convenience of non-party witnesses is usually the most important factor in the venue transfer analysis. (Oppo. at 10:7-19.) Rather, plaintiffs respond that TCS has failed to carry its burden because it did not name any third party witnesses, state their testimony or its relevance, or submit a declaration regarding third party witnesses. Again, this argument fails.

In *Brown*, the Court found that the convenience of non-party witnesses weighed in favor of transfer even though neither party "specifically identified any potential non-party witnesses," and the defendant had not provided an outline or summary of the substance or relevance of their testimony. *Brown,* 2014 U.S. Dist. LEXIS 19414 at *15-*16. In finding this factor to weigh in favor transfer, the court took a common sense approach, reasoning that as an employment action, the ***probable*** witnesses would be located where the plaintiffs had worked. *Id*. at *16. Likewise, as this is an employment action involving race and national origin discrimination, the probable non-party witnesses will include the TCS customers that the plaintiffs provided services for while employed by TCS. In the case of Heldt, two of those customers are located in the Central District, one in the Northern District, and one in Kentucky. In the case of Buchanan, his interaction with TCS was limited to his work at a Southern California utility company and his attempt to gain employment in the Los Angeles area after meeting with a TCS representative at a job fair in Arcadia.

Because Heldt spent the majority of his employment with TCS servicing clients in the Central District, and because Buchanan's grievance is that he was not selected by TCS for employment in the Central District, it is not unreasonable to conclude that the majority of potential witnesses are more likely to be located in the Central District than the Northern District, and that, on balance, the non-party witnesses located in the Central District are more significant to this case than the non-party witnesses in the other forum.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

13

REPLY IN SUPPORT OF MOTION TO
TRANSFER VENUE TO C.D. CAL.

While TCS has not yet specified the names of all of its non-party witnesses, it has gone a step beyond *Brown* by identifying the obvious potential groups of non-party witnesses in its motion.  By contrast, plaintiffs have identified *no* groups of non-party witnesses, let alone any single non-party witness, located in the Northern District.  As such, the court should follow its reasoning in *Brown*, and find that the convenience of non-party witnesses weighs in favor of transfer to the Central District.

It is also important to note that non-party witnesses residing out of the Northern District may not be subject to this Court's subpoena power.  Courts have given greater weight to the convenience of non-party witnesses because non-party witnesses may not be subject to the court's subpoena power.  *See, Machado,* 2014 U.S. Dist. LEXIS 20049 at *13.  Should the parties in the instant case find that they must subpoena non-party witnesses in order to compel their participation, the vast majority of the non-party witnesses residing in the Central District would not be subject to the compulsory process of the Northern District.  *See,* Fed. R. Civ. P. 45(c)(1) ("subpoena may command a person to attend a trial, hearing, or deposition as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person or (B)…(ii) is commanded to attend a trial and would not incur substantial expense").  As set forth above, the majority of non-party witnesses will likely reside in the Central District, specifically Los Angeles and Orange County, both of which are more than 100 miles from the Northern District.

Lastly, the convenience of non-party witnesses has been dispositive in some Title VII cases.  *See, e.g, Machado,* 2014 U.S. Dist. LEXIS 20049 at *12 (finding the convenience of the non-party witnesses to be the most important factor in transfer analysis); *Hawkes,* 2012 U.S. Dist. LEXIS 19026 at *11 ("[o]ne of the most important factors in determining whether to grant a motion for transfer is the convenience of the witnesses"); *accord, Hong,* 2012 U.S. Dist. LEXIS 150382 at *10.

In sum, the convenience of non-party witnesses strongly (and dispositively) weighs in favor of transfer.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

14

REPLY IN SUPPORT OF MOTION TO
TRANSFER VENUE TO C.D. CAL.

**E.  Ease of Access to the Evidence**

TCS does not dispute that much of the relevant documentary evidence is in New Jersey and that this factor has diminished over time with the progression of electronic evidence. However, as Mr. Malladi and TCS customers are located in the Central District and may have relevant evidence, this factor weighs in favor of transfer. *See, e.g., LightMed Corp. v. Ellex Med. Pty. Ltd.*, 13-CV-03933-WHO, 2013 U.S. Dist. LEXIS 174216 at *8 (N.D. Cal. Dec. 12, 2013) ("[t]he parties agree that most of the relevant evidence is either public or [outside of California]. However, as [a non-party], which is located in the Central District, may have relevant evidence, this factor weighs slightly in favor of transfer); *see also, Hong,* 2012 U.S. Dist. LEXIS 150382 at *14. Conversely, there is no indication (and the opposition provides none) that significant records are located in the Northern District.

In sum, the ease of access to the evidence factor weighs in favor of transfer.

**F.  Neutral Factors**

The parties concede that the feasibility of consolidation with other claims, familiarity of each forum with the applicable law, local interest in the controversy, and relative court congestion and time of trial in each forum are neutral factors.

### III.
### CONCLUSION

For these reasons, the Motion to Transfer should be granted.

Dated:  July 6, 2015

LOEB & LOEB LLP
MICHELLE M. LA MAR
PATRICK N. DOWNES
ERIN M. SMITH

By: /s/ Michelle M. La Mar
Michelle M. La Mar
Attorney for Defendant
TATA CONSULTANCY SERVICES, LTD

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2434650.8
205625-10015

15

REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO C.D. CAL.