MICHELLE M. LA MAR (SBN 163038)
mlamar@loeb.com
PATRICK N. DOWNES (SBN 186461)
pdownes@loeb.com
ERIN M. SMITH (SBN 235039)
esmith@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STEVEN HELDT, BRIAN BUCHANAN, and CHRISTOPHER SLAIGHT<br><br>Plaintiffs,<br><br>v.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>Defendant. | Case No.: 3:15-cv-01696-YGR<br><br>CLASS ACTION<br><br>**TATA CONSULTANCY SERVICES, LTD.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS I AND II OF THE AMENDED COMPLAINT**<br><br>DATE:  September 8, 2015<br>TIME:  2:00 p.m.<br>CTRM:  1, 4th Floor<br>JUDGE: Hon. Yvonne Gonzalez-Rogers<br><br>Complaint Filed:  April 14, 2015 |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ........................................................................................................ 2

   A.   The Visa Allegations Fail to State a Claim ................................................ 2

      1.   Visa Holders Cannot Be Utilized to Illustrate that Plaintiffs Were Treated Less Favorably. ............................................................. 3

         a.   Plaintiffs' Anecdotal Evidence Fails. ........................................ 4

         b.   Plaintiffs Statistical Evidence Fails. ......................................... 7

      2.   Visa Programs Inherently Utilize Foreign Workers In Compliance With Title VII. ............................................................. 9

   B.   Count I Should Also Be Dismissed Since Heldt Lacks Standing To Maintain A Failure To Hire Claim ............................................................ 11

III. CONCLUSION .................................................................................................. 12

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

i

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ........ 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3

*Bennett v. Total Minatome Corp.*,
138 F.3d 1053 (5th Cir. 1998) ........ 9

*Biran v. JP Morgan Chase & Co.*,
No. 02 civ. 5506 SHS, 2002 U.S. Dist. LEXIS 17076, at *2-7
(S.D.N.Y. Sept. 12, 2002) ........ 9

*Burley v. OneWest Bank, FSB*,
No. 2:14-1349 WBS EFB, 2014 U.S. Dist. LEXIS 167654
(E.D. Cal. Dec. 2, 2014) ........ 6

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ........ 6

*EEOC v. Radiator Specialty Co.*,
610 F.2d 178 (4th Cir. 1979) ........ 7

*Emmanuel v. Guam Seventh-Day Adventist Clinic*,
No. C-03-00030, 2006 U.S. Dist. LEXIS 65353
(D. Guam Mar. 6, 2006) ........ 3

*Fortino v. Quasar Co.*,
950 F.2d 389 (7th Cir. 1991) ........ 9, 10

*Gao v. State Dep't of Atty. Gen.*,
No. 09-00478 DAE BMK, 2010 U.S. Dist. LEXIS 2073
(D. Haw. Jan. 12, 2010) ........ 7

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ........ 2, 11

*Grano v. Dep't of Dev.*,
637 F.2d 1073 (6th Cir. 1980) ........ 7

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Hazelwood Sch. Dist. v. United States*,
  433 U.S. 299 (1977) .................................................................................................. 7, 8

*Johnson v. United Cont'l Holdings, Inc.*,
  C-12-2730-MMC, 2013 U.S. Dist. LEXIS 171805
  (N.D. Cal. Apr. 14, 2013) ............................................................................................... 3

*Koehler v. Infosys Techs., Ltd., Inc.*,
  No. 13-885 PP, 2015 U.S. Dist. LEXIS 60907
  (E.D. Wis. May 8, 2015) .............................................................................................. 10

*Leon v. Meggitt PLC*,
  No. CV 14-226 TUC DCB, 2014 U.S. Dist. LEXIS 131671
  (D. Ariz. Sept. 17, 2014) ................................................................................................ 7

*Maduka v. Sunrise Hospital*,
  375 F.3d 909 (9th Cir. 2004) ...................................................................................... 5, 6

*Mayor of Phila. v. Educ. Equal. League*,
  415 U.S. 605 (1974) ....................................................................................................... 7

*McDaniels v. Hospice of Napa Valley*,
  No. C06-2558 CW, 2006 U.S. Dist. LEXIS 52752
  (N.D. Cal. July 19, 2006) ............................................................................................... 6

*McDonnell Douglas Corp v. Green*,
  411 U.S. 792 (1973) ....................................................................................................... 5

*Morelli v. CEDEL*,
  141 F.3d 39 (2nd Cir. 1998) ..................................................................................... 9, 11

*Olvera-Morales v. International Labor Management Corp.*,
  246 F.R.D. 250 (M.D.N.C. 2007) ........................................................................... 10, 11

*Papaila v. Uniden Am. Corp.*,
  51 F.3d 54 (5th Cir. 1995) ............................................................................................ 10

*Piva v. Xerox Corp.*,
  654 F.2d 591 (9th Cir. 1981) ......................................................................................... 8

*Shah v. Wilco Sys.*,
  126 F. Supp. 2d 641 (S.D.N.Y. 2000) ............................................................................ 9

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

iii

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002) ................................................................................................. 5, 6, 8

*In re Verisign, Inc. Securities Litigation*,
  No. 02-02270, 2005 U.S Dist. LEXIS 10439
  (N.D. Cal. Jan. 13, 2005) ........................................................................................... 11, 12

*Weeks v. Samsung Heavy Indus. Co.*,
  126 F.3d 926 (7th Cir. 1997) .......................................................................................... 9

*Wyvill v. United Cos. Life Ins. Co.*,
  212 F.3d 296 (5th Cir. 2000) .......................................................................................... 3

*Zhang v. Honeywell International, Inc.*,
  Nos. 06-1181 and 07-179, 2010 U.S. Dist. LEXIS 57450
  (D. Ariz. May 17, 2010) ................................................................................................ 10

**Statutes**

8 U.S.C. § 1101(a)(15)(B) ................................................................................................ 4

8 U.S.C. § 1182(n)(1)(A)(ii) ........................................................................................... 1, 5

42 U.S.C. § 1981 ............................................................................................................. 6

Arizona Consumer Fraud Act .......................................................................................... 6

**Other Authorities**

8 C.F.R. § 214.2(b) .......................................................................................................... 4

8 C.F.R. § 214.2(*l*)(1)(ii) ................................................................................................. 4

8 C.F.R. §§ 214.2(l)(1)(ii)(B), (C) and (D) ...................................................................... 4

20 C.F.R. § 655.731(a)(2)(iii) .......................................................................................... 2

20 C.F.R. § 655.732 ......................................................................................................... 2

Fed. R. Civ. Proc. 8(a) ................................................................................................. 6, 8

Fed. R. Civ. Proc. 12(b)1 ................................................................................................ 10

Fed. R. Civ. Proc. 12(b)(6) .............................................................................................. 6

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

iv

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Tata Consultancy Services, Ltd.'s ("TCS") motion to dismiss demonstrated three fundamental points. First, no comparators can exist for plaintiffs' claims based on visa allegations since the visa framework imbeds a determination that disqualifies such visa holders as comparators. Second, the Court lacks subject matter jurisdiction to entertain claims that TCS misused the visa process. Third, plaintiff Heldt's Title VII claim based on TCS' alleged discriminatory hiring fails because TCS hired Heldt.

In response to the first and second points, plaintiffs expressly assert that they are not alleging TCS misused the visa program, perhaps recognizing that claims for misuse of the visa program require plaintiffs to pursue administrative remedies.[1] Rather, plaintiffs now admit that their claims for intentional discrimination are based on TCS' compliant and approved use of the visa program—which by definition creates lawful employment for foreigners, and only foreigners. Accordingly, to the extent any intentional discrimination allegedly arises from TCS' lawful use of the visa program, that decision was made by Congress, and not TCS. Indeed, the use of visas spans all industries, many companies and most work forces around the world. The use of visas cannot create a claim for intentional employment discrimination simply because the employer lawfully availed itself of that program.

In their pleading, plaintiffs chose to identify lawfully issued visa holders as comparators to illustrate that allegedly adverse employment decisions were motivated by race and national origin. The H-1B visa requires TCS to represent that no adverse action will result to "similarly employed" workers (which is what plaintiffs argue they are) by an employer's utilization of visa holders.[2]  8 U.S.C. § 1182(n)(1)(A)(ii). Thus, holders of H-

---

[1] Opp. at 5:27 ("The amended complaint makes no such allegation [i.e., that Tata has *misused* the visa process, or made false statements in connection with that process].")

[2] "Similarly employed" means "having substantially comparable jobs in the occupational classification in the area of intended employment," except that if a representative sample of

LA2446572.3
205625-10015

1

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

1B visas cannot be used to establish claims of discrimination because there can be no adverse impact on the plaintiffs' working conditions where, as alleged here, the visa program is used correctly. As such, the visa holders at issue cannot be comparators for plaintiffs' claims based on plaintiffs' own pleadings.

Similarly, the motion to dismiss Heldt's failure to hire claim under Count I should be granted because plaintiff Heldt affirmatively pleads that he was actually hired. As our Supreme Court has advised, where defeat is "plain enough" on the pleadings, the claim need not proceed. *See, e.g., Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Here, Heldt lacks standing (and always will lack standing) to maintain this claim since Heldt was admittedly hired. TCS' motion to dismiss should be granted.

## II.

## ARGUMENT

### A.  The Visa Allegations Fail to State a Claim

Plaintiffs miscast TCS' visa argument as an attempt to "immunize" TCS from any discrimination claim. Not so. While TCS vehemently denies the allegations, it understands that plaintiffs' allegations based on local hiring and adverse employment actions will proceed. TCS' motion instead focuses on the visa program allegations. By way of their opposition, plaintiffs now admit that TCS does not misuse the visa program and thus all TCS visa holders are compliant with the visa process. As discussed more fully below, that admission alone warrants dismissal of plaintiffs' visa based claims.

---

workers in the occupational category can not be obtained in the area of intended employment, 'similarly employed' means:

(A) Having jobs requiring a substantially similar level of skills within the area of intended employment; or

(B) If there are no substantially comparable jobs in the area of intended employment, having substantially comparable jobs with employers outside of the area of intended employment." 20 C.F.R. § 655.731(a)(2)(iii); *see also,* 20 C.F.R. § 655.732.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

2

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

### 1. Visa Holders Cannot Be Utilized to Illustrate that Plaintiffs Were Treated Less Favorably.

TCS' fundamental point is the alleged comparator group for plaintiffs' visa allegations are the visa holders themselves. Because the issuance of H-1B visas requires a sowing that the working conditions of similarly employed workers will not be impacted by the use of a visa holder, the visa holders are either not similarly situated to plaintiffs or the use of visa holders cannot create an adverse employment for plaintiffs. Plaintiffs response is that this is a "pattern and practice" case and thus there is no need to show their protected group was treated less favorably than the visa holders at the pleading stage.

First, plaintiffs are incorrect. Pattern and practice claims require anecdotal corroboration that <u>similarly situated comparators</u> were treated more favorably as a result of the alleged discrimination. *See Wyvill v. United Cos. Life Ins. Co.,* 212 F.3d 296, 302-03 (5th Cir. 2000) (holding anecdotes about other employees cannot establish that discrimination was a company's standard operating procedure on a pattern or practice claim unless those employees are similarly situated to plaintiff ); *accord Emmanuel v. Guam Seventh-Day Adventist Clinic*, No. C-03-00030, 2006 U.S. Dist. LEXIS 65353, at *36 (D. Guam Mar. 6, 2006) ("[a]necdotal evidence about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff"); *Johnson v. United Cont'l Holdings, Inc*., No. C-12-2730-MMC, 2013 U.S. Dist. LEXIS 171805, at *24 (N.D. Cal. Dec. 5, 2013) (dismissing conclusory allegations of intentional racial discrimination).

Second, plaintiffs fail to recognize that – whether or not they were required to identify comparators – they have in fact done so in their pleadings and those comparators identified are legally insufficient to support plaintiffs' claims. The U.S. Supreme Court is clear that where plaintiffs have pled legally insufficient facts to support their claims, such claims are subject to a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Pattern and practice cases are no exception. Plaintiffs must establish that they were treated

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

3

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

less favorably than those outside their protected group by anecdotal evidence. Plaintiffs cannot make that showing here based on their own pleadings.

### a. Plaintiffs' Anecdotal Evidence Fails.

Plaintiffs mention TCS' use of the H-1B, L-1 and B-1 visa programs. However, each of these programs imbeds unique differences and requirements that materially distinguish the visa applicant from the putative class or, in the case of the H-1B visa program, defeats plaintiffs' discrimination claim on its face through safeguards set forth in the application process itself.[3]

The H-1B program requires certain attestations regarding the non-displacement of United States workers. Plaintiffs now assert that Mr. Buchanan earned more than $60,000, and since the attestations identified in TCS' motion only apply to visa applicants with salary below $60,000, TCS' comparator argument supposedly fails. Plaintiffs are wrong. First, plaintiffs tacitly admit that no comparator would exist for putative class members adversely effected by visa holders earning less than $60,000. Yet plaintiffs' class definition (FAC ¶ 67) does not limit the class to any $60,000 threshold.

Second, all H-1B applications are subject to the following requirement:

> No alien may be admitted or provided status as an H–1B nonimmigrant in an occupational classification unless the employer

---

[3] The FAC is silent concerning TCS' discriminatory pattern and practice regarding TCS' use of the L-1 and B-1 visa programs. No plaintiff alleges injury as a result of these visa programs, nor could they, since no comparator exists. The B-1 visa program is for business visitors and has a six month duration. *See* 8 C.F.R. § 214.2(b). The B-1 applicant must also, among other things, have a residence outside the United States in which the applicant no intention of abandoning. 8 U.S.C. § 1101(a)(15)(B). The B-1 program thus permits short term visitors for multi-national companies to visit operations in the United States. The holders of B-1 visas, among other things, are not paid in the United States. *See, e.g., id*.

The L-1 program also has characteristics that make its users dissimilar in material respects from plaintiffs. The purpose of the L-1 program is for "intracompany transferees." *See* 8 C.F.R. § 214.2(*l*)(1)(ii). An L-1 applicant must have been employed by the petitioner for one year outside the United States, and qualify as a manager, executive, or possess "special knowledge" of "the petitioning organization's product, service, research, equipment, techniques, management, or other interests, … or an advanced level of knowledge or expertise in the organization's processes and procedures." 8 C.F.R. §§ 214.2(l)(1)(ii)(B), (C) and (D). None of the plaintiffs allege that they meet this criteria.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

4

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

> has filed with the Secretary of Labor an application stating the following: [. . . ¶]
>
> (ii) will provide working conditions for such a nonimmigrant <u>that will not adversely affect the working conditions of workers similarly employed</u>.

8 U.S.C. § 1182(n)(1)(A)(ii) (emphasis added).  Accordingly, the requisite finding necessary to defeat plaintiffs' intentional discrimination claim has already been made.  Every time TCS submits an H-1B visa application, TCS represents the applicant will not adversely affect the working conditions of workers similarly employed—and that representation is <u>correct</u> according to plaintiffs.

Accordingly, if the working conditions of workers similarly employed or hired (i.e. as alleged, plaintiffs Heldt, Buchanan and Slaight) have not been adversely affected, then plaintiffs have no claim.[4]  And as shown in TCS' motion, if TCS' statement was wrong, plaintiffs' remedy is administrative.  Indeed, plaintiffs allege that such an administrative investigation has already begun on this very point.  *See* TCS Second Request for Judicial Notice, Exh. C (Department of Labor investigating whether TCS' "hiring of workers on nonimmigrant visas is adversely affecting the working conditions of similarly employed workers"); FAC ¶ 26.

Plaintiffs rely on *Maduka v. Sunrise Hospital*, 375 F.3d 909, 912 (9th Cir. 2004) to support their argument that "whether Plaintiffs can present adequate comparators outside their protected class is irrelevant."  (Opp. at 4:13-16.)  *Maduka* does hold that plaintiffs are not required to plead comparators in *McDonnell Douglas* cases, but also acknowledges that comparators are an element of Title VII and Section 1981 cases.  375 F.3d at 912 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002)).[5]  *Maduka* does not hold

---

[4] The Department of Labor letter in the context of the hiring of Buchanan demonstrates that the term "similarly employed" includes those who have not been hired as well.

[5] In *Swierkiewicz,* the Supreme Court was presented with "the question whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth by this Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 … (1973)," the Court held "that an employment

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

5

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

comparators are irrelevant, particularly where, as here, the absence of comparators is apparent on the face of the pleadings.

In *Maduka,* the Ninth Circuit remanded, and applying the *Swierkiewicz* pleading approach, [6] held that "in order to survive a Rule 12(b)(6) motion to dismiss, a complaint asserting a claim for employment discrimination pursuant to 42 U.S.C. § 1981 'must contain only a 'short and plain statement of the claim showing that the pleader is entitled to relief.''" *Maduka,* 375 F.3d at 912 (citations omitted).  However, the Ninth Circuit expressly stated "[w]e do not determine here whether Maduka's complaint 'satisfies only the simple requirements of Rule 8(a).'" *Id*. at 913 (citation omitted).  Accordingly, *Maduka* did not hold that comparators were irrelevant at the pleading stage, but rather remanded the case to the district court to evaluate the motion to dismiss under Rule 8(a). *Id*. at 913.

Here, unlike the defendant in *Maduka*, TCS does not only contend that plaintiffs' allegations are conclusory.  Rather, TCS contends that plaintiffs are either not "similarly employed" or that they will never be able to establish that they suffered an adverse decision because of the use of visa holders. In short, the operative pleading demonstrates on its face that an element essential to plaintiffs' claim is lacking.  In such circumstances, dismissal is appropriate. *See, e.g., McDaniels v. Hospice of Napa Valley*, No. C06-2558 CW, 2006 U.S. Dist. LEXIS 52752, at *26 (N.D. Cal. July 19, 2006) (granting defendant's motion to dismiss plaintiff's Title VII claim based on a pattern or practice of racial discrimination since failure to meet exhaustion requirement evident on face of pleadings); *Cervantes v. Countrywide Home Loans, In*c., 656 F.3d 1034, 1045 (9th Cir. 2011) (granting the motion to dismiss plaintiffs' TILA and Arizona Consumer Fraud Act claims on the ground that the running of the statute of limitations is apparent on the face of the complaint); *Burley v. OneWest Bank, FSB*, No. 2:14-1349 WBS EFB, 2014 U.S. Dist.

---

discrimination complaint need not include such facts and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" 534 U.S. at 508 (quoting Fed. R. Civ. Proc. 8(a)).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

6

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

LEXIS 167654, at *5 (E.D. Cal. Dec. 2, 2014) (holding that because it was "clear" from plaintiffs' complaint that the applicable statute of limitations ran "well before plaintiffs filed this action, the court must grant defendants' motion to dismiss this claim"); *Leon v. Meggitt PLC*, No. CV 14-226 TUC DCB, 2014 U.S. Dist. LEXIS 131671, 16-17 (D. Ariz. Sept. 17, 2014) (dismissing plaintiffs' Title VII retaliation claims on the ground failure to state a claim); *Gao v. State Dep't of Atty. Gen.*, No. 09-00478 DAE BMK, 2010 U.S. Dist. LEXIS 2073 (D. Haw. Jan. 12, 2010) (granting defendant's motion to dismiss plaintiff's national origin discrimination claim in part because it did not "indicate the national origin of any similarly-situated employees or present any facts that would allow an inference of disparate treatment based on race or national origin, and therefore cannot establish a prima facie case of discrimination").

### b.  Plaintiffs Statistical Evidence Fails.

Plaintiffs also contend that (and are correct that) "gross statistical disparities" may be sufficient to make a prima facie showing <u>in certain cases</u>. *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 (1977). However, not in <u>this</u> case. Because plaintiffs' comparison is not properly limited to the qualified population, the statistical evidence alleged in the FAC will never support a prima facie case of systemic disparate treatment.[7]

---

[7] As shown in TCS' motion, where the job at issue requires particular training, education or skills, then the comparison must be limited to the population with those qualifications. *See, e.g., Hazelwood,* 433 U.S. at 308 n.13 (finding that the appropriate comparison in a discriminatory hiring case involving teachers was between the percentage of black teachers in the school's workforce and the percentage of qualified (licensed) black teachers in the geographic area from which the school drew its applicants. The Supreme Court rejected the comparison plaintiffs purport to use here, i.e., general workforce data since teachers have skills and qualifications (teaching certificates) not typically found in the workforce at large; *see also EEOC v. Radiator Specialty Co*., 610 F.2d 178, 184 (4th Cir. 1979) ("[w]hen special skills are required statistical comparisons between defendant's work force and the general population will not normally be sufficiently probative to make out a [p]rima facie case"); *Grano v. Dep't of Dev*., 637 F.2d 1073, 1078 (6th Cir. 1980) ("[t]he mere fact that a department is overwhelmingly male does not support an inference of discrimination where there are legitimate special qualifications for employment or advancement and no evidence is introduced as to the number and availability of qualified women"); *Mayor of Phila. v. Educ. Equal. League*, 415 U.S. 605, 620-21 (1974).

In the instant case, the jobs alleged in the FAC require specialized training, education, and skills. For example, Mr. Heldt describes himself as a "highly skilled IT professional with considerable academic and work experience, who was employed as an IT Project Manager by TCS." (*See* FAC ¶¶ 6, 45-61.) Mr. Buchanan is an IT specialist who sought the same or similar position with TCS. (FAC ¶¶ 31-43.) And, Mr. Slaight was employed by TCS as a software

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

7

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

1  It follows that under Rule 8(a) and in compliance with the *Swierkiewicz* pleading approach,
2  plaintiffs cannot show that they are entitled to relief under their Title VII and Section 1981
3  claims relating to their statistical allegations.

4  Plaintiffs' reliance on *Piva v. Xerox Corp.*, 654 F.2d 591, 596 (9th Cir. 1981) and
5  *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 (1977) to support their
6  contention that "gross statistical disparities" as alleged in the FAC establish a prima facie
7  case of systemic disparate treatment, is misplaced.  Not only do plaintiffs take the citation
8  from *Hazelwood* out of context (as set forth in footnote 7), but in *Piva*, plaintiffs lost for
9  the same reason the plaintiffs here should lose.   In *Piva,* the Ninth Circuit found that the
10 statistical disparity between the composition of the general work force in comparison to
11 the composition of saleswomen in Xerox's Western Region was unpersuasive.  654 F.2d at
12 596-97 (concluding that "[b]ecause there was no evidence that most workers would be
13 qualified to be Xerox salespersons, the district court did not err in finding the statistical
14 disparity unpersuasive").

15 Here, the jobs are specialized, highly technical professions requiring significant
16 education and professional qualifications.  (*See, e.g.,* FAC ¶ 13.)  As such, *Piva* actually
17 bolsters TCS' argument that plaintiffs have not demonstrated a case of systemic disparate
18 treatment.  In sum, plaintiffs cannot show that they are entitled to relief under their Title
19 VII and Section 1981 claims relying on their deficient statistical allegations.  Since
20 plaintiffs' anecdotal allegations and statistical allegations are insufficient, the motion to
21 dismiss should be granted.

---

26 engineer. (FAC ¶ 62.)  As such, any comparison must be limited to the population with those
   qualifications.  However, plaintiffs assert that TCS "is a workforce that consists of approximately
27 95% South Asians, a number grossly disproportionate with the <u>demographic makeup of the United
   States</u> (which consists of approximately 1-2% South Asians)."  (FAC ¶ 22, 29.) (Emphasis added.)
28 Plaintiffs' comparator group is the United States population, which is grossly overbroad.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

8

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

## 2. Visa Programs Inherently Utilize Foreign Workers In Compliance With Title VII.

TCS' motion outlined administrative remedies available if TCS allegedly misused the visa program.[8]  As noted previously, plaintiffs disavow any such conduct by TCS. Accordingly, plaintiffs seek to litigate whether an employer's use of a governmental visa program in full compliance with all legal requirements created by that program may form the basis of a claim for intentional discrimination.  The answer to this question is "No."

In the related context of treaties, courts have established that "[t]he exercise of a treaty right may not be made the basis for inferring a violation of Title VII." *Fortino v. Quasar Co.*, 950 F.2d 389, 393 (7th Cir. 1991); *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 935 (7th Cir. 1997) ("We also clearly stated in *Fortino*, in reference to an identical treaty between the United States and Japan, that 'the exercise of a treaty right may not be made the basis for inferring a violation of Title VII'") (citation omitted); *Bennett v. Total Minatome Corp.,* 138 F.3d 1053, 1059 (5th Cir. 1998) ("[a]s the court noted in *Fortino*, 'the exercise of a treaty right may not be made the basis for inferring a violation of Title VII'") (citation omitted).   But "inferring" an intentional discriminatory claim based on the mere use of a lawful treaty is exactly what plaintiffs have done.

In *Fortino*, the Seventh Circuit explained,

> The exercise of a treaty right may not be made the basis for inferring a violation of Title VII.  By virtue of the treaty, "foreign businesses clearly have the right to choose citizens of their own nation as executives because they are such citizens."  … That right would be empty if the subsidiary could be punished for treating its citizen executives differently from American executives on the ground that, since the former were of Japanese national origin and the latter were not, it was discriminating on the basis of national origin.  Title VII would be taking back from the Japanese with one hand

---

[8] TCS' subject matter jurisdiction argument is arguably mooted by plaintiffs' disavowal. If no subject matter jurisdiction exists where the visa process is misused, jurisdiction over the proper use of the visa program would also be lacking.  The *Biran* court's fulsome analysis of the visa framework makes clear that complaints regarding the misuse of the visa program should be resolved administratively.  *Biran v. JP Morgan Chase & Co.,* No. 02 civ. 5506 SHS, 2002 U.S. Dist. LEXIS 17076, at *2-7 (S.D.N.Y. Sept. 12, 2002); *see also Shah v. Wilco Sys.*, 126 F. Supp. 2d 641, 648 (S.D.N.Y. 2000) (violations of visa statutes requires exhaustion of administrative remedies).  The *Shah* court reached this conclusion even after citing plaintiff's authority, *Morelli v. CEDEL*, 141 F.3d 39 (2nd Cir. 1998).  *Shah*, 126 F. Supp. 2d at 646.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

9

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

> what the treaty had given them with the other.  This collision is avoided by holding national origin and citizenship separate. That was not done here.

*Fortino,* 950 F.2d at 393 (citations omitted). (Seventh Circuit dismissed plaintiffs' Title VII claim of discrimination on the basis of national origin on the grounds that the claim was based on citizenship, which was a permissible basis for discrimination under the Japan FCN treaty); *accord Papaila v. Uniden Am. Corp.*, 51 F.3d 54, 55 (5th Cir. 1995).

Here, plaintiffs similarly seek to withdraw the very right given to TCS by Congress in conjunction with trade treaties to hire foreign workers appropriately through the visa system.[9]  To be clear, TCS is not seeking to dismiss plaintiffs local hiring or other adverse employment action claims.  However, TCS mere use of the visa program, as alleged by plaintiffs, cannot support their intentional discrimination claims.

Plaintiffs' authority further supports defendant's position.  In *Koehler v. Infosys Techs., Ltd., Inc.,* No. 13-885 PP, 2015 U.S. Dist. LEXIS 60907, (E.D. Wis. May 8, 2015), plaintiffs alleged that defendant *misused* the visa program.  *Id.* at *17-18 ("Further, the complaint alleges that [defendant Infosys] falsely certified that it attempted in good faith to recruit U.S. workers before seeking visas for its employees.")  The court again highlighted the misuse of the visa program in *dicta* when it interpreted *Zhang v. Honeywell International, Inc.*, Nos. 06-1181 and 07-179, 2010 U.S. Dist. LEXIS 57450 (D. Ariz. May 17, 2010).  *Infosys*, 2015 U.S. Dist. LEXIS 60907, at *20.  In addition, the defendant in *Infosys* did not move pursuant to Rule 12(b)1 regarding subject matter jurisdiction, as defendant has moved here, and none of the authorities cited in TCS' motion are addressed in the *Infosys* opinion (a different *Zhang* opinion was addressed) or raised in that defendant's motion to dismiss.  On that record, the *Infosys* case is not persuasive here.

Similarly, defendants in *Olvera-Morales v. International Labor Management Corp.*, 246 F.R.D. 250 (M.D.N.C. 2007), apparently did not assert that the visa programs at issue

---

[9] The United States committed to provide what essentially amounts to the L-1 and H-1B visa programs in connection with the General Agreement on Trade in Services ("GATS), Apr. 15, 1994, Marrakesh Agreement Establishing the World Trade Organization, Annex 1B, Article VI and United States Schedule of Specific Commitments Mode 4.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

10

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

1 there were subject to an administrative remedy (addressing H-2A and H-2B visa
2 programs). In *Olvera-Morales*, plaintiff was a visa worker and alleged gender
3 discrimination. Arguably defendants had no occasion to address the merits since this
4 opinion addresses class certification. *Id.* at 257.

5 In *Morelli v. CEDEL*, 141 F.3d 39 (2nd Cir. 1998), defendant asserted it was
6 exempt from ADEA allegations since its parent was a foreign corporation. TCS raises no
7 such defense and is not asserting immunity. Nowhere in *Morelli* did the defendant
8 demonstrate that its alleged discriminatory practice failed to state a claim. Here, TCS has
9 demonstrated the lawful use of the visa program means it has not adversely impacted
10 United States workers with respect to the H-1B visa program, and comparators will be
11 absent under any of the visa programs. Accordingly, the motion to dismiss should be
12 granted.

## B. Count I Should Also Be Dismissed Since Heldt Lacks Standing To Maintain A Failure To Hire Claim

15 Plaintiffs seek to defer dismissal because Heldt's lack of standing can be raised later
16 during the class certification motion. Plaintiffs fundamentally miss the point. No plaintiff
17 before this Court has suffered, or is even alleged to have suffered, a Title VII injury for
18 failure to hire. Our Supreme Court has repeatedly noted that federal courts may only
19 decide disputes with actual controversies and that class "'representative[s] must be part of
20 the class and 'possess the same interest and suffer the same injury' as the class members.'"
21 *Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citing *E. Tex. Motor Freight*
22 *Sys., Inc. v. Rodriquez*, 431 U.S. 395, 403 (1977)). Plaintiffs' opposition also takes no
23 issue with the Supreme Court's instruction that "[s]ometimes the issues are plain enough
24 from the pleadings to determine whether the interests of absent parties are fairly
25 encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw.*, 457 U.S. at 160.
26 In the face of these authorities, plaintiffs principally rely on *In re Verisign, Inc.*
27 *Securities Litigation,* No. 02-02270, 2005 U.S Dist. LEXIS 10439 (N.D. Cal. Jan. 13,
28 2005), a single district court securities case. There, the court held that plaintiffs who had

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

11

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR

suffered fraudulent representations were not required to have relied on every misrepresentation made to the class in order to have standing.  Even assuming that *In re Verisign* is controlling, it is distinguishable.

It is undisputed that Heldt was hired.  He has no claim for failure to hire.  Heldt does have standing to pursue claims for other adverse employment actions.  By analogy, the plaintiffs in *In re Verisign* suffered an injury in the form of fraudulent representations, and had stated such a claim.  The *In re Verisign* plaintiffs could thus maintain claims for other misrepresentations that damaged other class members, but not the lead plaintiffs.  The *In re Verisign* court did not rule that plaintiffs would have standing to maintain claims for other types of injuries allegedly caused by defendant that did not impact the plaintiffs.  Here plaintiff Heldt seeks to maintain claims for conduct exactly the opposite of what happened to him.  While the *In re Verisign* plaintiffs could allege an injury from a misrepresentation, no plaintiff before this Court has alleged any Title VII injury from failure to hire.  TCS' motion to dismiss should thus be granted on this point as well.

## III.

## **CONCLUSION**

For these reasons, TCS' motion to dismiss should be granted with prejudice on plaintiffs' visa claims, and without prejudice concerning plaintiff Heldt's Title VII failure to hire claim.

Dated:   August 25, 2015

LOEB & LOEB LLP
MICHELLE M. LA MAR
PATRICK N. DOWNES
ERIN M. SMITH

By: /s/Michelle M. La Mar
Michelle M. La Mar
Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2446572.3
205625-10015

12

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC
CASE NO.: 3:15-CV-01696-YGR