UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN HELDT, BRIAN BUCHANAN, and CHRISTOPHER SLAIGHT,<br><br>Plaintiffs,<br><br>v.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>Defendant. | Case No. 15-cv-1696-YGR<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION TO STRIKE FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 47, 50 |

Plaintiffs Steven Heldt, Brian Buchanan, and Christopher Slaight (collectively, "plaintiffs") bring this putative class action against defendant Tata Consultancy Services, Ltd. ("defendant" or "TCS") for discrimination in employment practices. Plaintiffs bring causes of action in the first amended complaint (Dkt. No. 39, "FAC") for disparate treatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e, *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. section 1981.

Pending before the Court are defendant's motion to dismiss the FAC in part pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) (Dkt. No. 50, "MTD") and defendant's motion to strike allegations in the FAC pursuant to Federal Rule of Civil Procedure 12(f) (Dkt. No. 47, "MTS"). Having carefully considered the papers submitted and the pleadings in this action, a hearing on the motions held September 15, 2015, and for the reasons set forth below, the Court hereby **DENIES** defendant's motions.

Although the Court denies defendant's motions, for the reasons stated on the record at the September 15, 2015 hearing, the Court has concerns about remaining ambiguities in the FAC.

Given plaintiffs' counsel's inability to articulate persons included in the proposed class, compounded with conflicting and ambiguously defined terms in the FAC, the Court **ORDERS** plaintiffs to file an amended complaint. Plaintiffs shall file an amended complaint, and defendant shall file a responsive pleading thereto, as described in Section V, *infra*.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

TCS is a foreign company headquartered in Mumbai, India, with 19 offices and approximately 14,000 employees in the United States. (FAC ¶ 13.) TCS provides information technology ("IT") consulting and outsourcing services to companies worldwide, including in the United States. (*Id*. ¶ 20.) Plaintiffs Buchanan, Heldt, and Slaight allege that TCS discriminated against them in their hiring, employment, and/or termination practices based on race and national origin. (*Id.*¶ 1.) Specifically, plaintiffs claim that TCS has a pattern and practice of intentional discrimination in its United States workforce whereby they treat persons of South Asian descent, South Asian race, and South Asian national origin,[1] more favorably than those who are not South Asian, including plaintiffs. (*See id*.) Plaintiffs allege that, as a result of TCS's discrimination, its United States workforce consists of approximately 95% persons of South Asian descent, race, and/or national origin, compared to 1-2% of the United States population. (*Id*. ¶ 1.)

With respect to plaintiff Buchanan, Southern California Edison ("SCE") employed him as an IT professional from 1986 until February 2015. SCE informed plaintiff Buchanan in July 2014 that he and approximately 400 coworkers would be terminated and replaced by TCS employees. (*Id.* ¶ 35.) Plaintiff Buchanan agreed to remain in his position with SCE until early 2015 to train the incoming TCS employees. (*Id.*) Plaintiff Buchanan was discharged in February 2015 when TCS assumed primary responsibility for SCE's IT needs, including plaintiff's former position. (*Id*. ¶ 42.) In the interim, plaintiff Buchanan attended a job fair organized by SCE for its employees awaiting termination, at which he met with a TCS hiring manager to express his interest in a position with TCS at SCE or otherwise. (*Id.* ¶ 39.) TCS made no further hiring

---

[1] Plaintiffs define these terms, collectively, as including "individuals of Indian, Bangladeshi, and Nepali ancestry, ethnicity, and/or birth." (FAC ¶ 1 at n. 1.)

2

contact with plaintiff Buchanan despite his extensive qualifications and relevant experience. (*Id*.) TCS hired only five of the twenty-eight members of plaintiff Buchanan's team at SCE, three of whom were South Asian. (*Id*. ¶ 40.) Plaintiff alleges that TCS replaced him and the remaining members of his team with South Asian persons who had less experience and were not as qualified as plaintiff. (*Id*. ¶ 40-41.)

With respect to plaintiff Heldt, TCS hired him in June 2012 to service its client Kaiser Permanente as IT Project Manager for an IT governance risk and compliance system named Archer. (*Id*. ¶ 44, n. 5.) Within one week, TCS removed plaintiff Heldt from this position and assigned him to the generic position of IT Project Manager with the same client Kaiser Permanente. (*Id*. ¶ 45.) Plaintiff alleges that this role involved less important responsibilities than his original position and was not commensurate with his advanced IT experience and skills. (*Id*.) Beginning in October 2012, TCS did not assign plaintiff Heldt any client work, but continued to employ him. (*Id.* ¶¶ 46-50.) TCS "benched" plaintiff Heldt in this manner twice more throughout his employment, and during each period, plaintiff Heldt continued to apply for various positions within TCS. (*Id.* ¶¶ 52-60.) Plaintiff Heldt alleges that none of the subsequent positions to which he was assigned by TCS were commensurate with his advanced skills and experience, and that he was denied substantive work at several points. (*Id*.) Ultimately, TCS terminated plaintiff Heldt in March 2014, citing plaintiff's time on the "bench," and his unwillingness to move out of state, which plaintiff Heldt disputes. (*Id*. ¶ 60.) Plaintiff Heldt alleges that TCS knowingly and intentionally favored persons of South Asian race and national origin, and disfavored those who were not, in its employment decisions with respect to himself throughout his employment, and all others similarly situated. (*Id*. ¶¶ 79, 84.)

With respect to plaintiff Slaight, TCS hired him as a software engineer in April 2012 for an assignment at TCS's client AXA beginning in October 2012. (*Id*. ¶¶ 62-64.) Plaintiff alleges that TCS did not provide him any on-site training at AXA and failed to assign him any substantive work for six months, while his South Asian colleagues regularly received substantive work. (*Id*. ¶ 64.) Similar to plaintiff Heldt, TCS placed plaintiff Slaight on the "bench" beginning in March 2013. (*Id.* ¶ 65.) Plaintiff Slaight actively pursued new placements with TCS until he was

3

terminated less than a month later, in April 2013. (*Id*. ¶¶ 65-66.) Plaintiff Slaight alleges that TCS knowingly and intentionally favored persons of South Asian race and national origin, and disfavored those who were not, in its employment decisions with respect to himself throughout his employment, and all others similarly situated. (*Id*. ¶ 84.)

Plaintiffs bring two causes of action in the FAC: (1) disparate treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e, *et seq*., ("Title VII") as to plaintiff Heldt and all others similarly situated; and (2) disparate treatment in violation of the Civil Rights Act of 1866, 42 U.S.C. section 1981 ("Section 1981") as to plaintiffs Buchanan, Heldt, and Slaight and all others similarly situated. Plaintiffs allege that TCS achieves its discriminatory goal of maintaining a workforce of primarily persons of South Asian descent, race, and/or national origin by employing at least three methods of discrimination: (a) using the visa process to sponsor a high number of South Asian workers with H-1B, L-1, and B-1 visas; (b) hiring a disproportionate number of South Asian workers who reside in the United States with a discriminatory preference; and (c) discriminating against its non-South Asian employees in employment decisions, including in placement, promotion, demotion, and termination decisions. (*Id*. ¶¶ 26-30.)

TCS now moves to dismiss the FAC under Rule 12(b)(6) on the ground that its use of the visa programs authorized by the laws of the United States cannot be a basis for relief under Title VII or Section 1981 because the lawful issuance of visas establishes as a matter of law that TCS recruits foreign workers in a non-discriminatory manner. Next, TCS asserts that the Court should dismiss the FAC under Rule 12(b)(1) in part for two reasons. First, TCS contends that the Court does not have subject matter jurisdiction over plaintiffs' claims insofar as plaintiffs allege that TCS misused the visa programs because plaintiffs have not exhausted administrative remedies with the Departments of Justice and Labor. Second, TCS argues that Count I should be dismissed to the extent it is based on discrimination in hiring practices for the reason that plaintiff Heldt – the only plaintiff named in Count I – does not have standing to bring a claim for failure to hire.

Finally, TCS also moves to strike two categories[2] of allegations in the FAC as impertinent and immaterial: (i) statistical data comparing the demographics of TCS workers to the demographics of the entire United States; and (ii) the class period for plaintiff Heldt's Title VII claim. The Court addresses each motion in turn.

## II. MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.,* 653 F.3d 1000, 1010 (9th Cir. 2011). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). For purposes of evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleadings. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973).

### B. Analysis

TCS argues that plaintiffs fail to state claims under both Title VII and Section 1981 to the extent plaintiffs base those claims on TCS's alleged use of the visa programs to recruit foreign workers to achieve its goal of discrimination against persons who are not South Asian. TCS contends that this basis for plaintiffs' claims is "self-defeating" because TCS's use of the visa program establishes that its recruitment is non-discriminatory. (MTD at 6:6-7.) TCS relies on H-

---

[2] TCS also moves, in the alternative, to strike allegations relevant to the claims it separately moves against in its motion to dismiss. (MTS at 1.)

5

1B visa program regulations to conclude that it does not discriminate because for a non-immigrant worker to obtain a visa, "a showing must be made that the potential visa holder will not displace an American worker." (MTD at 5:16-18.) This suggestion is tenuous at best.[3]  For purposes of a motion to dismiss, the complaint cabins the allegations. TCS's attempt to recast the FAC as a bald attack on its business model is the result of a skewed reading of the FAC. TCS's argument that its use of the visa programs must be non-discriminatory by definition and plaintiffs can never show that the named plaintiffs (or any class members) were discriminated against as a result of TCS's use of the visa programs is also misplaced. *See Koehler, et al. v. Infosys Technologies Ltd., Inc., et al.*, — F.Supp. 3d — , 2015 WL 2168886, at *7 (E.D. Wisc. May 8, 2015) (rejecting the defendants' argument that plaintiffs cannot invoke Title VII or Section 1981 to challenge their visa practices). For purposes of the motion, the FAC has sufficient allegations of discriminatory conduct to put TCS on notice of the basis for the claim.

Next, TCS argues that the attestations made for the H-1B visas preclude plaintiffs from ever making the required showing that the named plaintiffs (or putative class members) are similarly situated to the visa holders it allegedly favors in hiring and employment practices. *See Chuang v. University of Cal. Davis Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000) (a prima facie case of discrimination under *McDonnell Douglas* includes a showing that "similarly situated individuals outside of [the plaintiff's] protected class were treated more favorably.") In other words, TCS argues that the visa application process prevents visa holders from being similarly situated to plaintiffs, *i.e.* comparators, as required to make a prima facie showing of discrimination under Title VII and Section 1981. *See id*.

In opposition, plaintiffs argue that TCS's argument is inapposite because plaintiffs are not pursuing its claims under the *McDonnell Douglas* framework under which comparators would be necessary. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (establishing the framework under which a plaintiff must initially establish a prima facie case of employment

---

[3] The argument is also premature and not appropriately addressed on a Rule 12 motion. For the reasons discussed, *infra*, the Court finds the FAC contains sufficient allegations of discrimination.

1  discrimination).  The Court agrees.  Supreme Court and Ninth Circuit precedent indisputably hold
2  that the *McDonnell Douglas* framework is not the exclusive avenue to establish a prima facie case
3  of employment discrimination.  Gross statistical disparities[4] or direct evidence of discrimination
4  can each alone be sufficient to make a prima facie showing.  *See Piva v. Xerox Corp.*, 654 F.2d
5  591, 596 (9th Cir. 1981) (citing *Hazelwood School District v. United States*, 433 U.S. 299, 307-08
6  (1977)) ("Gross statistical disparities between the composition of an employer's work force and
7  the composition of an employer's work force and the composition of the general population in a
8  proper case may constitute, by themselves, prima facie proof of a pattern or practice of
9  discrimination."); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("the *McDonnell*
10 *Douglas* framework does not apply where, for example, a plaintiff is able to produce direct
11 evidence of discrimination").  Therefore, plaintiffs need not allege that comparators exist to state
12 claims under Title VII or Section 1981.
13      Accordingly, TCS's motion to dismiss the FAC in part under Rule 12(b)(6) is **DENIED**.
14 **III.    MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**
15      **A.  Legal Standard**
16      A motion to dismiss pursuant to Rule 12(b)(1) is a challenge to the court's subject matter
17 jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction," and
18 it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins.*
19 *of Am.*, 511 U.S. 375, 377 (1994).  The party invoking the jurisdiction of the federal court bears
20 the burden of establishing that the court has the requisite subject matter jurisdiction to grant the
21 relief requested.  *Id*.  A challenge pursuant to Rule 12(b)(1) may be facial or factual.  *See White v.*

---

[4] TCS concedes in reply that gross statistical disparities may be sufficient to make a prima facie showing of discrimination in certain cases, but argues that this is not the proper case. Notably, TCS cites only cases decided on summary judgment, not a Rule 12 motion, to support its argument.  (MTD Reply at 7-8.)  Indeed, this argument concerns a burden of proof – not a pleading standard – and is therefore premature.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a Rule 12 motion); *Maduka v. Sunrise Hospital, et al.*, 375 F.3d 909, 912-13 (2004) (same); *see also Starr v. Baca*, 652 F.3d 1201, 1213-16 (9th Cir. 2011) (*Swierkiewicz* is still good law after the more demanding standards announced in *Twombly* and *Iqbal*.)

1  *Lee*, 227 F.3d 1214, 1242 (9th Cir.2000). In a facial attack, the jurisdictional challenge is

2  confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th

3  Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their

4  face" to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

5  Cir.2004). To resolve this challenge, the court assumes that the allegations in the complaint are

6  true and draws all reasonable inferences in favor of the party opposing dismissal. *See Wolfe*, 392

7  F.3d at 362.

### B. Analysis

TCS moves to dismiss in part under Rule 12(b)(1) on two grounds: (i) the Court does not have subject matter jurisdiction over plaintiffs' claims related to TCS's use of the visa programs; and (ii) the claim under Title VII (Count I) should be dismissed to the extent it is based on discrimination in hiring practices because plaintiff Heldt does not have standing to bring a claim for failure to hire. The Court considers TCS's arguments in turn.

#### 1. The Administrative Remedies TCS Cites Are Inapplicable

TCS moves to dismiss plaintiffs' claims to the extent they allege that TCS has misused the visa program, arguing that the Court lacks subject matter jurisdiction to hear these claims. Specifically, TCS contends that plaintiffs must first exhaust administrative remedies with the Departments of Justice and Labor in order to have this Court adjudicate claims of misuse of the visa program. *See Biran v. JP Morgan Chase & Co.*, 2002 WL 31040345 (S.D. N.Y. Sept. 12, 2012) (holding plaintiff required to exhaust administrative remedies before filing suit for employer's overuse of visa program). In opposition, plaintiffs argue that TCS misconstrued their allegations, and that they do not allege that TCS has misused the visa program.[5]

In light of plaintiffs' affirmative denial that TCS misused the visa program, TCS acknowledges that their argument may be moot, but then summarily states that "jurisdiction over

---

[5] While the FAC does not directly allege that TCS misuses the visa process, it does contain an allegation that TCS is "currently being investigated by the federal government for visa abuse." (FAC ¶ 26.) Plaintiffs now disavow any attempt to base their claims on misuse of the visa program. To clarify their position, plaintiffs shall make clear in their amended complaint that they do not allege any misuse or abuse of the visa program. *See* Section V, *infra*.

the proper use of the visa program would also be lacking." (Dkt. No. 65, "MTD Reply" at 9, n. 8.) TCS provides no authority for the proposition that plaintiffs' allegations regarding TCS's use of the visa process to achieve its discriminatory goals effectively deprives this Court of subject matter jurisdiction over plaintiffs' Title VII and Section 1981 claims otherwise properly before the Court. In fact, TCS only cites cases addressing subject matter jurisdiction where plaintiffs' claims are based on the *misuse* of the visa process. *See, e.g., Biran*, 2002 WL 31040345 (finding the court lacked subject matter jurisdiction where plaintiff alleged *violations* of the Immigration and Nationality Act). Plaintiffs' motion to dismiss for the visa allegations for lack of subject matter jurisdiction is **DENIED**.

### 2. Plaintiff Heldt Has Article III Standing To Bring Title VII Claim

TCS contends that, because TCS hired plaintiff Heldt, he does not have standing to bring a failure to hire claim. Plaintiff Heldt is the only named plaintiff asserting a claim under Title VII, and so TCS argues that the Title VII claim must be dismissed to the extent plaintiff Heldt challenges TCS's allegedly discriminatory hiring practices. TCS is correct that a named plaintiff's individual standing is a threshold issue. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003). In that regard, it is undisputed that plaintiff Heldt has standing to pursue claims under Title VII for adverse employment actions, including his termination. (Dkt. No. 59, "MTD Oppo." at 16-17; MTD Reply at 12:4-5.) Plaintiff Heldt alleges injury in fact with respect to several adverse employment actions and that the injury is causally connected to TCS. Nothing more is required to maintain his cause of action for discrimination against TCS under Title VII at this juncture. *See In re VeriSign, Inc.*, 2005 WL 88969, at *5 (N.D. Cal. Jan. 13, 2005) ("In the class action context, Article III standing simply requires that the class representatives satisfy standing individually.); *Waters v. Heublein, Inc.*, 547 F.2d 466, 469-70 (9th Cir. 1976) (holding that the plaintiff had standing to bring a claim under Title VII to redress racial and ethnic discrimination, and declining to address whether the plaintiff was an adequate class representative under Rule 23).

TCS's argument conflates the standing requirements for plaintiff Heldt to bring a claim under Title VII with his ability to represent a class of persons not hired by TCS. Once standing is

1    established, "[w]hether the class representatives may *then* represent the claims of the class is a

2    separate inquiry." *In re Verisign*, 2005 WL 88969 at *5.  TCS puts its cart before the horse in an

3    attempt to have the Court disqualify plaintiff Heldt as a class representative for certain claims at

4    the pleading stage.  The Court declines.  Regardless of whether plaintiff Heldt may be a suitable

5    representative of a class of persons who were not hired by TCS, the parties agree he has standing

6    to bring a Title VII claim.  This alone is dispositive of TCS's motion under Rule 12(b)(1).  TCS's

7    motion to dismiss on this ground is **DENIED**.

### IV.    MOTION TO STRIKE

#### A. Legal Standard

Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystem, Inc.*, 758 F.Supp. 1335, 1339 (N.D.Cal. 1991).  When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." *In re 2TheMart.com, Inc. Sec Lit*., 114 F Supp.2d 955, 965 (C.D.Cal. 2000).  A court may only strike portions of a complaint in four limited circumstances, namely where it finds the pleading to contain "redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A matter is "immaterial" where it is "has no bearing on the controversy before the Court." *In re 2TheMart.com*, 114 F.Supp.2d at 965.  Allegations have been found "impertinent" where they are "not responsive or irrelevant to the issues that arise in the action and which are inadmissible as evidence." *Id*.  A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action. *Id*.  Where the moving party cannot demonstrate the material will prejudice a party, "courts frequently deny motions to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f)." *New York City Employees' Retirement System v. Barry*, 667 F.Supp.2d 1121, 1128 (N.D. Cal. 2009) (internal quotations omitted).

#### B. Analysis

TCS requests that the Court strike portions of the FAC related to statistical data comparing the demographics of TCS workers to the demographics of the entire United States as well as the

10

class period for the Title VII claim.[6] Even a cursory review of TCS's arguments, however, shows they are nothing more than substantive attacks on plaintiffs' allegations not appropriate for resolution on a motion to strike under Rule 12(f). Indeed, TCS does not assert anywhere in their papers that the class period allegations are "redundant, immaterial, impertinent, or scandalous" as required by Rule 12(f), and their motion on that ground is therefore **DENIED**.[7]

With respect to the statistical data, TCS contends that it is immaterial and impertinent[8] because it "has no relationship to the claims pled." (MTS at 3:8-9.) However, it is quite obvious, as discussed above, that such statistical data may be relevant to describe, at a minimum, the defendant's practices. Whether it ultimately may "constitute, by [itself], prima facie proof of a pattern and practice of discrimination" is not before the Court. *See Piva*, 654 F.2d at 596. Rule 12(f) is not the proper vehicle to rid a complaint of allegations the defendant admits plaintiffs may "utilize…at some point in this case." (MTS Reply at 4:4-5.) TCS's motion on this ground is likewise **DENIED**.

V. **CONCLUSION**

Defendant's motion to dismiss the FAC in part and defendant's motion to strike portions of the FAC are **DENIED**.

Plaintiffs are directed to file an amended complaint no later than **September 28, 2015**, which must clarify the following:

---

[6] Additionally, TCS moves to strike the allegations relating the claims it separately moved to dismiss, incorporating by reference its arguments in the motion to dismiss, "to the extent such arguments are more appropriately viewed under Rule 12(f)." (MTS at 1:15-21.) In reply, TCS recognizes plaintiffs' position that the incorporated arguments are inappropriate for resolution on a motion to strike. (Dkt. No. 67, "MTS Reply" at n. 1.) For the reasons set forth in Sections II and III, *supra*, these arguments fail under Rule 12(b). The Court declines to address them under the more stringent framework of Rule 12(f).

[7] The Court acknowledges that TCS places its discussion of the class period allegations under a heading in its motion to strike, and reply in support, entitled "Plaintiffs' Irrelevant And/or Impertinent Allegations." (MTS at 3; MTS Reply at 2.) This summary statement, without more, is insufficient to carry TCS's burden under Rule 12(f).

[8] In reply, TCS further contends that these allegations are "irrelevant." However, relevance alone is not the appropriate inquiry. *See* Fed. R. Civ. P. 12(f). Relevance is only germane to the extent that the material is also inadmissible. *See In re 2TheMart.com*, 114 F.Supp.2d at 965.

11

- The scope of persons to be included in the proposed class and subclasses;
- Whether the causes of action allege discrimination on the basis of race, national origin, or both; and
- Plaintiffs' disavowal that they allege any misuse or abuse of the visa programs.

Plaintiffs are cautioned *not* to conflate their definitions with respect to ethnicity, race, and/or national origin.

Defendant shall file a responsive pleading no more than fourteen (14) days after plaintiffs file their amended complaint.

This order terminates Docket Nos. 47, 50.

**IT IS SO ORDERED.**

Dated:  September 18, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**