

MICHELLE M. LA MAR
Partner and Chair,
Employment and Labor

10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA  90067

Direct   310.282.2133
Main    310.282.2000
Fax     310.919.3853
mlamar@loeb.com

January 13, 2017

Hon. Yvonne Gonzalez Rogers
United States District Court, Northern District of California
Oakland Courthouse, Courtroom 1 - 4th Floor
1301 Clay Street
Oakland, CA 94612

Re:   Heldt, et al. v. Tata Consultancy Services, Ltd., No. 4:15-cv-01696-YGR

Defendant Tata Consultancy Services, Ltd. ("TCS") respectfully requests a pre-filing conference to address the motion for summary judgment or partial summary judgment that it is considering in this action.  The filing deadline for the motion is January 31, 2017.  We understand that the Court normally conducts pre-filing conferences on Wednesdays and Fridays, but is unavailable on those days for the next two weeks.  Per the Court's instructions, we have confirmed with opposing counsel that they are available on Monday, January 23, for a conference at any time.

Plaintiffs allege that through TCS' use of a lawful visa program and local hiring decisions, TCS engaged in a pattern and practice of disparate treatment against "non-South Asian" (i.e. "non-Indian") employees and applicants.  Brian Buchanan and Christopher Slaight are the named plaintiffs. The complaint alleges claims for (1) race and national origin discrimination in violation of Title VII and (2) racial discrimination in violation of the Civil Rights Act of 1986.  TCS seeks permission to file summary judgment on all claims, or alternatively, partial summary judgment.

## The Named Plaintiffs' Claims Fail Under a "Pattern or Practice" Theory of Disparate Treatment

"Pattern-or-practice disparate treatment claims focus on allegations of widespread acts of intentional discrimination against individuals.  To succeed on a pattern-or-practice claim, plaintiffs must prove more than sporadic acts of discrimination; rather, they must establish that intentional discrimination was the defendant's 'standard operating procedure.'" *EEOC v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 468 (2011) (citing *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 336 (1977)).

In this case, the named plaintiffs intend to rely on statistical evidence to prove they suffered from a pattern or practice of disparate treatment.  However, plaintiffs' attempt to use statistics enhanced by TCS' lawful use of the visa program for its existing workforce is inappropriate.[1]

---

[1] Plaintiffs cannot rely on Tata's lawful use of the visa system implemented by treaty agreements to establish liability under Title VII.  See *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1401 (7th Cir. 1997) (affirming dismissal of discrimination claims because foreign trade agreement allowed foreign company operating in the United States to prefer its own citizens); *Papaila v. Uniden America Corp.*, 51 F.3d 54, 55 (5th Cir. 1995) (affirming order granting summary judgment on Title VII claim).



Hon. Yvonne Gonzalez Rogers
January 13, 2017
Page 2

TCS' right to use its existing workforce pursuant to such visas is granted pursuant to foreign trade agreements, such as the General Agreement on Trade in Services. As such, the statistics actually pertinent to the named plaintiffs reveal no evidence of discrimination. Slaight was hired by TCS through an on-campus recruiting process. The vast majority of TCS employees hired from the campus recruiting program are of non-South Asian descent. Further, TCS' demographics for the Southern California Edison project, which form the basis of Buchanan's allegations, reveal no bias toward non-South Asian workers.

Throughout discovery the named plaintiffs have relied on the statistics alleged in their complaint to establish their pattern or practice theory. Those statistics include (1) 2010 census data reflecting the number of South-Asians living in the United States, (2) a survey by the Association of Information Technology Professionals ("AITP") (a networking organization for paying members) as to the demographics of its membership, and (3) an assumption as to the composition of TCS' workforce, which plaintiffs allege is "approximately 95% South Asian workers (primarily from India)." Third Am. Compl. ¶¶ 22-23 and fn. 2. While courts accept statistical evidence to prove discriminatory intent, the value of the statistical evidence depends upon "the absence of variables which would undermine the reasonableness of the inference of discrimination." *See, e.g., Spaulding v. Univ. of Washington*, 740 F.2d 686, 703 (9th Cir. 1984). And indeed, the statistics relied upon by named plaintiffs fail to account for a multitude of variables. For instance, census data relating to the population as a whole says nothing about the demographics of qualified IT employees in the regions where named plaintiffs worked or allegedly applied for work. As for the AITP study, it has never been produced, and its methodology, authorship and accuracy are unknown (as are other salient qualitative and quantitative aspects of the study).

The raw statistics in the complaint suffer another problem: "the weight to be accorded such statistics is determined by the existence of independent corroborative evidence of discrimination." *American Federation of State v. Washington*, 770 F.2d 1401, 1407 (9th Cir. 1985). Such corroborative evidence is wholly absent in this case.

Slaight testified that he has no factual basis to support any of the pattern and practice allegations in this action other than the statistics stated in the complaint. Slaight Dep. 183:7-16, 166:16-192:25, 215:25-223:25. Buchanan testified that he could "infer" discrimination from (1) the fact that he is white, (2) the statistics in the complaint (his reliance upon which is mistaken for the reasons noted above), and (3) his observation about the number of Indians working for TCS. Buchanan Dep. 148:1-149:7, 152:14-18. Proof of discrimination under a pattern or practice theory requires significantly more, and summary judgment is therefore proper. *See* e.g. *Lewis v. Tobacco Workers' International Union*, 577 F.2d 1135, 1141 (4th Cir. 1978) ("liability may not be based solely on the existence of a racial imbalance among employees").

### The Named Plaintiffs' Individual Claims Likewise Fail Even if a Presumption Existed Under *Teamsters* for Purposes of TCS' Motion

Even if the Court were to assume statistical evidence created a *Teamsters* presumption in this case (and it does not), named plaintiffs' claims would nonetheless fail based on their own testimony.



Slaight was hired through the campus recruiting process, which he admits was non-discriminatory. The only thing Slaight identified as being unfair in regard to his employment was that he was allegedly not given anything "substantial" to work on. Slaight Dep. 106:6-15. Slaight testified that he is "not really sure" if that was because of his race, but what is certain is that Slaight was counseled for multiple performance and behavioral concerns before TCS' customer (who is non-South Asian) ultimately asked that he be removed from the assignment. Slaight Dep. 129:20-21, 142:5-14. Slaight was subsequently terminated due to no other positions matching his skills or geographic requirements. He admits having no facts establishing that his termination was due to his race. Slaight Dep. 161:15-18.

Buchanan was never employed by TCS. He worked for Southern California Edison ("SCE") in its IT department for many years before SCE announced in 2013 that its IT unit would be outsourced to TCS and other vendors. Buchanan Dep. 33:18-21. His entire complaint is that four TCS employees were rude to him at a job fair sponsored by SCE. Buchanan Dep. 86:13-25. However, TCS' hiring decisions at SCE reveal no bias in favor of South Asians. Non-Indians were considered by TCS at the very same job fair Buchanan contends resulted in his disparate treatment.

In addition to the absence of a triable issue of material fact with respect to the named plaintiffs' claims, there are statute of limitations and administrative exhaustion defenses partially impacting their ability to proceed to trial.

For the foregoing reasons, and others, TCS seeks leave to file a summary judgment motion.

Sincerely,

Michelle M. La Mar
Partner and Chair, Employment and Labor

**PROOF OF SERVICE**

I, Davonna Brockman, the undersigned, declare that:

I am employed in the County of Los Angeles, State of California, over the age of 18, and not a party to this cause. My business address is 10100 Santa Monica Blvd., Suite 2200, Los Angeles, CA 90067.

On January 13, 2017, I served a true copy of the LETTER TO THE COURT REGARDING MOTION FOR SUMMARY JUDGMENT on the parties in this cause as follows:

☑ (VIA EMAIL) I caused the transmission of the above-named document(s) to the email address set forth below, or on the attached service list

Hon. Yvonne Gonzalez Rogers
United States District Court, Northern District of California
Oakland Courthouse, Courtroom 1 - 4th Floor
1301 Clay Street
Oakland, CA 94612
YGRpo@cand.uscourts.gov

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 13, 2017, at Los Angeles, California.

_____
Davonna Brockman

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations