1  Daniel Low, SBN 218387
   Daniel Kotchen (*pro hac vice*)
2  Michael von Klemperer (*pro hac vice*)
   **KOTCHEN & LOW LLP**
3  1745 Kalorama Road NW, Suite 101
   Washington, DC 20009
4  Telephone: (202) 471-1995
   E-mail:  dlow@kotchen.com;
5  E-mail:  dkotchen@kotchen.com;
   E-mail:  mvk@kotchen.com
6
7  Attorneys for Plaintiffs Buchanan and Slaight

8
                **UNITED STATES DISTRICT COURT**
9
              **NORTHERN DISTRICT OF CALIFORNIA**
10
                      **OAKLAND DIVISION**
11

12  STEVEN HELDT, BRIAN
    BUCHANAN, and                        Case No.: 4:15-cv-01696-YGR
13  CHRISTOPHER SLAIGHT
                                          **CLASS ACTION**
14
                       Plaintiffs,        **NOTICE OF DISCOVERY
15                                         MISCONDUCT AND REQUEST
          v.                              FOR TELEPHONIC CASE
16                                         MANAGEMENT CONFERENCE**

17  TATA CONSULTANCY SERVICES,
    LTD.,
18                     Defendant.         Complaint Filed:  April 14, 2015

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### NOTICE OF DISCOVERY MISCONDUCT AND REQUEST FOR TELEPHONIC CASE MANAGEMENT CONFERENCE

Plaintiffs Brian Buchanan and Christopher Slaight ("Plaintiffs"), by and through their undersigned counsel, hereby file this Notice of Discovery Misconduct to address Defendant Tata Consultancy Services, Ltd. ("Tata's") discovery misconduct. On January 17 and January 19, just two weeks prior to Plaintiffs' deadline to file for class certification, Tata produced two sets of critical employee data. While Plaintiffs issued their initial discovery requests in August 2015, and repeatedly sought this data from Tata, Plaintiffs were repeatedly told that the data was not available.[1] Tata's prior data productions were incomplete, missing critical data fields and fields that would allow them to be cross-referenced, and were produced in such a way that a comprehensive statistical analysis of Tata's discriminatory business practices was effectively impossible.[2] Only just last week (on Tuesday and Thursday) did Tata produce more robust employee data sets[3] that will allow for a more comprehensive analysis, but even this data is facially incomplete and inconsistent with previously produced data. Tata's

---

[1] Tata committed to producing emails for 15 custodians in August 2016. This production began on November 28, and Plaintiffs have thus far received only emails from 9 of the custodians.

[2] Attached hereto as Exhibit 1 is a chronology of Tata's data production to date.

[3] For instance, the January 17 and January 19 data sets include, *inter alia*, information regarding employee job level, source and location of hire, reasons and dates of termination, and designations for local hires and expats, which was not produced in earlier data sets, despite being responsive to Plaintiffs' document requests.

1

waiting to produce this data roughly *1.5 years* after Plaintiffs issued discovery requests means Plaintiffs' statistical expert cannot incorporate much or all of the data into his analysis prior to Plaintiffs' January 31, 2017 class certification deadline. The only conceivable reason for Tata's conduct is to prejudice Plaintiffs in class certification, which Tata has accomplished.

A brief summary of the sequence of events reflects the prejudicial nature of Tata's conduct:

- August 28, 2015: Plaintiffs issued initial document requests and interrogatories seeking data on Tata's U.S.-workforce. Pls.' First Req. for Produc. of Docs. (Ex. 3); Pls.' First Set of Interrogs. (Ex. 4).

- On October 30, 2015, Tata produced unsortable PDFs[4] that contained only employee numbers, nationality, and race for active and separated employees (from an unspecified period of time). TCS Employee Data Exemplar at 1-2 (Ex. 2). The Active List contained data on 25,885 employees, the Separated List contained data on 10,359 former employees. *Id.*

- On May 7, 2016, Tata produced contact information for 8,343 current employees and 7,404 separated employees. Email from A. Manzano to D. Kotchen, *et al.* (May 7, 2016) (Ex. 5); Email from E. Smith to D. Low, *et al.* (May 7, 2016) (Ex. 6); TCS Employee Data Exemplar at 5-7 (Ex. 2). While this data contained employee names, it lacked employee numbers, and thus could not be cross-referenced with Tata's prior production of race data.

- On September 28, 2016, Tata produced salary data for 14,824 employees, a subset (41%) of the employees for whom Tata produced race and nationality data. Email from M. La Mar to D. Kotchen, *et al.* (Sept. 28, 2016) (Ex. 7); TCS Employee Data Exemplar at 8 (Ex. 2).

- On December 22, 2016, Tata produced data for 47,098 individuals that contained additional fields and information compared to Tata's prior productions, but Tata

---

[4] After repeated requests, Tata reproduced this data in Excel format on March 31, 2016.

2

claimed (and continues to claim) that the data could only be used for mediation and not for this litigation.[5] Email from M. La Mar to D. Kotchen, *et al.* (Dec. 22, 2016) (Ex. 8).  Tata has not consented to Plaintiffs sharing this data set with the Court.  Thus, Plaintiffs will represent only that the data set remained far from complete (especially compared to data fields Tata produced this week) and was produced in a manner to limit the utility of the data (*e.g.*, it was impossible to discern a current employee from a terminated employee).

- On January 17, 2017, two weeks from Plaintiffs' class certification deadline, Tata produced data that contained substantially more fields and information than what had previously been produced, including visa status, base country, termination status, reason for termination, and a field that identified whether the individual was a "Local" or "Expat," *i.e.*, hired in the United States versus visa worker.[6] Email from M. La Mar. to D. Kotchen, *et al.* (Jan. 17, 2016) (Ex. 9); TCS Employee Data Exemplar at 9-10 (Ex. 2). This production contained data on 25,983 current employees and 10,359 former employees. TCS Employee Data Exemplar at 9-10 (Ex. 2).

- On January 19, 2017, less than two weeks before Plaintiffs' class certification deadline, Tata produced data that again contained significant new information and fields, including employee job grade (for terminated employees only), source and location of hire, and salary information. Email from M. La Mar. to D. Kotchen, *et al.* (Jan. 19, 2016) (Ex. 10); TCS Employee Data Exemplar at 11-12 (Ex. 2). The production contained data on 29,908 current employees and 17,227 former employees. Inexplicably, the data on former employees contained

---

[5] Tata maintains that this data was produced pursuant to the mediation privilege, and is therefore privileged and should not be filed with the Court through ECF. However, pursuant to this Court's ADR Local Rules, mediation privilege only applies to "the contents of the written Mediation Statements, anything that was said, any position taken, and any view of the merits of the case expressed by any participant." ADR Rule 6-12(a). The data Tata produced on December 21 was not included with a Mediation Statement, or otherwise used or discussed at the parties' January 5, 2017 mediation, making the mediation privilege facially inapplicable.

[6] As reflected in Plaintiffs' January 18, 2017 letter to the Court, knowing the visa status – including whether a worker is a "local" or "expat" – for Tata's employees is important in light of Tata's "leadership directive" to favor visa workers (of a specific race) in hiring for, and terminations from, its U.S.-based workforce. Letter from D. Kotchen to J. Gonzalez Rogers at 2 (Jan. 18, 2017) (Dkt. #94).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

additional fields missing from the current employee data, including employee grade (job level).

There is no question that Tata's production of critical employee data is incomplete and that Tata's repeated assurances to Plaintiffs over the course of discovery that such data is unavailable are false.[7] Moreover, the recently produced data raises new issues that require additional discovery. Based on the foregoing, Plaintiffs respectfully request that the Court schedule a brief telephonic case management conference to discuss the implications of Tata's belated and incomplete production of data on this case, including class certification. After its January 19 data production, Tata stated on a January 20 phone call that extending the January 31 class certification deadline may now be appropriate, but simply extending this deadline does not cure the prejudice to Plaintiffs from Tata's discovery practices and does not ensure the production of complete employee data (and related discovery) on a timely basis in advance of a future deadline.

Dated: January 23, 2017                          Respectfully submitted,

                                                 By: /s/Daniel Kotchen
                                                 Daniel Kotchen (*pro hac vice*)
                                                 Daniel Low, SBN 218387

---

[7] In addition to the suspicious timing of Tata's last minute production of critical but incomplete data this past week, it is simply implausible that Tata does not maintain more robust employee data than what has been produced thus far. Tata is a multi-billion dollar, sophisticated organization employing hundreds of thousands employees and cannot operate without comprehensive data on its workforce.

4

Michael von Klemperer (*pro hac vice*)
**KOTCHEN & LOW LLP**
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: (202) 471-1995
Email: dkotchen@kotchen.com;
dlow@kotchen.com;
mvk@kotchen.com

Michael F. Brown
**DVG LAW PARTNER LLC**
P.O. Box 645
Neenah, WI 54957
920-238-6781
920-273-6177 (fax)
mbrown@dvglawpartner.com

Vonda K. Vandaveer
**V.K. Vandaveer, P.L.L.C.**
P.O. Box 27317
Washington, DC 20038-7317
202-340-1215
202-521-0599 (fax)
atty@vkvlaw.com

*Attorneys for Plaintiffs Buchanan and Slaight*

5

1

2

## **CERTIFICATE OF SERVICE**

3

      I hereby certify that a true and correct copy of the foregoing was served on all

4

counsel of record by electronic service through the Clerk of the Court's CM/ECF filing

5

system on January 23, 2017.

6

7

8

Dated: January 23, 2017                          /s/Daniel Kotchen
                                                  Daniel Kotchen

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

NOTICE OF DISCOVERY MISCONDUCT AND REQUEST FOR TELEPHONIC
CASE MANAGEMENT CONFERENCE - CASE NO. 4:15-CV-01696-YGR