# Exhibit C

# Exhibit C

Daniel Low, SBN 218387
Daniel Kotchen (*pro hac vice*)
Michael von Klemperer (*pro hac vice*)
**KOTCHEN & LOW LLP**
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: (202) 471-1995
E-mail: dlow@kotchen.com;
E-mail: dkotchen@kotchen.com;
E-mail: mvk@kotchen.com

Attorneys for All Plaintiffs

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| STEVEN HELDT, BRIAN BUCHANAN, and CHRISTOPHER SLAIGHT,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>　　　　　Defendant. | Case No.: 4:15-cv-01696-YGR<br><br>**PLAINTIFF BRIAN BUCHANAN'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES** |

**PLAINTIFF BRIAN BUCHANAN'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Brian Buchanan ("Plaintiff") hereby responds to the First Set of Interrogatories served by Defendant Tata Consultancy Services, Ltd. ("Defendant") on April 12, 2016.

**PRELIMINARY STATEMENT**

As of the date of these responses, Plaintiff's factual investigation relating to this action is ongoing. This ongoing process of discovery, analysis, and investigation may disclose additional facts, add meaning to facts known at this time, and may

1

require modification and/or supplementation of these responses. Accordingly, the responses set forth below are based on the information currently known and available to Plaintiff as of the date of these responses. Plaintiff reserves the right to revise, correct, clarify, supplement, or otherwise modify the responses set forth below. Plaintiff further reserves the right to make use of, or introduce in any hearing or at trial any documents or other evidence that have not been produced in these responses whether as a result of mistake, oversight, inadvertence, misinterpretation, or otherwise. Moreover, a response to any of the Requests does not constitute an admission by Plaintiff that he agrees with Defendant's characterizations or definitions contained therein, or that the information sought is relevant or likely to lead to the discovery of admissible evidence.

## **GENERAL OBJECTIONS**

The following General Objections are continuing in nature and are hereby incorporated into each of the Specific Responses set forth below and have the same force and effect as if fully set forth therein:

1. Plaintiff objects to the Interrogatories to the extent they seek to obtain information and/or documents protected by the attorney-client or other privilege and/or the work product doctrine. Any disclosure by Plaintiff of such information here or elsewhere is inadvertent, and is not to be construed as a waiver of any such privilege. Plaintiff reserves the right to retract the

production of any document or information produced inadvertently that is later found to fall within a general or specific category of objection.

2. Plaintiff objects to the Interrogatories insofar as they are vague, overly-broad, unduly burdensome or ambiguous.

3. Plaintiff objects to the Interrogatories to the extent they seek to require Plaintiff to comply with requirements beyond those imposed by the Federal Rules of Civil Procedure or the Local Rules of the Northern District of California or exceed the permissible scope of discovery under said rules.

4. Plaintiff objects to the Interrogatories to the extent that they seek information that is at least equally accessible to Defendant.

5. Plaintiff objects to the Interrogatories' definitions of "relating to," "related to," "describe in detail," and "state all facts" as overbroad and beyond the definitions provided in the Federal Rules of Civil Procedure.

## INTERROGATORY RESPONSES

Plaintiff responds to Defendant's First Set of Interrogatories as follows:

**Interrogatory No. 1:**

Describe in detail all measures you have taken to preserve documents and electronically stored information ("ESI") that relates in any manner to the allegations in this action. Responsive information includes, but is not limited to, (i) the identification of any cloud or other backup storage accounts or devices, and (ii) a specific description of what such accounts or devices contain.

**ANSWER:**

Plaintiff objects to this Interrogatory as it seeks privileged and/or work product documentation. Plaintiff also objects to this Interrogatory as vague insofar as it seeks information "that relates in any manner to the allegations in this action." Subject to and without waiving these objections, Plaintiff answers as follows: Plaintiff has preserved all documents on his computer hard drive and within his AOL email account. Plaintiff's hard drive and email account contain documents and correspondences that are potentially relevant to this matter and the allegations contained in the Complaint. Plaintiff has also preserved hard copy documents from Southern California Edison (SCE), including his severance agreement.

**Interrogatory No. 2:**

If any document or ESI relevant to this action is no longer retrievable, provide with particularity: (i) a description of the document and/or ESI that is no longer retrievable, (ii) the reason why the document and/or ESI is no longer retrievable, (iii) the date such document or ESI was last accessed, and (iv) all efforts undertaken by you to locate the document and/or restore the ESI.

**ANSWER:**

Plaintiff objects to this Interrogatory as vague and ambiguous, and overly broad. Subject to and without waiving these objections, Plaintiff answers as follows: All of Plaintiff's documents related to this action remain retrievable.

**Interrogatory No. 3:**

Provide all email addresses that you have used from the start of the class period alleged in this action, up to and including the date of your response.

**ANSWER:**

Plaintiff objects to this Interrogatory as it seeks irrelevant information. Subject to and without waiving these objections, Plaintiff responds as follows:

Personal email addresses: brian5b@aol.com, brian7b@gmail.com, brian5b@gmail.uci.edu

Work email address: brian.buchanan@sce.com

**Interrogatory No. 4:**

List all websites, social media accounts and other web addresses on which you have maintained a profile (whether public or private) from the start of the class period alleged in this action, up to and including the date of your response.

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad and seeking irrelevant information. Subject to and without waiving these objections, Plaintiff responds as follows:

Linkedin: (name) Brian Buchanan, (login) brian5b@aol.com

Twitter: (name) buchanbj, (login) brian5b@aol.com

Instagram: (login) brian5b@aol.com

Computerworld: (login) brian5b@aol.com

**Interrogatory No. 5:**

List all websites, social media accounts and other web addresses to which you have posted content from the start of the class period alleged in this action, up to and including the date of your response.

**ANSWER:**

Plaintiff objects to this Interrogatory as vague and ambiguous, overly broad, unduly burdensome, and seeking irrelevant information. Consequently, Plaintiff limits his answer to posts on websites, social media accounts, and other web addresses relating to this lawsuit or the allegations contained in the Complaint. Subject to and without

5

waiving these objections, Plaintiff has posted no content regarding this lawsuit online.

**Interrogatory No. 6:**

Provide the name, address and telephone number of every person (other than your counsel) with whom you have communicated regarding TCS' alleged discrimination against individuals who are not of South Asian race, or who are not of Indian national origin.

**ANSWER:**

Plaintiff objects to this Interrogatory to the extent it seeks privileged and/or work product information. Subject to and without waiving these objections, individuals with whom Plaintiff has spoken regarding this litigation include:

Debra Buchanan – 31300 Abrabasca Circle, Temecula, CA 92592, 951-318-4056

Patrick Thibodeau – Computerworld, 666 11th St NW, Suite 625, Washington, DC, 202-361-2011

Sarah Lynch – Thomson Reuters, 1100 Thirteenth Street NW, Washington, DC 20005, 202-354-5831

**Interrogatory No. 7:**

Provide the name, address and telephone number of every person with knowledge regarding TCS' alleged discrimination against individuals who are not of South Asian race, or who are not of Indian national origin.

**ANSWER:**

Plaintiff objects to this Interrogatory to the extent it seeks privileged and/or work product information. Plaintiff further states that this Interrogatory is premature insofar as TCS' alleged discrimination will in part be supported by information yet to be obtained (e.g. information via discovery). Subject to and without waiving these

objections, Plaintiff answers as follows:

Individuals who likely have information regarding TCS' alleged discrimination against individuals who are not of South Asian race include Defendant's employees, former employees, and potential hires. A non-exhaustive list of specific individuals likely to have information related to TCS' alleged discrimination include:

Brian Buchanan – Mr. Buchanan can be contacted through the offices of Kotchen & Low LLP.

Steven Heldt – Mr. Heldt can be contacted through the offices of Kotchen & Low LLP.

Christopher Slaight – Mr. Slaight can be contacted through the offices of Kotchen & Low LLP.

Douglas Wong – Contact Information Unknown

In addition, please refer to Answer No. 6.

**Interrogatory No. 8:**

State all facts which support your allegation that TCS discriminates against individuals who are not of South Asian race, or who are not of Indian national origin.

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and in part seeking information duplicative of what is already stated in the Complaint. Plaintiff further objects on the grounds that these allegations will in part be supported by documentation and information yet to be obtained. Plaintiff further objects that this is a premature contention interrogatory. Subject to and without waiving these objections, Plaintiff refers Defendant to the allegations of TCS' discrimination described in the Complaint. *See, e.g.*, 3d Am. Compl., ¶¶ 1-5, 19, 22, 23-30, 35-66.

**Interrogatory No. 9:**

State all facts which support your allegation that TCS discriminated against you, including (i) the discriminatory act or acts, (ii) the date or dates on which such act(s) was committed, and (iii) the employee or agent of TCS who committed the

discriminatory act(s).

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and in part seeking information duplicative of what is already stated in the Complaint. Plaintiff further objects on the grounds that these allegations will in part be supported by documentation and information yet to be obtained. Plaintiff further objects that this is a premature contention interrogatory. Subject to and without waiving these objections, Plaintiff responds as follows:

- Tata is an Indian company that employs approximately 14,000 employees in the United States. While roughly 1-2% of the United States population is South Asian, approximately 95% of Tata's United States-based workforce is South Asian (primarily from India). This grossly disproportionate workforce is the result of Tata's intentional pattern and practice of employment discrimination against individuals who are not South Asian (or who are not of Indian national origin), including discrimination in hiring, placement, and termination decisions.
- Plaintiff began working for Southern California Edison ("SCE") in 1986 as a networking specialist. In or around 2003, SCE promoted Plaintiff to IT Specialist 4 – a senior IT position.
- In that role, Plaintiff served on SCE's Infrastructure General Application Support Team ("the Team"), personally supporting approximately 25 different applications necessary for SCE's day-to-day business. These applications included, for example, an enterprise document management application, a records management application, a GIS mapping application, a building management system, an HR call recording application, IT Help Desk Apropos, and a SVY Vovici survey application.
- Plaintiff consistently received positive performance reviews from SCE and was never subject to disciplinary measures regarding performance or otherwise.
- In or around May 2012, SCE decided to restructure its IT department. SCE decided it would drastically reduce the number of workers it directly employed and, in large part, contract-out its IT needs. By early 2014, SCE decided it would retain Tata to perform the bulk of its IT needs.
- On July 21, 2014, SCE announced that Plaintiff and about 400 others would be terminated. However, SCE asked Plaintiff and many other employees if they would remain with the company for several more months to help perform a "knowledge transfer" – i.e., training their replacements from Tata. Plaintiff agreed to remain with SCE through January 9, 2015. Under the terms of the

SCE-Tata contract, Tata was scheduled to take primary responsibility for most of SCE's IT needs by December 2014.
- As part of that transition, Plaintiff was told that his Team, consisting of around 28 individuals, was to be terminated and all of the positions filled by Tata employees.
- By late summer or early fall 2014, it became apparent that Tata would not be able to meet the December 2014 deadline of assuming the SCE work. Accordingly, the December 2014 deadline was pushed back. On or about November 3, 2014, SCE asked Plaintiff to extend his contract until February 6, 2015. Though Plaintiff asked for a longer extension, SCE refused to extend his contract beyond February 6, 2015.
- By January 2015, Tata had assigned only two workers to Plaintiff's Team in California. Both of these Tata employees were South Asian from India and in the United States on visas. Plaintiff was tasked with training these employees, who would eventually take over some of his responsibilities. These employees had very little or no relevant experience, and performing the "knowledge transfer" was a challenge. For example, when an SCE server stopped working, Plaintiff had to supervise these individuals' repair efforts. During this process, Plaintiff had to repeatedly instruct them where and how to look for issues on the server, including the very basic steps of checking application log files, web log files, and the event viewer log.
- In late October 2014, Plaintiff attended a job fair in Arcadia, California, which SCE had organized for its soon-to-be terminated employees. Tata also attended the job fair, manning a booth at which it met with and sought potential employees. The Tata booth was staffed with several individuals, all of whom were South Asian. Plaintiff attended the fair and spoke with an individual at the Tata booth who identified himself as a Tata regional manager. This Tata representative informed Plaintiff that Tata was hiring for positions servicing SCE, as well as for other TCS positions unrelated to SCE. Plaintiff gave the manager a copy of his resume and told him he was interested in positions with Tata servicing SCE, and in other positions with the company. The manager said that Tata would contact him if Tata was interested in hiring him. Plaintiff observed that the manager was dismissive and spent little time speaking with him. In comparison, Plaintiff observed that the Tata employees spent considerably more time speaking with South Asian applicants and spoke to them in Hindi (an Indian language) about available positions. Tata did not hire Plaintiff and did not contact him after the job fair, despite his excellent qualifications and considerable experience.
- Tata had numerous openings for positions on Plaintiff's Team, as well as for other positions servicing SCE. Tata also had openings for other positions in the United States that did not involve SCE. Of the twenty-eight individuals

9

- originally working for SCE on Plaintiff's Team, Tata hired only five of them. Three of these individuals Tata hired were South Asian, all from India. The other two were Korean and Vietnamese. Tata replaced the other twenty-three original Team members with South Asians. Likewise, beyond Plaintiff's Team, Tata replaced the vast majority of displaced SCE IT workers with South Asians.
- Given his considerable experience and skill, Plaintiff personally supported approximately 25 software applications for SCE. Despite his vast experience performing these tasks, Tata did not hire Plaintiff. Rather, Tata hired less experienced South Asian employees to perform those tasks. Each was assigned to support approximately one application. Accordingly, on information and belief, Tata assigned numerous individuals, up to potentially 25, to fulfill the role Plaintiff was performing single-handedly.
- Despite the availability of qualified non-South Asian workers, Tata was not able to meet its deadline to take primary responsibility for SCE's IT needs by February 2015 because Tata was unable to secure a sufficient number of its preferred South Asian employees. Additionally, many of the South Asian employees it did secure were unprepared to take over responsibilities from out-going SCE employees. Because of these delays, SCE asked Plaintiff to extend his contract for another month in early 2015. Plaintiff asked that his contract be extended until June, but SCE refused. On February 6, 2015, Plaintiff's employment with SCE ended. As of February 6, 2015, Tata remained unable to take over primary responsibility for SCE's IT needs.
- Between July 2014 and February 2015, Plaintiff observed that the vast majority of Tata's U.S.-based employees were South Asian.

**Interrogatory No. 10:**

If you complained about perceived discrimination by TCS, state (i) the date of your complaint, (ii) who you complained to, (iii) a detailed description of your complaint, and (iv) a detailed description of any response you received.

**ANSWER:**

Plaintiff objects to this Interrogatory as vague and ambiguous, and to the extent it seeks privileged and/or work product information. Subject to and without waiving these objections, Plaintiff answers as follows:

On April 30, 2015, Plaintiff filed a complaint with the U.S. Department of Labor. On

May 1, 2015, Plaintiff withdrew this complaint.

On May 14, 2015, Plaintiff filed a Charge of Discrimination against TCS with the U.S Equal Employment Opportunity Commission (EEOC). A copy of Plaintiff's complaint was forwarded to TCS by the EEOC. On March 29, 2016, the EEOC issued Plaintiff a Notice of Right to Sue.

On July 6, 2015, Plaintiff filed the Amended Complaint in this action.

**Interrogatory No. 11:**

Describe in detail any policies of TCS that discriminate against individuals who are not of South Asian race, or who are not of Indian national origin.

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and in part seeking information duplicative of what is already stated in the Complaint. Plaintiff further objects on the grounds that these allegations will in part be supported by documentation and information yet to be obtained. Plaintiff further objects that this is a premature contention interrogatory. Subject to and without waiving these objections, Plaintiff refers Defendant to the allegations of TCS' policies of discrimination described in the Complaint. *See, e.g.*, 3d Am. Compl., ¶¶ 1, 19-25, 80-81, 85-86.

**Interrogatory No. 12:**

Describe in detail any practices of TCS that discriminate against individuals who are not of South Asian race, or who are not of Indian national origin.

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and in part seeking information duplicative of what is already stated in the Complaint. Plaintiff further objects on the grounds that these allegations will in part be supported by documentation and information yet to be obtained. Plaintiff further objects that this is a premature contention interrogatory. Subject to and without waiving these objections, Plaintiff refers Defendant to the allegations of TCS' practices of

discrimination described in the Complaint. *See, e.g.*, 3d Am. Compl., ¶¶ 1-5, 19-30, 80-81, 85-86.

**Interrogatory No. 13:**

Provide the name, address and telephone number of every person whom you referred or recommended for employment with TCS.

**ANSWER:**

Plaintiff has not recommended or referred any person for employment with TCS.

**Interrogatory No. 14:**

For each position that you believe should have been offered to you by TCS, identify: (i) the client, (ii) the position title, and (iii) the employee who received the position.

**ANSWER:**

Plaintiff objects to this Interrogatory to the extent it seeks privileged and/or work product information. Plaintiff also objects to this Interrogatory as it seeks information that is as easily accessible to the Defendant as to Plaintiff. Subject to and without waiving these objections, Plaintiff answers as follows: Plaintiff provided TCS with a copy of his resume at a job fair in October 2014 and informed the company that he wished to be considered for positions with TCS both on the SCE client project, as well as other TCS positions not servicing SCE. TCS informed Plaintiff that it would follow-up with him at a later time. However, TCS never contacted Plaintiff. Plaintiff does not know the names of all employees who received positions with TCS, but is aware that his former SCE colleagues Srinivas Chilukuri and Joon Lee were hired by TCS.

**Interrogatory No. 15:**

State all facts which support your allegation that TCS discriminated against its existing employees based on race or national origin.

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and in part seeking information duplicative of what is already stated in the Complaint. Plaintiff further objects on the grounds that these allegations will in part be supported by documentation and information yet to be obtained. Plaintiff further objects that this is a premature contention interrogatory. Subject to and without waiving these objections, Plaintiff responds as follows:

- For the comparatively few non-South Asians workers that Tata hires, it disfavors these individuals in its employment decisions, including, for example, in placement, promotion/demotion, and termination decisions.
- For example, Mr. Heldt began working for Tata in June 2012. Within a week of starting, Mr. Heldt was removed from a project he was well qualified for. Over his 20 months with Tata, Mr. Heldt was transferred between five different positions, often assigned only menial responsibilities, and spent approximately 13 months "benched" with no substantive work to perform even while Tata continued to service the client organizations to which Mr. Heldt had been assigned, using approximately 99% South Asian workers. While benched, Mr. Heldt was repeatedly passed over and not hired for positions, in favor of (upon information and belief) South Asian workers. Throughout his employment, Mr. Heldt experienced substantial anti-American sentiment – *e.g.*, being told by Tata management: "This is why I don't like dealing with Americans," being told that he would have difficulty finding work within Tata because he is American, and being told that Tata was not even looking for Americans to hire. He was ultimately terminated. *See also* 3d Am. Compl. ¶¶ 44-61.
- Similarly, Mr. Slaight started with Tata in June 2012 as a software engineer. Over the following year, Tata assigned Mr. Slaight absolutely no substantive work. He was ultimately terminated after being benched for several weeks. *See also* 3d Am. Compl. ¶¶ 62-66.

**Interrogatory No. 16:**

State all facts which support your allegation that TCS discriminated against applicants for positions in the United States based on race or national origin.

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and in part seeking information duplicative of what is already stated in the Complaint. Plaintiff

further objects on the grounds that these allegations will in part be supported by documentation and information yet to be obtained. Plaintiff further objects that this is a premature contention interrogatory. Subject to and without waiving these objections, Plaintiff responds as follows:

- Tata is an Indian company that employs approximately 14,000 employees in the United States. While roughly 1-2% of the United States population is South Asian, approximately 95% of Tata's United States-based workforce is South Asian (primarily from India). This grossly disproportionate workforce is the result of Tata's intentional pattern and practice of employment discrimination against individuals who are not South Asian (or who are not of Indian national origin), including discrimination in hiring, placement, and termination decisions. For example, recruiters within Tata's United States recruiting unit have been explicitly instructed to focus primarily on hiring Indians for positions in the United States. Moreover, Mr. Heldt was told by a South Asian Tata manager, after Mr. Heldt was removed from a position, that he would have a hard time finding a new job within Tata because he was not South Asian.
- Further, after Southern California Edison ("SCE") announced that it would transition much of its IT needs from in-house employees to Tata, Plaintiff learned he would lose the SCE job he had held for many years. Plaintiff applied for a job with Tata yet, despite being imminently qualified, Tata failed to hire him, choosing rather to staff its SCE project with an almost 100% South Asian workforce. *See also* 3d Am. Compl. ¶¶ 31-43.
- This grossly disproportionate workforce demonstrates an intentional pattern and practice of discrimination, and cannot be explained by coincidence or business necessity.
- On information and belief, all or most of Tata's United States-based business units are headed by individuals of South Asian race and Indian national origin. Among these senior managers, there is a culture of hostility towards, and non-acceptance of American workers. These senior managers have resisted efforts to increase racial and/or national origin diversity among Tata's workforce. Because of anti-American and pro-South Asian sentiment by senior management, Tata's United States-based workforce has been, and remains, highly disproportionate, with approximately 95% South Asian workers (primarily from India) in the United States.
- Tata maintains in the United States a recruiting unit called the Talent Acquisition Unit, which focuses on hiring employees for Tata's United States operations. M.P. Saravanan has served as the Vice President of Human Resources, overseeing the Talent Acquisition Unit. Mr. Saravanan has instructed the recruiters within the Talent Acquisition Unit to focus primarily

    on hiring Indians for positions in the United States.
  - For example, in front of recruiters and management, Mr. Saravanan has expressed his dislike for American workers. He has also stated that he believes Indians were smarter and better qualified than Americans. On at least one occasion, Mr. Saravanan gave explicit instructions to two recruiters in the Talent Acquisition Unit to hire only Indians, rather than Americans, for positions in the United States. Similarly, while Tata typically allows South Asian employees to apply for and take different positions within different Tata business units (referred to as "verticals"), Tata typically does not allow the comparatively few "American Hires" (as locally hired, non-South Asian employees are commonly referred to within Tata) to apply for and take positions outside of the business unit to which these employees are assigned.
  - Tata employs in the United States a large number of South Asians (primarily Indian) visa workers, including individuals with H-1B, L-1, B-1, and other visas. Tata secures visas for these individuals. H-1B visas are intended to be used to bring specialized foreign workers to the United States when there are insufficient United States workers to perform the jobs at issue. Tata is consistently one of the top three H-1B sponsors in the United States. For example, Tata sponsored 8,701 new H-1B visas in 2013, 6,692 new H-1B visas in 2012, and 5,365 new H-1B visas in 2011. Similarly, L-1 visas are intended to be used to bring management level employees to the United States for temporary assignments. Between 2002 and 2011, Tata sponsored 25,908 L-1 visas. On information and belief, Tata sponsored all, or the vast majority, of these visas for South Asian workers (primarily Indian).
  - Tata also discriminates in "local hiring," *i.e.*, even when Tata hires non-visa dependent individuals who reside locally in the United States, such persons are still disproportionately South Asian.

**Interrogatory No. 17:**

For each position within TCS that you applied for or inquired about, identify (i) the outcome of such application or inquiry, (ii) anyone with whom you communicated regarding the position (including anyone with whom you interviewed), and (iii) how you learned of the position.

**ANSWER:**

Plaintiff objects to this Interrogatory to the extent it seeks privileged and/or work

product information. Plaintiff also objects to this Interrogatory as it seeks information that is as easily accessible to the Defendant as to Plaintiff. Subject to and without waiving these objections, Plaintiff answers as follows: Plaintiff learned about the October 2014 job fair through his former employer, SCE. At the job fair, Plaintiff spoke with a TCS Regional Manager regarding employment with the company, but does not recall this individual's name. Plaintiff provided TCS with a copy of his resume at a job fair in October 2014 and informed the company that he wished to be considered for positions with TCS both on the SCE client project, as well as other TCS positions not servicing SCE. TCS informed Plaintiff that it would follow-up with him at a later time. However, TCS never contacted Plaintiff.

Dated:  May 16, 2016            By: /s/ Daniel Kotchen
                                    Daniel Low (SBN 218387)
                                    Daniel Kotchen (*pro hac vice*)
                                    Michael von Klemperer (*pro hac vice*)
                                    KOTCHEN & LOW LLP

                                    *Attorneys for all Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2016, I served the foregoing via email on the following counsel of record for Defendant Tata Consultancy Services:

Michelle La Mar
mlamar@loeb.com
Patrick Downes
pdownes@loeb.com
Erin Smith
esmith@loeb.com

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on May 16, 2016 in Washington, DC.

/s/ Daniel Kotchen
Daniel Kotchen

## VERIFICATION

I affirm, under the penalties of perjury, that the representations set forth in Plaintiff Buchanan's Responses and Objections to Defendant's First Set of Interrogatories are true to the best of my knowledge.

Dated this 19 day of May, 2016.

*Brian Buchanan*
Brian Buchanan