# Exhibit D

# Exhibit D

Daniel Low, SBN 218387
Daniel Kotchen (*pro hac vice*)
Michael von Klemperer (*pro hac vice*)
**KOTCHEN & LOW LLP**
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: (202) 471-1995
E-mail: dlow@kotchen.com;
E-mail: dkotchen@kotchen.com;
E-mail: mvk@kotchen.com

Attorneys for All Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| STEVEN HELDT, BRIAN BUCHANAN, and CHRISTOPHER SLAIGHT<br><br>Plaintiffs,<br><br>v.<br><br>татА CONSULTANCY SERVICES, LTD.,<br><br>Defendant. | Case No.: 4:15-cv-01696-YGR<br><br>**PLAINTIFF CHRISTOPHER SLAIGHT'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES** |

**PLAINTIFF CHRISTOPHER SLAIGHT'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Christopher Slaight ("Plaintiff") hereby responds to the First Set of Interrogatories served by Defendant Tata Consultancy Services, Ltd. ("Defendant") on April 12, 2016.

**PRELIMINARY STATEMENT**

As of the date of these responses, Plaintiff's factual investigation relating to this action is ongoing. This ongoing process of discovery, analysis, and investigation may disclose additional facts, add meaning to facts known at this time, and may

1

require modification and/or supplementation of these responses. Accordingly, the responses set forth below are based on the information currently known and available to Plaintiff as of the date of these responses. Plaintiff reserves the right to revise, correct, clarify, supplement, or otherwise modify the responses set forth below. Plaintiff further reserves the right to make use of, or introduce in any hearing or at trial any documents or other evidence that have not been produced in these responses whether as a result of mistake, oversight, inadvertence, misinterpretation, or otherwise. Moreover, a response to any of the Requests does not constitute an admission by Plaintiff that he agrees with Defendant's characterizations or definitions contained therein, or that the information sought is relevant or likely to lead to the discovery of admissible evidence.

## **GENERAL OBJECTIONS**

The following General Objections are continuing in nature and are hereby incorporated into each of the Specific Responses set forth below and have the same force and effect as if fully set forth therein:

1. Plaintiff objects to the Interrogatories to the extent they seek to obtain information and/or documents protected by the attorney-client or other privilege and/or the work product doctrine. Any disclosure by Plaintiff of such information here or elsewhere is inadvertent, and is not to be construed as a waiver of any such privilege. Plaintiff reserves the right to retract the

production of any document or information produced inadvertently that is later found to fall within a general or specific category of objection.

2. Plaintiff objects to the Interrogatories insofar as they are vague, overly-broad, unduly burdensome or ambiguous.

3. Plaintiff objects to the Interrogatories to the extent they seek to require Plaintiff to comply with requirements beyond those imposed by the Federal Rules of Civil Procedure or the Local Rules of the Northern District of California or exceed the permissible scope of discovery under said rules.

4. Plaintiff objects to the Interrogatories to the extent that they seek information that is at least equally accessible to Defendant.

5. Plaintiff objects to the Interrogatories' definitions of "relating to," "related to," "describe in detail," and "state all facts" as overbroad and beyond the definitions provided in the Federal Rules of Civil Procedure.

## INTERROGATORY RESPONSES

Plaintiff responds to Defendant's First Set of Interrogatories as follows:

**Interrogatory No. 1:**

Describe in detail all measures you have taken to preserve documents and electronically stored information ("ESI") that relates in any manner to the allegations in this action. Responsive information includes, but is not limited to, (i) the identification of any cloud or other backup storage accounts or devices, and (ii) a specific description of what such accounts or devices contain.

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and seeking privileged and/or work product documentation. Plaintiff also objects to this Interrogatory as vague insofar as it seeks information "that relates in any manner to the allegations in this action." Subject to and without waiving these objections, Plaintiff answers as follows: Plaintiff has preserved all electronic documents related to this case, *e.g.,* documents within his Gmail email account. His email account contains correspondences that are potentially relevant to this matter and the allegations contained in the Complaint.

**Interrogatory No. 2:**

If any document or ESI relevant to this action is no longer retrievable, provide with particularity: (i) a description of the document and/or ESI that is no longer retrievable, (ii) the reason why the document and/or ESI is no longer retrievable, (iii) the date such document or ESI was last accessed, and (iv) all efforts undertaken by you to locate the document and/or restore the ESI.

**ANSWER:**

Plaintiff objects to this Interrogatory as vague and ambiguous, and overbroad. Subject to and without waiving these objections, Plaintiff answers as follows: Since filing his complaint, Plaintiff has retained all documents and ESI relevant to this action.

**Interrogatory No. 3:**

Provide all email addresses that you have used from the start of the class period alleged in this action, up to and including the date of your response.

**ANSWER:**

Plaintiff objects to this Interrogatory as it seeks irrelevant information. Subject to and without waiving these objections, Plaintiff responds as follows:

Personal email address: chrisjslaight@gmail.com, transitpics@gmail.com

Work email address: chris.slaight@tcs.com

Plaintiff does not recall his work email address at AXA Equitable. Plaintiff also maintains an email address with his current employer, Sparta Systems, Inc.

**Interrogatory No. 4:**

List all websites, social media accounts and other web addresses on which you have maintained a profile (whether public or private) from the start of the class period alleged in this action, up to and including the date of your response.

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad and seeking irrelevant information. Subject to and without waiving these objections, Plaintiff responds as follows and maintains the following public social media accounts:

Linkedin: (name) Chris Slaight

Facebook: (name) Chris Slaight

Twitter: (name) Chriss18

Foursquare: (name) Chriss18

Google+: (name) Chris Slaight

CodePen: (name) ChrisSlaight

Github: (name) Chriss18

110 Stories: (name) Chris Slaight

**Interrogatory No. 5:**

List all websites, social media accounts and other web addresses to which you have posted content from the start of the class period alleged in this action, up to and including the date of your response.

**ANSWER:**

Plaintiff objects to this Interrogatory as vague and ambiguous, overly broad, unduly burdensome, and seeking irrelevant information. Consequently, Plaintiff limits his answer to posts on websites, social media accounts, and other web addresses relating to this lawsuit or the allegations contained in the Complaint. Subject to and without waiving these objections, Plaintiff has posted no content regarding this lawsuit online.

**Interrogatory No. 6:**

Provide the name, address and telephone number of every person (other than your counsel) with whom you have communicated regarding TCS' alleged discrimination against individuals who are not of South Asian race, or who are not of Indian national origin.

**ANSWER:**

Plaintiff objects to this Interrogatory to the extent it seeks privileged and/or work product information. Subject to and without waiving these objections, Plaintiff has not communicated with any third parties regarding TCS' alleged discrimination against individuals who are not of South Asian race, or who are not of Indian national origin.

**Interrogatory No. 7:**

Provide the name, address and telephone number of every person with knowledge regarding TCS' alleged discrimination against individuals who are not of South Asian race, or who are not of Indian national origin.

**ANSWER:**

Plaintiff objects to this Interrogatory to the extent it seeks privileged and/or work product information. Plaintiff further states that this Interrogatory is premature insofar as TCS' alleged discrimination will in part be supported by information yet to be obtained (e.g. information via discovery). Subject to and without waiving these objections, Plaintiff answers as follows:

Individuals who likely have information regarding TCS' alleged discrimination against individuals who are not of South Asian race include Defendant's employees, former employees, and potential hires. A non-exhaustive list of specific individuals likely to have information related to TCS' alleged discrimination include:

Christopher Slaight - Mr. Slaight can be contacted through the offices of Kotchen & Low LLP.

Steven Heldt - Mr. Heldt can be contacted through the offices of Kotchen & Low LLP.

Brian Buchanan - Mr. Buchanan can be contacted through the offices of Kotchen & Low LLP.

**Interrogatory No. 8:**

State all facts which support your allegation that TCS discriminates against individuals who are not of South Asian race, or who are not of Indian national origin.

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and in part seeking information duplicative of what is already stated in the Complaint. Plaintiff further objects on the grounds that these allegations will in part be supported by documentation and information yet to be obtained. Plaintiff further objects that this is a premature contention interrogatory. Subject to and without waiving these objections, Plaintiff refers Defendant to the allegations of TCS' discrimination described in the Complaint. *See, e.g.,* 3d Am. Compl., ¶¶ 1-5, 19, 22, 23-30, 35-66.

**Interrogatory No. 9:**

State all facts which support your allegation that TCS discriminated against you, including (i) the discriminatory act or acts, (ii) the date or dates on which such act(s)

7

was committed, and (iii) the employee or agent of TCS who committed the discriminatory act(s).

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and in part seeking information duplicative of what is already stated in the Complaint. Plaintiff further objects on the grounds that these allegations will in part be supported by documentation and information yet to be obtained. Plaintiff further objects that this is a premature contention interrogatory. Subject to and without waiving these objections, Plaintiff responds as follows:

- Tata is an Indian company that employs approximately 14,000 employees in the United States. While roughly 1-2% of the United States population is South Asian, approximately 95% of Tata's United States-based workforce is South Asian (primarily from India). This grossly disproportionate workforce is the result of Tata's intentional pattern and practice of employment discrimination against individuals who are not South Asian (or who are not of Indian national origin), including discrimination in hiring, placement, and termination decisions.
- Plaintiff started with Tata in June 2012 as a software engineer. Over the following year, Tata assigned Plaintiff absolutely no substantive work. He was ultimately terminated after being benched for several weeks.
- Plaintiff graduated in June 2012 from DeVry University with a Bachelor of Science degree in Computer Information Systems and Database Management. Plaintiff interviewed with a Tata Manager of College Recruiting & Relations in April 2012 and was hired as a software engineer shortly thereafter. Plaintiff attended orientation in May 2012, and started full time on July 9, 2012. Over the following two months, Plaintiff underwent training in Cincinnati, Ohio and Chennai, India.
- Upon returning from India, Plaintiff was assigned to a client project in Jersey City, New Jersey servicing client AXA.
- Plaintiff's assignment at AXA started October 1, 2012. He reported to work and was assigned to the AXA GIP COE Deployment Team, which was responsible for the deployment and maintenance of applications on the AXA server. Alok Bhalla, a South Asian of Indian national origin, was Tata's local Business Relationship Manager. Vignesh Ramanan, a South Asian of Indian national origin, was Tata's Senior Engagement Manager and Plaintiff's direct Tata supervisor. Plaintiff was eager to begin working as a software engineer and looked forward to gaining real-world experience. However, over the next

- six months, Tata failed to assign Plaintiff any substantive work. Nor did Tata provide him with any training. Each day, Plaintiff reported to work, only to sit at his desk waiting for an assignment. Approximately every week to two weeks, Plaintiff approached Mr. Bhalla and/or Mr. Ramanan to request work. Yet neither Mr. Bhalla nor Mr. Ramanan ever assigned Plaintiff any work. On the other hand, Plaintiff observed that his South Asian colleagues were regularly assigned substantive work.
- On March 29, 2013, after six months without substantive work, Plaintiff was removed from the client project and placed on the bench. Plaintiff reached out to Tata's internal recruiters and the HR department seeking a new placement. On April 17, 2013, Plaintiff interviewed with several local Tata managers servicing Bank of America in Pennington, New Jersey. Each of these managers was South Asian and, upon information and belief, of Indian national origin. Despite performing well during these interviews, Tata did not select Plaintiff for the position.
- On April 19, 2013, HR representative Debojyoti Sen informed Plaintiff that his employment with Tata had been terminated. Throughout his entire employment with Tata, Plaintiff was never assigned any substantive work.

**Interrogatory No. 10:**

If you complained about perceived discrimination by TCS, state (i) the date of your complaint, (ii) who you complained to, (iii) a detailed description of your complaint, and (iv) a detailed description of any response you received.

**ANSWER:**

Plaintiff objects to this Interrogatory to the extent it seeks privileged and/or work product information. Subject to and without waiving these objections, Plaintiff answers as follows:

On July 6, 2015, Plaintiff filed the Amended Complaint in this action.

**Interrogatory No. 11:**

Describe in detail any policies of TCS that discriminate against individuals who are not of South Asian race, or who are not of Indian national origin.

9

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and in part seeking information duplicative of what is already stated in the Complaint. Plaintiff further objects on the grounds that these allegations will in part be supported by documentation and information yet to be obtained. Plaintiff further objects that this is a premature contention interrogatory. Subject to and without waiving these objections, Plaintiff refers Defendant to the allegations of TCS' policies of discrimination described in the Complaint. *See, e.g.*, 3d Am. Compl., ¶¶ 1, 19-25, 80-81, 85-86.

**Interrogatory No. 12:**

Describe in detail any practices of TCS that discriminate against individuals who are not of South Asian race, or who are not of Indian national origin.

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and in part seeking information duplicative of what is already stated in the Complaint. Plaintiff further objects on the grounds that these allegations will in part be supported by documentation and information yet to be obtained. Plaintiff further objects that this is a premature contention interrogatory. Subject to and without waiving these objections, Plaintiff refers Defendant to the allegations of TCS' practices of discrimination described in the Complaint. *See, e.g.*, 3d Am. Compl., ¶¶ 1-5, 19-30, 80-81, 85-86.

**Interrogatory No. 13:**

Provide the name, address and telephone number of every person whom you referred or recommended for employment with TCS.

**ANSWER:**

Plaintiff objects to this Interrogatory to the extent it seeks privileged and/or work product information. Subject to and without waiving these objections, Plaintiff answers as follows: Plaintiff has not referred or recommended anyone for employment with TCS.

**Interrogatory No. 14:**

For each position that you believe should have been offered to you by TCS, identify:

(i) the client, (ii) the position title, and (iii) the employee who received the position.

**ANSWER:**

Plaintiff objects to this Interrogatory to the extent it seeks privileged and/or work product information. Plaintiff also objects to this Request as it seeks information that is as easily accessible to the Defendant as to Plaintiff.  Subject to and without waiving these objections, Plaintiff answers as follows: Plaintiff applied to work for TCS client Bank of America for a software testing/Java developer position in April 2013.  Plaintiff does not know the name of the employee who received this position.

**Interrogatory No. 15:**

State all facts which support your allegation that TCS discriminated against its existing employees based on race or national origin.

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and in part seeking information duplicative of what is already stated in the Complaint. Plaintiff further objects on the grounds that these allegations will in part be supported by documentation and information yet to be obtained. Plaintiff further objects that this is a premature contention interrogatory. Subject to and without waiving these objections, Plaintiff responds as follows:

- For the comparatively few non-South Asians workers that Tata hires, it disfavors these individuals in its employment decisions, including, for example, in placement, promotion/demotion, and termination decisions.
- For example, Mr. Heldt began working for Tata in June 2012. Within a week of starting, Mr. Heldt was removed from a project he was well qualified for. Over his 20 months with Tata, Mr. Heldt was transferred between five different positions, often assigned only menial responsibilities, and spent approximately 13 months "benched" with no substantive work to perform even while Tata continued to service the client organizations to which Mr. Heldt had been assigned, using approximately 99% South Asian workers. While benched, Mr. Heldt was repeatedly passed over and not hired for positions, in favor of (upon

information and belief) South Asian workers. Throughout his employment, Mr. Heldt experienced substantial anti-American sentiment – *e.g.*, being told by Tata management: "This is why I don't like dealing with Americans," being told that he would have difficulty finding work within Tata because he is American, and being told that Tata was not even looking for Americans to hire. He was ultimately terminated. *See also* 3d Am. Compl. ¶¶ 44-61.

- Similarly, Plaintiff started with Tata in June 2012 as a software engineer. Over the following year, Tata assigned Plaintiff no substantive work. He was ultimately terminated after being benched for several weeks. *See also* 3d Am. Compl. ¶¶ 62-66.

**Interrogatory No. 16:**

State all facts which support your allegation that TCS discriminated against applicants for positions in the United States based on race or national origin.

**ANSWER:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and in part seeking information duplicative of what is already stated in the Complaint. Plaintiff further objects on the grounds that these allegations will in part be supported by documentation and information yet to be obtained. Plaintiff further objects that this is a premature contention interrogatory. Subject to and without waiving these objections, Plaintiff responds as follows:

- Tata is an Indian company that employs approximately 14,000 employees in the United States. While roughly 1-2% of the United States population is South Asian, approximately 95% of Tata's United States-based workforce is South Asian (primarily from India). This grossly disproportionate workforce is the result of Tata's intentional pattern and practice of employment discrimination against individuals who are not South Asian (or who are not of Indian national origin), including discrimination in hiring, placement, and termination decisions. For example, recruiters within Tata's United States recruiting unit have been explicitly instructed to focus primarily on hiring Indians for positions in the United States. Moreover, Mr. Heldt was told by a South Asian Tata manager, after Mr. Heldt was removed from a position, that he would have a hard time finding a new job within Tata because he was not South Asian.
- Further, after Southern California Edison ("SCE") announced that it would transition much of its IT needs from in-house employees to Tata, Mr.

Buchanan learned he would lose the SCE job he had held for many years. Mr. Buchanan applied for a job with Tata yet, despite being imminently qualified, Tata failed to hire him, choosing rather to staff its SCE project with an almost 100% South Asian workforce. *See also* 3d Am. Compl. ¶¶ 31-43.

- This grossly disproportionate workforce demonstrates an intentional pattern and practice of discrimination, and cannot be explained by coincidence or business necessity.
- On information and belief, all or most of Tata's United States-based business units are headed by individuals of South Asian race and Indian national origin. Among these senior managers, there is a culture of hostility towards, and non-acceptance of American workers. These senior managers have resisted efforts to increase racial and/or national origin diversity among Tata's workforce. Because of anti-American and pro-South Asian sentiment by senior management, Tata's United States-based workforce has been, and remains, highly disproportionate, with approximately 95% South Asian workers (primarily from India) in the United States.
- Tata maintains in the United States a recruiting unit called the Talent Acquisition Unit, which focuses on hiring employees for Tata's United States operations. M.P. Saravanan has served as the Vice President of Human Resources, overseeing the Talent Acquisition Unit. Mr. Saravanan has instructed the recruiters within the Talent Acquisition Unit to focus primarily on hiring Indians for positions in the United States.
- For example, in front of recruiters and management, Mr. Saravanan has expressed his dislike for American workers. He has also stated that he believes Indians were smarter and better qualified than Americans. On at least one occasion, Mr. Saravanan gave explicit instructions to two recruiters in the Talent Acquisition Unit to hire only Indians, rather than Americans, for positions in the United States.  Similarly, while Tata typically allows South Asian employees to apply for and take different positions within different Tata business units (referred to as "verticals"), Tata typically does not allow the comparatively few "American Hires" (as locally hired, non-South Asian employees are commonly referred to within Tata) to apply for and take positions outside of the business unit to which these employees are assigned.
- Tata employs in the United States a large number of South Asians (primarily Indian) visa workers, including individuals with H-1B, L-1, B-1, and other visas. Tata secures visas for these individuals. H-1B visas are intended to be used to bring specialized foreign workers to the United States when there are insufficient United States workers to perform the jobs at issue. Tata is consistently one of the top three H-1B sponsors in the United States. For example, Tata sponsored 8,701 new H-1B visas in 2013, 6,692 new H-1B visas in 2012, and 5,365 new H-1B visas in 2011.  Similarly, L-1 visas are intended

- to be used to bring management level employees to the United States for temporary assignments. Between 2002 and 2011, Tata sponsored 25,908 L-1 visas. On information and belief, Tata sponsored all, or the vast majority, of these visas for South Asian workers (primarily Indian).
- Tata also discriminates in "local hiring," *i.e.*, even when Tata hires non-visa dependent individuals who reside locally in the United States, such persons are still disproportionately South Asian.

**Interrogatory No. 17:**

Describe in detail the circumstances giving rise to your removal from any TCS customer assignment, including, but not limited to, (i) TCS' stated reasons for such removal, (ii) the customer's stated reasons for removal, (iii) your belief as to why you were removed (if different from TCS' or the customer's stated reasons), and (iv) all persons with knowledge of the facts identified in this response.

**ANSWER:**

Plaintiff objects to this Interrogatory to the extent it seeks privileged and/or work product information. Plaintiff also objects to this Request as it seeks information that is as easily accessible to the Defendant as to Plaintiff.  Subject to and without waiving these objections, Plaintiff answers as follows: Plaintiff was removed from the AXA client project on March 27, 2013.  He was told by TCS that only one resource was needed to work on the project.  A South Asian employee was selected to work on the project.

All individuals with knowledge of these facts include Plaintiff and TCS employees Vignesh Ramanan, Alok Bhalla, Debojyoti Sen, Ambika G, Melissa Blanford, Melissa Digirolamo, Umesh Kumar, and Kimeth Williams.

**Interrogatory No. 18:**

For each position within TCS that you applied for or inquired about, identify (i) the outcome of such application or inquiry, (ii) anyone with whom you communicated regarding the position (including anyone with whom you interviewed), and (iii) how

you learned of the position.

**ANSWER:**

Plaintiff objects to this Interrogatory to the extent it seeks privileged and/or work product information. Plaintiff also objects to this Request as it seeks information that is as easily accessible to the Defendant as to Plaintiff. Subject to and without waiving these objections, Plaintiff answers as follows: After Plaintiff was initially hired by TCS, he learned that he would be placed on a client project with AIG, working as a Software Engineer. Plaintiff learned of the position from TCS employee Kimeth Williams.

While training in India, Plaintiff was told that the position with AIG was no longer available. He was then informed by TCS employee Mary Hoffmaster that she had placed him on a client project with AXA Equitable in Jersey City, NJ and that he would work as a Portal Developer. Plaintiff spoke with Ms. Hoffmaster about this position, as well as Alok Bhalla and Ravi Trivedi.

Plaintiff also interviewed for a software testing/Java developer position in April 2013 with TCS client Bank of America. Plaintiff learned of this position from Ravi Patel. He also communicated with Anik Mahakud regarding the position. Plaintiff does not recall the name of the individual he interviewed with for this positon.

Dated: May 16, 2016                By:  /s/ Daniel Kotchen
                                        Daniel Low (SBN 218387)
                                        Daniel Kotchen (*pro hac vice*)
                                        Michael von Klemperer (*pro hac vice*)
                                        KOTCHEN & LOW LLP

                                        *Attorneys for all Plaintiffs*

# **CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2016, I served the foregoing via email on the following counsel of record for Defendant Tata Consultancy Services:

Michelle La Mar
mlamar@loeb.com
Patrick Downes
pdownes@loeb.com
Erin Smith
esmith@loeb.com

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on May 16, 2016 in Washington, DC.

                                                    /s/ Daniel Kotchen
                                                  Daniel Kotchen

## **VERIFICATION**

I affirm, under the penalties of perjury, that the representations set forth in Plaintiff Slaight's Responses and Objections to Defendant's First Set of Interrogatories are true to the best of my knowledge.

Dated this 20 day of May, 2016.

_____
Christopher Slaight