# Exhibit 1

Exhibit 1

RECEIVED

NOV - 3 2014          480-2015-00453

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | FEPA<br>X  EEOC | |

_____ and EEOC
*State or local Agency, if any*

| Name (*indicate Mr. Ms. Mrs.*)<br>Mr. Steven Heldt | Home Phone (Incl. Area Code)<br>(310) 850-5331 | Date of Birth<br>7/3/1969 |
|---|---|---|
| Street Address<br>266 W. 17th St. | City, State and ZIP Code<br>San Pedro, CA 90731 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>Tata Consultancy Services Ltd. | No. Employees, Members<br>+501 | Phone No. (Include Area Code)<br>(818) 333-1650 |
|---|---|---|
| Street Address<br>303 N. Glenoaks Blvd. Ste. 850 | City, State and ZIP Code<br>Burbank, CA 95054 | |
| Name | No. Employees, Members | Phone No. (Include Area Code) |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON (*Check appropriate box(es).*)<br><br>X RACE __ COLOR __ SEX __ RELIGION X NATIONAL ORIGIN<br><br>__ RETALIATION __ AGE __ DISABILITY __ OTHER (Specify below.) | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest 10/12   Latest 3/14<br><br>__ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):
Please see attached document.
Please send all correspondence for Mr. Heldt to:
P.O. Box 5020
San Pedro, CA 90733
Please copy Mr. Heldt's attorney Michael von Klemperer
on all correspondence at:
Kotchen & Low LLP
1745 Kalorama Rd. NW, Ste. 101
Washington, DC 20009

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 10/30/2014       [signature]<br>Date       Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

Steven Heldt

Complainant,

v.

Tata Consultancy Services, Ltd.

Respondent.

ATTACHMENT TO EEOC CHARGE

Steven Heldt states as follows with respect to this matter against Tata Consultancy Services, Ltd. ("Tata"):

1. Mr. Heldt is a citizen of the United States of America, born in the Unites States, and of American national origin and ancestry. He is Caucasian. He was at all material times a resident of the United States. Mr. Heldt is a member of a protected class, as recognized by Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, et seq.). Mr. Heldt has advanced training and job experience in information technology services and holds three certifications in information security.

2. Tata is a business that provides consulting, technology, and outsourcing services. Tata is headquartered in Mumbai, India and operates in the United States. Tata has approximately 19 offices in the United States, including in Burbank, California. Tata has over 305,000 employees worldwide, making it the third largest IT employer in the world. Tata is a subsidiary of the Tata Group, also headquartered in Mumbai, India.

3. Tata has about 14,000 employees in the United States and over 90 percent are of South Asian race and national origin.[1] Tata made over $13 billion in revenue in the past fiscal year. Tata derives over 50% of its revenue from North America, the vast majority of which is from the United States.

4. Tata has engaged in a systematic pattern and practice of discriminating against non-South Asian employees and in many instances replacing them with South Asian employees. Tata has used and continues to use a company-wide employment policy and practice of hiring, retaining, and promoting South Asian employees (including South Asian employees with H-1B visas, L-1

---

[1] As used herein, "South Asian race and national origin," "South Asian workers," and the like refers to individuals of Indian, Bangladeshi, and Nepali ancestry, ethnicity, and/or birth.

visas, or lawful permanent resident status) over non-South Asian employees (or job applicants) with the same or better qualifications.

5.  H-1B visas are intended to be used to bring specialized foreign workers to the United States when there are insufficient United States workers to perform the jobs at issue. Tata is consistently one of the top three H-1B sponsors in the United States. For example, in 2013, Tata sponsored 8,701 new H-1B visas. In 2012, Tata sponsored 6,692 new H-1B visas. In 2011, Tata sponsored 5,365 new H-1B visas. On information and belief Tata sponsored, all, or the vast majority, of these H-1B visas for South Asian workers. Overreliance on visa-holders is one method Tata uses to maintain its grossly disproportionate South Asian workforce.

6.  Mr. Heldt is an experienced and highly skilled information technology professional with considerable academic and work experience. Mr. Heldt has a BA in Economics from UNC Chapel Hill, a Masters of Information Technology from AIU, a Security+ certification from CompTia, and both the CISA and CISM certifications from ISACA.

7.  Mr. Heldt has been employed in the information technology field since 1996. As a result of his training and experience, Mr. Heldt has a wide array of skills that include expertise in Project Management, Business Analysis, Software Development, Networking, IT Operations, IT Governance, IT Security, IT Risk Management, IT Assurance, IT Compliance and Incident Response.

8.  Mr. Heldt interviewed with a recruiter for Tata in June 2012 for a position with Tata at Tata client Kaiser Permanente in Pleasanton, CA. Mr. Heldt was hired, relocated to Pleasanton from Los Angeles, and started working at the Kaiser Permanente client site under Tata supervision in July 2012 in the role of IT GRC Project Manager.[2] Within one week of starting with Tata, Mr. Heldt was removed by Tata from his initial IT GRC project and placed on another project with Kaiser Permanente titled "List Validation and Reporting" which was unrelated to the project he was initially recruited to perform. Mr. Heldt's role at this new project was IT Project Manager. This role, and all future roles Tata assigned to Mr. Heldt during his employment, were not commensurate with his originally assigned IT GRC Project Manager position, given the responsibilities of the positions and Mr Heldt's specialized experienced and career track. Of the several hundred Tata employees assigned to this client site, Mr. Heldt was one of only three non-South Asians. In October 2012, Tata removed Mr. Heldt from the Kaiser Permanente project and placed him on the "bench" – *i.e.* he was still employed by Tata but assigned no client work. On information and belief, Tata assigned one or more South Asian employees to assume the IT Project Manager role originally assigned to Mr. Heldt.

9.  Over the next several months, Mr. Heldt interviewed telephonically with multiple Tata managers numerous times for various positions unrelated to his career focus of IT GRC at various Tata client sites. The individual responsible for assisting Mr. Heldt in obtaining

---

[2] The ITGRC Project Manager position involved the project management of an Information Technology Governance Risk and Compliance system named Archer. The skills required to manage this position include traditional Information Technology project management combined with elevated skills related to the management of Information Technology Governance, Risk and Compliance.

2

additional client work, Tata recruiting manager Ambika G.,[3] refused to allow Mr. Heldt to interview for open positions aligned with his background and experience in spite of Mr. Heldt's repeated requests. On information and belief, Ms. Ambika G. is of South Asian race and Indian national origin.

10.  During this "benched" period, Mr. Heldt spoke with his former Tata supervisor Mohan Reddy from his Kaiser Permanente project. Mr. Heldt expressed to Mr. Reddy that he was concerned about the amount of time it was taking for him to be assigned project work. Mr. Reddy told Mr. Heldt that it would be difficult for him to find an assignment because he was an American and not South Asian. On information and belief, Mr. Reddy is of South Asian race and Indian national origin.

11.  In March 2013, Mr. Heldt was finally assigned to a new project with Tata client Humana Insurance in Louisville, KY. Mr. Heldt relocated to Louisville from California. Mr. Heldt was to hold the position of IT Project Manager on a health care system. This position did not require Mr. Heldt to utilize his specialized IT GRC skills. However, upon arrival and throughout his tenure at the new assignment, Mr. Heldt's Tata managers, never "on-boarded" him with the Humana project and he was never assigned work commensurate with his experience or position. Rather, Mr. Heldt was required to sit in the office lobby and was assigned menial tasks such as signing for FedEx packages, opening the secured door to the lobby area for people attempting to access to the office area, and directing people to other workers in the office area. Of the several hundred Tata employees assigned to this client site, Mr. Heldt was one of only eight or nine non-South Asians. In May 2013, Mr. Heldt was removed from the Humana project and, with Tata permission, relocated back to California. Mr. Heldt paid for his own moving expenses with the understanding that he would be reimbursed by Tata shortly after returning to California, per instructions from Tata HR and according to Tata policy.

12.  Upon returning to California, Mr. Heldt requested that he be reimbursed for expenses incurred during his move to and from Louisville, per Tata policy. Mr. Heldt also was still awaiting reimbursement for expenses incurred during his move to Pleasanton from Los Angeles, so he again requested this money. Mr. Heldt's total expenses exceeded $21,000. Reimbursements were handled by Srinivas Malladi, a Human Resources manager and Mr. Heldt's contact person in the Tata Human Resources department. On information and belief, Mr. Malladi is of South Asian race and Indian national origin. In his interactions with Mr. Heldt, Mr. Malladi was extremely hostile, rude, and abusive and he refused to reimburse Mr. Heldt for his full expenses. He also questioned Mr. Heldt on why he moved to Louisville and asked if he had gone there for a vacation. Mr. Malladi also made a number of anti-American comments. For instance, Mr. Malladi stated that "Americans need to start getting in line [with Tata] and stop being so selfish and demanding." He also stated that Americans demand too much and do not do their jobs correctly. He also criticized Americans for trying to "exercise their rights." During this conversation, Mr. Malladi also stated, "[t]his is why I don't like dealing with Americans."

13.  Mr. Heldt was again placed on the bench until August 2013. During this time period, Mr. Heldt again interviewed for multiple positions with Tata that were not related to his IT GRC

---

[3] Mr. Heldt does not know Ms. Ambika G.'s last name, however, she used the e-mail address "ambika.g@tcs.com" and worked at Tata's New Jersey office.

3

career focus and expertise but which he was willing to accept. Mr. Heldt requested that Ms. Ambika G. allow him to interview for open positions that were aligned with his IT GRC career focus and expertise. Ms. Ambika G. refused Mr. Heldt's requests and was hostile, rude and aggressive in her responses to Mr. Heldt's requests.

14. In August 2013, Mr. Heldt was assigned to a project with the Tata client Advanced Sterilization Products, a Johnson & Johnson company, in Orange County, CA, as a General Project Manager for a supply chain project, unrelated to both IT Project Management and IT GRC. Mr. Heldt was never properly on-boarded to the project by the local Tata manager and he was never assigned work commensurate with his experience or position. Rather, Mr. Heldt was assigned a project creating an Excel spreadsheet to track project details. This assignment was not commensurate with his experience and position. Of the approximately 200 Tata employees assigned to this client site, Mr. Heldt was the only non-South Asian. In September 2013, Mr. Heldt was removed from the Johnson & Johnson project and again benched. On information and belief, Tata assigned a South Asian employee to the General Project Manager role originally assigned to Mr. Heldt.

15. From September 2013 through November 2013, Mr. Heldt was interviewed by several South Asian Tata managers for projects unrelated to his IT GRC career focus and expertise but which he was willing to accept. During this time period, Mr. Heldt requested that Ms. Ambika G. allow him to interview for open positions aligned with his IT GRC career focus and expertise, but again Ms. Ambika G. refused Mr. Heldt's request.

16. In November 2013, Mr. Heldt was assigned a project with Tata client Farmers Insurance in Los Angeles, CA, as an IT Project Manager. This position did not require Mr. Heldt to utilize his specialized IT GRC skills. Of the approximately 100 Tata employees assigned to this client site, Mr. Heldt was the only non-South Asian. Mr. Heldt was removed from the Farmers Insurance project in December 2013 and again benched. On information and belief, Tata assigned a South Asian employee to the IT Project Manager role originally assigned to Mr. Heldt.

17. In February 2014, Mr. Heldt interviewed for an IT GRC position with Tata client Sony. Mr. Heldt was selected for the position, but the project was canceled before Mr. Heldt could join the project. Mr. Heldt remained on the bench.

18. In March 2014, Mr. Malladi, called Mr. Heldt and told him he was being terminated as he had been on the bench for 3 months. Mr. Malladi also stated that Mr. Heldt was being released because Mr. Heldt would only accept positions in California. Mr. Heldt responded that he was willing to accept a position anywhere in the United States. Nevertheless, Tata terminated Mr. Heldt.

19. At no point during his employment with Tata was Mr. Heldt ever disciplined or cited for poor performance or misconduct of any kind. Likewise, to Mr. Heldt's knowledge, he was never removed from a client project for poor performance or misconduct.

20. Tata repeatedly benched Mr. Heldt, and when assigned client work, assigned him work not commensurate with his experience or position, because of Tata's preference for South Asian

employees. Ultimately, Mr. Heldt was terminated because of Tata's preference for South Asian employees.

21. Over his tenure with Tata, Mr. Heldt observed that well over 90 percent of Tata employees in the United States were South Asian. At each of the client sites to which Mr. Heldt was assigned, he observed that approximately 99 percent of Tata employees were South Asian. Additionally, at each of the clients sites to which Mr. Heldt was assigned, he observed that South Asian employees were promptly on-boarded and assigned work that was more substantive than work assigned to non-South Asians.

22. The effect of the practices complained of above, has been to deprive Mr. Heldt, and other non-South Asian employees, of equal employment opportunities because of their national origin, race, and ancestry as non-South Asians.

23. The unlawful employment practices complained of above were intentional, and furthermore, were done with malice and reckless indifference to Mr. Heldt's (and other non-South Asians') federally protected rights.

24. As a proximate result of Tata's willful and unlawful discrimination, Mr. Heldt, and other non-South Asians, have lost wages, benefits, and other financial and non-financial injuries, and have suffered emotional distress.

25. Tata's policies, procedures, and actions described above have had a disparate impact on non-South Asian individuals, who are treated adversely as a result of these activities.

26. In submitting this charge, Mr. Heldt requests the EEOC permit him to pursue all damages and remedies available at law, on his own behalf, and on behalf of a class of individuals similarly affected by Tata's discriminatory employment practices.

Dated: October 30, 2014

_____
Steven Heldt



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency | GOVERNOR EDMUND G. BROWN, JR.

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

DIRECTOR PHYLLIS W. CHENG

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TTY 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Administration
TATA CONSULTANCY SERVICES, LTD.
303 N Glenoaks Blvd
Burbank, CA 91502

EEOC Number   480-2015-00453C
Case Name     Steven Heldt
Filing Date   November 3, 2014

## NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the California Department of Fair Employment and Housing (DFEH) by the U.S. Equal Employment Opportunity Commission (EEOC). The complaint will be filed in accordance with California Government Code section 12960. This notice constitutes service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint and the DFEH will not be conducting an investigation into this matter. Please contact EEOC directly for any discussion of the complaint or the investigation.

## NOTICE TO COMPLAINANT OF RIGHT TO SUE

This letter is also your Right to Sue notice. **This Right to Sue Notice allows you to file a private lawsuit in State court.** According to Government Code section 12965, subdivision (b), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The lawsuit may be filed in a State of California Superior Court. Government Code section 12965, subdivision (b), provides that such a civil action must be brought within one year from the date of this notice. Pursuant to Government Code section 12965, subdivision (d)(1), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint. You should consult an attorney to determine with accuracy the date by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed.

. Be advised, the DFEH does not retain case records beyond three years after a complaint is filed.

| EEOC Form 161 (11/09) | U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION |
|---|---|

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Steven Heldt<br>P.O. Box 5020<br>San Pedro, CA 90733 | From: | Los Angeles District Office<br>255 E. Temple St. 4th Floor<br><br>Los Angeles, CA 90012 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 480-2015-00453 | John H. Sohn,<br>Intake Supervisor | (213) 894-1090 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal, or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Rosa M. Viramontes,
Acting District Director

Enclosures(s)                                                                 (Date Mailed)

cc: **Administration**
**TATA CONSULTANCY SERVICES, LTD.**
303 N Glenoaks Blvd
Burbank, CA 91502

Michael Von Klemperer
Kotchen & Low LLP
1745 Kalorama Rd NW Ste 101
Washington, DC 20009