# Exhibit 42

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

STEVEN HELDT,
BRIAN BUCHANAN, and
CHRISTOPHER SLAIGHT
Plaintiffs,

v.

TATA CONSULTANCY SERVICES, LTD.,
Defendant.

Case No.: 4:15-cv-01696-YGR

**CLASS ACTION**

**DECLARATION OF SEYED AMIR MASOUDI**

Complaint Filed: April 14, 2015

**DECLARATION OF SEYED AMIR MASOUDI**

Seyed Amir Masoudi deposes and states as follows:

1. I was born in Iran and am green card holder and permanent resident of the United States. I resided in California and Ohio at all times discussed below. I am over the age of eighteen and have personal knowledge of the matters stated herein.

2. I started work with Tata Consultancy Services ("Tata") in August 2014, as a part of the company's Initial Learning Program ("ILP") for recent graduates. On September 2, 2014, I began training in Cincinnati, Ohio and was placed on the SAP Enterprise Solution Team where I worked under the supervision of Tata Manager Vikram Shankar. Along with the majority of Tata's management staff in Cincinnati, Mr. Shankar is of South Asian race and Indian national origin.

3. Despite performing well during my training period and scoring high on all evaluations, I was kept in Cincinnati, given menial work, and forced to look for a new positions servicing Tata clients. I was repeatedly overlooked for new positions, and these roles were instead given to my Indian colleagues. For example, in or around January 2015, I informed Mr. Shankar that I was interested in an open software development position in Boston, MA, and confirmed that I had the relevant Linux experience. However, Mr. Shankar did not forward my resume to Tata's Resource Management Group ("RMG") for an interview, and instead recommended two of my less qualified Indian colleagues for the position. Mr. Shankar then asked me to help train and prepare my two colleagues for the interview, which I did.

4. The following month, my colleague Abdul Quraishi and I interviewed with Tata for a position in California servicing Tata client Juniper Networks. Mr. Quraishi was born in Bangladesh and is of South Asian race. Mr. Quraishi and I participated in the telephone interview in the same room, and I was able to competently answer all of the interviewer's questions. The interviewer was a Tata employee of Indian descent. While Mr. Quraishi was not able to answer a number of the interviewer's questions, he was still chosen for the position.

5. When I asked Mr. Shankar why I had not been placed in a new position, he replied that I did not have enough skills as a recent graduate and encouraged me to lie about my work experience and skill sets on my resume. I refused to do so.

6. In July 2015, I interviewed and was selected for a Tata position servicing Apple as an SAP Performance Engineer in Sunnyvale, California. I worked in a group of approximately 30 employees, and the majority of my colleagues, including my manager Mr. Pimple, were Indian.

7. Despite performing well in the position, I was treated poorly by my Indian colleagues who created a hostile work environment at Apple. One of my Indian coworkers, Diwakar IB, threatened to report me to the Apple manager stating "I can make your life miserable here. You don't want to mess with me." While I was required to shadow Mr. IB, he refused to train me and mocked my questions. My other colleagues also provided incorrect answers when I asked them for assistance. Further, I was excluded by my group members who spoke in Hindi, was not invited to team lunches, and my name was occasionally left off meeting minutes for which I was in attendance. I also learned that Mr. IB and other Tata team members reported me to the client, falsely stating that I was unprofessional and repeatedly absent from work. When I asked my team member Amruta Kale why I was being targeted, she stated that my coworkers did not like me as I was "not one of them" because I was "not Indian."

8. On March 2, 2016, Tata employee Subodh Shetty informed me that the contract for my position servicing Apple was not being renewed due to budget cuts, and that Tata was placing me on the bench. However, I later learned in a team meeting that Tata had hired an additional contractor from India to join my team on an H-1B visa and to work in my same role.

9. I informed Mr. Shetty that I believed I was being treated unfairly, and that I planned to report Tata's discriminatory conduct to the Department of Labor ("DOL"). Mr. Shetty then threatened me by stating that he would ensure that I received negative performance feedback on the Apple project if I reported any discrimination. I informed Tata's Human Resources Department of this threat of retaliation, yet no action was taken

10. I remained on the bench for the next five months. During this time, I repeatedly sought employment by sharing my resume with Ms. Dasgupta, an RMG employee, forwarding open positions to her which matched my qualifications, and searching for positions on Tata's internal portal. My emails and telephone calls to Ms. Dasgupta regarding open positions often went unanswered. While I remained on the bench for several months, one of my Indian

colleagues who was also released from a position servicing Apple around the same time as me was placed in a new role at Tata within the same week.

11. In April 2016, I interviewed for a Test Lead position in Walnut Creek, CA over the telephone. My Indian interviewer asked me where I was from and whether I spoke Hindi, which I found strange as both the offshore and onshore teams conducted business activities in English. I was not selected for the position.

12. On August 1, 2016, Tata terminated my employment.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this 19th day of January, 2017.

S.A.H Masoudi

Seyed Amir Masoudi