# Exhibit 49

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION
---------------------------------------

STEVEN HELDT, BRIAN BUCHANAN, and
CHRISTOPHER SLAIGHT,
Plaintiffs,
-against- Case No. 4:15-cv-01696-YGR
TATA CONSULTANCY SERVICES, LTD.,
Defendant.
---------------------------------------

January 25, 2017
30(b)(6) Deposition of Defendant by
JEEVAK SHARMA

Reported by:
Joseph R. Danyo

Job No. 118519

Q. The data that you pulled, was that data that counsel had instructed you to pull?
A. Right.
Q. You didn't deviate from that?
A. No.
Q. Do you know who determined to omit fields?
A. Say that again.
Q. Who made the determination to omit certain fields?
A. I don't think we omitted any fields. We only compiled data.
Q. Well, for example, the grade and designation are not available. We don't have that for active employees.
A. I would not know that.
Q. But you didn't make a -- if it is not included, you would not have made that determination, correct?
A. Exactly. If it was asked, we would have given. Beyond that, if anything is privileged, I don't know.
Q. Right, and if you generated a report in September or October of last year --
A. This year. Yes. Sorry. Last year.



Q. 2016. I am assuming you were told in that same time frame to start work on that, right, in September or October?
A. Yes, it must have been.
Q. Do you know who instructed you specifically?
MS. WYTSMA: Objection to that as being privileged. Privileged and work product.
Q. Was it an attorney who instructed you?
A. I may not got the direct e-mail from the attorney, but I did got the information to work on that report.
Q. So it was someone internal within TCS that instructed you to work on it?
A. Yes, because the leadership would have got involved with it.
Q. So was it a directive from a non-attorney that you received?
A. It would be a mix of both. Like some e-mails would have come from in-house attorney or attorney, I won't remember exactly from where exactly, because there is so many data we were working on.



As I said, it is just not one report I can just click, touch, and there you go. I have to work from different teams, different databases, different systems to make one, so I really don't remember who sent me to work on it, but, yes, I work on it.
Q. Was the communications made by e-mail that gave you the instructions about what data to pull?
A. There must be an e-mail on it.
Q. In the separated employees list or report, I am assuming it would have had salary information as well?
A. No, I told you earlier it is not part of the separated employees list.
Q. Salary is not?
A. No.
(Exhibit 16, Document bearing Bates number TCSLTD 003463399, was so marked for identification, as of this date.)
Q. I have introduced a document Bates numbered TCSLTD 003463399 as Exhibit 16. This is the active employee list. Do you recognize this list?
A. Yes, I know this list.



Q. Did you generate this at the same time that you generated the separated employee report?
A. We compiled everything when we did that work.
Q. There is a reference to base salary and bonus. Do you see that?
A. Yes.
Q. How come that is omitted for certain individuals?
A. If I see, the locals are there. Expatriates maybe it was not asked. We provided -- we were asked to provide for the locals, and then we provide it. I don't remember exactly what that looks like.
Q. You were not asked to -- were you instructed to omit the salaries for the expats?
A. No, that is not what I said. I said we were asked about the local employees. The U.S. employees. So the U.S. employees list are there. The expat, if you look at it, I don't know the whole list, but the two sheets you have given me, what seems missing is expatriates. Again, I don't know, I don't think that's a full list. That could be one reason.

Page 50

reports. Whatever the report would have come, we would have compiled the different reports and made into one.

(Exhibit 18, Document titled "Separated Employees", was so marked for identification, as of this date.)

Q. I have introduced as Exhibit 18 an exemplar document titled "Separated Employees." It looks a lot like Exhibit 17, which is active employees. So I am assuming it was compiled in the same manner as the active employees.

A. Yes.

MS. WYTSMA: Just for the record, this is not the entirety of the document, it is just the first page. Correct?

MR. KOTCHEN: Right.

Q. Again, this would have been pulled together at the instruction of counsel?

A. Yes.

Q. And was it counsel who gave you what fields to pull?

A. Yes.

MS. WYTSMA: Objection to the extent it calls for privileged communications. I instruct the witness not to answer as to

Page 51

the content of the communications.

A. What we would have done is what we would have been told to.

Q. If you compare Exhibit 18 to Exhibit 15, it looks like there are a lot more fields in Exhibit 15. Again, I assume you were pulling information that you were instructed to pull from counsel?

A. Yes. Whatever the instruction was, we would have done that.

MS. LA MAR: Again, for the record, Exhibit 18 is also part of the interrogatory response.

Q. I have another question about Exhibits 15 and 16. Exhibit 15 has an application source that is omitted from Exhibit 16. I am assuming an application source exists for TCS's active employees, correct?

A. Yes, but these are different reports, as I said earlier. It is not one report. Different ways to pull out the report. One report may have that field, the other report may not have it. It is not I pulled up one report and said here is active and here is inactive. These are different reports.

Page 52

Q. But that data exists for active employees, correct?

A. Yes.

Q. Well, the application source is not encompassed within Exhibit 16 but it must exist, correct?

A. Yes, it must exist.

Q. And you don't know why that wasn't included?

A. Because that's not the report as in these reports have different formats, different systems.

Q. Right. You are just pulling different information.

A. Right. So these reports are different. I'm not just pulling. These are different reports.

Q. But there must have been a reason why it is requested as to separated employees but not requested as to active employees, correct?

A. No. That is what I am trying to say. This is a different report altogether. What field or information I may get as the manpower report or active employee list, what we have is different than what company may need or company

Page 53

may want to put or we may want to put in the separation report. So these are two different reports.

Q. Right.

A. The reports are different. Again, it is not the same report.

Q. Are there any fields in the separated employee list other than the reason for separation in the separation category that would not be available for active employees?

A. Yes, obviously. So the sub-person type field is a manually created field. Even if it exists here also, somebody would have done a manual correction or manual inputting of that data. Race would be there, but it is not part of the report. Immigration status would be there. Qualifications would be there. The institution would be there.

Q. Okay, but no other field you can think of?

A. It must be there. It is not part of the report because it is not how the report is written.

(Exhibit 19, Document titled "Active Employee List" bearing Bates number TCS

**14 (3)**
64:3,7 74:3
**15 (24)**
7:16,19 11:15 23:4 24:22 25:8 26:5,11 26:18 27:6,7 35:3 39:6 45:1,17 49:1 51:5,6,15,15 64:3,8 73:8 74:3
**15/FY (3)**
63:2,6 74:1
**16 (17)**
26:22 32:18,22 35:3 38:16 39:6 47:25 48:1,8 49:23 51:15 51:17 52:5 63:2,6 73:9 74:1
**17 (11)**
45:24 46:2 47:24 48:2 48:3,4,7 49:2,3 50:9 73:10
**1745 (1)**
3:3
**18 (5)**
50:4,7 51:4,12 73:12
**19 (3)**
53:24 54:3 73:13

**2**

**2 (1)**
4:17
**2:12 (1)**
21:20
**2:13 (1)**
21:20
**2:35 (1)**
39:2
**20 (3)**
55:13,17 73:15
**20009 (1)**
3:4
**2010 (3)**
62:12,17 73:24
**2011 (1)**
45:3
**2012 (1)**
58:15
**2015 (5)**
38:13,17 46:20 49:10 58:15
**2016 (9)**
31:1 38:15,17 58:7,15 59:5,9 73:19,21
**2017 (6)**
1:11 2:2 71:13 72:15 75:3,23
**21 (3)**
56:6,10 73:17
**22 (3)**
58:7,16 73:19
**23 (3)**
59:3,7 73:20
**24 (2)**
60:12 73:22
**25 (7)**
1:11 2:2 62:12,16,18 73:24 75:3
**26 (4)**
63:1,5,8 74:1
**27 (4)**
64:2,6,8 74:3
**28 (3)**
65:14,18 74:5
**29 (3)**
66:7,11 74:6

**3**

**3 (1)**
4:17
**3:03 (1)**
39:2
**3:54 (1)**
68:7
**3:59 (1)**
68:7
**30 (3)**
68:9,15 74:8
**30(b)(6) (3)**
1:12 2:4 4:16
**30th (1)**
72:14
**32 (1)**
73:9
**345 (1)**
2:6

**4**

**4 (1)**
73:3
**4:03 (1)**
70:9
**4:05 (1)**
70:9
**4:06 (1)**
71:9
**4:15-cv (1)**
1:6
**45 (1)**
73:10

**5**

**50 (1)**
73:12
**53 (1)**
73:13
**55 (1)**
73:15
**56 (1)**
73:17
**58 (1)**
73:19
**59 (1)**
73:20

**6**

**60 (1)**
73:22
**62 (1)**
73:24
**63 (1)**
74:1
**64 (1)**
74:3
**65 (1)**
74:5
**66 (1)**
74:6
**68 (1)**
74:8

**7**

**7 (1)**
73:8

**8**

**8,343 (1)**
54:10

**9**

**9 (3)**
59:5,9 73:21
**90067 (1)**
3:9