Daniel Low, SBN 218387
Daniel Kotchen (*pro hac vice*)
Michael von Klemperer (*pro hac vice*)
**KOTCHEN & LOW LLP**
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: (202) 471-1995
E-mail: dlow@kotchen.com;
E-mail: dkotchen@kotchen.com;
E-mail: mvk@kotchen.com

Attorneys for Buchanan, Slaight, Webber, Masoudi, and Mandili

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

STEVEN HELDT, BRIAN BUCHANAN, and CHRISTOPHER SLAIGHT

Plaintiffs,

v.

TATA CONSULTANCY SERVICES, LTD.,

Defendant.

Case No.: 4:15-cv-01696-YGR

**CLASS ACTION**

**PLAINTIFFS' OPPOSITION TO TATA'S ADMINISTRATIVE MOTION TO EXTEND BRIEFING ON MOTION FOR CLASS CERTIFICATION TO CONDUCT THIRD-PARTY CLASS CERTIFICATION DISCOVERY**

Complaint Filed: April 14, 2015

Defendant Tata Consultancy Services, Ltd.'s ("Tata") motion should be denied. Good cause does not exist to grant Tata's requested continuance. Tata cites three reasons for the continuance, none of which has merit: (1) a recent production of nine declarations; (2) the purported unavailability of Plaintiffs' expert; and (3) the pending motion for leave to amend.

First, the principal evidence of Tata's scheme – *i.e.*, its unlawful corporate policy – comes from Tata's own records, not the declarations. Pls.' Mot. for Class Certification at 6-9 (Dkt. #115). The declarations amount to a single page of text in Plaintiffs' 25-page class certification brief. *Id.* at 10-11 (citing declarations at very end of discussion of Tata's discriminatory scheme). Thus, Tata would not suffer any prejudice from maintaining the existing schedule.

Moreover, after delaying for over a year, Tata recently produced millions of pages of responsive documents, preventing Plaintiffs from reviewing and incorporating these documents into Plaintiffs' motion for class certification. It is hypocritical and inequitable for Tata to now demand a continuance based on Plaintiffs' production of a small number of affidavits within a few weeks after they were prepared.

Second, Tata argues that Plaintiffs' expert, Dr. Neumark, is only available for a half day deposition in Irvine, and is not available soon enough, which is inaccurate. He is being produced for a full day. And he is being produced a single day later than Tata had requested.

Third, Plaintiffs' motion for leave to amend seeks to add a single claim, for disparate impact, that relies on the same facts already at issue in the case. Further, the Court has previously denied a request by Tata to extend a filing deadline in response to Plaintiffs' motion to amend. Order (Dkt. #102) (expressing concern about "timing constraints" and "insufficient justification for the current request").

## BACKGROUND

Plaintiffs issued discovery requests to Tata in August 2015. Over the next fifteen months, Tata misrepresented what responsive documents and data existed and produced minimal documents (many of which pertained only to the two named Plaintiffs). *See* Pls.' Reply in Support of Mot. to Amend at 6 (Dkt. #114). Tata then waited until the eve of Plaintiffs' class certification deadline to produce the

vast majority of its documents.[1] For example, over the last six weeks, Tata has produced over 4 million pages of documents. *Id.* Tata's decision to withhold this evidence until now ensured that Plaintiffs would not be able to review and incorporate much of the evidence in their class certification briefing.[2] The prejudicial effect of Tata's discovery misconduct is reflected in the follow graph:[3]




Plaintiffs promptly started reviewing Tata's documents upon receipt.[4] The documents revealed an explicit policy to favor visa holding South Asian Indian nationals in filling U.S. positions – *e.g.*: "Leadership directive is to utilize every visa to the maximum extent" (Dkt. #104-10); "Leadership Team has advised to utilize visa ready Associates at on site" (Dkt. #104-8); "Visa ready will be a preference." (Dkt. #104-9). Further, on January 17 and 19, Tata finally produced data regarding

---

[1] Almost certainly for strategic reasons, Tata waited to produce the vast majority of its documents until after the January 13, 2017 deadline for requesting leave to file a motion for partial summary judgment. As discussed in Plaintiffs' class certification brief, substantial evidence exists of Tata's discriminatory scheme, including evidence of an explicit corporate policy that Tata's representative admitted was discriminatory. *See* Pls.' Mot. for Class Certification at 6-8 (Dkt. #115). In light of this evidence, a motion for partial summary judgment would be appropriate here.

[2] As discussed in Plaintiffs' recently filed reply brief, Tata's discovery misconduct is sanctionable. Pls.' Reply in Support of Mot. to Amend at 7-8 (Dkt. #114)

[3] *See also* Tata Document Production Log (Dkt. #114-28) (containing underlying data).

[4] Tata's document production, however, still remains incomplete.

terminations. Pls.' Notice of Discovery Misconduct at 1 (Dkt. #96). (Tata had previously represented that such data did not exist.) *Id.* These data reflected the effect of Tata's policy to favor visa holding South Asian Indian nationals on non-South Asian employees who had been placed in a non-productive status referred to as being "benched," searched for a new position within Tata, and were then terminated. *See* Pls.' Mot. for Class Certification at 9-10 (discussing involuntary termination rates of between 11.15% and 12.57% for non-South Asian workers, as compared to just 0.21% to 0.97% of South Asian workers, and noting that most terminated non-South Asians – 7.55 to 8.51% of non-South Asian terminations – were fired from the bench) (Dkt. #115).

Having received this evidence of Tata's discriminatory scheme, Plaintiffs then promptly sought to add three new Plaintiffs who were benched by Tata and then terminated per Tata's explicit policy to favor South Asian visa holders. Plaintiffs also sought to add a disparate impact claim - a claim which Plaintiffs seek the option to present to a jury simply as a secondary alternative to Plaintiffs' primary theory of intentional discrimination, and one which requires no additional discovery (as the same evidence will be used to prove both claims). *See* Pls.' Reply in Support of Mot. to Amend at 2 (Dkt. #114). Plaintiffs also secured third-party witness declarations discussing the effect of Tata's corporate policy favoring South Asian visa holders. *See* Pls.' Mot. for Class Certification at 10-11 (Dkt. #115). The declarations were provided to Tata on February 15 and 20, and Tata then issued subpoenas to each witness, noticing depositions and issuing *between 54 and 59 document requests* to each witness.[5] Plaintiffs then filed their motion for class certification, per the deadline, on February 21. Tata waited until after Plaintiffs' filing to argue that because of these third-party declarations, it needed to postpone the briefing schedule. Tata also misrepresented to the Court that Dr. Neumark was only available for a half day deposition, Tata's Admin. Mot. at 2 (Dkt. #116),

---

[5] *See, e.g.*, Attachment A to Subpoena to Testify at a Deposition in a Civil Action Directed to Loran Peck (containing 59 document requests and setting a February 28 production date) (Ex. 1); Attachment A to Subpoena to Testify at a Deposition in a Civil Action Directed to Stephen Bradley (containing 54 document requests and setting a February 27 production date) (Ex. 2).

and elected not to correct this inaccuracy, despite multiple requests by Plaintiffs that they do so.[6]

**ARGUMENT**

Continuances require a "showing of good cause," focusing on "diligence by the party seeking delay," and "prejudice" from denial of a continuance. Standing Order at 3.

Tata cannot show good cause, diligence, and prejudice based on the three justifications it advances, namely: (1) the recent production of declarations; (2) Dr. Neumark's availability; and (3) the pending motion for leave to amend. Tata's Admin. Mot. at 2. First, in Plaintiffs' class certification brief, the principal evidence of Tata's unlawful corporate policy comes from Tata's own records, not the declarations. *Compare* Pls.' Mot. for Class Certification at 6-9 (Dkt. #115), *with id.* at 10-11. The declarations accompanying Plaintiffs' motion do not merit a continuance, particularly considering the discovery Tata withheld (and has yet to produce), which has prejudiced Plaintiffs. *Id.* at 12-13. If Tata's 54 to 59 document requests to, and depositions of, these witnesses yield any critical evidence, Tata can introduce the evidence during the June 20, 2017 class certification hearing. Plaintiffs intend to do the same, as we are now reviewing Tata's belated production of documents. Further, responding to over 50 document requests to each witness, searching for documents, and then taking depositions of the witnesses will almost certainly take longer than the 30-day extension Tata seeks. Given the ancillary nature of the declarations, and the fact that Tata waited until after Plaintiffs filed their class certification brief to raise its request for a continuance, Tata cannot show prejudice or diligence. Rather, its concern for taking third-party discovery appears aimed at simply securing additional time to draft its opposition to Plaintiffs' well-founded class certification motion.

Moreover, the equities do not merit a continuance. Tata's "due process" concerns ring hollow in light of its own discovery misconduct – withholding the vast majority of its discovery until the eve of class certification briefing, thereby ensuring Plaintiffs would be unable to review and incorporate

---

[6] *See* Email from D. Kotchen to M. La Mar, *et al.* (Feb. 23, 2017) (Ex. 3); Email from D. Kotchen to L. Wytsma, *et al.* (Feb. 23, 2017) (Ex. 3). While Tata repeatedly refused to correct the record, it still finds time to file additional documents concerning its Administrative Motion. *See* Proposed Order (Dkt. #117).

most of it in their briefing.[7] Having denied Plaintiffs the very "due process" it now contends is at stake, Tata should not be afforded additional time to engage in overly broad, ancillary third-party discovery prior to filing their class certification opposition brief. *See* Pls.' Notice of Discovery Misconduct (Dkt. #96); Order (addressing Plaintiffs' Notice of Discovery Misconduct and extending deadline for plaintiffs' initial class certification brief, without altering subsequent dates) (Dkt. #97).

Second, Tata argues that Plaintiffs' expert, Dr. Neumark, is only available "for a half-day deposition," and is only available a few business days before Tata's class certification opposition brief is due. Tata's Admin. Mot. at 2. But as Plaintiffs had informed Tata prior to their filing, Dr. Neumark is available for a full-day deposition next week, not a half-day. *See* Email from D. Kotchen to M. La Mar, *et al.* (Feb. 23, 2017) (Ex. 3). Tata asked Plaintiffs to produce Dr. Neumark within seven days after filing their class certification motion.[8] Plaintiffs are producing him eight days after the filing (due to a scheduling conflict), but a delay of only a single day does not constitute prejudice, much less prejudice warranting a 30-day extension. [9].

Third, Tata argues that "the pleadings are not settled at this point" and that it "cannot meaningfully respond to a class certification motion without knowing what claims are at issue." Tata's Admin. Mot. at 3. However, this argument is without merit. Plaintiffs' disparate impact cause of action challenges the same conduct and policy as Plaintiffs' disparate treatment claim, and will rely on the same common evidence and not necessitate any unique discovery. *See* Pls.' Reply in Support of Mot. to Amend at 13 (Dkt. #114). Further, the Court has already denied Tata's request to postpone its summary judgment deadline until after Plaintiffs' motion for leave to amend is decided. Order (Jan. 30, 2017) (Dkt. #102).

**<u>CONCLUSION</u>**

For the foregoing reasons, Tata's administrative motion should be denied.

---

[7] Further, as noted above, Tata's production has not yet been completed.
[8] Email from L. Wytsma to D. Kotchen, *et al.* (Feb. 15, 2017) (Ex. 5).
[9] Additionally, Dr. Neumark's expert materials, including his computer program and datasets, have already been provided to Tata. *See* Email from L. Tremaine to M. La Mar, *et al.* (Feb. 23, 2017) (Ex. 4).

Dated: February 24, 2017

Respectfully submitted,

By: /s/Daniel Kotchen
Daniel Kotchen (*pro hac vice*)
Daniel Low, SBN 218387
Michael von Klemperer (*pro hac vice*)
**KOTCHEN & LOW LLP**
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: (202) 471-1995
Email: dkotchen@kotchen.com;
dlow@kotchen.com;
mvk@kotchen.com

Michael F. Brown (*pro hac vice* forthcoming)
**DVG LAW PARTNER LLC**
P.O. Box 645
Neenah, WI 54957
920-238-6781
920-273-6177 (fax)
mbrown@dvglawpartner.com

Steven Tidrick, SBN 224760
Joel Young, SBN 236662
**The Tidrick Law Firm**
2039 Shattuck Avenue #308
Berkeley, CA 94704
Telephone: (510) 788-5100
Facsimile: (510) 291-3226
E-mail: sgt@tidricklaw.com
E-mail: jby@tidricklaw.com

*Attorneys for all Plaintiffs Buchanan, Slaight, Webber, Masoudi, and Mandili*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system on February 24, 2017.

Dated: February 24, 2017

/s/Daniel Kotchen
Daniel Kotchen