MICHELLE M. LA MAR (SBN 163038)
mlamar@loeb.com
PATRICK N. DOWNES (SBN 186461)
pdownes@loeb.com
LAURA A. WYTSMA (SBN 189527)
lwytsma@loeb.com
ERIN M. SMITH (SBN 235039)
esmith@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

STEVEN HELDT, BRIAN BUCHANAN, and CHRISTOPHER SLAIGHT,

Plaintiffs,

v.

TATA CONSULTANCY SERVICES, LTD.,

Defendant.

Case No.: 4:15-cv-01696-YGR

Assigned to Hon. Yvonne Gonzalez Rogers

**DECLARATION OF MICHELLE M. LAMAR IN SUPPORT OF TATA CONSULTANCY SERVICES, LTD.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Date: May 16, 2017
Time: 2:00 p.m.
Location: Courtroom 1, 4th Flr., Oakland

Complaint Filed: April 14, 2015

I, Michelle M. Lamar, declare as follows:

1. I am an attorney licensed to practice law before all of the courts in the state of California and before this court. I am a partner with Loeb &Loeb LLP, counsel of record for defendant Tata Consultancy Services, Ltd. ("TCS") in this action. Except as otherwise indicated, I have personal knowledge of the following facts and, if called and sworn as a witness, could and would competently testify thereto.

2. Attached hereto as Exhibit 1 are true and correct excerpts from the certified transcript of the deposition of Brian Buchanan, which was taken on September 21, 2016.

3. Attached hereto as Exhibit 2 are true and correct excerpts from the certified transcript of the deposition of Christopher Slaight, which was taken on September 17, 2016.

4. Attached hereto as Exhibit 3 are true and correct excerpts from the certified transcript of the deposition of Stephen Bradley, which was taken on March 10, 2017.

5. Attached hereto as Exhibit 4 are true and correct excerpts from the rough deposition transcript of Dwight Giovanni, which was taken on March 15, 2017.

6. Exhibits 30, 31 and 32 to plaintiffs' motion for class certification are applications submitted by vendors which reflect the national origin of the applicant. However, none of the applicants referenced on those exhibits appear on any of the employee lists that were produced in this case, meaning that such individuals were not hired by TCS.

## TCS DISCOVERY COMPLIANCE

7. Plaintiffs' motion for class certification includes a section devoted to TCS's alleged discovery misconduct and includes a graph purporting to show a timeline of when TCS produced documents. The graph is misleading and plaintiffs' characterization of TCS's discovery efforts is equally incorrect. It is unclear how the graph was created, but it fails to capture the volume of information included in the fulsome databases and Excel spreadsheets produced by TCS starting in May 2016. While each spreadsheet bears a single bates number, each spreadsheet contains a large quantity of information regarding

detailed operational and personnel information, displayed both vertically and horizontally. Indeed, a single line of information on one spreadsheet may span multiple pages horizontally. Put simply, counting the number of pages produced using bates numbers, as plaintiffs apparently have done to create their chart, does not fairly capture the amount of information produced by TCS long ago.

## TCS DISCOVERY COMPLIANCE

8. Plaintiffs served their initial set of document requests on August 28, 2015. The requests were exceedingly broad and most were virtually unanswerable. Examples include: " documents and ESI relating to a preference for or against recruiting. . . .individuals in the United States of a certain race or national origin, including, but not limited to, documents concerning statements about Americans or Indians"; "documents and ESI relating to the Talent Acquisition Group"; "documents and ESI relating to instruction concerning how to search for, or who to contact, regarding potential positions at Tata in the United States, including, but not limited to, documents and ESI relating to instructions to search databases (*e.g.*, LinkedIn) for common Indian names"; and "documents and ESI relating to any individual who applied to or otherwise contacted Tata (or a recruiter), who was contacted by Tata (or a recruiter), or who Tata (or a recruiter) researched regarding actual or potential jobs in the United States with Tata or an organization assisting Tata with a client engagement or otherwise managed by Tata (e.g. a staffing company)."

9. Defendant provided initial disclosure documents to plaintiffs on October 27, 2015. In addition, on October 30, 2015, TCS provided a response to an initial interrogatory delineating active and separated employees as well as their race and citizenship/nationality by employee number for the class. TCS served objections to the First Set of Requests for Production. Subsequently, the parties met and conferred. The parties agreed to conduct a series of 30(b)(6) depositions so plaintiffs could determine which documents they believed were needed and to learn the basic framework for TCS's internal systems.

10. Plaintiffs sent a broad 30(b)(6) notice, which required TCS to produce 7 different deponents. Between January 25, 2016 and March 17, 2016, TCS produced for deposition the following department heads to facilitate plaintiffs' discovery:

(a) Umesh Kumar (January 15, 2016). Mr. Kumar is the head of the Resource Management Group ("RMG"). RMG is the unit responsible for the assignment of positions (i.e. the "allocation process") for existing personnel with in TCS.

(b) Shyam Chinnari (January 28, 2016). Mr. Chinnari is the head of the Talent Acquisition Group – Technical Recruitment ("TAG"). TAG is the unit responsible for the collection of new hire candidates for placement in new positions with TCS.

(c) Jeevak Sharma (January 28, 2016). Mr. Sharma holds the high level Human Resources position and is responsible for assisting with responses to employee complaints and the maintenance of employee personnel records.

(d) Amit Jindal (February 26, 2016). Mr. Jindal is head of TCS's Immigration Group and is responsible for the application and processing of visas to the United States.

(e) Jennifer Alkiewicz (March 16, 2016). Ms. Alkiewicz is in charge of TCS's campus recruiting program in the United States. This is TCS's hiring program for trainees throughout the United States college system.

(f) Brian Andrillo (March 16, 2016). Mr. Andrillo is head of Professional Recruitment at TCS. Professional Recruitment is the unit responsible for hiring legal, advertising and other non-technical positions for TCS in the United States.

(g) Balaji Ganapathy (March 17, 2016). Mr. Ganapathy is TCS's Chief Diversity Officer and in charge of workforce effectiveness. Workforce effectiveness is the unit which coordinates personnel and other issues for outsourcing projects such as Southern California Edison.

11. Based on the 30(b)(6) depositions, plaintiffs requested all email boxes of certain TCS units as well as those of the 30(b)(6) deponents. In addition they requested databases identified by the deponents.

12. TCS immediately began downloading and converting the databases, and collecting and imaging custodian email boxes and computers. Plaintiffs requested over 200 email custodian boxes alone. TCS's outside vendor processed close to 7 terabytes of information responsive to plaintiffs' broad requests.

13. Each database, although branded with just one bates number, includes extensive amounts of information. The databases produced were as follows:

(a) Visa Information System, which includes among other things, the name, employee number, address, visa status, visa type, relocation, base branch, project, salary information, location and I-94 for all TCS employees who have attained or applied for a U.S. visa from 2011 until the date the database was retrieved for production. It is comprised of over 135,000 lines and 146 horizontal columns. This database was produced to plaintiffs on July 1, 2016.

(b) Career Portal. This portal is a repository of information on career opportunities available at TCS as well as containing external resumes. It is comprised of over 13,600 lines and 21 horizontal columns. This database was produced to plaintiffs on July 14, 2016.

(c) Exciting Opportunities. This TCS internal portal publishes open positions to existing TCS employees and includes information regarding applicants and the posted job opportunities available at TCS for each open position. It is comprised of over 500 lines and 29 horizontal columns. This database was produced to plaintiffs on June 24, 2016.

(d) Requirement Gathering System (RGS). RGS is TCS's central database for the assignment and reassignment of positions at TCS. It lists each job position available, the skill set required, the location, the client name, the identification of the requesting manager, the status of the position and in some cases the candidates proposed, as well as other requirements and information set forth in multiple columns. The information contained in this database contains over 194,000 lines and 33 horizontal

columns and categories of information as to each job position available at TCS. This database and its predecessor database were produced to the plaintiffs on July 14, 2016.

(e) Global Business Associate Management System (GBAMS). GBAMS is TCS's internal database dealing with contract employees and specifically third party vendors who provide those contract employees. It includes the skill set required, the staffing priority, the role name, the job description, the location i.d., the location name, the city, the country code of the project, the date it was set up, the status, whether an associate was selected or not selected, the rate information, the currency and the date that the project will end because these are contract positions. It is comprised of over 31,000 lines and 49 horizontal columns. Data obtained from this database was produced on June 13, 2016.

(f) The Grievance Management Portal. This is TCS's internal HR system where employees lodge grievances with respect to their positions at TCS. The Grievance Management Portal contains a wide variety of information and complaints by specific employees. Plaintiffs provided search terms to yield responsive grievances, and those items were produced to plaintiffs. In total, plaintiffs requested two different searches of the Grievance Management Portal system. This database has over 500 lines and 51 horizontal columns of information. The results of those searches were produced to plaintiffs on May 9, 2016 and September 26, 2016.

14. Each of the above-described core databases do not seem to appear on the chart included in plaintiffs' Motion for Class Certification, or if there, is mischaracterized as equivalent to one page of information. As set forth above, however, the information contained in each databases is quite extensive.

15. As for the content of the custodian email boxes requested, TCS requested a very broad list of search terms including, "United States", "candidate", "Indian", "C.V.", "position", etc. TCS's ESI vendor began running the search terms requested in the 200 plus email boxes, but the sheer volume of responsive emails made searching quickly unworkable – the search terms were simply too broad. For example, the search term "United States" applied to just 5 email boxes yielded over 2,000,000 documents alone. In

July of 2016, I notified plaintiffs that the breadth of the terms proposed were unworkable and asked them to narrow them. A true and correct copy of this email is attached hereto as Exhibit 5.

16. Plaintiffs agreed to alter their search terms but provided a list that unfortunately expanded the number of hits. Again, TCS advised plaintiffs that their search terms were unworkable in light of the number of custodian email boxes and the voluminous number of search term hits.

17. On August 23, 2016, plaintiffs agreed to limit their request to 15 email boxes and on August 31, 2016, proffered a third set of search terms which were unfortunately equally broad. The number of search term hits on the 15 email boxes exceeded 2.5 million documents. TCS again advised plaintiffs that the terms needed to be narrowed, but did not receive further communication on the issue from plaintiffs' counsel. Accordingly, in September 2016, TCS began processing each of the 15 custodians utilizing the broad search terms that plaintiffs proposed. TCS engaged a team of 25 document reviewers in order to expedite the process of delivery of the overly broad email boxes. Production of the requested email boxes to plaintiffs began in November 2016. Several of the custodian boxes required production on an external hard drive, due to data size – they were even too large for an FTP site.

18. While TCS was producing the databases and email boxes, TCS also responded to plaintiffs' additional discovery requests. Notably, although plaintiffs noticed no depositions during this time frame, on an ongoing basis TCS produced salary information, information on the SCE Group, detailed manuals such as the RMG Induction Manual, CV Trackers (7,774 of these excel spreadsheets were produced), TCS's Offer Extended Reports (16,500 lines and 46 columns), Applicant Flow Logs, and other items. Again, the Excel databases or spreadsheets are denoted by only one Bates number. Clearly, however, the arc that plaintiffs show in their chart is related to the number of emails produced at the end of last year in conjunction with plaintiffs' very broad search

terms, as well as documents that plaintiffs informally requested in late January 2017, after their 30(b)(6) depositions. A list of other document productions is set forth below:

| **Item(s) Produced** | **Production Volume** | **Date Produced** |
|---|---|---|
| Excel of Active Employee Contact Information | TCS007338 | May 6, 2016 |
| Career Fair SCE CV – Tracker | TCS007383 | May 9, 2016 |
| Inactive Employee Contact Information | TCS007384 | May 9, 2016 |
| Supplemental Inactive Employee Contact Information | TCS007385-TCS007386 | May 9, 2016 |
| RMG Induction Manual | TCS007391 | June 13, 2016 |
| Offer Extended Reports (16,500 lines, 46 columns) | TCS021914-TCS021915 | September 12, 2016 |
| US Local Hire Salary Info | TCS029666 | September 28, 2016 |
| CV Trackers (7,774 documents) | TCSLTD000617943 - TCSLTD000625716 | December 23, 2016 |
| Applicant Flow Logs (over 30 spreadsheets) | TCSLTD001462690 - TCSLTD001462720 | January 5, 2017 |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of March, 2017, at Los Angeles , California .

/s/ Michelle M. La Mar