```
MICHELLE M. LA MAR (SBN 163038)
mlamar@loeb.com
PATRICK N. DOWNES (SBN 186461)
pdownes@loeb.com
LAURA A. WYTSMA (SBN 189527)
lwytsma@loeb.com
ERIN M. SMITH (SBN 235039)
esmith@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STEVEN HELDT, BRIAN BUCHANAN, and CHRISTOPHER SLAIGHT,<br><br>Plaintiffs,<br><br>v.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>Defendant. | Case No.: 4:15-cv-01696-YGR<br><br>Assigned to Hon. Yvonne Gonzalez Rogers<br><br>**DECLARATION OF JEEVAK SHARMA IN SUPPORT OF TATA CONSULTANCY SERVICES, LTD.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>[CONTAINS REDACTED VERSION OF EXHIBITS 7-14 SOUGHT TO BE SEALED]<br><br>Date: May 16, 2017<br>Time: 2:00 p.m.<br>Location: Courtroom 1, 4th Flr., Oakland<br><br>Complaint Filed:   April 14, 2015 |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

DECLARATION OF JEEVAK SHARMA:
CASE NO.: 4:15-CV-01696-YGR

## DECLARATION OF JEEVAK SHARMA

I, JEEVAK SHARMA, declare as follows:

1. I am currently employed by Tata Consultancy Services, Ltd. ("TCS") in Edison, New Jersey. I give this declaration in support of TCS' Opposition to the Motion for Class Certification that has been filed in the above-referenced matter. The following facts are of my own personal knowledge, and if called upon to do so, I could and would testify competently to such facts under oath.

2. I have been employed by TCS since 2007. I am currently the head of TCS' North America employee retention and employee welfare programs. My duties and responsibilities include managing employee separations and employment records. In this capacity, I am familiar with TCS' personnel documents and other records pertaining to Human Resources matters, including but not limited to hirings, firings, and performance issues.

### TCS' EEO-1 Reports

3. TCS submits an EEO-1 Survey Form to the Equal Employment Opportunity Commission each year. In order to collect the information that is reported on the EEO-1, TCS distributes questionnaires to locally hired employees at the time of hire to allow employees to voluntarily identify their race as either: Hispanic or Latino; White; Black or African American; Asian; Native Hawaiian or other Pacific Islander; American Indian or Alaska Native; or "Two or More Races." TCS does not question an employee's self-identification, and accepts all information reported as truthful. TCS does not require employees who are unwilling to complete the questionnaire to do so. TCS does not require employees on deputation (*i.e.*, temporary transfer) who were hired outside of the United States to complete the survey. However, employees who become United States citizens or green card holders are asked to complete such forms upon transfer to "Local" status. A true and correct copy of the questionnaire used by TCS for purposes of EEO-1 reporting is attached hereto as **Exhibit 1**. The racial classifications on TCS' questionnaire directly match the classifications used on the EEO-1 Survey Form. The EEOC has directed

2

DECLARATION OF JEEVAK SHARMA:
CASE NO.: 4:15-CV-01696-YGR

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

employers not to incorporate additional or different racial categories on the survey form. (*See* www.eeoc.gov/employers/eeo1survey/sample_self_identification.cfm).

4. The survey provides that "Asian" includes "a person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam." Consequently, employees of all of these backgrounds (and possibly others) identify as "Asian," and there is no way to discern "South Asian" or "Indian" employees from other "Asian" categories based on the information reported on the surveys.

### TCS' Equal Employment Opportunity Policies and Training

5. All TCS employees are required as a condition of employment to adhere to the TATA Code of Conduct. A true and correct copy of the TATA Code of Conduct is attached hereto as **Exhibit 2**. The Code of Conduct requires that all employment decisions be made without regard to race, national origin or other protected characteristics. In addition, all employees receive, acknowledge, and are required to comply with TCS' equal employment opportunity policy, and policy against harassment and discrimination, true copies of which are attached hereto as **Exhibits 3** and **4**, respectively. These policies are contained in our employee handbook, and include reporting and investigation procedures.

6. In addition to our policies, all employees are required to take an online training program entitled Title VII Plus: Harassment and Discrimination Prevention Program, which is a two-hour interactive web-based training course which provides an overview of workplace and sexual harassment. Additionally, live training is provided to all managers by TCS' outside counsel at a variety of different locations.

7. As part of my duties, I also oversee the Grievance Management Portal, which is an online system that is used by TCS employees to report their grievances. All grievances are investigated and responded to. Records of the responses are maintained in the Grievance Management Portal. Focusing on the timeframe of April 2011 through March 2016, using the search terms attached hereto as **Exhibit 5** (two sets were provided

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

3

DECLARATION OF JEEVAK SHARMA:
CASE NO.: 4:15-CV-01696-YGR

by plaintiffs' counsel in this action on two different dates), out of 620 complaints responsive to the first set of search terms and 543 complaints responsive to the second set, only five contained any reference to an employee believing that he or she was treated differently or less favorably than a South Asian counterpart.

### The Employee Termination Process

8. Part of my duties includes the oversight of the employee termination process. This includes the termination of employees who have been "benched" or unallocated for prolonged periods of time. If the unallocated employee is an "Expat"—or an employee who has traveled to the United States under a visa— the employee will be returned to his or her home country for a new allocation or termination. If the employee cannot be allocated after returning to his or her foreign base, he or she will be proposed for termination in their home country. Consistent with the requirements of the United States visa program and/or our Deputation Agreements with such employees, Expats are not terminated while in the United States. To be clear, Expats enter into Deputation Agreements upon agreeing to work in countries outside their base country. These agreements specify various terms of the assignment, including the requirement that an Expat must relocate at TCS' direction, and a commitment by TCS that the Expat will not be separated outside of the base country. TCS also promises to pay for the travel expenses for the Expat's return to the home country.

9. "Local" employees—*i.e.* employees who were hired in the United States or who have become United States citizens or green card holders—are subject to a three-tiered system of review before they are terminated for being unallocated. First, if, after a minimum of two weeks, an employee's skillsets and geographic requirements have not aligned (and are not foreseeably likely to align) with available openings with the Resource Management Group, the employee is referred back to their Talent Engagement Partner by the Resource Management Group for possible termination. Talent Engagement Partners are located throughout the United States at TCS Delivery Centers. There are 30 Talent Engagement Partners currently with TCS. From 2011 to the present, that number is 76.

1  Local employees often have strict location constraints and refuse to relocate, which
2  drastically narrows the amount of available openings matching their skillsets. Following
3  that referral, the Talent Engagement Partner reviews the employee's employment history
4  and decides whether to propose the employee for termination. The Talent Engagement
5  Partner then proposes the employee for termination by completing the TCS Termination
6  Form, which records the reasons for termination and usually includes the documentation
7  supporting the Resource Management Group process, and other documentation supporting
8  the termination decision. The Talent Engagement Partner then sends the Termination
9  Form, along with supporting documentation to the TCS Legal Department and to the
10 Deputy Head of Human Resources for review. The final termination decision is then taken
11 by the Deputy Head of Human Resources.

12  10.  Termination decisions undergo review by Human Resources and legal
13 counsel because TCS is committed to retaining locally hired employees whenever it is
14 economically sensible to do so. That is because TCS has made a substantial investment in
15 recruiting and hiring such persons (often requiring payment to headhunters and investment
16 in costly on-campus recruitment initiatives). Further, TCS has invested the time and
17 capital to train the person, and would rather not lose its time and monetary investments.

18  11.  While the review by Human Resources and inside legal counsel is underway,
19 the Resource Management Group continues to search for suitable openings for the
20 employee. If an opening is found and accepted by the employee, the employee will be
21 withdrawn from the termination process. This actually occurred in the case of former
22 named plaintiff Steven Heldt; the termination process for Mr. Heldt was halted when a job
23 was located for him after the Resource Management Group referred his case to his Talent
24 Engagement Partner, as reflected in the record attached hereto as **Exhibit 6**.

25  12.  Attached hereto as **Exhibit 7** is a true and correct copy of the Termination
26 Form completed in connection with the termination of Christopher Slaight.

27  13.  Attached hereto as **Exhibit 8** is a true and correct copy of the Termination
28 Form completed in connection with the termination of Salah Bedeiwi.

Loeb & Loeb
Limited Liability Partnership
Including Professional
Corporations

5

DECLARATION OF JEEVAK SHARMA:
CASE NO.: 4:15-CV-01696-YGR

14. Attached hereto as **Exhibit 9** is a true and correct copy of the Termination Form completed in connection with the termination of Dwight Giovanni.

15. Attached hereto as **Exhibit 10** is a true and correct copy of the Termination Form completed in connection with the termination of Nobel Mandili.

16. Attached hereto as **Exhibit 11** is a true and correct copy of the Termination Form completed in connection with the termination of S. Amir Masoudi.

17. Attached hereto as **Exhibit 12** is a true and correct copy of the Termination Form completed in connection with the termination of Nasser Nashal.

18. Attached hereto as **Exhibit 13** is a true and correct copy of the Termination Form completed in connection with the termination of Loran Peck.

19. Attached hereto as **Exhibit 14** is a true and correct copy of the Termination Form completed in connection with the termination of Steven Webber.

### Mandatory Arbitration Provisions

20. As of July 2015, TCS has required all Local Hires in the United States to execute mutual arbitration agreements with TCS. The form of agreement utilized, a true and correct copy of which is attached hereto as **Exhibit 15**, contains a class action waiver.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20 day of March, 2017 at Edison, New Jersey.

_____
JEEVAK SHARMA

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

6

DECLARATION OF JEEVAK SHARMA:
CASE NO.: 4:15-CV-01696-YGR

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system on March 20, 2017.

Dated: March 20, 2017       /s/Michelle M. La Mar
                            Michelle M. La Mar

7

DECLARATION OF JEEVAK SHARMA:
CASE NO.: 4:15-CV-01696-YGR

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations