1  MICHELLE M. LA MAR (SBN 163038)
   mlamar@loeb.com
2  LAURA A. WYTSMA (SBN 189527)
   lwytsma@loeb.com
3  PATRICK N. DOWNES (SBN 186461)
   pdownes@loeb.com
4  ERIN M. SMITH (SBN 235039)
   esmith@loeb.com
5  LOEB & LOEB LLP
   10100 Santa Monica Blvd., Suite 2200
6  Los Angeles, CA  90067
   Telephone: 310.282.2000
7  Facsimile: 310.282.2200

8  Attorneys for Defendant
   TATA CONSULTANCY SERVICES,
9  LTD.

10

11                 UNITED STATES DISTRICT COURT

12               NORTHERN DISTRICT OF CALIFORNIA

13                      OAKLAND DIVISION

14  STEVEN HELDT, BRIAN BUCHANAN, and    Case No.: 4:15-cv-01696-YGR
    CHRISTOPHER SLAIGHT,
15                                        Assigned to Hon. Yvonne Gonzalez Rogers
                   Plaintiffs,
16
         v.
17                                        **TATA CONSULTANCY SERVICES,**
    TATA CONSULTANCY SERVICES, LTD.,      **LTD.'S RESPONSE TO PLAINTIFFS'**
18                                        **STATEMENT OF ADDITIONAL**
                   Defendant.            **MATERIAL FACTS**
19

20                                        Complaint Filed:     April 14, 2015

21

22        Tata Consultancy Services, Ltd. ("TCS"), submits this consolidated (1) Separate Statement

23  of TCS in Support of Motion for Summary Judgment, along with plaintiffs' response thereto; and

24  (2)  Plaintiffs' Statement of Additional Material Facts in Opposition to TCS' Motion for Summary

25  Judgment, and TCS' response thereto.

26

27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

1

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | **TCS' SEPARATE STATEMENT AND PLAINTIFFS' RESPONSE** | |
|---|---|---|
| **Issue No. 1** | **Plaintiffs Have Not Proven A Pattern Or Practice of Disparate Treatment**<br><br>**Moving Party's Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
| 1. | TCS is a technology company headquartered in Mumbai, India, and conducts business worldwide.<br>Declaration of Jeevak Sharma ("Sharma Decl.") ¶ 2. | Undisputed that Tata is headquartered in Mumbai, India. However, the majority of Tata's revenue is derived from the North America, and Tata employs approximately 29,900 employees in the United States. Answer to 3d. Am. Compl. ¶ 13 (Dkt. #84); TCSLTD003463399 (active employee list) (Dkt. #96-1 at 2); Tata Annual Report 2015-16 at 75, 79 (Ex. 1). |
| 2. | Whether a TCS customer chooses to retain its own staff, to reduce its staff, or to eliminate its staff entirely in connection with a project being handled by TCS, is the customer's exclusive choice. Sharma Decl. ¶ 2. | Undisputed that Tata's customer chooses whether and how to contract with Tata. Otherwise disputed. Tata decides who to hire for open positions and has a corporate policy of favoring South Asian visa workers in staffing U.S. positions. Tata's leadership directive instructs Tata employees to utilize visas to the maximum extent. *See* Pls.' Mot. for Class Certification at 4-11 (Dkt. #115); *see, e.g.*, TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs") (Ex. 2); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS007391-452 at 425 ("RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); TCS177617-18 at 617 ("Visa Ready will be a preference.") (Ex. 7); |

TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9).

Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation:

Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?" A: "Yes."
Q: "Why would you be concerned about that?"
A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position."
Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62).

Tata also has a corporate practice in which it utilizes third party recruiters to locate and deliver South Asians candidates. These recruiters forward resumes to Tata using a template in which the recruiter notes the candidate's nationality and visa status, and many resumes include a candidate's Indian nationality and photograph confirming the candidate's race. *See, e.g.*, TCS038607-08 (noting the applicant's "Nationality" as "Indian" and his "visa status" as "H1B") (Ex. 10); TCS038987 (forwarding Indian candidate and noting "[h]e is in India, but if he gets a project, I can deliver him") (Ex. 11); TCSLTD000617804 (listing Indian nationality on resume) (Ex. 13); TCSLTD000414255-57 (listing Indian nationality on resume and including photograph) (Ex. 14). As a result, a substantial percentage of candidates third party recruiters refer to Tata are South Asian. *Compare* TCS029451 (noting 55% of Altus' 2014-2015 candidate submissions were of "Asian Indian" race) (Ex. 28) *and* TCS029462 (noting 60% of Hexagon's 2015 applicant submissions

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

3

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | | |
|---|---|---|---|
| | | | were Asian) (Ex. 29) *and* TCS029459 (noting 54% of Dextpro's 2014-2015 submissions were Asian) (Ex. 30, *with* Neumark Report ¶¶ 6, 9, 14 (indicating that the relevant labor market is only 12.50% South Asian) (Ex. 20) *and* TCSLTD003466530-34 (noting that Tata's Asian workforce vastly exceeds its placement goals across all of its job categories) (Ex. 31). |
| 3. | TCS staffs its projects based on the skills needed for the assignment.<br>Sharma Decl. ¶ 3. | | Disputed. When staffing positions in the U.S., Tata employs individuals based on their race and national origin, giving preference to South Asian Indian nationals (including those with visas) and utilizing visas to the maximum extent. *See* Pls.' Mot. for Class Certification at 4-11 (Dkt. #115); *see, e.g.*, TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs") (Ex. 2); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS007391-452 at 425 ("RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); TCS177617-18 at 617 ("Visa Ready will be a preference.") (Ex. 7); TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9).<br><br>Both "visa ready" individuals residing in India and applicants residing in the U.S. must apply and interview for jobs in the U.S.  Kumar (30(b)(6)) Dep. Tr. 27:13-29:1, 43:22-44:5 (Jan. 25, 2017) (Ex. 5). When an individual is hired for a U.S. position, that position may come to an end when the work for the client is completed. *Id.* 26:23-25. Once a position comes to an end, an individual |

must again seek a new position within Tata, going through another application and interview process. *Id.* 27:13-28:21. When Tata is hiring for a new position, its staffing of positions is determined by the availability of visa ready individuals, as discussed above.  Virtually 100% of its visa ready individuals are South Asians of Indian nationality. *See* Kumar (30(b)(6)) Dep. Tr. 82:17-83:4 (Jan. 25, 2017) (Ex. 5); Tata's Supp. Resp. to Pls.' Am. Notice of Rule 30(b)(6) Dep. at 4, Ex. A (noting that since 2011, over 41,000 Tata employees have traveled from India to the U.S. on a visa to fill a position in the United States) (Ex. 61); TCSLTD005646947 (2013 list of 9,248 "Visa Ready" workers, all of whom are residing at a "Base Branch" in India) (Ex. 17); TCSLTD005646989 (2012 list of 10,290 "Visa Ready" workers, all of whom are residing at a "Base Branch" in India except for 60 who reside at a "Base Branch" in Singapore) (Ex. 18).

Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation:

Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?"
A: "Yes."
Q: "Why would you be concerned about that?"
A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position."
Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62).

| 4. | The choice of who to staff on projects is made by the TCS project manager or often the client. Sharma Decl. ¶ 3. | Disputed.  Tata's staffing of U.S. positions is dictated by its corporate policy of favoring South Asian visa workers in staffing U.S. positions. Tata's leadership directive instructs RMG to "map" South Asians with "unutilized visas and work permits" to open positions in the U.S. and to |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

utilize visas to the maximum extent. *see* Pls.' Mot. for Class Certification at 4-11 (Dkt. #115); *see, e.g.*, TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs") (Ex. 2); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS007391-452 at 425 ("RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); TCS177617-18 at 617 ("Visa Ready will be a preference.") (Ex. 7); TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9). Tata also has a corporate practice in which it utilizes third party recruiters to locate and deliver South Asians candidates. These recruiters forward resumes to Tata using a template in which the recruiter notes the candidate's nationality and visa status, and many resumes include a candidate's Indian nationality and photograph confirming the candidate's race. *See e.g.,* TCS038607-08 (noting the applicant's "Nationality" as "Indian" and his "visa status" as "H1B") (Ex. 10); TCS038987 (forwarding Indian candidate and noting "[h]e is in India, but if he gets a project, I can deliver him") (Ex. 11); TCSLTD000617804 (listing Indian nationality on resume) (Ex. 13); TCSLTD000414255-57 (listing Indian nationality on resume and including photograph) (Ex. 14). As a result, a substantial percentage of candidates third party recruiters refer to Tata are South Asian. *Compare* TCS029451 (noting 55% of Altus' 2014-2015 candidate submissions were of "Asian Indian" race) (Ex. 28) *and* TCS029462 (noting

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | | |
|---|---|---|---|
| | | | 60% of Hexagon's 2015 applicant submissions were Asian) (Ex. 29) *and* TCS029459 (noting 54% of Dextpro's 2014-2015 submissions were Asian) (Ex. 30, *with* Neumark Report ¶¶ 6, 9, 14 (indicating that the relevant labor market is only 12.50% South Asian) (Ex. 20) *and* TCSLTD003466530-34 (noting that Tata's Asian workforce vastly exceeds its placement goals across all of its job categories) (Ex. 31). |
| 5. | Managers initially choose from existing TCS employees grouped together by the Resource Management Group ("RMG"). Sharma Decl. ¶ 3. | | Disputed. Managers are directed to favor South Asian Indian nationals, particularly those with visas, in staffing U.S. positions. Tata must go through a time consuming and expensive process to apply for and receive a work visa for these individuals, and a strict cap exists to limit the number of foreign workers that can fill U.S. positions. Tata meticulously tracks the availability of "visa ready" employees who can fill positions in the United States. RMG is explicitly instructed to "map" these associates for open U.S. positions and to utilize visas to the maximum extent. *See* Pls.' Mot. for Class Certification at 4-11 (Dkt. #115); *see, e.g.*, TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs") (Ex. 2); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit"), 54:13-19, 88:15-23 (testifying, through 30(b)(6) witness, to Tata's "weekly reports" of visa ready workers) (Ex. 5); TCS007391-452 at 425 ("The visa utilization report is published every fortnight by Chennai Data Support. It gives a view of the number of associates in the branch who have valid visas and work permits, and [are] currently at offshore. . . . RMG should try and map associates with unutilized visas and work permits for onsite |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

7

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

opportunities."), at 407-09 (noting RMG's duties include "tracking of visa ready associates for overseas assignment[s]") (Ex. 6); TCS177617-18 at 617 ("Visa Ready will be a preference.") (Ex. 7); TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9); TCSLTD000181010-15 at 11 (Umesh Kumar, Senior Manager for RMG: "Focus on H1B visa ready from offshore and relocate at onsite. Currently ~36% H1B in US.") (Ex. 15); TCS61414-19 at 414 ("We are working very closely on the Visa ready profile[s] at offshore Bangalore and other location also. . . . We are working closely to get more Visa ready profile[s], [and] will keep you updated.") (Ex. 16); TCSLTD005646989 (2012 "Visa Ready [List] for the next two months" noting a "Grand Total" of 10,290 visa ready employees) (Ex. 17); TCSLTD005646947 (2013 "Visa Ready [List] for the next two months" noting a "Grand Total" of 9,248 visa ready employees) (Ex. 18); TCS061566-67 ("VISA ready list" for 22 client accounts, listing "Visa Type," "Petition Validity Date," "Visa Expiry," and "LCA Location" for 303 visa ready employees available to travel onsite) (Ex. 19); H-1B Fiscal Year (FY) 2017 Cap Season at 2-3, 7-8 (Ex. 12).

As a result of this corporate practice, 70% of Tata's U.S. workforce is visa-dependent, and virtually all of these individuals are South Asian. TCSLTD005646947 (2013 list of 9,248 "Visa Ready" workers, all of whom are residing at a "Base Branch" in India) (Ex. 17); TCSLTD005646989 (2012 list of 10,290 "Visa Ready" workers, all of whom are residing at a "Base Branch" in India except for 60 who reside at a "Base Branch" in Singapore) (Ex. 18); Jindal (30(b)(6)) Dep. Tr. 51:17-52:7 (Feb. 26, 2016) (Q: "From which country do most TCS visa workers come from[?]" A: "India." Q: "Would you say the vast majority comes from India?" A: "Yes.") (Ex. 32); Kumar (30(b)(6)) Dep. Tr. 82:17-83:4 (Jan. 25, 2017) (Ex. 5); Tata's Supp. Resp. to Pls.'

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

8

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

Am. Notice of Rule 30(b)(6) Dep. at 4, Ex. A (noting that since 2011, over 41,000 Tata employees have traveled from India to the U.S. on a visa to fill a position in the United States) (Ex. 61).

Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation:

Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?"
A: "Yes."
Q: "Why would you be concerned about that?"
A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position."
Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62).

Tata also closely tracks when positions are ending, as  individuals who are not immediately hired for a new position are placed in a non-productive status, referred to as being "benched" or "unallocated." Kumar (30(b)(6)) Dep. Tr. 26:16-28:8 (Jan. 25, 2017) (Ex. 5); TCS007391-452 at 407-09 (noting that RMG "track[s] Unallocated/Weekend and month end releases / Onsite returnees at Unit Level across locations" and is responsible for "[pre]-plan[ning] assignments for associates") (Ex. 6). Tata closely monitors the benched status of its employees to ensure that its South Asian visa workers are given first priority for open positions. Kumar (30(b)(6)) Dep. Tr. 17:10-12 (Jan. 25, 2017) (unallocated reports "are generated on a daily basis.") (Ex. 5); Excerpt from TCSLTD0055447590 (unallocated report listing 635 local workers benched for 4 or more weeks, as compared to just 158 expats) (Ex. 58); TCS055851-54 at 853 (noting "[t]here are 136 Local Hires currently unallocated. Out of that 100+ associates are more than one month unallocated.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

9

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | |
|---|---|---|
| | | Request your help to take necessary action from HR to place these associates into project or release them.") (Ex. 59). If an individual is benched for too long, he or she will be terminated.  Kumar (30(b)(6)) Dep. Tr. 15:3-15 (Jan. 25, 2017) (Ex. 5); TCS055851-54 at 853 (Ex. 59). |
| 6. | "Existing" TCS employees means current employees who have been hired from the local labor pool ("local hires"), and "expats" who have been temporarily transferred to the United States on a visa. Sharma Decl. ¶ 3. | Disputed. "Existing" Tata employees means South Asian individuals who are overwhelmingly of Indian descent (including those on a visa), and individuals referred by third party recruiters who are predominantly South Asian.  *See* Kumar (30(b)(6)) Dep. Tr. 82:17-83:4 (Jan. 25, 2017) (Ex. 5); Tata's Supp. Resp. to Pls.' Am. Notice of Rule 30(b)(6) Dep. at 4, Ex. A (noting that since 2011, over 41,000 Tata employees have traveled from India to the U.S. on a visa to fill a position in the United States) (Ex. 61); TCSLTD005646947 (2013 list of 9,248 "Visa Ready" workers, all of whom are residing at a "Base Branch" in India) (Ex. 17); TCSLTD005646989 (2012 list of 10,290 "Visa Ready" workers, all of whom are residing at a "Base Branch" in India except for 60 who reside at a "Base Branch" in Singapore) (Ex. 18). Tata's visa workers are not "temporarily transferred to the United States[,]" but rather are employed in long-term positions. For example, RMG is directed to utilize visas to the maximum extent – *e.g.* 5-7 years. *See* Pls.' Mot. for Class Certification at 4-11 (Dkt. #115); *see, e.g.*, Neumark Report ¶ 6 (noting that Tata's U.S. workforce is between 72.32% and 78.91% South Asian) (Ex. 20); TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs") (Ex. 2); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS038607-08 |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

10

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | |
|---|---|---|
| | | (noting the applicant's "Nationality" as "Indian" and his "visa status" as "H1B") (Ex. 10); TCS038987 (forwarding Indian candidate and noting "[h]e is in India, but if he gets a project, I can deliver him") (Ex. 11); TCSLTD000617804 (listing Indian nationality on resume) (Ex. 13); TCSLTD000414255-57 (listing Indian nationality on resume and including photograph) (Ex. 14). |
| 7. | Existing employees who are "visa ready" in India are also used when job requirements or a lack of availability dictates a need to activate visas and travel to the United States. Sharma Decl. ¶ 3. | Disputed. Existing employees who are "visa ready" in India and who have "unutilized visas and work permits" are "mapped" to open positions in the U.S. and are prioritized for these positions. TCS007391-452 at 425 ("The visa utilization report is published every fortnight by Chennai Data Support. It gives a view of the number of associates in the branch who have valid visas and work permits, and [are] currently at offshore. It also gives a split of how many associates have utilized their visas and work permits. You can split the data branch wise and visa type wise. RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); *see* TCS177617-18, at 617 (RMG Lead Ambika G: "Can we look at Visa ready or visa eligible cvs please[?]" Alok Bhalla: "Visa Ready will be a preference.") (Ex. 7); TCSLTD000181010-15 at 11 (Umesh Kumar, Senior Manager for RMG: "Focus on H1B visa ready from offshore and relocate at onsite. Currently ~36% H1B in US.") (Ex. 15); TCS150731-32 at 731 ("We have got [a] couple of Mainframe requirements[.] . . . Could you please share if any visa ready TCS expats [are] available?") (Ex. 21); TCS038825-32 at 826 ("For Freddi[e] Mac we have 13 open positions @ onsite … for which we need VISA ready profiles[.] . . . Request you share the profiles ASAP") (Ex. 22).<br><br>Tata meticulously tracks the availability of "visa ready" employees who can fill positions in the United States to carry out this corporate objective. Kumar (30(b)(6)) Dep. Tr. 54:13-19, 88:15-23 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, to Tata's "weekly reports" of visa ready |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | |
|---|---|---|
| | | workers) (Ex. 5); *see, e.g.*, TCS007391-452 at 407-09 (noting RMG's duties include "tracking of visa ready associates for overseas assignment[s]") (Ex. 6); TCS61414-19 at 414 ("We are working very closely on the Visa ready profile[s] at offshore Bangalore and other location also. . . . We are working closely to get more Visa ready profile[s], [and] will keep you updated.") (Ex. 16); TCSLTD005646989 (2012 "Visa Ready [List] for the next two months" noting a "Grand Total" of 10,290 visa ready employees) (Ex. 16); TCSLTD005646947 (2013 "Visa Ready [List] for the next two months" noting a "Grand Total" of 9,248 visa ready employees) (Ex. 17); TCS061566-67 ("VISA ready list" for 22 client accounts, listing "Visa Type," "Petition Validity Date," "Visa Expiry," and "LCA Location" for 303 visa ready employees available to travel onsite) (Ex. 19). |
| 8. | RMG only places existing TCS employees.  It does not seek to hire from outside the company. Sharma Decl. ¶ 3. | Disputed. If RMG is unable to fill an open position with existing Tata employees, it may utilize Tata's third-party contracting vendors (also known as "headhunters") to locate potential candidates. Kumar (30(b)(6)) Dep. Tr. 38:7-11 (Jan. 27, 2016) (Q: "Do the RMG leads only look to the individuals who are currently employed within TCS to potentially fill the resource needs of business units?" A: "No."), 38:12-39:14 (noting that RMG will also "look to [its] third-party contracting vendors to give [Tata] a resource" to fill an open position) (Ex. 23); Email from M. La Mar to D. Kotchen, *et al.* (Mar. 16, 2016) (email "attach[ing] the full business associate third party vendor list used by RMG since 2011") (Ex. 24). At times, these third-party contractors, known as "Business Associates" are hired by Tata as full time employees. *See, e.g.*, TCS103509-10 (discussing "FTE hiring of … BA") (Ex. 25); TCS064930-31 ("pls. confirm [non-compete] for the FTE hiring of the BA") (Ex. 26). |
| 9. | If there are no existing employees (local, expat, or visa ready) available for an | Undisputed that third party vendors are used to locate contract employees known as "Business |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | | |
|---|---|---|---|
| | | assignment and the project is short-term (usually less than one year), then TCS will resort to third-party vendors to fill the vacancy with a temporary contractor employed by a third-party vendor. Sharma Decl. ¶ 4. | Associates." Otherwise denied. Business Associates are not temporary workers, and are not hired as a last resort. As with "local hires" Tata utilizes third party vendors to locate and deliver South Asians candidates. These recruiters forward resumes to Tata using a template in which the recruiter notes the candidate's nationality and visa status, and many resumes include a candidate's Indian nationality and photograph confirming the candidate's race. *See* Pls.' Mot. for Class Certification at 4-11 (Dkt. #115); *see, e.g.,* TCS038607-08 (noting the applicant's "Nationality" as "Indian" and his "visa status" as "H1B") (Ex. 10); TCS038987 (forwarding Indian candidate and noting "[h]e is in India, but if he gets a project, I can deliver him") (Ex. 11); TCSLTD000617804 (listing Indian nationality on resume) (Ex. 13); TCSLTD000414255-57 (listing Indian nationality on resume and including photograph) (Ex. 14). As a result, a substantial percentage of candidates third party recruiters refer to Tata are South Asian. *Compare* TCS029451 (vendor applicant report noting that 55% of Altus' 2014-2015 candidate submissions were of "Asian Indian" race) (Ex. 28) *and* TCS029462 (2015 applicant submissions from vendor Hexagon, of which 60% were Asian) (Ex. 29) *and* TCS029459 (2014-2015 submission status report of vendor Dextpro listing 144 of 267 submissions (54%) as Asian) (Ex. 30), *with* Neumark Report ¶¶ 6, 9, 14 (indicating that the relevant labor market is only 12.50% South Asian) (Ex. 20) *and* TCSLTD003466530-6534 (noting that Tata's Asian workforce vastly exceeds its placement goals across all of its job categories) (Ex. 31). |
| 10. | | These temporary contractors (who are paid by their agency) are not substitutes for TCS' regular workforce. Sharma Decl. ¶ 4. | Disputed. Contractors are not temporary workers and are hired in large numbers as a substitute for Tata's regular workforce. *See* Kumar (30(b)(6) Dep. Tr. 76:13-18 (Jan. 27, 2016) (noting, through 30(b)(6) witness, that Tata had 4,000 third-party contractors in the U.S. in 2015) (Ex. 23); TCSLTD000181010-15 at 11 (noting that in fiscal year 2013, Tata had 3,605 "Local Employees" in North America and 2,845 "BAs/Contractors") (Ex. |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

13

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

15). For instance, Tata has hired 260 Business Associates to service Southern California Edison. *See* SCE Business Associate Information. (Ex. 27). As with "local hires" Tata utilizes third party vendors to locate and deliver South Asians candidates. These recruiters forward resumes to Tata using a template in which the recruiter notes the candidate's nationality and visa status, and many resumes include a candidate's Indian nationality and photograph confirming the candidate's race. *See* Pls.' Mot. for Class Certification at 8 (Dkt. #115); *see, e.g.*, TCS038607-08 (noting the applicant's "Nationality" as "Indian" and his "visa status" as "H1B") (Ex. 10); TCS038987 (forwarding Indian candidate and noting "[h]e is in India, but if he gets a project, I can deliver him") (Ex. 11); TCSLTD000617804 (listing Indian nationality on resume) (Ex. 13); TCSLTD000414255-57 (listing Indian nationality on resume and including photograph) (Ex. 14).As a result, a substantial percentage of candidates third party recruiters refer to Tata are South Asian. *Compare* TCS029451 (vendor applicant report noting that 55% of Altus' 2014-2015 candidate submissions were of "Asian Indian" race) (Ex. 28) *and* TCS029462 (2015 applicant submissions from vendor Hexagon, of which 60% were Asian) (Ex. 29) *and* TCS029459 (2014-2015 submission status report of vendor Dextpro listing 144 of 267 submissions (54%) as Asian) (Ex. 30), *with* Neumark Report ¶¶ 6, 9, 14 (indicating that the relevant labor market is only 12.50% South Asian) (Ex. 20) *and* TCSLTD003466530-6534 (noting that Tata's Asian workforce vastly exceeds its placement goals across all of its job categories) (Ex. 31).

| 11. | The choice of who to staff on projects is made by the TCS project manager or often the client.<br>Sharma Decl. ¶ 4. | Disputed.  Tata's staffing of U.S. positions is dictated by its corporate policy of favoring South Asian visa workers in staffing U.S. positions. Tata's leadership directive instructs RMG to "map" South Asians with "unutilized visas and work permits" to open positions in the U.S. and to utilize visas to the maximum extent.  see Pls.' Mot. |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

14

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

for Class Certification at 4-11 (Dkt. #115); see, e.g., TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs") (Ex. 2); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS007391-452 at 425 ("RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); TCS177617-18 at 617 ("Visa Ready will be a preference.") (Ex. 7); TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9). Tata also has a corporate practice in which it utilizes third party recruiters to locate and deliver South Asians candidates. These recruiters forward resumes to Tata using a template in which the recruiter notes the candidate's nationality and visa status, and many resumes include a candidate's Indian nationality and photograph confirming the candidate's race. *See e.g.,* TCS038607-08 (noting the applicant's "Nationality" as "Indian" and his "visa status" as "H1B") (Ex. 10); TCS038987 (forwarding Indian candidate and noting "[h]e is in India, but if he gets a project, I can deliver him") (Ex. 11); TCSLTD000617804 (listing Indian nationality on resume) (Ex. 13); TCSLTD000414255-57 (listing Indian nationality on resume and including photograph) (Ex. 14). As a result, a substantial percentage of candidates third party recruiters refer to Tata are South Asian. Compare TCS029451 (noting 55% of Altus' 2014-2015 candidate submissions were of "Asian Indian" race) (Ex. 28) and TCS029462 (noting 60% of Hexagon's 2015 applicant submissions

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

were Asian) (Ex. 29) and TCS029459 (noting 54% of Dextpro's 2014-2015 submissions were Asian) (Ex. 30, with Neumark Report ¶¶ 6, 9, 14 (indicating that the relevant labor market is only 12.50% South Asian) (Ex. 20) and TCSLTD003466530-34 (noting that Tata's Asian workforce vastly exceeds its placement goals across all of its job categories) (Ex. 31).

Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation:

Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?"
A: "Yes."
Q: "Why would you be concerned about that?"
A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position."
Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62).

Tata also has a corporate practice in which it utilizes third party recruiters to locate and deliver South Asians candidates. These recruiters forward resumes to Tata using a template in which the recruiter notes the candidate's nationality and visa status, and many resumes include a candidate's Indian nationality and photograph confirming the candidate's race.  As a result, a substantial percentage of candidates third party recruiters refer to Tata are South Asian. *Compare* TCS029451 (vendor applicant report noting that 55% of Altus' 2014-2015 candidate submissions were of "Asian Indian" race) (Ex. 28) *and* TCS029462 (2015 applicant submissions from vendor Hexagon, of which 60% were Asian) (Ex. 29) *and* TCS029459 (2014-2015 submission status report of vendor Dextpro listing 144 of 267 submissions (54%) as Asian) (Ex. 30), *with* Neumark Report ¶¶ 6, 9, 14 (indicating that the relevant labor market is only

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

16

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | |
|---|---|---|
| | | 12.50% South Asian) (Ex. 20) *and* TCSLTD003466530-6534 (noting that Tata's Asian workforce vastly exceeds its placement goals across all of its job categories) (Ex. 31); *see, e.g.,* TCS038607-08 (noting the applicant's "Nationality" as "Indian" and his "visa status" as "H1B") (Ex. 10); TCS038987 (forwarding Indian candidate and noting "[h]e is in India, but if he gets a project, I can deliver him") (Ex. 11); TCSLTD000617804 (listing Indian nationality on resume) (Ex. 13); TCSLTD000414255-57 (listing Indian nationality on resume and including photograph) (Ex. 14). |
| 12. | If an unfulfilled project is long-term, TCS' recruiting department, the Talent Acquisition Group or "TAG", will begin the process of recruiting a full-time local hire. Sharma Decl. ¶ 4 | Disputed. Tata's Talent Acquisition Group ("TAG") generally does not do any actual recruiting, and instead relies on third party vendors to supply candidates for open positions within the U.S. Chinnari (30(b)(6)) Dep. Tr. 17:15-18:10 (Jan. 28, 2016) (testifying, through 30(b)(6) witness, that TAG receives resumes "usually … from the vendors. For very few requirements the recruiter may look at the job sites.") (Ex. 69). Tata also has a corporate practice in which it utilizes third party recruiters to locate and deliver South Asians candidates. These recruiters forward resumes to Tata using a template in which the recruiter notes the candidate's nationality and visa status, and many resumes include a candidate's Indian nationality and photograph confirming the candidate's race. *See* TCS038607-08 (noting the applicant's "Nationality" as "Indian" and his "visa status" as "H1B") (Ex. 10); TCS038987 (forwarding Indian candidate and noting "[h]e is in India, but if he gets a project, I can deliver him") (Ex. 11); TCSLTD000617804 (listing Indian nationality on resume) (Ex. 13); TCSLTD000414255-57 (listing Indian nationality on resume and including photograph) (Ex. 14). As a result, a substantial percentage of candidates third party recruiters refer to Tata are South Asian. *Compare* TCS029451 (vendor applicant report noting that 55% of Altus' 2014-2015 candidate submissions were of "Asian Indian" race) (Ex. 28) *and* TCS029462 (2015 applicant submissions from |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | | |
|---|---|---|---|
| | | | vendor Hexagon, of which 60% were Asian) (Ex. 29) *and* TCS029459 (2014-2015 submission status report of vendor Dextpro listing 144 of 267 submissions (54%) as Asian) (Ex. 30), *with* Neumark Report ¶¶ 6, 9, 14 (indicating that the relevant labor market is only 12.50% South Asian) (Ex. 20) *and* TCSLTD003466530-6534 (noting that Tata's Asian workforce vastly exceeds its placement goals across all of its job categories) (Ex. 31). |
| | 13. | TAG only recruits from the United States labor market and does not generally recruit H-1B candidates, even if they are in the United States. Sharma Decl. ¶ 4. | Undisputed that TAG has a practice of filling U.S. positions. Otherwise disputed. Tata receives resumes from third party recruiters who, among other things, identify the nationality and visa status of candidates. Accordingly, TAG must be interested in "recruiting" Indians, including H-1B candidates. *See* TCS038607-08 (noting the applicant's "Nationality" as "Indian" and his "visa status" as "H1B") (Ex. 10); TCS038987 (forwarding Indian candidate and noting "[h]e is in India, but if he gets a project, I can deliver him") (Ex. 11); TCSLTD000617804 (listing Indian nationality on resume) (Ex. 13); TCSLTD000414255-57 (listing Indian nationality on resume and including photograph) (Ex. 14). |
| | 14. | The hiring managers and sometimes the clients generally make the decision of who TCS hires as a full-time employee. Sharma Decl. ¶ 4. | Disputed.  Tata's staffing of U.S. positions is dictated by by its corporate policy of favoring South Asian visa workers in staffing U.S. positions. Tata's leadership directive instructs RMG to "map" South Asians with "unutilized visas and work permits" to open positions in the U.S. and to utilize visas to the maximum extent. see Pls.' Mot. for Class Certification at 4-11 (Dkt. #115); see, e.g., TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs") (Ex. 2); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

18

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-cv-01696-YGR

unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS007391-452 at 425 ("RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); TCS177617-18 at 617 ("Visa Ready will be a preference.") (Ex. 7); TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9). Tata also has a corporate practice in which it utilizes third party recruiters to locate and deliver South Asians candidates. These recruiters forward resumes to Tata using a template in which the recruiter notes the candidate's nationality and visa status, and many resumes include a candidate's Indian nationality and photograph confirming the candidate's race. *See e.g.*, TCS038607-08 (noting the applicant's "Nationality" as "Indian" and his "visa status" as "H1B") (Ex. 10); TCS038987 (forwarding Indian candidate and noting "[h]e is in India, but if he gets a project, I can deliver him") (Ex. 11); TCSLTD000617804 (listing Indian nationality on resume) (Ex. 13); TCSLTD000414255-57 (listing Indian nationality on resume and including photograph) (Ex. 14). As a result, a substantial percentage of candidates third party recruiters refer to Tata are South Asian. Compare TCS029451 (noting 55% of Altus' 2014-2015 candidate submissions were of "Asian Indian" race) (Ex. 28) and TCS029462 (noting 60% of Hexagon's 2015 applicant submissions were Asian) (Ex. 29) and TCS029459 (noting 54% of Dextpro's 2014-2015 submissions were Asian) (Ex. 30, with Neumark Report ¶¶ 6, 9, 14 (indicating that the relevant labor market is only 12.50% South Asian) (Ex. 20) and TCSLTD003466530-34 (noting that Tata's Asian workforce vastly exceeds its placement goals across all of its job categories) (Ex. 31).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation:

Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?"
A: "Yes."
Q: "Why would you be concerned about that?"
A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position."
Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62).

Tata also has a corporate practice in which it utilizes third party recruiters to locate and deliver South Asians candidates. These recruiters forward resumes to Tata using a template in which the recruiter notes the candidate's nationality and visa status, and many resumes include a candidate's Indian nationality and photograph confirming the candidate's race. *See, e.g.*, TCS038607-08 (noting the applicant's "Nationality" as "Indian" and his "visa status" as "H1B") (Ex. 10); TCS038987 (forwarding Indian candidate and noting "[h]e is in India, but if he gets a project, I can deliver him") (Ex. 11); TCSLTD000617804 (listing Indian nationality on resume) (Ex. 13); TCSLTD000414255-57 (listing Indian nationality on resume and including photograph) (Ex. 14). As a result, a substantial percentage of candidates third party recruiters refer to Tata are South Asian. *Compare* TCS029451 (vendor applicant report noting that 55% of Altus' 2014-2015 candidate submissions were of "Asian Indian" race) (Ex. 28) *and* TCS029462 (2015 applicant submissions from vendor Hexagon, of which 60% were Asian) (Ex. 29) *and* TCS029459 (2014-2015 submission status report of vendor Dextpro listing 144 of 267 submissions (54%) as Asian) (Ex. 30), *with* Neumark Report ¶¶ 6, 9, 14 (indicating that the

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

20

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | | |
|---|---|---|---|
| 1<br>2<br>3 | | | relevant labor market is only 12.50% South Asian) (Ex. 20) *and* TCSLTD003466530-6534 (noting that Tata's Asian workforce vastly exceeds its placement goals across all of its job categories) (Ex. 31). |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25 | 15. | The only statistics Plaintiffs have identified to support their "pattern and practice" discrimination claim are from (1) 2010 census data reflecting the number of South-Asians living in the United States, (2) a survey by the Association of Information Technology Professionals ("AITP") (a networking organization for paying members) as to the demographics of its membership, and (3) an assumption as to the composition of TCS' workforce, which plaintiffs allege is "approximately 95% South Asian workers (primarily from India)."<br>Third Am. Compl. (Dkt. No. 82) ¶¶ 22-23 and fn. 2.<br>Buchanan Interrogatory Responses (La Mar Decl. Ex. C, Resp. to Interrogatory Nos. 8, 9, 11, 12, 15, 16 and 17).<br>Slaight Interrogatory Responses (La Mar Decl. Ex. D, Resp. to Interrogatory Nos. 8, 11, 12, 15 and 16) | Disputed. Tata incorrectly cites to statistics contained in Plaintiffs' Third Amended Complaint. Yet Plaintiffs have identified, and rely upon, statistics cited in the expert report of Dr. David Neumark to support their pattern and practice discrimination claim. *See* Neumark Report ¶¶ 6-9 (Ex. 20). These statistics show that from 2011 through April 2015, between 72.32% and 78.91% of Tata's United States workforce was South Asian, while only 12.50% of the United States' Computer Systems Design and Related Services industry was South Asian – a difference of between 197.61 and 215.87 standard deviations. *Id.* ¶¶ 6, 14, Table 1. During this same time period, the percentage of non-South Asians who were terminated was between 11.15% and 12.57%, whereas the percentage of South Asians who were terminated was between 0.21% and 0.97% - a difference of 47.27 to 57.15 standard deviations. *Id.* ¶¶ 7, 17, Table 3.a-3.e. The majority of South Asian terminations occurred from the bench (between 7.55% and 8.51%, of South Asians were terminated from the bench, as compared to between 0.15% and 0.65% of non-South Asians, a difference of between 38.86 to 46.66 standard deviations). *Id.* ¶¶ 8, 18, Table 3.a-3.e. The statistical likelihood that these disparities are due to chance – as opposed to a systematic difference in hiring or terminations favoring one group over the other, is less than 0.0000001%, or less than 1 in 1 billion. *Id.* ¶¶ 6-9, 14, 17-18.<br><br>**Plaintiffs' Objection:** Fact is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2). |
| 26<br>27<br>28 | 16. | Plaintiffs' statistics include existing TCS employees hired in India and temporarily on assignment in the United States pursuant to approved work | Disputed. Tata incorrectly cites to statistics contained in Plaintiffs' Third Amended Complaint. Plaintiffs' statistics, which are discussed in Dr. Neumark's report, include individuals for whom Tata secures a visa and who are then "mapped," |

Loeb & Loeb<br>A Limited Liability Partnership<br>Including Professional<br>Corporations

13319338.1
205625-10015

TCS' RESPONSE TO PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS: CASE NO.: 4:15-CV-01696-YGR

| | | |
|---|---|---|
| | visas.<br>Third Am. Compl. (Dkt. No. 82) ¶¶ 22-23 and fn. 2. | *i.e.* given preference for open U.S. positions. Expats are not "temporarily" on assignment in the United States, but rather, per Tata's corporate policy, remain in the U.S. for the maximum extent of their visas – *i.e.* 5-7 years. *See* Neumark Report ¶ 13 (Ex. 20); Jindal (30(b)(6)) Dep. Tr. 51:17-52:7 (Feb. 26, 2016) (Q: "From which country do most TCS visa workers come from[?]" A: "India." Q: "Would you say the vast majority comes from India?" A: "Yes.") (Ex. 32); TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs.") (Ex. 2); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS090008 ("Since I have completed 7 years of L1A, I will have to travel back [to India]") (Ex. 33).<br><br>**Plaintiffs' Objection:** Fact is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2). |
| 17. | Plaintiffs' statistics include TCS employees authorized to enter the United States to work under a multinational trade agreement to which both India and the United States are parties.<br>Third Am. Compl. (Dkt. No. 82) ¶¶ 22-23 and fn. 2 | Disputed. No multinational trade agreement is relevant to this case. *See* Pls.' Letter to Judge Gonzalez Rogers at 2 (Dkt. #94). Further, Tata incorrectly cites to statistics contained in Plaintiffs' Third Amended Complaint, none of which make any reference to a "multinational trade agreement to which both India and the United States are parties." *See* Pls.' Third Am. Compl. ¶¶ 22-23 & n.2 (Dkt. #82).<br><br>**Plaintiffs' Objection:** Fact is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2). |
| 18. | Plaintiffs' statistics are not confined to the demographics of technical workers in the United States, but rather on the percentage of "South-Asians" in the population at large as reflected in seven-year-old census data. | Disputed. Tata incorrectly cites to statistics contained in Plaintiffs' Third Amended Complaint. Dr. Neumark properly identifies the relevant labor market in his report as the market for United States' computing workforce, *i.e.* the Computer Systems Design and Related Services industry in which Tata operates and "which corresponds closely to the most common" positions at Tata. |

| | | |
|---|---|---|
| | Third Am. Compl. (Dkt. No. 82) ¶¶ 22-23 and fn. 2 | Neumark Report ¶¶ 11, 14 (Ex. 20). When analyzing terminations at Tata, the relevant labor market is Tata's workforce in the United States. *Id.* ¶ 16.<br><br>**Plaintiffs' Objection:** Fact is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2). |
| 19. | The census data Plaintiffs rely on does not show the demographics of qualified IT professionals in the United States.<br>Third Am. Compl. (Dkt. No. 82) ¶¶ 22-23 and fn. 2 | Disputed. Tata incorrectly cites to statistics contained in Plaintiffs' Third Amended Complaint. Dr. Neumark properly identifies the relevant labor market in his report as the market for United States' computing workforce, *i.e.* the Computer Systems Design and Related Services industry in which Tata operates. Neumark Report ¶¶ 11, 14 (Ex. 20). As explained in Dr. Neumark's report, "[d]ata on the United States' computer work force [was] derived from the American Community Survey (ACS), for the years 2011 to 2014." *Id.* ¶ 12.<br><br>**Plaintiffs' Objection:** Fact is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2). |
| 20. | Plaintiffs' statistics are not confined to the geographic regions where they worked or sought work.<br>Third Am. Compl. (Dkt. No. 82) ¶¶ 22-23 and fn. 2 | Disputed. Tata's discriminatory scheme is not limited to the locations where the Plaintiffs worked or sought work, but rather, this scheme exists nationwide and affects non-South Asians across the United States. *See, e.g.*, Neumark Report ¶¶ 6-9 (Ex. 20); TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs.") (Ex. 2); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS177617-18 at 617 ("Visa Ready will be a preference.") (Ex. 7); TCSLTD000181010-15 at 11 (Umesh Kumar, Senior Manager for RMG: "Focus on H1B visa ready from offshore and relocate at onsite") (Ex. 15). While Tata argues that 43% of the IT workers in the Los Angeles, California area are "Asian." this case involves discrimination in favor of *South* Asians and against non-South Asians. South Asians make up only 13.66% of the national IT labor market and 14.79% of the Los Angeles, California IT labor market. *See* Neumark Decl. |

| | | Table 1 (Mar. 6, 2017)) (Ex. 64). |
|---|---|---|
| | | **Plaintiffs' Objection:** Fact is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2). |

| Issue No. 2 | **There Is No Genuine Issue Of Material Fact As To Buchanan's Individual Discrimination Claims** <br><br> **Moving Party's Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
|---|---|---|
| 21. | Buchanan was never employed by TCS. He worked for Southern California Edison ("SCE") as an "IT Specialist." La Mar Decl. Ex. A at 19:6-20:11. | Undisputed that Mr. Buchanan was never employed by Tata, and that he worked for Southern California Edison ("SCE") as an "IT Specialist 4." Buchanan Dep. Tr. 19:6-8 (Sept. 21, 2016) (Ex. 34). |
| 22. | In 2013, SCE announced that it was outsourcing its IT functions. La Mar Decl. Ex. at 24:15-19; 33:22-23. | Undisputed. |
| 23. | Buchanan participated in a knowledge transfer to TCS, and was eventually terminated by SCE in February 2015. La Mar Decl. Ex. at 110:13-15. | Undisputed that Mr. Buchanan was terminated on February 6, 2015. Buchanan Dep. Tr. 110:13-18 (Sept. 21, 2016) (Ex. 34). Otherwise disputed. Mr. Buchanan was required to train the Tata employees taking over his position with Southern California Edison ("SCE"). *Id.* 45:3-5, 46:8-14, 49:7-17, 50:20-25. These individuals were "mapped" to Mr. Buchanan's position and scheduled to arrive at SCE in August and September 2014 without affording Mr. Buchanan the opportunity to compete for his position. *Id.* 45:20-26:6. Further, these three individuals were lesser experienced South Asian visa holders. *Id.* 48:18-24, 49:7-17, 54:4-10, 58:13-16, 174:1-13. Mr. Buchanan was required to train his replacements as a condition of his severance package. *Id.* 133:24-134:10. |
| 24. | When asked in his deposition why he was suing TCS, Buchanan responded: "Well, I feel that I was discriminated | Disputed. When asked in his deposition why he was suing Tata, Mr. Buchanan responded "Well, I feel that I was discriminated against from my former position, not given the opportunity to apply |

| Issue No. 2 | **There Is No Genuine Issue Of Material Fact As To Buchanan's Individual Discrimination Claims**<br><br>**Moving Party's Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
|---|---|---|
| | against from my former position, not given the opportunity to apply for it, and I also feel that for, you know, loss of wages." La Mar Decl. Ex. A at 58:2-7. | for it, and I also feel that for, you know loss of wages." Buchanan Dep. Tr. 58:2-7 (Sept. 21, 2016) (Ex. 34). Mr. Buchanan further explained that when he applied to a position with Tata at the job fair sponsored by Southern California Edison ("SCE"), the Tata employee was dismissive of Mr. Buchanan and showed little interest in accepting his resume for consideration for an open position. *Id.* 60:22-61: 24, 70:19-71:5 (noting "[a]t first they really weren't interested in taking the resume, and it was a brief, short conversation. He was dismissive. [He] [t]ook the resume almost … unwillfully, and turned back to the conversation that they were having with the other Indian gentleman, in Hindi, and that was it."). |
| 25. | Buchanan never attended any town hall meeting set up by TCS to advise SCE employees about positions and hiring with TCS. La Mar Decl. Ex. A at 66:4-15. | Disputed. Mr. Buchanan testified that while he received multiple emails regarding the town hall meetings, the emails did not "say anything about interviewing or hiring[,]" and he did not attend the meetings as they were scheduled during times that he was unavailable. Buchanan Dep. Tr. 62:5-24, 66:20-23 (Sept. 21, 2016) (Ex. 34).<br><br>**Plaintiffs' Objection:** Objection to form; misstates the witness' testimony. |
| 26. | Buchanan did not apply online apply online for a position. La Mar Decl. at 86:23-87:4. | Undisputed that Mr. Buchanan did not apply online for his position because "there was no job that was being offered [online] for [his] specific skills set at that time." Buchanan Dep. Tr. 86:16-22 (Sept. 21, 2016) (Ex. 34). |
| 27. | Buchanan alleges that he was "not allowed" to apply to TCS based on his attendance at a job fair in October 2014, in which | Disputed. Mr. Buchanan testified that he was "not given the opportunity to apply for" his former position at Southern California Edison ("SCE") |

| Issue No. 2 | **There Is No Genuine Issue Of Material Fact As To Buchanan's Individual Discrimination Claims**<br><br>**Moving Party's Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
|---|---|---|
|  | TCS (along with 30 other prospective employers) participated. La Mar Decl. Ex. A at 60:22-61:24. | with Tata at the October 2014 job fair. Buchanan Dep. Tr. 58:2-6 (Sept. 21, 2016) (Ex. 34). Mr. Buchanan further testified that he was required to train three Tata employees for his position, and that when he submitted his resume to apply for a position within Tata, the Tata employee was dismissive of Mr. Buchanan and showed little interest in accepting his resume for consideration for an open position. *Id.* 58:8-15, 60:22-61:24. Tata never contacted Mr. Buchanan regarding his application. *Id.* 168:20-169:8. |
| 28. | According to Buchanan, the TCS booth was staffed by three or four TCS employees speaking to each other in Hindi, one of whom broke away from the discussion to have a brief conversation with Buchanan. La Mar Decl. Ex. A at 60:22-61:24. | Undisputed that Mr. Buchanan testified that the Tata booth "was manned by three or four employees of TCS. They were in conversation with other people from India. They were all speaking Hindi. I walked up and inquired about a position and talked to one of the persons, [who] stepped away briefly, and talked to me[.]" Buchanan Dep. Tr. 61:9-15 (Sept. 21, 2016) (Ex. 34). |
| 29. | Buchanan alleges that the tone of the conversation was dismissive, and that a TCS employee accepted Buchanan's resume unwillingly and then quickly resumed discussion with other TCS employees. La Mar Decl. Ex. A at 70:19-71:5 | Undisputed that Mr. Buchanan testified that the Tata employee was not interested in taking his resume, that the conversation was short and brief, and that after taking Mr. Buchanan's resume "almost … unwillfully, [the employee] turned back to the conversation that they were having with the other Indian gentleman, in Hindi, and that was it." Buchanan Dep. Tr. 61:19-24 (Sept. 21, 2016) (Ex. 34). Mr. Buchanan further testified that the Tata employee "couldn't wait to get … rid of me and back to the conversation he was having with the other gentleman." *Id.* 71:3-5. |
| 30. | Buchanan testified that he has "no idea" why the TCS employees at the job fair were dismissive." | Disputed. When asked during his deposition whether he believed that Tata was dismissive at the job fair "because they wanted to hire an Indian[,]" Mr. Buchanan replied, "I don't know. I have no |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

26

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-cv-01696-YGR

| Issue No. 2 | **There Is No Genuine Issue Of Material Fact As To Buchanan's Individual Discrimination Claims**<br><br>**Moving Party's Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
|---|---|---|
| | La Mar Decl. Ex. A at 89:17-22. | idea what they were thinking. Maybe they just don't like old white bald men" and went on to further testify that he was discriminated against by Tata on the basis of his race and national origin. Buchanan Dep. Tr. 89:17-22, 90:13-21 (Sept. 21, 2016) (Ex. 34). |
| 31. | Buchanan did nothing to follow up with TCS after the job fair. La Mar Decl. Ex. A at 86:13-15. | Disputed. Mr. Buchanan testified that he attended meetings with Southern California Edison ("SCE") following the career fair in which he was told that "there would be further emails as [SCE] went through the process [with Tata], and positions became available[,]" and that he would be contacted by Tata if the company "decided to hire from the Edison pool[.]" Buchanan Dep. Tr. 92:3-93:1 (Sept. 21, 2016) (Ex. 34). |
| 32. | Buchanan handed out 20-30 resumes in total to prospective employers at the career fair, but received no interviews or any responses except from one company that invited him to periodically check its website for openings. La Mar Decl. Ex. A at 79:10-22; 200:14-202:13. | Undisputed that Mr. Buchanan handed out approximately 20-30 resumes to prospective employers in the Los Angeles area at the job fair. Buchanan Dep. Tr. 79:10-12 (Sept. 21, 2016) (Ex. 34). Otherwise disputed. Mr. Buchanan testified that he underwent an informal interview at the job fair with Accenture for positions at Southern California Gas, and received a response email from Accenture informing him that there were no positions available at that time, but to continue to check the company's website and to apply online to any openings. *Id.* 67:24-68:16, 201:13-202:14.<br><br>**Plaintiffs' Objection:** Objection to form; asked and answered. |
| 33. | On August 2014, Buchanan was invited by email to several TCS town halls to learn more about employment opportunities with TCS.  The email announcing the town hall | Undisputed that in August 2014, Mr. Buchanan was invited by email to several Tata town halls taking place the following week (August 12 through August 15) to learn more about employment opportunities with Tata. Buchanan |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

27

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| Issue No. 2 | **There Is No Genuine Issue Of Material Fact As To Buchanan's Individual Discrimination Claims**<br><br>**Moving Party's Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
|---|---|---|
| | meetings included an electronic calendar invitation, which Buchanan rejected. Sharma Decl. Ex. K; La Mar Decl. Ex. A at 66:4-67:18. | Dep. Ex. 3 (Ex. 35). Also undisputed that Mr. Buchanan rejected the electronic calendar invite for the town hall meeting as "in August, we were pretty busy and I was on vacation, so I might not have been able [to attend]." Buchanan Dep. Ex. 4 (Ex. 36); Buchanan Dep. Tr. 66:20-23 (Sept. 21, 2016) (Ex. 34).<br><br>**Plaintiffs' Objection:** Objection to form; misstates the witness' testimony. |
| 34. | Buchanan has "no idea" if the town hall meetings and application process was discriminatory—because he chose not to participate.  La Mar Dec. Ex. A at 65:21-66:3 | Disputed. Mr. Buchanan testified as follows:<br><br>Q: "Are you aware how many people who applied through the town hall schedule, or through the town hall meetings were actually hired by TCS?"<br>A:"No."<br>Q: "So then I take it you don't know whether or not this process favored Indians?"<br>A: "No idea."<br>Buchanan Dep. Tr. 65:21-66:3 (Sept. 21, 2016) (Ex. 34).<br><br>Further, at the time of the job fair in October 2014, Mr. Buchanan had no knowledge of Tata's corporate policy and discriminatory practice of favoring South Asian visa holders in staffing U.S. positions or its practice of relying on third party recruiters to deliver South Asian candidates. *See* Buchanan Decl. ¶¶ 2-3 (Mar. 2, 2017) (Ex. 37).<br><br>**Plaintiffs' Objection:** Objection to form. |
| 35. | Buchanan's only attempt to obtain employment with TCS was dropping off his resume at the job fair. La Mar Decl. Ex. A at 86:23- | Disputed. Mr. Buchanan attempted to obtain employment with Tata by: (1) handing his resume to a Tata employee at the job fair and informing the gentleman that he wanted to apply to a general |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

28

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| Issue No. 2 | **There Is No Genuine Issue Of Material Fact As To Buchanan's Individual Discrimination Claims**<br><br>**Moving Party's Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
|---|---|---|
| | 25. | application support position with Tata; (2) looking for available positions with Tata on its online career portal; and (3) attending meetings with Southern California Edison management discussing open positions within Tata and Tata's hiring process. Buchanan Dep. Tr. 60:25-61:24, 64:18-23, 71:6-9, 86:16-21, 92:3-93:1 (Sept. 21, 2016) (Ex. 34). |
| 36. | Buchanan never subsequently tried to apply at TCS after the job fair.<br>La Mar Decl. Ex. A at 96:5-7. | Disputed. Mr. Buchanan attempted to apply to open positions with Tata by visiting its online career portal, but there were no job postings that matched his skill set at the time. Buchanan Dep. Tr. 86:16-21 (Sept. 21, 2016) (Ex. 34). |
| 37. | Buchanan has never identified a specific job at TCS that he wanted; he looked online but saw no TCS positions matching his skills, and does not know whether a "general applications support" position (the position he wanted) was available at TCS when he attended the job fair.<br> La Mar Decl. Ex. A at 71:6-12; 86:16-87:4. | Undisputed that Mr. Buchanan tried to apply to positions at Tata by visiting its online career portal, but there were no job postings that matched his skill set at the time. Buchanan Dep. Tr. 86:16-21 (Sept. 21, 2016) (Ex. 34). Otherwise disputed. Mr. Buchanan informed Tata at the job fair that he "was applying for the general … application[s] support" position, which was similar to his current role at Southern California Edison ("SCE"). *Id.* 19:13-15, 71:6-9, 119:20-24. Mr. Buchanan knew that this position existed as he trained three individuals from Tata who took over his position at SCE. *Id.* 58:8-16. Further, Mr. Buchanan's entire team that performed general applications support was outsourced to Tata. *Id.* 56:3-14; Buchanan Dep. Ex. 14 ¶ 20 (Ex. 38). Moreover, Tata's own data indicates that prior to Mr. Buchanan's termination, 14 individuals were hired by Tata as Associate Consultants to perform IT Specialist 4 roles at SCE. Buchanan Dep. Tr. 56:3-14 (Sept. 21, 2016) (Ex. 34); Excerpt of SCE Data (Ex. 39). 12 of these individuals were on visas, and another 6 |

| Issue No. 2 | **There Is No Genuine Issue Of Material Fact As To Buchanan's Individual Discrimination Claims**<br><br>**Moving Party's Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
|---|---|---|
| | | were South Asian. Excerpt of SCE Data (Ex. 39). Mr. Buchanan's former colleagues, Joon Lee and Srinivas Chilukuri, also assumed this role following Mr. Buchanan's termination. Buchanan Dep. Tr. 56:3-14 (Sept. 21, 2016) (Ex. 34). |
| 38. | Buchanan testified that he believes TCS discriminated against him because he is white, TCS employees were dismissive at a job fair, and "the statistics."<br>La Mar Decl. Ex. A at 91:9-15. | Disputed. Mr. Buchanan testified that he believes Tata discriminated against him (1) on the basis of his race, national origin, and American citizenship; (2) as he was not given the opportunity to apply to his former Southern California Edison position with Tata, whereas the majority of individuals hired by Tata were of Indian or South Asia descent; and (3) the Tata employees at the job fair were dismissive of him and failed to follow-up with Mr. Buchanan regarding his application. Buchanan Dep. Tr. 58:2-6, 70:19-71:5, 82:1-6, 83:1-15, 86:5-12 (Sept. 21, 2016) (Ex. 34). Mr. Buchanan also testified that "ancillary facts" supporting his claim of discrimination include statistics concerning the demographics of Tata's workforce. *Id.* 88:22-25, 91:14-15, 120:20-121:3.<br><br>Further, at the time of the job fair in October 2014, Mr. Buchanan had no knowledge of Tata's corporate policy and discriminatory practice of favoring South Asian visa holders in staffing U.S. positions or its practice of relying on third party recruiters to deliver South Asian candidates. *See* Buchanan Decl. ¶¶ 2-3 (Mar. 2, 2017) (Ex. 37). Mr. Buchanan believes that Tata's rejection of his employment application was discriminatory. *Id.* ¶ 3.<br><br>**Plaintiffs' Objection:** Asked and answered. |
| 39. | The statistics Buchanan | Disputed in part. Mr. Buchanan testified that the |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

30

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| Issue No. 2 | **There Is No Genuine Issue Of Material Fact As To Buchanan's Individual Discrimination Claims**<br><br>**Moving Party's Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
|---|---|---|
| | referenced come from nondescript internet searches suggesting that the TCS workforce is 90 percent Indian. Buchanan is unaware of how this purported data was computed.<br>La Mar Decl. Ex. A at 120:8-121:9; 122:5-8; 190:21-195:9. | statistics he referenced in his deposition came from the Bureau of Labor and internet searches which indicated that Tata's workforce was over 90% Indian. Buchanan Dep. Tr. 120:8-13, 120:20-121:3 (Sept. 21, 2016) (Ex. 34). Further, Tata did not produce statistical data concerning its discriminatory practices until well after Mr. Buchanan's deposition. *See* Pls.' Reply in Support of Mot. to Amend Complaint at 6 (Dkt. #114); Tata Document Production Log at 2-3 (Ex. 66).<br><br>**Plaintiffs' Objection:** Objection to form; argumentative. |
| 40. | Buchanan knows of no facts to support the complaint's allegation that TCS senior managers maintained "a culture of hostility toward non-acceptance of American workers."<br>La Mar Decl. Ex. A at 225:6-17. | Undisputed that when asked whether he had any facts to support the statement that "'among [Tata's] senior managers, there is a culture of hostility towards a non-acceptance of American workers[,]'" Mr. Buchanan replied "I don't have any facts to support that statement offhand. But maybe the other two people in the lawsuit had facts to that." Buchanan Dep. Tr. 225:6-17 (Sept. 21, 2016) (Ex. 34). Otherwise disputed. Discovery in this case is incomplete, and at the time of Mr. Buchanan's testimony, Tata had produced almost no discovery. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). Further, Tata only just recently produced over 4 million documents, which Plaintiffs are in the process of reviewing, and the vast majority of Tata's documents are designated "Highly Confidential – Attorneys' Eyes Only," precluding Mr. Buchanan from reviewing them. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). A preliminary review of some of these |

| Issue No. 2 | There Is No Genuine Issue Of Material Fact As To Buchanan's Individual Discrimination Claims<br><br>Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| | | documents show that Tata overwhelmingly favors South Asians in its hiring decisions, prioritizes visa workers for open positions, seeks to utilize visas to the maximum extent, and benches, then terminates, the comparatively few non-South Asians it hires in the U.S. *See, e.g.*, Neumark Report ¶¶ 6-9 (Ex. 20); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS151793-94 at 793 (same) (Ex. 40); TCS153136-38 at 137 (same) (Ex. 41); TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs.") (Ex. 2); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS007391-452 at 425 ("RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); TCS177617-18 at 617 (RMG Lead Ambika G: "Can we look at Visa ready or visa eligible cvs please[?]" Alok Bhalla: "Visa Ready will be a preference.") (Ex. 7); TCSLTD000181010-15 at 11 (Umesh Kumar, Senior Manager for RMG: "Focus on H1B visa ready from offshore and relocate at onsite. Currently ~36% H1B in US.") (Ex. 8); TCS150731-32 at 731 ("We have got [a] couple of Mainframe requirements[.] . . . Could you please share if any visa ready TCS expats [are] available?") (Ex. 21); TCS038825-32 at 826 ("For Freddi[e] Mac we have 13 open positions @ onsite |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

| Issue No. 2 | **There Is No Genuine Issue Of Material Fact As To Buchanan's Individual Discrimination Claims**<br><br>**Moving Party's Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
|---|---|---|
| | | … for which we need VISA ready profiles[.] . . . Request you share the profiles ASAP") (Ex. 22); TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9).<br><br>Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation:<br><br>Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?"<br>A: "Yes."<br>Q: "Why would you be concerned about that?"<br>A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position."<br>Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62).<br><br>Tata also has a corporate practice in which it utilizes third party recruiters to locate and deliver South Asians candidates. These recruiters forward resumes to Tata using a template in which the recruiter notes the candidate's nationality and visa status, and many resumes include a candidate's Indian nationality and photograph confirming the candidate's race. *See, e.g.*, TCS038607-08  (noting the applicant's "Nationality" as "Indian" and his "visa status" as "H1B") (Ex. 10); TCS038987 (forwarding Indian candidate and noting "[h]e is in India, but if he gets a project, I can deliver him") |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

33

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| Issue No. 2 | There Is No Genuine Issue Of Material Fact As To Buchanan's Individual Discrimination Claims<br><br>Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| | | (Ex. 11); TCSLTD000617804 (listing Indian nationality on resume) (Ex. 13); TCSLTD000414255-57 (listing Indian nationality on resume and including photograph) (Ex. 14). As a result, a substantial percentage of candidates third party recruiters refer to Tata are South Asian. *Compare* TCS029451 (vendor applicant report noting that 55% of Altus' 2014-2015 candidate submissions were of "Asian Indian" race) (Ex. 28) *and* TCS029462 (2015 applicant submissions from vendor Hexagon, of which 60% were Asian) (Ex. 29) *and* TCS029459 (2014-2015 submission status report of vendor Dextpro listing 144 of 267 submissions (54%) as Asian) (Ex. 30), *with* Neumark Report ¶¶ 6, 9, 14 (indicating that the relevant labor market is only 12.50% South Asian) (Ex. 20) *and* TCSLTD003466530-6534 (noting that Tata's Asian workforce vastly exceeds its placement goals across all of its job categories) (Ex. 31).<br><br>Further, testimony from Tata's former applicants and employees also support this allegation. *See, e.g.*, Giovanni Decl. ¶¶ 2-3 (Feb. 20, 2017) (noting that virtually all resumes forwarded to him by Tata for hiring belonged to South Asians and that he was called a "typical American" by his Tata manager) (Ex. 42); Webber Decl. ¶ 5 (Jan. 18, 2017) (testifying to being replaced on the Freddie Mac project with a less qualified Indian employee and terminated after a prolonged bench period) (Ex. 43); Masoudi Decl. ¶7 (Jan. 19, 2017) (targeted and treated poorly by his Indian colleagues at Tata, as Mr. Masoudi was "not one of them" because he was "not Indian") (Ex. 44); |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

34

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| Issue No. 2 | **There Is No Genuine Issue Of Material Fact As To Buchanan's Individual Discrimination Claims**<br><br>**Moving Party's Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
|---|---|---|
| | | Mandili Decl. ¶¶ 3-6 (Jan. 18, 2017) (required by Tata to train the H-1B visa worker who assumed his role before being placed on the bench and terminated) (Ex. 45); Wilson Decl. ¶¶ 2, 5-6 (Jan. 19, 2017) (discussing Tata's bench policy favoring Indian employees and noting that she remained on the bench for the vast majority of her employment with Tata) (Ex. 46); Nahshal Decl. ¶¶ 3-5 (Jan. 18, 2017) (terminating Mr. Nahshal after 5 months on the bench and favoring H-1B visa holders for open positions) (Ex. 47); Bradley Decl. ¶¶ 4-5 (Jan. 17, 2017) (receiving no follow-up from Tata after applying for a position with the company at the SCE job fair, despite having worked with SCE since 1998 and having over 16 years of experience with the company) (Ex. 48). |
| 41. | He also knows of no facts to corroborate the allegation in the complaint that a TCS human resources representative (1) told recruiters to focus on Indian candidates, (2) expressed a dislike for Americans, and (3) stated that Indians were smarter and better qualified. La Mar Decl. Ex. A at 226:5-228:15. | Disputed. When asked whether he had any facts supporting the statement that "'Mr. Saravanan has instructed the recruiters within the talent acquisition unit to focus primarily on hiring Indians for the positions in the United States,'" Mr. Buchanan responded that the statistics previously discussed during his deposition and internet articles concerning Tata employees' experiences supported this statement. Buchanan Dep. Tr. 226:12-24 (Sept. 21, 2016) (Ex. 34). Mr. Buchanan also suggested that the other named Plaintiffs in the case may have knowledge of these statements. *Id.* 228:1-3.<br><br>Further, at the time of his deposition, Mr. Buchanan<br>Mr. Buchanan had no knowledge of Tata's corporate policy and discriminatory practice of |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-cv-01696-YGR

| Issue No. 2 | **There Is No Genuine Issue Of Material Fact As To Buchanan's Individual Discrimination Claims**<br><br>**Moving Party's Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
|---|---|---|
|  |  | favoring South Asian visa holders in staffing U.S. positions or its practice of relying on third party recruiters to deliver South Asian candidates. *See* Buchanan Decl. ¶¶ 2-3 (Mar. 2, 2017) (Ex. 37). |

| Issue No. 3 | **There Is No Genuine Issue Of Material Fact As To Slaight's Individual Discrimination Claim**<br><br>**Moving Party's Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
|---|---|---|
| 42. | Slaight testified that the interview and recruiting process with TCS was completely fair and nondiscriminatory, and did not favor Indians in any way. La Mar Decl. Ex. B. at 26:11-28:6; 33:14-20. | Undisputed that Mr. Slaight testified that he felt he was treated fairly and not discriminated against by Tata in the phone interview, technical interview, and application process. Slaight Dep. Tr. 26:15-20, 27:21-28:2, 33:14-17 (Sept. 17, 2016) (Ex. 49). Otherwise disputed. Discovery in this case is incomplete, and at the time of Mr. Slaight's testimony, Tata had produced almost no discovery. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). Further, Tata only just recently produced over 4 million documents, which Plaintiffs are in the process of reviewing, and the vast majority of Tata's documents are designated "Highly Confidential – Attorneys' Eyes Only," precluding Mr. Slaight from reviewing them. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). A preliminary review of some of these documents |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

36

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

indicate that Tata overwhelmingly favors South Asians in its hiring decisions and prioritizes visa workers for open positions in the U.S. Neumark Report ¶¶ 6, Table 1 (noting that from 2011 to April 2015, between 72.32% and 78.91% of Tata's U.S. workforce was South Asian, while only 12.50% of the relevant labor market was South Asian – a difference of 197.61 and 215.87 standard deviations) (Ex. 20); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS151793-94 at 793 (same) (Ex. 40); TCS153136-38 at 137 (same) (Ex. 41); TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs.") (Ex. 2); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS007391-452 at 425 ("RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); TCS177617-18 at 617 (RMG Lead Ambika G: "Can we look at Visa ready or visa eligible cvs please[?]" Alok Bhalla: "Visa Ready will be a preference.") (Ex. 7); TCSLTD000181010-15 at 11 (Umesh Kumar, Senior Manager for RMG: "Focus on H1B visa ready from offshore and relocate at onsite. Currently ~36% H1B in US.") (Ex. 15); TCS150731-32 at 731 ("We have got [a] couple of Mainframe requirements[.] . . . Could you please share if any visa ready TCS expats [are] available?") (Ex. 21); TCS038825-32 at 826 ("For Freddi[e] Mac we have 13 open positions @ onsite … for which we need VISA ready profiles[.] . . . Request you share the profiles ASAP") (Ex. 22); TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

37

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation:

Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?"
A: "Yes."
Q: "Why would you be concerned about that?"
A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position."
Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62).

Tata also has a corporate practice in which it utilizes third party recruiters to locate and deliver South Asians candidates. These recruiters forward resumes to Tata using a template in which the recruiter notes the candidate's nationality and visa status, and many resumes include a candidate's Indian nationality and photograph confirming the candidate's race. *See, e.g.*, TCS038607-08 (noting the applicant's "Nationality" as "Indian" and his "visa status" as "H1B") (Ex. 10); TCS038987 (forwarding Indian candidate and noting "[h]e is in India, but if he gets a project, I can deliver him") (Ex. 11); TCSLTD000617804 (listing Indian nationality on resume) (Ex. 13); TCSLTD000414255-57 (listing Indian nationality on resume and including photograph) (Ex. 14). As a result, a substantial percentage of candidates third party recruiters refer to Tata are South Asian. *Compare* TCS029451 (vendor applicant report noting that 55% of Altus' 2014-2015 candidate submissions were of "Asian Indian" race) (Ex. 28) *and* TCS029462 (2015 applicant submissions from vendor Hexagon, of which 60% were Asian) (Ex. 29) *and* TCS029459 (2014-2015 submission status report of vendor Dextpro listing 144 of 267 submissions (54%) as Asian) (Ex. 30), *with* Neumark Report ¶¶ 6, 9, 14 (indicating that the

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

38

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | | |
|---|---|---|---|
| | | | relevant labor market is only 12.50% South Asian) (Ex. 20) *and* TCSLTD003466530-6534 (noting that Tata's Asian workforce vastly exceeds its placement goals across all of its job categories) (Ex. 31). |
| | 43. | After Slaight was hired by TCS, he helped TCS with its on-campus recruiting efforts at DeVry in January 2013. Slaight felt no pressure to select Indians when he participated in recruiting, and has no facts or information suggesting that TCS' campus recruiting process is discriminatory or favors Indians.<br>La Mar Decl. Ex. B. at 41:13-45:16, 51:23-52:7. | Undisputed that after Mr. Slaight was hired by Tata, he helped Tata with its on-campus recruiting efforts at DeVry for one day in January 2013. Slaight Dep. Tr. 41:13-16 (Sept. 17, 2016) (Ex. 49). Otherwise disputed. When asked (1) whether he felt any "pressure …. to only select Asians;" (2) whether he was told to "only select Asians;" or (3) whether he was told to "only select Visa holders," Mr. Slaight responded, "Not that I recall." *Id.* 42:20-43:4. Further, discovery in this case is incomplete, and at the time of Mr. Slaight's testimony, Tata had produced almost no discovery. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). Tata only just recently produced over 4 million documents, which Plaintiffs are in the process of reviewing, and the vast majority of Tata's documents are designated "Highly Confidential – Attorneys' Eyes Only," precluding Mr. Slaight from reviewing them. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). A preliminary review of some of these documents indicates that Tata's campus recruiters are instructed to record applicants' race at the time of their interview on Tata's "On-Campus Interview Summary Form." *See* TCS001190 (listing "Race/Ethnicity" category for each student interviewed and requiring the form "To Be Completed by Campus Leader and emailed to [Tata] by the next business day. Should also be included in mailed envelope with Interview Evaluations, student resumes & unofficial transcripts") (Ex. 50).<br><br>**Plaintiffs' Objection:** Vague. |
| | 44. | In May 2012, TCS offered Slaight a position as a software | Undisputed that in May 2012, Tata offered Mr. Slaight a position as a software engineer following |

| | | |
|---|---|---|
| | engineer. Slaight accepted the offer, and signed an acknowledgment of TCS' policies against discrimination and harassment La Mar Decl. Ex. B at 56:14-57:13; 61:4-62:16; Sharma Decl. Exs. A and B. | his April 2012 interview, and that Mr. Slaight accepted the offer. Slaight Dep. Tr. 193:16-194-11 (Sept. 17, 2016) (Ex. 49). Otherwise disputed. Mr. Slaight signed an "Acknowledgement of Receipt of Company Discrimination and Harassment Policy[,]" confirming that he received copies of Tata's "Sexual Harassment Policy Guidelines" and instructions to participate in an online training titled "Title VII Plus: Harassment and Discrimination Prevention Training Program." Slaight Dep. Ex. 9 (Ex. 51). |
| 45. | When Slaight was hired, he understood that TCS was in the business of providing IT consulting at client sites. La Mar Decl. Ex. B at 63:13-21. | Disputed. Mr. Slaight testified to having this understanding at the time of his deposition in September 2016, not at the time of his hire in May 2012. Slaight Dep. Tr. 63:13-21 (Sept. 17, 2016) (Ex. 49). |
| 46. | Slaight testified there was nothing about TCS' training program that was discriminatory or favored Indians. La Mar Decl. Ex. B at 65:22-66:3. | Disputed. When asked whether "there [was] anything in the ILP training program that [he] felt was discriminatory" or whether "there [was] anything in the ILP program that [he] attended that [he] perceived to favor Indians in any way[,]" Mr. Slaight replied "Not that I remember" and "Not that I recall." Slaight Dep. Tr. 65:22-66:3 (Sept. 17, 2016) (Ex. 49). |
| 47. | In approximately September, 2012, Slaight learned there had been a reorganization at the client he was originally assigned to, and that the position offered to him was no longer available. Slaight understood that he would be "benched" temporarily while TCS found him a new project. La Mar Decl. Ex. B at 83:11-84:13. | Undisputed that Mr. Slaight testified that towards the end of his time in India, he "believe[d] the AIG position had been reorganized, and [he] was no longer going to be on that project upon returning to the States. . . . [His] understanding was that [he'd] be placed on what [Tata] call[s] the bench … while a project [was] being looked for for [him] to work on." Slaight Dep. Tr. 83:11-84:3 (Sept. 17, 2016) (Ex. 49). |
| 48. | TCS found a new assignment for Slaight while he was still training in India. La Mar Decl. Ex. B at 83:22-84:13. | Undisputed that Tata found Mr. Slaight a new assignment with AXA Equitable in New Jersey while he was still training in India. Slaight Dep. Tr. 91:11-13, 92:7-11 (Sept. 17, 2016) (Ex. 49).<br><br>**Plaintiffs' Objection:** Fact is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2). |
| 49. | Slaight was placed with another | Undisputed. |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

40

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | |
|---|---|---|
| | TCS client in New Jersey upon his return from India on October 1, 2012.<br>La Mar Decl. Ex. B at 95:2-24; 195:15-196:6. | |
| 50. | Slaight does not believe that the elimination of his original assignment had anything to do with Indian favoritism or discrimination.<br>La Mar Decl. Ex. B at 84:14-85:8. | Disputed. When asked whether he believed the elimination of the AIG assignment "ha[d] anything to do with Indian favoritism or discrimination," Mr. Slaight responded "I don't recall anything as to why the AIG account was changed in the way it was. I wasn't told anything, to my knowledge. I don't know why any of that happened." Slaight Dep. Tr. 84:23-85:3 (Sept. 17, 2016) (Ex. 49). Further, discovery in this case is incomplete, and at the time of Mr. Slaight's testimony, Tata had produced almost no discovery. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). Tata only just recently produced over 4 million documents, which Plaintiffs are in the process of reviewing, and the vast majority of Tata's documents are designated "Highly Confidential – Attorneys' Eyes Only," precluding Mr. Slaight from reviewing them. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). A preliminary review of some of some of these documents indicates that Tata overwhelmingly favors South Asians in its hiring decisions, prioritizes visa workers for open positions, seeks to utilize visas to the maximum extent, and benches, then terminates, the comparatively few non-South Asians it hires in the U.S. *See, e.g.*, Neumark Report ¶¶ 6-9 (Ex. 20); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS151793-94 at 793 (same) (Ex. 40); TCS153136-38 at 137 (same) (Ex. 41); TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs.") (Ex. 2); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 |

(Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS007391-452 at 425 ("RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); TCS177617-18 at 617 (RMG Lead Ambika G: "Can we look at Visa ready or visa eligible cvs please[?]" Alok Bhalla: "Visa Ready will be a preference.") (Ex. 7); TCSLTD000181010-15 at 11 (Umesh Kumar, Senior Manager for RMG: "Focus on H1B visa ready from offshore and relocate at onsite. Currently ~36% H1B in US.") (Ex. 15); TCS150731-32 at 731 ("We have got [a] couple of Mainframe requirements[.] . . . Could you please share if any visa ready TCS expats [are] available?") (Ex. 21); TCS038825-32 at 826 ("For Freddi[e] Mac we have 13 open positions @ onsite … for which we need VISA ready profiles[.] . . . Request you share the profiles ASAP") (Ex. 22); TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9).

Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation:

Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?"
A: "Yes."
Q: "Why would you be concerned about that?"
A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position."
Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62).

**Plaintiffs' Objection:** Calls for speculation.

| 51. | Slaight alleges that while in his | Disputed. Mr. Slaight was not assigned substantive |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

42

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | |
|---|---|---|
| | employment at TCS, he did not receive "substantial" work. La Mar Decl. Ex. B at 106:6-15. | work during the course of his employment with Tata, and often reported to work only to sit at his desk and wait for an assignment, despite repeatedly requesting additional work and training from his managers. Slaight Dep. Tr. 106:12-15, 183:25-184:5, 186:2-15, 201:13-25 (Sept. 17, 2016) (Ex. 49).<br><br>**Plaintiffs' Objection:** Calls for a legal conclusion. |
| 52. | Slaight knows of no facts indicating that he was treated differently because of his race or national origin. La Mar Decl. Ex. B at 130:7-131:4. | Disputed. Mr. Slaight testified that he felt he was discriminated against by Tata while servicing AXA, as he was not assigned any substantive work, despite multiple requests, while his South Asian colleagues were regularly assigned work. Slaight Dep. Tr. 106:6-15, 127:21-128:21, 183:25-184:5, 202:15-24, 203:6-10 (Sept. 17, 2016) (Ex. 49). Mr. Slaight also testified that he had nothing further to add to his interrogatory responses which detailed his allegations of discrimination, and which put forth facts indicating that he was treated differently because of his race or national origin. *Id.* 215:7-217:24. Further, discovery in this case is incomplete, and at the time of Mr. Slaight's testimony, Tata had produced almost no discovery. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115). Tata only just recently produced over 4 million documents, which Plaintiffs are in the process of reviewing, and the vast majority of Tata's documents are designated "Highly Confidential – Attorneys' Eyes Only," precluding Mr. Slaight from reviewing them. *Id.* At the time of Mr. Slaight's termination and deposition, he had no knowledge of Tata's corporate policy favoring visa holders for open U.S. positions. Slaight Decl. ¶ 3 (Mar. 5, 2017) ("I [now] believe Tata's corporate policy and practices to be discriminatory, and that my termination by Tata from the bench was the result of Tata's preference for South Asian visa workers.") (Ex. 52). For instance, a preliminary review of some of Tata's recent production of documents indicates that Tata overwhelmingly favors South Asians in its hiring decisions, prioritizes visa workers for open positions, seeks to utilize visas to the maximum |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

43

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

extent, and benches, then terminates, the comparatively few non-South Asians it hires in the U.S. *See, e.g.*, Neumark Report ¶¶ 6-9 (Ex. 20); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS151793-94 at 793 (same) (Ex. 40); TCS153136-38 at 137 (same) (Ex. 41); TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs.") (Ex. 2); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS007391-452 at 425 ("RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); TCS177617-18 at 617 (RMG Lead Ambika G: "Can we look at Visa ready or visa eligible cvs please[?]" Alok Bhalla: "Visa Ready will be a preference.") (Ex. 7); TCSLTD000181010-15 at 11 (Umesh Kumar, Senior Manager for RMG: "Focus on H1B visa ready from offshore and relocate at onsite. Currently ~36% H1B in US.") (Ex. 15); TCS150731-32 at 731 ("We have got [a] couple of Mainframe requirements[.] . . . Could you please share if any visa ready TCS expats [are] available?") (Ex. 21); TCS038825-32 at 826 ("For Freddi[e] Mac we have 13 open positions @ onsite … for which we need VISA ready profiles[.] . . . Request you share the profiles ASAP") (Ex. 22); TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9).

Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation:

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

44

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | |
|---|---|---|
| | | Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?" A: "Yes." Q: "Why would you be concerned about that?" A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position." Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62). **Plaintiffs' Objection:** Calls for a legal conclusion; calls for speculation. |
| 53. | Slaight testified: Q:   Do you have any facts that would support a [contention] that you were treated unfairly because of your race?  A:  Not to my knowledge.  Q:  How about your national origin, do you have any facts that would suggest you were treated unfairly because of your national origin? European/white, I think is what you said it was.   A:  Not to my knowledge. La Mar Decl. Ex. B at 129:1-131:4. | Undisputed that Mr. Slaight's testimony is correctly quoted. Otherwise disputed. *See* Opposing Party's Response and Supporting Evidence ¶ 52, *supra*. Further, Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation: Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?" A: "Yes." Q: "Why would you be concerned about that?" A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position." Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62). **Plaintiffs' Objection:** Calls for a legal conclusion; calls for speculation. |
| 54. | Slaight does not deny he | Disputed. Mr. Slaight testified that he believed he |

| | | |
|---|---|---|
| | received counseling regarding unprofessional behavior toward clients, profanity, poor punctuality, poor attendance, unprofessional personal appearance, lack of sensitivity to cultural differences, and failure to take initiative in learning technology.<br>La Mar Decl. Ex. B at 134:10-136:20. | "ha[d] a discussion" with Vignesh approximately one month prior to his removal from his position servicing AXA, but that he did not recall the substance of the parties' conversation. Slaight Dep. Tr. 134:2-136:6 (Sept. 17, 2016) (Ex. 49). |
| 55. | Slaight does not believe the criticism he received was because he is white.<br>La Mar Decl. Ex. B at 144:19-24. | Disputed. During his deposition, Mr. Slaight was asked "Do you see anything in this e-mail from Stanley or Ravi that would lead [you] to believe they didn't – or they set forth these statements because you're white?" Mr. Slaight responded, "To the best of my knowledge, I – I wouldn't say [there] is, no." Mr. Slaight was not asked whether he believed the criticism he received was because he was white, rather, he was asked whether "anything in [the] email" would lead him to believe the statements were made because he is white. Slaight Dep. Tr. 144:19-24 (Sept. 17, 2016) (Ex. 49).<br><br>**Plaintiffs' Objection**: Misstates the witness' testimony. |
| 56. | On February 27, 2013, the contact employee of TCS' client (who is non-Indian) requested that Slaight be removed from the project, stating "we do not think Chris Slaight is the right fit for our team.  Please release him at your convenience."  Slaight was counseled by his supervisors.<br>La Mar Decl. Ex. B at 129:20-21, 142:5-14; Sharma Decl. Exs. D and E. | Undisputed that the February 27, 2013 email is properly quoted. Otherwise disputed. Mr. Slaight testified that he believed he "ha[d] a discussion" with Vignesh approximately one month prior to his removal from his position servicing AXA, but that he did not recall the substance of the parties' conversation. Slaight Dep. Tr. 134:2-136:6 (Sept. 17, 2016) (Ex. 49). |
| 57. | TCS removed Slaight from the project on March 27, 2013.<br>Sharma Decl. Ex. D | Undisputed that Mr. Slaight was removed from his position servicing AXA on March 27, 2013. |
| 58. | The following day, TCS started | Disputed. On March 27, 2013, Tata asked for Mr. |

| | | |
|---|---|---|
| | to identify other projects matched to Slaight's skills. La Mar Decl. Ex. B at 144:25-151:18. | Slaight to share his resume with Ambika G of the Resource Management Group, and Mr. Slaight forwarded Ambika G and Debojyoti Sen a copy of his updated resume the following day, as he was without internet and power earlier in the day. Slaight Dep. Ex. 19 (Ex. 53); Slaight Dep. Ex. 20 (Ex. 54). The cited deposition testimony, and exhibits discussed within the excerpt, make no indication that Tata started to identify other projects for Mr. Slaight "[t]he following day," only that Tata requested and received a copy of Mr. Slaight's resume and asked if he was "open to any location [in the] USA." Slaight Dep. Ex. 20 (Ex. 54).<br><br>**Plaintiffs' Objection:** Fact is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2). Calls for a legal conclusion. |
| 59. | Slaight only wanted positions in New York or New Jersey. La Mar Decl. Ex. B at 144:25-151:18. Sharma Decl. Exs. G and H. | Disputed. Mr. Slaight was initially open to relocating to Ohio or North Carolina, but later informed Tata that he was unable to relocate from the New York / New Jersey area due to family obligations. Slaight Dep. Tr. 146:8-15, 152:13-18, 156:6-12 (Sept. 17, 2016) (Ex. 49); Slaight Dep. Ex. 21 (Ex. 55); Slaight Dep. Ex. 22 (Ex. 56).<br><br>**Plaintiffs' Objection:** Calls for a legal conclusion. |
| 60. | Slaight does not believe that he was treated in an unfair or discriminatory manner throughout this process. La Mar Decl. Ex. B at 151:1-18. | Disputed. While Mr. Slaight testified that he did not believe the process to be unfair or "colored by [his] race [or] … national origin," Slaight Dep. Tr. 151:8-18 (Sept. 17, 2016) (Ex. 49), discovery in this case is incomplete, and at the time of Mr. Slaight's testimony, Tata had produced almost no discovery. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). Further, Tata only just recently produced over 4 million documents, which Plaintiffs are in the process of reviewing, and the |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

TCS' RESPONSE TO PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS: CASE NO.: 4:15-CV-01696-YGR

vast majority of Tata's documents are designated "Highly Confidential – Attorneys' Eyes Only," precluding Mr. Slaight from reviewing them. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). At the time of Mr. Slaight's termination, he had no knowledge of Tata's corporate policy favoring visa holders for open U.S. positions. Slaight Decl. ¶ 3 (Mar. 5, 2017 (Ex. 52). For instance, a preliminary review of some of Tata's recent production of documents indicates that Tata overwhelmingly favors South Asians in its hiring decisions, prioritizes visa workers for open positions, seeks to utilize visas to the maximum extent, and benches, then terminates, the comparatively few non-South Asians it hires in the U.S. *See, e.g.*, Neumark Report ¶¶ 6-9 (Ex. 20); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS151793-94 at 793 (same) (Ex. 40); TCS153136-38 at 137 (same) (Ex. 41); TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs.") (Ex. 2); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS007391-452 at 425 ("RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); TCS177617-18 at 617 (RMG Lead Ambika G: "Can we look at Visa ready or visa eligible cvs please[?]" Alok Bhalla: "Visa Ready will be a preference.") (Ex. 7); TCSLTD000181010-15 at 11 (Umesh Kumar, Senior Manager for RMG: "Focus on H1B visa ready from offshore and relocate at onsite. Currently ~36% H1B in US.") (Ex. 15); TCS150731-32 at 731 ("We have got [a] couple of Mainframe requirements[.] . . . Could you please share if any visa ready TCS expats [are]

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

48

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

available?") (Ex. 21); TCS038825-32 at 826 ("For Freddi[e] Mac we have 13 open positions @ onsite … for which we need VISA ready profiles[.] . . . Request you share the profiles ASAP") (Ex. 22); TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9).

Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation:

Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?"
A: "Yes."
Q: "Why would you be concerned about that?"
A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position."
Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62).

**Plaintiffs' Objection:** Calls for a legal conclusion.

| 61. | Slaight participated in a phone interview on April 17, 2014, to assess his technical skills for a position with a banking client. La Mar Decl. Ex. B at 157:25-158:14. | Disputed. Mr. Slaight participated in a brief, initial phone call to discuss an open position servicing Bank of America, and during this call, "[t]here may have been some technical questions" asked of Mr. Slaight. Slaight Dep. Tr. 157:25-158:11 (Sept. 17, 2016) (Ex. 49). Mr. Slaight then participated in an in-person interview in Pennington, New Jersey in which he performed well and "felt that [he] could meet the requirements [of the position] and was eager to begin [the role.]" *Id.* 206:16-19; Slaight Dep. Ex. 24 (Ex. 57). |
| 62. | Slaight agrees that his experience did not match the requirements for the position, and does not believe that he was denied this position because of his race or national | Disputed. Discovery in this case is incomplete, and at the time of Mr. Slaight's testimony, Tata had produced almost no discovery. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). Further, Tata |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

49

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | |
|---|---|
| origin.<br>La Mar Decl. Ex. B at 159:10-160:24. | only just recently produced over 4 million documents, which Plaintiffs are in the process of reviewing, and the vast majority of Tata's documents are designated "Highly Confidential – Attorneys' Eyes Only," precluding Mr. Slaight from reviewing them. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). At the time of Mr. Slaight's termination, he had no knowledge of Tata's corporate policy favoring visa holders for open U.S. positions.  Slaight Decl. ¶ 3 (Mar. 5, 2017 (Ex. 52). For instance, a preliminary review of some of Tata's recent production of documents indicates that Tata overwhelmingly favors South Asians in its hiring decisions, prioritizes visa workers for open positions, seeks to utilize visas to the maximum extent, and benches, then terminates, the comparatively few non-South Asians it hires in the U.S.  *See, e.g.*, Neumark Report ¶¶ 6-9 (Ex. 20); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS151793-94 at 793 (same) (Ex. 40); TCS153136-38 at 137 (same) (Ex. 41); TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs.") (Ex. 2); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS007391-452 at 425 ("RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); TCS177617-18 at 617 (RMG Lead Ambika G: "Can we look at Visa ready or visa eligible cvs please[?]" Alok Bhalla: "Visa Ready will be a preference.") (Ex. 7); TCSLTD000181010-15 at 11 (Umesh Kumar, Senior Manager for RMG: "Focus on H1B visa ready from offshore and relocate at onsite. Currently ~36% H1B in US.") (Ex. 15); TCS150731-32 at 731 ("We have got [a] couple of |

Loeb & Loeb<br>A Limited Liability Partnership<br>Including Professional<br>Corporations

13319338.1
205625-10015

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

Mainframe requirements[.] . . . Could you please share if any visa ready TCS expats [are] available?") (Ex. 21); TCS038825-32 at 826 ("For Freddi[e] Mac we have 13 open positions @ onsite … for which we need VISA ready profiles[.] . . . Request you share the profiles ASAP") (Ex. 22); TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9).

Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation:

Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?"
A: "Yes."
Q: "Why would you be concerned about that?"
A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position."
Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62).

**Plaintiffs' Objection:** Calls for a legal conclusion.

| 63. | On April 19, 2014, Slaight was terminated because TCS had no positions matching his skills and geographic requirements. La Mar Decl. Ex. B at 153:21-157:16; Sharma Decl. Exs. G, H, I and J. | Disputed. On April 19, 2014, Mr. Slaight was terminated as a result of Tata's pattern and practice of discrimination against non-South Asians. *See, e.g.*, Neumark Report ¶¶ 7-8, Tables 3.a-3.e (noting that between 2011 and 2015, Tata involuntarily terminated between 11.15% and 12.57% of its non-South Asian workers in the U.S., while firing only a miniscule (by comparison) 0.21% to 0.97% of its South Asian workers, a difference of 47.27 to 57.15 standard deviations, and that most of the terminated non-South Asians were fired from the bench) (Ex. 20); Slaight Decl. ¶ 3 (Mar. 5, 2017) (noting that he had no |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | |
|---|---|---|
| | | knowledge of Tata's discriminatory bench policy and preference for filling open positions with visa workers at the time of his termination) (Ex. 52); Pls.' Mot. for Class Certification at 10-11 (Dkt. #115). |
| 64. | When deposed, Slaight admitted that he has no facts suggesting that his termination was due to his race. La Mar Decl. Ex. B at 161:15-18. | Undisputed that at the time of Mr. Slaight's deposition, he testified that "[f]rom what [he] recall[ed]" he had no facts suggesting that his termination was based on his race or ethnicity. Slaight Dep. Tr. 161:14-21 (Sept. 17, 2016) (Ex. 49). Otherwise disputed. At the time of Mr. Slaight's termination, he had no knowledge of Tata's corporate policy favoring visa holders for open U.S. positions. Slaight Decl. ¶ 3 (Mar. 5, 2017) (Ex. 52). Discovery in this case is incomplete, and at the time of Mr. Slaight's testimony, Tata had produced almost no discovery. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). Further, Tata only just recently produced over 4 million documents, which Plaintiffs are in the process of reviewing, and the vast majority of Tata's documents are designated "Highly Confidential – Attorneys' Eyes Only," precluding Mr. Slaight from reviewing them. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). A preliminary review of some of Tata's recent production of documents indicates that Tata overwhelmingly favors South Asians in its hiring decisions, prioritizes visa workers for open positions, seeks to utilize visas to the maximum extent, and benches, then terminates, the comparatively few non-South Asians it hires in the U.S. *See, e.g.*, Neumark Report ¶¶ 6-9 (Ex. 20); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS151793-94 at 793 (same) (Ex. 40); TCS153136-38 at 137 (same) (Ex. 41); TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs.") (Ex. 2); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

52

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

[to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS007391-452 at 425 ("RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); TCS177617-18 at 617 (RMG Lead Ambika G: "Can we look at Visa ready or visa eligible cvs please[?]" Alok Bhalla: "Visa Ready will be a preference.") (Ex. 7); TCSLTD000181010-15 at 11 (Umesh Kumar, Senior Manager for RMG: "Focus on H1B visa ready from offshore and relocate at onsite. Currently ~36% H1B in US.") (Ex. 15); TCS150731-32 at 731 ("We have got [a] couple of Mainframe requirements[.] . . . Could you please share if any visa ready TCS expats [are] available?") (Ex. 21); TCS038825-32 at 826 ("For Freddi[e] Mac we have 13 open positions @ onsite … for which we need VISA ready profiles[.] . . . Request you share the profiles ASAP") (Ex. 22); TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9).

Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation:

Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?" A: "Yes."
Q: "Why would you be concerned about that?" A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position." Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

53

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | | |
|---|---|---|---|
| 65. | Slaight has no facts or information to substantiate the "pattern-or-practice" accusations in the complaint. La Mar Decl. Ex. B at 182:13-209:7. | Disputed.   Tata's staffing of U.S. positions is dictated by by its corporate policy of favoring South Asian visa workers in staffing U.S. positions. Tata's leadership directive instructs RMG to "map" South Asians with "unutilized visas and work permits" to open positions in the U.S. and to utilize visas to the maximum extent. see Pls.' Mot. for Class Certification at 4-11 (Dkt. #115); see, e.g., TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs") (Ex. 2); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS007391-452 at 425 ("RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); TCS177617-18 at 617 ("Visa Ready will be a preference.") (Ex. 7); TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9). Tata also has a corporate practice in which it utilizes third party recruiters to locate and deliver South Asians candidates. These recruiters forward resumes to Tata using a template in which the recruiter notes the candidate's nationality and visa status, and many resumes include a candidate's Indian nationality and photograph confirming the candidate's race. *See e.g.*, TCS038607-08 (noting the applicant's "Nationality" as "Indian" and his "visa status" as "H1B") (Ex. 10); TCS038987 (forwarding Indian candidate and noting "[h]e is in India, but if he gets a project, I can deliver him") (Ex. 11);   TCSLTD000617804   (listing   Indian nationality   on   resume)   (Ex.   13); |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

54

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

TCSLTD000414255-57 (listing Indian nationality on resume and including photograph) (Ex. 14). As a result, a substantial percentage of candidates third party recruiters refer to Tata are South Asian. Compare TCS029451 (noting 55% of Altus' 2014-2015 candidate submissions were of "Asian Indian" race) (Ex. 28) and TCS029462 (noting 60% of Hexagon's 2015 applicant submissions were Asian) (Ex. 29) and TCS029459 (noting 54% of Dextpro's 2014-2015 submissions were Asian) (Ex. 30, with Neumark Report ¶¶ 6, 9, 14 (indicating that the relevant labor market is only 12.50% South Asian) (Ex. 20) and TCSLTD003466530-34 (noting that Tata's Asian workforce vastly exceeds its placement goals across all of its job categories) (Ex. 31); Neumark Report ¶ 6, Table 1 (noting that from 2011 to April 2015, between 72.32% and 78.91% of Tata's U.S. workforce was South Asian, while only 12.50% of the relevant labor market was South Asian – a difference of 197.61 and 215.87 standard deviations) (Ex. 20); *id.* ¶¶ 7-8, Tables 3.a-3.e (noting that between 2011 and 2015, Tata involuntarily terminated between 11.15% and 12.57% of its non-South Asian workers in the U.S., while firing only a miniscule (by comparison) 0.21% to 0.97% of its South Asian workers, a difference of 47.27 to 57.15 standard deviations, and that most of the terminated non-South Asians were fired from the bench).

Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation:

Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?"
A: "Yes."
Q: "Why would you be concerned about that?"
A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position."

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

55

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | |
|---|---|---|
| | | Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62).<br><br>**Plaintiffs' Objection:** Asked and answered; compound; vague; misstates the witness' testimony; calls for a legal conclusion. |
| 66. | Slaight has no facts or information to substantiate the claim that TCS discriminated against him personally.<br>La Mar Decl. Ex. B at 182:13-209:7. | Disputed. Discovery in this case is incomplete, and at the time of Mr. Slaight's termination and deposition, Tata had produced almost no discovery. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). Further, Tata only just recently produced over 4 million documents, which Plaintiffs are in the process of reviewing, and the vast majority of Tata's documents are designated "Highly Confidential – Attorneys' Eyes Only," precluding Mr. Slaight from reviewing them. *See* Pls.' Mot. for Class Certification at 12-13 (Dkt. #115); Kotchen Decl. ¶¶ 2-3 (Mar. 6, 2017) (Ex. 70). At the time of Mr. Slaight's termination, he had no knowledge of Tata's corporate policy favoring visa holders for open U.S. positions. Slaight Decl. ¶ 3 (Mar. 5, 2017 (Ex. 52). For instance, a preliminary review of some of Tata's recent production of documents indicates that Tata overwhelmingly favors South Asians in its hiring decisions, prioritizes visa workers for open positions, seeks to utilize visas to the maximum extent, and benches, then terminates, the comparatively few non-South Asians it hires in the U.S. *See, e.g.*, Neumark Report ¶¶ 7-8, Tables 3.a-3.e (noting that between 2011 and 2015, Tata involuntarily terminated between 11.15% and 12.57% of its non-South Asian workers in the U.S., while firing only a miniscule (by comparison) 0.21% to 0.97% of its South Asian workers, a difference of 47.27 to 57.15 standard deviations, and that most of the terminated non-South Asians were fired from the bench) (Ex. 20); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); TCS151793-94 at 793 (same) (Ex. 40); |

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

56

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

TCS153136-38 at 137 (same) (Ex. 41); TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs.") (Ex. 2); TCS148025-27 at 25 ("Leadership Team has advised not to send any visa ready associate back [to India] unnecessarily and utilize him/her here") (Ex. 4); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) (testifying, through 30(b)(6) witness, "we should use a person's visa to the maximum approval limit") (Ex. 5); TCS007391-452 at 425 ("RMG should try and map associates with unutilized visas and work permits for onsite opportunities.") (Ex. 6); TCS177617-18 at 617 (RMG Lead Ambika G: "Can we look at Visa ready or visa eligible cvs please[?]" Alok Bhalla: "Visa Ready will be a preference.") (Ex. 7); TCSLTD000181010-15 at 11 (Umesh Kumar, Senior Manager for RMG: "Focus on H1B visa ready from offshore and relocate at onsite. Currently ~36% H1B in US.") (Ex. 15); TCS150731-32 at 731 ("We have got [a] couple of Mainframe requirements[.] . . . Could you please share if any visa ready TCS expats [are] available?") (Ex. 21); TCS038825-32 at 826 ("For Freddi[e] Mac we have 13 open positions @ onsite … for which we need VISA ready profiles[.] . . . Request you share the profiles ASAP") (Ex. 22); TCS151441-43 at 442 (listing positions to be closed by RMG, including a "Performance Tester" position with "Comments … Prefer expat") (Ex. 8); TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9).

Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as reflected in the testimony of Tata's head of diversity testifying on behalf of the corporation:

Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?" A: "Yes."
Q: "Why would you be concerned about that?"

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | |
|---|---|---|
| | | A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position." Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62).<br><br>**Plaintiffs' Objection:** Asked and answered; compound; vague; misstates the witness' testimony; calls for a legal conclusion. |

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

| | PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS AND TCS' RESPONSE | |
|---|---|---|
| Issue No. 1 | Moving Party's Response and Supporting Evidence | **Tata's Discriminatory Scheme** Plaintiffs' Additional Facts and Supporting Evidence |
| 1 | **Immaterial** - does not raise a disputed issue of material fact with respect to the individual claims of Buchanan and Straight. <br><br> **Disputed** on the ground that the evidence cited by plaintiffs does not support plaintiffs' contention and fails to raise a disputed issue of material fact. <br><br> The undisputed evidence, which is not controverted by plaintiffs' evidence, is as follows:  Project staffing decisions follow a multi-step process.  Existing employees are given priority over outside hires.  Kumar Decl.[1], ¶¶ 12-13.  The first employees considered for any new assignment are those that already work for the client, or who are already at the site.  Kumar Decl., at ¶ 12.  "Existing"TCS employees means current employees who have been hired from the local labor market ("local hires"), and "expats" who have been temporarily transferred to the | Tata has an explicit corporate policy of favoring visa workers in staffing U.S. positions. *See, e.g.,* TCS057813-18 at 815 ("Leadership directive is to utilize every visa to the maximum extent – L1 B: 5 Yrs, H1 B: 6 Yrs & L1 A: 7 Yrs") (Ex. 2); TCS137485-87 at 485 ("Leadership Team has advised to utilize visa ready Associates at on site") (Ex. 3); Kumar (30(b)(6)) Dep. Tr. 80:23-81:5 (Jan. 25, 2017) ("we should use a person's visa to the maximum approval limit") (Ex. 5); TCS148025-27 at 25 (Ex. 4). |

---

[1] "Kumar Decl." is a reference to the Declaration of Umesh Kumar, Docket Entry No. 141, also filed concurrently herewith.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

59

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

United States on a visa. Sharma Decl., ¶ 3.  If no match is made, TCS' Resources Management Group ("RMG") broadens the search to employees who possess the needed skills in the geographic area (or who are willing to relocate.)  Kumar Decl. at ¶ 13. "Visa-ready" employees are only considered if the RMG cannot find an existing employee in the United States with the requisite skills and location.  *Id.* at ¶ 13.  A "visa-ready" ready associate is generally preferred over a new hire since they are uniquely skilled and TCS has already invested time and capital to make them valuable to the company.  *Id.* at ¶ 13. Ultimately, staffing decisions are within the discretion of thousands of business managers and TCS customers and are influenced by an employee's resume, interview, prior performance, skills, and availability at the location.  *Id.* at ¶¶ 14-16.  When no local, expat or visa ready employees are available to match the skill set needed, or when a business manager decides not to consider a visa-ready employee, TCS then begins the process of recruiting a new hire locally for the position.  Chinnari Decl.,[2] ¶ 4.  TCS' recruiting department, the Talent

---

[2] "Chinnari Decl."is a reference to the Declaration of Shyam Chinnari, Docket Entry No. 133, also filed concurrently herewith.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

60

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | | |
|---|---|---|---|
| | | Acquisition Group ("TAG") only recruits from the United States labor market and does not generally recruit H-1B visa candidates, even if they are in the United States. Sharma Decl., ¶ 4. Again, hiring managers and sometimes clients generally make the decision of who TCS hires as a full-time employee. *Id.* | |
| | 2 | **Immaterial** - does not raise a disputed issue of material fact with respect to *any* issue to be decided on summary judgment.<br><br>**Disputed** as not supported by any evidence that could create a triable issue of fact.<br>To the extent that plaintiffs are arguing that mapping of "Indians" with "unutilized visa and work permits" implies the procedures outlined in TCS's response to plaintiffs' fact No. 1, above, are not followed, that contention is contrary to the undisputed evidence. *See* TCS's response to plaintiffs' fact No. 1, which is incorporated herein. | Individuals in India who have "unutilized visas and work permits" are instructed to be "mapped" to open positions in the U.S. TCS007391-452 at 425 (Ex. 6). |
| | 3 | **Immaterial** - does not raise a disputed issue of material fact with respect to the individual claims of Buchanan and Straight. *See* TCS's response to plaintiff's fact No. 1, above, which is incorporated herein.<br><br>**Disputed** as not supported by any evidence that could raise a triable issue of material fact. The contention that "Tata | Tata meticulously tracks the availability of "visa ready" employees who can fill positions in the U.S. Kumar (30(b)(6)) Dep. Tr. 54:13-19, 88:15-23 (Jan. 25, 2017) (noting Tata's "weekly reports" of visa ready workers) (Ex. 5); *see, e.g.,* TCS007391-452 at 407-09 (discussing RMG's "tracking of visa ready associates for overseas assignment[s]") (Ex. 6); TCS61414-19 at 414 (Ex. 16); TCSLTD005646989 (2012 list of 10,290 visa ready employees) (Ex. 17); TCSLTD005646947 (2013 list of 9,248 visa ready employees) (Ex. 18); TCS061566-67 (Ex. 19). Likewise, Tata closely tracks the benched status of its employees to ensure that |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-cv-01696-YGR

| | | |
|---|---|---|
| | closely tracks the benched status of its employees to ensure that its South Asian visa workers are given first priority" is disputed on the ground that it is not supported by the evidence cited by plaintiffs, is contrary to the undisputed facts as set forth in TCS's response to plaintiff's fact No. 1, incorporated herein, and, therefore, does not raise a disputed issue of material fact. | its South Asian visa workers are given first priority for open positions. Kumar (30(b)(6)) Dep. Tr. 17:10-12 (Jan. 25, 2017) (unallocated reports "are generated on a daily basis.") (Ex. 5); Excerpt from TCSLTD0055447590 (unallocated report listing 635 local workers benched for 4 or more weeks, as compared to just 158 expats) (Ex. 58); TCS055851-54 at 853 (noting "[t]here are 136 Local Hires currently unallocated. Out of that 100+ associates are more than one month unallocated. Request your help to take necessary action from HR to place these associates into project or release them.") (Ex. 59). |
| 4 | **Immaterial -** does not raise a disputed issue of material fact with respect to the individual claims of Buchanan and Straight.<br><br>**Disputed** as not supported by any evidence that could raise a triable issue of fact.  The contention that TCS's hiring "reflects the directive to favor South Asian visa workers" is disputed on the ground that it is not supported by the evidence cited by plaintiffs, is contrary to the undisputed facts as set forth in TCS's response to plaintiff's fact No. 1, incorporated herein, and fails to raise a triable issue of fact.  Also, it is proven false by Anderson Decl. ¶ 40, Ganapathy Decl. ¶¶ 19-22.[3] | Hiring for positions reflects the directive to favor South Asian visa workers. *See, e.g.,* TCS177617-18, at 617 ("Visa Ready will be a preference.") (Ex. 7); TCSLTD000181010-15 at 11 ("Focus on H1B visa ready from offshore and relocate at onsite.") (Ex. 15); TCS150731-32 at 731 ("Could you please share if any visa ready TCS expats [are] available?") (Ex. 21); TCS038825-32 at 826 ("we have 13 open positions @ onsite … for which we need VISA ready profiles") (Ex. 22); TCS151441-43 at 442 ("Performance Tester" position with "Comments … Prefer expat") (Ex. 8; TCS148654-55 at 654 ("For this position, we are looking for Expats only.") (Ex. 9). |
| 5 | **Immaterial -** does not raise a disputed issue of material issue with respect to the individual claims of Buchanan and Straight. | Visa workers are either not placed on the bench at all or are rapidly moved off the bench to fill open positions, while Tata's comparatively few non-South Asian employees languish on the bench and are then terminated. *See* Neumark |

---

[3] Ganapathy Decl."is a reference to the Declaration of Balaji Ganapathy, Docket Entry No. 142, also filed concurrently herewith.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

62

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | |
|---|---|---|
| | **Disputed** as not supported by any evidence that could raise a triable issue of fact.<br><br>David Neumark's expert report reaches no conclusions regarding discrimination, but only that TCS's terminations from the bench "could" potentially reflect discrimination, although termination data could be explained by non-discriminatory factors as well. Downes Decl,[4] ¶ 2, Ex. A, p. 11:18-20; 87:1-13. Also, TCS prefers to release expats over local hires where possible. Kumar Decl. ¶ 18.<br>The evidence cited by plaintiffs to support this "fact" is consistent with TCS's hiring practices as set out in TCS's response to plaintiff's fact No. 1, which is incorporated herein. Plaintiffs' evidence, therefore, fails to raise a triable issue of fact. | Report ¶¶ 7-8, 17-18, Tables 3.a-3.e (Ex. 20); TCS069046-47 (requesting RMG review unallocated expat list and "map each associate to two accounts and mark[] the priority 1 & 2. . . . Prioritized accounts will quickly evaluate and absorb associates into immediate billable roles.") (Ex. 60). |
| 6 | **Immaterial - d**oes not raise a disputed issue of material fact with respect to *any* issues to be decided on summary judgment.<br><br>**Not disputed**  and the evidence does not create a triable issue of fact.<br><br>Disparity in the racial and/or national origin make-up of a | Approximately 70% of Tata's U.S. workforce consists of visa holders and virtually all of these workers are Indian nationals. *See* Kumar (30(b)(6)) Dep. Tr. 82:17-83:4 (Jan. 25, 2017) (Ex. 5); Tata's Supp. Resp. to Pls.' Am. Notice of Rule 30(b)(6) Dep. at 4, Ex. A (noting that since 2011, over 41,000 Tata employees have traveled from India to the U.S. on a visa to fill a position in the United States) (Ex. 61); Jindal (30(b)(6)) Dep. Tr. 51:17-52:7 (Feb. 26, 2016) (Ex. 32); TCSLTD005646989 (Ex. 17); TCSLTD005646947 (Ex. 18) |

---

[4] "Downes Decl." is a reference to the Declaration of Patrick Downes in Support of Tata Consultancy Services, Ltd.'s Motion to Exclude Expert Opinion Testimony of David Neumark, docket entry No. 125 – 1, filed March 20, 2017.

| | | |
|---|---|---|
| | workforce can be the result of non-discriminatory factors, and is, therefore, not evidence of discrimination.  Downes Decl., ¶ 2, Ex. A, 11:18-20; 56:16-20; 87:1-13; 111:19-112:4; Anderson Decl.,[5] ¶ 27 | |
| 7 | **Immaterial; testimony not disputed.**  Plaintiffs have not set forth any fact.  The deposition testimony of Mr. Ganapathy is consistent with TCS's hiring practices as set out in TCS's response to plaintiffs' fact No. 1, which is incorporated herein.  Plaintiffs, therefore, fail to raise a triable issue of fact.  See also Ganapathy Decl. ¶¶ 19-22. | The head of diversity for Tata testified as follows: Q: "As the head of diversity at TCS, would you be concerned if there was a leadership directive for positions to be filled with visa-ready individuals?" A: "Yes." Q: "Why would you be concerned about that?" A: "Because as I said, citizenship or nationality should not be the basis for determining a person is fit against a particular position Tata itself recognizes that preferring "visa ready" individuals for U.S. positions is discriminatory, as "citizenship or nationality should not be the basis for determining a person is fit against a particular position." Ganapathy (30(b)(6)) Dep. Tr. 42:25-43:10 (Jan. 25, 2017) (Ex. 62). |
| 8 | **Immaterial -** does not raise a disputed issue of material fact with respect to *any* issue to be decided on summary judgment. **Disputed** as not supported by any evidence that could raise a triable issue of fact. Plaintiffs' "facts" are consistent with TCS's hiring practices as set forth in TCS's response to plaintiffs' fact No. 1, which is incorporated herein. Moreover, the applicant pool of available candidates for | Tata's third party recruiters forward resumes to Tata using a template which notes the "nationality" and/or the "work authorization status" of candidates, and many resumes also include a candidate's Indian nationality and even a picture of the candidate. *See, e.g.*, TCS038607-08 (Ex. 10); TCS038987 (Ex. 11); TCSLTD000617804 (Ex. 13); TCSLTD000414255-57 (Ex. 14). A substantial percentage of candidates third party recruiters refer to Tata are South Asian. *Compare* TCS029451 (noting 55% of Altus' 2014-2015 candidate submissions were of "Asian Indian" race) (Ex. 28) *and* TCS029462 (noting 60% of Hexagon's 2015 applicant submissions were Asian) (Ex. 29) *and* TCS029459 (noting 54% of Dextpro's 2014-2015 submissions were Asian) (Ex. 30), *with* Neumark Report ¶¶ 6, 9, 14 (indicating that the relevant labor market is only 12.50% South Asian) (Ex. 20) *and* |

[5] "Anderson Decl." is a reference to the Declaration of G. Edward Anderson in Support of Tata Consultancy Services, Ltd.'s Opposition to Motion for Class Certification, docket entry No. 129, filed March 20, 2017.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

64

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | positions at TCS is over 40% South Asian (Anderson Decl, ¶ ¶ 10, 96(II)), which provides a non-discriminatory reason for plaintiffs' contention that recruiters refer a "substantial percentage" of South Asians to TCS. Plaintiffs' evidence fails to raise a triable issue of material fact. | TCSLTD003466530-34 (noting that Tata's Asian workforce vastly exceeds its placement goals across all of its job categories) (Ex. 31). |
|---|---|---|
| **Issue No. 2** | **Moving Party's Response and Supporting Evidence** | **Plaintiff Brian Buchanan**<br>**Plaintiffs' Additional Facts and Supporting Evidence** |
| 9 | Not disputed and does not raise a disputed issue of material fact with respect to Mr. Buchanan's claims. | Mr. Buchanan is a white American living in Temecula, California who has been employed in the IT field since 1982. Buchanan Dep. Ex. 14 ¶ 1 (Ex. 38). |
| 10 | Not disputed and does not raise a disputed issue of material fact with respect to Mr. Buchanan's claims. | Mr. Buchanan is a Microsoft Certified Professional, and holds both project management and information technology certifications. Buchanan Dep. Tr. 16:15-17:4 (Sept. 21, 2016) (Ex. 34) |
| 11 | Not disputed and does not raise a disputed issue of material fact with respect to Mr. Buchanan's claims. | Mr. Buchanan began working SCE in 1986 as a network specialist, and was promoted to an IT Specialist 4 in or around 2003. His job duties on SCE's Infrastructure General Application Support Team (25-35 members) included supporting approximately 25 different applications, building, testing, and maintaining applications, as well as working with architects, developers, and internal clients at SCE. Mr. Buchanan performed well in this role and received no criticism regarding his work. *Id.* 19:13-24, 20:17-19, 49:13; Buchanan Dep. Ex. 14 ¶¶ 11-13 (Ex. 38). |
| 12 | Not disputed and does not raise a disputed issue of material fact with respect to Mr. Buchanan's claims. | In early 2014, SCE selected Tata for the bulk of its IT needs, and on July 21, 2014, Mr. Buchanan learned that he and 400 other employees would be terminated as part of SCE's contract with Tata. Buchanan Dep. Ex. 14 ¶¶ 14-15 (Ex. 38). |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

65

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| 13 | Not disputed (except to the extent that visa issues are cited as the source of any delay); does not raise a disputed issue of material fact with respect to Mr. Buchanan's claims. | While Tata was scheduled to take primary responsibility for most of SCE's IT needs by December 2015, many Tata employees did not arrive onsite until December or January due to visa issues, delaying the transition and extending Mr. Buchanan's final day with SCE from January 9 to February 6. Tata was still unable to take over primary responsibility for SCE's IT needs by February 6, 2015. *Id.* ¶¶ 11-17. |
| --- | --- | --- |
| 14 | Although TCS has no record of it, TCS will not dispute this contention for purposes of this motion.<br><br>With respect to the job fair, Mr. Buchanan handed out 20-30 resumes in total to prospective employers, but received no interviews or even responses except from one company that invited him to periodically check its website for openings. La Mar Decl., Ex. A, 79:10-22; 200:14-202:13. | While Mr. Buchanan applied for a general applications support position at the SCE job fair hosted in late October 2014, he was never contacted, interviewed, nor selected for a position with Tata. *Id.* ¶ 19; Buchanan Dep. Tr. 71:6-9, 119:20-24 (Sept. 21, 2016) (Ex. 34). |
| 15 | Not disputed for purposes of this motion, but the matter does not raise a disputed issue of material fact with respect to Mr. Buchanan's claims.<br><br>Disparity in the racial and/or national origin make-up of a workforce can be the result of non-discriminatory factors, and is, therefore, not evidence of discrimination.  Downes Decl., ¶ 2, Ex. A, 11:18-20; 56:16-20; 87:1-13; 111:19-112:4; Anderson Decl., ¶ 27 | Tata hired only 5 of Mr. Buchanan's 28 team members, 3 of whom were South Asian, and replaced the rest of the team with South Asian visa workers. *Id.* 56:3-14; Buchanan Dep. Ex. 14 ¶ 20 (Ex. 38). |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

66

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| Issue No. 3 | Moving Party's Response and Supporting Evidence | Plaintiff Christopher Slaight<br><br>Plaintiffs' Additional Facts and Supporting Evidence |
|---|---|---|
| 16 | Not disputed and does not raise a disputed issue of material fact with respect to Mr. Slaight's claims. | Mr. Slaight is a white American living in Staten Island, New York. Slaight Dep. Tr. 18:16-22 (Sept. 17, 2016) (Ex. 49); Slaight Dep. Ex. 25 (Ex. 63). |
| 17 | Not disputed and does not raise a disputed issue of material fact with respect to Mr. Slaight's claims. | Mr. Slaight graduated from DeVry University in February 2012 with a Bachelor of Science degree in Computer Information Systems. Slaight Dep. Tr. 11:9-15 (Sept. 17, 2016) (Ex. 49). |
| 18 | Not disputed and does not raise a disputed issue of material fact with respect to Mr. Slaight's claims. | Mr. Slaight participated in a 6-week Initial Learning Program in Cincinnati, Ohio with Tata, before starting 6 to 8 weeks of training in Chennai, India. Id 47:1-13, 194:17-23. |
| 19 | Not disputed and does not raise a disputed issue of material fact with respect to Mr. Slaight's claims. | While servicing Tata client AXA, Mr. Slaight reported to Alok Bhalla, Tata's Business Relationship Manager, and Vignesh Ramanan, Tata's Senior Engagement Manager, both of whom are South Asian. Id.106:16-107:2, 197:5-198:17. |
| 20 | **Disputed** but the testimony of plaintiff that he did not receive "substantial" work while at "AXA" does not create a triable issue of fact, and the evidence cited by plaintiff that he did not receive training is not consistent with his testimony that he did receive training.<br><br>The undisputed facts are that Mr. Slaight received substantial training and was assigned client work.  Plaintiffs' "evidence" does not support any contention otherwise and, therefore, fails to raise a disputed issue of material fact with respect to Mr. Slaight's claims. | While Mr. Slaight was eager to begin working as a software developer and gaining real-world experience, he was assigned little to no substantive work over the next 6 months, and received little training. Id. 106:12-15, 110:15-21, 199:9-24, 202:15-24, 203:6-10. |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | | |
|---|---|---|---|
| | | Moreover, Slaight testified that the interview and recruiting process with TCS was completely fair and nondiscriminatory, and did not favor Indians in any way. La Mar Decl., Ex. B at 26:11-28:6; 33:14-20.<br><br>TCS provided Slaight with an intensive two-month training course; the first part in Ohio, the second in India. La Mar Decl., Ex. B, 37:22-38:25.<br><br>With respect to his claim that he did not receive "substantial work," Slaight knows of no facts indicating the he was treated differently because of his race or national origin, and in fact, he is "not really sure" if he was treated differently due to his race or national origin. La Mar Decl., Ex. B, at 130:7-131:4. | |
| | 21 | Not disputed for purposes of this motion, but Plaintiffs' "evidence" does not raise a disputed issue of material fact with respect to Mr. Slaight's claims.<br><br>Mr. Slaight does not dispute that he was counseled by TCS regarding unprofessional behavior toward clients, profanity, poor punctuality, poor attendance, unprofessional personal appearance, lack of sensitivity to cultural | Mr. Slaight was told that his removal from the AXA project was because AXA had not been expecting to receive two resources from Tata, and did not have sufficient work for Mr. Slaight. Mr. Slaight remained on the bench for 3 weeks despite actively reaching out to Tata for work. *Id.* 145:25-146:21; Slaight Dep. Ex. 20 (Ex. 54); Slaight Dep. Ex. 21 (Ex. 55); Slaight Dep. Ex. 24 (Ex. 57). |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

68

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | | |
|---|---|---|---|
| | | differences, and failure to take initiative in learning technology.  La Mar Decl., Ex. B, 120:19-125:5; 134:10-136:20; Sharma Decl., Exs. D and F.<br><br>The contact employee of TCS's client (AXA), who is non-Indian, requested that Slaight be removed from the project, stating "we do not think Chris Slaight is the right fit for our team.  Please release him at your convenience."  La Mar Decl, Ex. B, at 129:20-21, 142:5-14; Sharma Decl., Ex. E. Slaight was counseled the following day. Sharma Decl., Ex. D.  Slaight failed to improve even with a month of counseling and was removed from the project.  Sharma Decl., Ex. D.<br><br>Slaight restricted his search for positions to the New York or New Jersey area.  La Mar Decl., Ex. B at 144:25-151:18; Sharma Decl., Ex. I.<br><br>Slaight was terminated because TCS had no positions matching his skills and geographic requirements.  La Mar Decl., Ex. B, at 153:21-157:16; Sharma Decl, Exs. G, H, I and J. | |
| 22 | | Not disputed, but plaintiffs' "evidence" does not raise a disputed issue of material fact with respect to Mr. Slaight's | At the time of Mr. Slaight's termination on April 19, 2013, he was awaiting feedback from his Bank of America interview and had just received email notice of his bonus. Mr. Slaight |

| | | | |
|---|---|---|---|
| | | claims.<br><br>Slaight agrees that his experience did not match the requirements for the Bank of America position, and he does not believe that he was denied the Bank of America position because of his race or national origin. La Mar Decl., Ex. B, 159:10-160:24. | was provided with no explanation for his termination. Slaight Dep. Ex. 24 (Ex. 57). |
| | 23 | Not disputed for purposes of this motion, but plaintiffs' "evidence" does not raise a disputed issue of material fact with respect to Mr. Slaight's claims.<br><br>Slaight restricted his search for positions to the New York or New Jersey area. La Mar Decl., Ex. B at 144:25-151:18; Sharma Decl., Ex. I.<br><br>Slaight was terminated because TCS had no positions matching his skills and geographic requirements. La Mar Decl., Ex. B, at 153:21-157:16; Sharma Decl, Exs. G, H, I and J.<br><br>Slaight admitted that he has no facts suggesting that his termination was due to his race. La Mar Decl., Ex. B at 161:15-18.<br><br>As to the length of time on the bench, even the putative class member declarations establish no uniformity in that regard. | Tata generally allows workers to remain unallocated for 30 days while searching for new positions, and many workers often remain on the bench for extended periods of time. TCS044202 ("I explained the bench policy to you wherein … you cannot remain unallocated for more than 30 days") (Ex. 65); TCSLTD0055447590 (listing workers on the bench for 4+ weeks) (Ex. 58). |

| | Non-South Asian putative class members were "benched" up to 1.5 years. | |
|---|---|---|
| **Issue No. 4** | **Moving Party's Response and Supporting Evidence** | **State of Discovery**<br><br>**Plaintiffs' Additional Facts and Supporting Evidence** |
| 24 | **Disputed.** TCS provided initial disclosures to plaintiffs on October 27, 2015. On October 30, 2015, TCS provided a response to an interrogatory which delineated active and separated employees as well as their race and citizenship/nationality by employee number. Second La Mar Decl., ¶ 9.[6]<br><br>Plaintiffs August 2015 discovery requests were exceedingly overbroad. Second La Mar Decl., ¶ 8. The parties met and conferred and agreed to conduct a series of 30(b)(6) depositions so plaintiff could determine which documents they believed they needed and to learn the basic framework of TCS's internal systems. *Id.* at ¶ 9.<br><br>Based on the 30(b)(6) depositions, plaintiffs requested all email boxes of certain TCS units as well as those of the 30(b)(6) deponents, as well as | In response to discovery requests issued in August 2015, Tata waited over 1.5 years to produce the vast majority of its documents. Tata produced over 4 million pages (1,800 GB) of documents in January and February 2017 (2 million pages of documents in February alone). By comparison, Tata produced only 20,658 pages, less than 4% of its total production, before November 2016. *See* Pls.' Reply in Support of Mot. to Amend Complaint at 6 (Dkt. #114); Tata Document Production Log at 2-3 (Ex. 66). |

---

[6] The "Second La Mar Decl." is a reference to the Declaration of Michelle La Mar in Support of Tata Consultancy Services, Ltd.'s Opposition to Plaintiffs' Motion for Class Certification, Docket Entry No. 139, filed on March 20, 2017.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

71

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | |
|---|---|---|
| | databases that were identified by the deponents. *Id.* at ¶ 11. TCS immediately began downloading and converting the databases, and collecting and imaging custodian email boxes and computers.  TCS's outside vendor processed close to 7 terabytes of information responsive to plaintiffs' broad requests.  *Id. at ¶* 12.<br><br>The databases were produced to plaintiffs starting in *May 2016*, and, while each bears only a single bates number, each database includes extensive amounts of information; classifying that information as equivalent to a single page, as plaintiffs do, is incorrect and misleading.  *Id.* at ¶¶ 7,13, 14.<br><br>With respect to email inboxes, TCS attempted to have plaintiff narrow its broad search terms (like "United States" and "Indian"), but plaintiffs refused; plaintiff's broad search terms resulted in TCS producing in excess of 2.5 million documents.  *Id.*, at 15-18. | |
| 25 | **Disputed.**  *See, generally,* Second La Mar Declaration and TCS' Reply Brief.  Dates on which Tata produced certain information to plaintiffs is at ¶ 18 of the Second La Mar Declaration. | On January 17 and 19, Tata produced employee data that it had repeatedly told Plaintiffs did not exist (data it collected in September or October), and which omitted various data fields. On February 9, Tata produced allocation data, yet Tata failed to include a data dictionary, making it impossible for Plaintiffs to fully understand the data. Pls.' Notice of Discovery Misconduct at 3 (Dkt. #96); Sharma (30(b)(6)) Dep. Tr. 26:18-27:7, 30:1-22, 33:1-15, 51:14-52:3 (Jan. 25, 2017) (Ex. 67); Email from L. Tremaine to |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

72

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | | L. Wytsma, *et al.* (March 2, 2017) (Ex. 68). |
|---|---|---|

Dated:   March 27, 2017

LOEB & LOEB LLP
MICHELLE M. LA MAR
LAURA A. WYTSMA
PATRICK N. DOWNES
ERIN M. SMITH


By: /s/ Michelle M. La Mar
    Michelle M. La Mar
    Attorneys for Defendant
    TATA CONSULTANCY SERVICES, LTD.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

1

**CERTIFICATE OF SERVICE**

2

      I certify that a true and correct copy of the foregoing was served on all counsel of

3

record by electronic service through the Clerk of the Court's CM/ECF filing system on

4

March 27, 2017.

5

Dated:  March 27, 2017        */s/ Michelle M. La Mar*_____

6

                      Michelle M. La Mar

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13319338.1
205625-10015

74

TCS' RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS:
CASE NO.: 4:15-CV-01696-YGR