MICHELLE M. LA MAR (SBN 163038)
mlamar@loeb.com
PATRICK N. DOWNES (SBN 186461)
pdownes@loeb.com
LAURA A. WYTSMA (SBN 189527)
lwytsma@loeb.com
ERIN M. SMITH (SBN 235039)
esmith@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000

Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STEVEN HELDT, BRIAN BUCHANAN, and CHRISTOPHER SLAIGHT<br><br>Plaintiffs,<br><br>v.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>Defendant. | Case No.: 4:15-cv-01696-YGR<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**TATA CONSULTANCY SERVICES, LTD.'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINION TESTIMONY OF DAVID NEUMARK**<br><br>Date: July 25, 2017<br>Time: 2:00 p.m.<br>Location: Courtroom 1, 4th Flr., Oakland<br><br>Complaint Filed: April 14, 2015 |

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT
OPINION TESTIMONY OF DAVID NEUMARK
Case No.: 4:15-cv-01696-YGR

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ......................................................................................................... 2

    A.   The Court Must Conduct a "Rigorous Analysis" of Dr. Neumark's Testimony Before Considering Class Certification ...................................... 2

    B.   Dr. Neumark's Opinions Are Inadmissible Because They are Unhelpful to the Trier of Fact and Unreliable ............................................... 4

        1.   Dr. Neumark's Methodology Is Not a Recognized Method to Determine Whether Discrimination Caused Observed Disparities .................................................................................. 4

        2.   Dr. Neumark's Testimony is Irrelevant to Class Certification .......... 5

        3.   Plaintiffs Presuppose Admissibility of Neumark By Arguing TCS Has the "Burden" to Rebut His Statistical Analyses ................. 7

        4.   Dr. Neumark Considered the Wrong Labor Markets by Including Deputees in His Analyses and Ignoring TCS's Actual Applicant Pool ....................................................................... 8

    C.   Tata Did Not "Withhold" Data and The Discovery Dispute Does Not Affect TCS's Motion to Exclude .......................................................... 9

III.   CONCLUSION .................................................................................................. 11

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

i

REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT
OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Ameritech Servs., Inc.*
    231 F.3d 414 (7th Cir. 2000)............................................................................................5, 7, 8

*Am. Honda Motor Co. v. Allen*,
    600 F.3d 813 (7th Cir. 2010)........................................................................................................2

*Coates v. Johnson & Johnson*,
    756 F.2d 524 (7th Cir. 1985)........................................................................................................6

*Coleman v. Quaker Oats Co.*,
    232 F.3d 1271 (9th Cir. 2000)..................................................................................................6, 8

*Contrast Penk v. Or. State Bd. of Higher Educ.*,
    816 F.2d 458 (9th Cir. 1987)........................................................................................................8

*Diaz v. Am. Tel. & Tel.*,
    752 F.2d 1356 (9th Cir. 1985)......................................................................................................6

*E.E.O.C. v. Gen. Tel. Co. of Nw., Inc.*,
    885 F.2d 575 (9th Cir. 1989)........................................................................................................7

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011)........................................................................................................2

*Gay v. Waiter's & Dairy Lunchmen's Union, Local No. 30*,
    694 F.2d 531 (9th Cir. 1982)........................................................................................................6

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977) ..................................................................................................................5, 7

*Mister v. Ill. Cent. Gulf R.R. Co.*,
    832 F.2d 1427 (7th Cir. 1987)...........................................................................................6, 7, 8, 9

*Obrey v. Johnson*,
    400 F.3d 691 (9th Cir. 2005)....................................................................................................5, 6

*Ottaviani v. State Univ. of N.Y. at New Paltz*,
    875 F.2d 365 (2d Cir. 1989).........................................................................................................6

*Sheehan v. Daily Racing Form, Inc.*,
    104 F.3d 940 (7th Cir. 1997)........................................................................................................5

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

ii

REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR

## **TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................................. 2, 6

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

iii

REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR

## I. INTRODUCTION

In plaintiffs' view, any employer with alleged workplace disparities can be compelled to disprove discrimination in a class action context if plaintiffs offer an expert who opines that a disparity exists, even though, as plaintiffs' expert Dr. Neumark freely admits, disparities alone *cannot* establish even a prima facie case of discrimination. Under Ninth Circuit and Supreme Court precedent, however, plaintiffs must come forward with "substantial evidence" of discrimination before a class can be certified. Plaintiffs have not.

The insufficiency of Plaintiffs "evidence" notwithstanding, Tata Consultancy Services, Ltd.'s ("TCS") expert, Dr. Anderson, has shown that TCS's hiring rates of South Asians versus non-South Asians generally match TCS's actual applicant pools, and TCS's termination rates do not differ significantly between South Asians and non-South Asians. More central to the motion to exclude, plaintiffs' "burden-shifting" argument presupposes the admissibility of Dr. Neumark's testimony. Before relying on Dr. Neumark's opinions, however, plaintiffs must establish their admissibility. Dr. Neumark's opinions admittedly do not address the issue of discrimination, and for that reason alone, should be excluded.

Dr. Nuemark's methodologies are also unreliable—even Dr. Neumark would not want to use his methods outside of the litigation context, which provides another, independent basis to exclude his testimony. First, Dr. Neumark did not control for any non-discriminatory factors that might explain the disparities he observed. Second, Dr. Neumark considered the wrong labor pools. Dr. Neumark opines that disparities exist in TCS's workforce by including in his statistics "deputees" hired by TCS *in India* (or other country) and transferred *legally* to the United States on H1-B (or other) visas. By definition, deputees are short-term employees transferred to—*not hired in*—the United States to fill positions for which there is a shortage, and are skilled, trained, knowledgeable and often have already worked in India for the TCS client for whom they will work in the United States. Dr. Neumark admits that use of deputees is not per se discriminatory. In short, Dr. Neumark considered the wrong labor pool, and failed to control for any non-discriminatory variables, which makes his analyses unreliable.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

1

REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT
OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR

## II. ARGUMENT

Plaintiffs assert that Dr. Neumark's opinion and testimony should be admitted for three reasons. First, plaintiffs contend that Dr. Neumark's testimony is not "necessary" to certify a class and so should be admitted. Whether Dr. Neumark's testimony is "necessary" does address its admissibility, and plaintiffs offer no reason that "unnecessary" testimony should be admissible in the first instance. Second, plaintiffs contend that Dr. Neumark's testimony is relevant (although not "necessary") and reliable. But the law and the facts do not support that contention. Third, plaintiffs change the subject by arguing that TCS "withheld" employee data and so should be barred from arguing that Dr. Neumark's testimony should be excluded. But plaintiffs do not argue that they did not have access to such data, only that, in their view, it was produced too late. More importantly, plaintiffs have had the "withheld" employee data for months now and have yet to make any offer of proof regarding how that data would support their position.

### A. The Court Must Conduct a "Rigorous Analysis" of Dr. Neumark's Testimony Before Considering Class Certification

Plaintiffs are correct that when an expert's "testimony is critical to class certification … a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion. That is, the district court must perform a full *Daubert* analysis before certifying the class if the situation warrants." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 354-55 (2011) (doubting district court's conclusion that "*Daubert* did not apply to expert testimony at the certification stage of class-action proceedings"); *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 982 (9th Cir. 2011) (finding that district court correctly applied *Daubert* standard at class-certification stage).

It appears plaintiffs now contend that Dr. Neumark's testimony is not "critical" to its class certification motion although plaintiffs cite Dr. Neumark's report as support for that contention. If plaintiffs rely on the expert testimony of Dr. Nuemark for class

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

2

REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR

certification, the Court is required to conduct a *Daubert* analysis.  In other words, plaintiffs cannot say Dr. Neumark's testimony is not "critical," in order to shield it from scrutiny, but then rely upon it to support class certification.  On the other hand, if plaintiffs are not relying on Dr. Neumark's testimony, there is no reason for the court to admit it, particularly since Dr. Neumark concedes his analyses do not show that TCS illegally discriminated.

Moreover, contrary to plaintiffs contention, they have not come forward with non-statistical evidence of a "common discriminatory policy" at TCS, which would render Dr. Neumark's testimony "unnecessary."  *See* TCS's Opposition to Motion for Class Certification ("Class Certification Opp."), Docket Entry No. 127,  pp.18-20.  Plaintiffs argue that TCS's H1-B (or other) visa program is discriminatory because it results in race and national origin disparities in TCS's workforce.  But plaintiffs do not challenge TCS's use of the visa program as unlawful.  *See* Docket Entry No. 59 at pp. 5-6.  And, even Dr. Neumark agrees that the temporary assignment of South-Asian visa holders, called "deputees," to projects in the United States is not discrimination *per se.*  Declaration of Patrick Downes ("Downes Decl.") ¶ 2,[1] Ex. A, 16:9-25 (at Docket Entry No. 148 – Notice of Lodging).  Plaintiffs have not provided any evidence that TCS's motivation for using deputees from India to temporarily staff client projects in the U.S. is motivated by race or national origin.  *See* Class Certification Opp. at 18-20.  Dr. Neumark testified that TCS's workforce is disproportionately South-Asian because TCS uses South-Asian visa holders for short term projects in the United States, which, of course, states the obvious, and says nothing about whether TCS's employment practices, including its use of deputees, are discriminatory.

Deputees, by definition, possess skills and experience which make them qualified to hold positions for which there is a shortage in the U.S.  TCS temporarily staffs deputees on projects in the U.S. because they are skilled, trained, have proven themselves to TCS and,

---

[1] The "Downes Decl. is at Docket Entry No. 125, Attachment 1.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

3

REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR

1  in many instances, have already proven themselves to TCS's clients in the U.S.  *See*
2  Motion to Exclude Expert Opinion Testimony of Neumark ("Mot. to Exclude) at 14-15,
3  Docket Entry No. 125.  Nothing in the documents or testimony cited by plaintiffs suggests
4  TCS has a discriminatory motive in using deputees, and plaintiffs' assumption to the
5  contrary is itself race-based.

6  When deputees are excluded from TCS's hiring and termination data, the racial and
7  national origin disparities observed by Dr. Neumark evaporate.  Class Certification Opp. at
8  8-9 and 18-20; Declaration of G. Edward Anderson, PhD. ("Anderson Decl.") ¶ 54 (hiring)
9  and ¶¶ 90-99 (termination), Docket Entry No. 129.  Put simply, there is no evidence that
10 TCS has engaged in discriminatory employment practices, with or without Dr. Neumark's
11 testimony.

12 **B.     Dr. Neumark's Opinions Are Inadmissible Because They are Unhelpful
13          to the Trier of Fact and Unreliable**

14 Contrary to plaintiffs' opposition, Dr. Neumark's analyses are irrelevant to class
15 certification because they admittedly cannot be used by the trier of fact to establish a
16 prima facie case of discrimination.  Dr. Neumark's analyses are also unreliable because
17 they (i) fail to consider even a single non-discriminatory factor, (ii) include deputees who
18 are legally in the United States under a visa program that plaintiff admits is designed to
19 protect U.S. employees, and (iii) consider the wrong labor market by ignoring TCS's
20 actual applicant pool.  Yet, despite the admission that Dr. Neumark cannot establish a
21 *prima facie* case of discrimination, and despite the lack of any other evidence that TCS
22 discriminates, plaintiff argues that Dr. Neumark's elimination of "chance" as the cause of
23 TCS's alleged workplace disparities shifts the burden to TCS to prove it did not
24 discriminate.  Not so.

25 **1.      Dr. Neumark's Methodology Is Not a Recognized Method to
26           Determine Whether Discrimination Caused Observed Disparities**

27 Putting aside whether Dr. Neumark's analyses identify any *relevant* disparities
28 (they do not), Dr. Neumark admits that he is not aware of a single publication that uses his

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

4

REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR

1  methodology.  Downes Decl. ¶ 2, Ex. A, p. 110:5-23.  The reason is undisputed.  If the
2  goal is to determine if discrimination occurred, a researcher must control for non-
3  discriminatory variables.  Mot. to Exclude, pp. 13-14.  Dr. Neumark did not.  Downes
4  Decl. ¶ 2, Ex. A, p. 11:18-20.
5  　　　　Despite the shortcoming, plaintiffs argue that Dr. Neumark employed a "typical"
6  methodology in employment cases, quoting a passage from *Adams v. Ameritech Servs.,*
7  *Inc.* 231 F.3d 414, 424 (7th Cir. 2000).  *See* Plaintiffs' Opposition to Motion to Exclude
8  ("Pltf's Opp.") at 7.  But, the only reason the expert study in *Adams* was admitted into
9  evidence was that plaintiffs there, unlike here, provided *other* evidence sufficient to rule
10 out non-discriminatory factors.  *Adams*, 231 F.3d at 425-28.  Had the plaintiffs in *Adams*
11 relied on statistical data alone, the court would have entered summary judgement against
12 them.  *Id.* at 427.  Dr. Neumark's methodology is not accepted in the scientific community
13 to show discrimination, is not buttressed by any other evidence of discriminatory motive or
14 practices, (Class Certification Opp. at 18-20) , and should, therefore, not be accepted by
15 this Court.
16 **2.    Dr. Neumark's Testimony is Irrelevant to Class Certification**
17 　　　　Plaintiffs argue that statistical evidence is relevant in Title VII cases.  But not all
18 statistics are equal, and not all are admissible for every purpose.  *See Int'l Bhd. of*
19 *Teamsters v. United States*, 431 U.S. 324, 340 (1977) (statistics "usefulness depends on all
20 of the surrounding facts and circumstances."); *Sheehan v. Daily Racing Form, Inc.,* 104
21 F.3d 940, 942 (7th Cir. 1997) (excluding expert study that did not account for non-
22 discriminatory variables).
23 　　　　Plaintiffs argue that expert statistical testimony need not "prove" discrimination to
24 be admissible, citing *Obrey v. Johnson*, 400 F.3d 691, 695 (9th Cir. 2005).  In *Obrey*, a
25 study based entirely on statistical disparities was excluded at trial.  *Id.* at 696-97.  The
26 Ninth Circuit reversed, finding the study should have been admitted *at trial* for "what it
27 purported to analyze."  *Id.* at 696.  But, the Ninth Circuit in *Obrey* expressly held that
28 studies based entirely on statistical disparities, like Dr. Neumark's analyses here, are

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

5

REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR

"insufficient … to support a *prima facie* case of discrimination…." *Id.* at 696, citing *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1283 (9th Cir. 2000) ("Because [the statistics] fail to account for many factors pertinent to [the plaintiff], we conclude that the statistics are not enough to take this case to trial."). Unlike in *Obrey,* here plaintiffs are attempting to use Dr. Neumark's statistical analyses to support a *prima facie* case of discrimination. Used for that purpose, Dr. Neumark's analyses are insufficient, irrelevant and inadmissible.

At the class certification stage, to prevail plaintiff must provide "significant proof" of discrimination. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353-54 (2011). Dr. Neumark's analyses cannot provide that significant proof, and plaintiffs have offered nothing else. *See* Class Certification Opp. at 18-20 (plaintiffs offer no compelling anecdotal or other evidence of discrimination). On this record, Dr. Neumark's testimony is not helpful, and irrelevant. *Cf. Diaz v. Am. Tel. & Tel.,* 752 F.2d 1356, 1362 (9th Cir. 1985). Dr. Neumark's observed disparities are not "buttressed by evidence of general policies or specific instances of discrimination" and his opinions and testimony regarding those disparities are, therefore, not useful to the trier of fact. *Cf. Coates v. Johnson & Johnson,* 756 F.2d 524, 532 (7th Cir. 1985). In short, observed disparities in the workforce do not establish a pattern and practice of discrimination common to all plaintiffs. *See Coleman,* 232 F.3d. at 1283; *Ottaviani v. State Univ. of N.Y. at New Paltz,* 875 F.2d 365, 370-75 (2d Cir. 1989)(evidence was not "statistically significant" enough to establish a *prima facie* case of discrimination); *Gay v. Waiter's & Dairy Lunchmen's Union, Local No. 30,* 694 F.2d 531, 553 (9th Cir. 1982)("Statistical evidence, standing alone, was insufficient to establish a *prima faci*e case.").

Plaintiffs other cases are equally unavailing. Plaintiff cites *Mister* for the proposition that statistical disparities are admissible to show racial discrimination even though "no independent variables other than race" were used. *Mister v. Ill. Cent. Gulf R.R. Co.*, 832 F.2d 1427, 1431 (7th Cir. 1987). But, *Mister* was a waiver case; defendant simply failed to challenge plaintiffs' statistics at the trial level. *Mister,* 832 F.2d at 1431.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

6

REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR

1  Plaintiff claims that expert testimony regarding statistical disparities is relevant even if the
2  expert failed to employ a regression analysis and control for non-discriminatory factors,
3  citing *Teamsters*, 431 U.S. at 339, fn.20 (1977).  But in *Teamsters,* "[t]he Government
4  bolstered its statistical evidence with the testimony of individuals who recounted over 40
5  specific instances of discrimination." *Teamsters*, 431 U.S. at 338-39 ("this was not a case
6  where the Government relied on 'statistics alone.'").  And the Court cautioned that
7  statistics "usefulness depends on all the surrounding facts and circumstances." *Teamsters,*
8  431 U.S. at 340.

### 3. Plaintiffs Presuppose Admissibility of Neumark By Arguing TCS Has the "Burden" to Rebut His Statistical Analyses

According to plaintiffs, once a "statistically significant disparity" is identified, the burden shifts to the employer to rebut it.  Pltf's Opp. at 11-12.  But that argument presupposes the admissibility of Dr. Neumark's testimony.  First, plaintiffs must show that Dr. Neumark's testimony is admissible and offer substantial proof of discrimination *before* claiming the burden shifts to TCS to provide a non-discriminatory explanation.  *See E.E.O.C. v. Gen. Tel. Co. of Nw., Inc.,* 885 F.2d 575, 579-82 (9th Cir. 1989)(statistical regression analysis that accounted for non-discriminatory variables, plus evidence of specific instances of discrimination was enough to require employer to show how non-discriminatory factors might rebut statistical evidence).  Unlike the expert in *Gen. Tel. Co. of Nw.*, Dr. Neumark did not control for non-discriminatory variables, and plaintiffs have offered no specific instances of discrimination.  *See* Class Certification Opp. at 18-20.

Plaintiffs next assert that Dr. Neumark was not required to perform regression analyses to "exclude the hypothetical possibility that unknown non-discriminatory factors caused the disparity."  Pltf's Opp. at 12, citing *Gen. Tel. Co. of Nw., Inc.,* 885 F.2d at 583; *Adams,* 231 F.3d at 427; *Mister,* 832 F.2d at 1431.  But, in *Gen. Tel. Co. of Nw.,* unlike here, the plaintiffs *performed* a regression analysis, *controlled* for non-discriminatory variables, and *offered* specific instances of discrimination. *Gen. Tel. Co. of Nw.,* 885 F.2d at 579-82 (finding the EEOC conducted an adequate "regression analysis" even though it

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

7

REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR

may not have accounted for every non-discriminatory factor, and provided specific instances of discrimination); *Contrast Penk v. Or. State Bd. of Higher Educ.,* 816 F.2d 458, 464-65 (9th Cir. 1987)(plaintiff's regression analysis was discounted because it failed to account for the most critical non-discriminatory explanations); *Coleman*, 232 F.3d at 1283 (statistics that fail to control for non-discriminatory factors do not establish a *prima facie* case of discrimination). And finally, *Adams* and *Mister* also do not support plaintiffs' argument for the reasons discussed *infra.*

### 4. Dr. Neumark Considered the Wrong Labor Markets by Including Deputees in His Analyses and Ignoring TCS's Actual Applicant Pool

Dr. Neumark observed disparities in TCS's workforce because he improperly counted deputees - employees hired in India and temporarily deputed to the United States on visa. Mot. to Exclude at 14-15. Dr. Neumark testified that a workforce with 76% foreign workers, legally working in the United States, does not reflect the demographics of a benchmark survey figure that ignores TCS's actual applicant pool. *Id.* But, an appropriate comparison of TCS workers hired and terminated in the United States show overall hiring rates at TCS generally match TCS's applicant pools and termination rates do not differ significantly between South Asians and non-South Asians. Class Certification Opp. at 17; Anderson Decl. ¶¶ 6-11, 78.

Plaintiffs cannot rehabilitate Dr. Neumark with the unsupported contention that TCS uses deputees to further its "discriminatory objective of filling U.S. positions with its preferred race of employees." Pltf's Opp. at 17. Plaintiffs' own authorities show that a "strict cap exists to limit the number of foreign workers that can fill U.S. positions" thereby protecting American workers. Pltf's Opp. at 16-17. Dr. Neumark agrees that the temporary assignment of South-Asian visa holders to projects in the United States is not discrimination *per se.* Downes Decl. ¶ 2, Ex. A, 16:9-25 (at Docket Entry No. 148). Deputees, by definition, possess skills and experience which make them qualified to hold positions for which there is a shortage in the U.S. Motion to Exclude, pp. 14-15. While

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

8

REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR

plaintiffs claim that race and national origin motivate TCS to use skilled, trained and highly qualified deputees, they utterly fail to support that claim with facts. Class Certification Opp. at 20.

Compounding his error, Dr. Neumark compares his 76% South-Asian statistic with a 12.5% "benchmark" figure that he culled from a survey. Downes Decl. ¶ 2, Ex. A, p. 20:7-14; and ¶ 3, Ex. B, pp. 5, 6, ¶¶ 11, 12. But Dr. Neumark's 12.5% figure ignores TCS's actual applicant pool, which is 40% South-Asian. Anderson Decl. ¶ 10, 96. Dr. Neumark's analyses is unreliable because it ignores the real-world in which TCS operates. *See Mister,* 832 F.2d at 1435 (statistical analysis of actual applicants is advantageous because it examines how the employer actually treated people that wanted the job).

Again, plaintiffs cannot save Dr. Neumark's analyses by arguing that TCS's applicant pool is itself a "product of discrimination." Pltf's Opp. at 18. Plaintiff offers no proof. Opposition to Motion for Class Certification, p. 19. Plaintiffs unsubstantiated claim that TCS's real-world applicant pool is 40% South-Asian because TCS discriminates suffers from the same causal issue recognized by Dr. Neumark - it fails to control for a myriad of non-discriminatory variables. Only plaintiffs lawyers argue that the 40% South Asian applicant pool must be the product of discrimination; but, argument is not evidence.

### C. Tata Did Not "Withhold" Data and The Discovery Dispute Does Not Affect TCS's Motion to Exclude

Finally, plaintiffs attempt to change the subject altogether by arguing that TCS "withheld" employee data until January and February of 2017, and so should be barred from using that data as a basis to exclude Dr. Neumark's testimony. Plaintiffs also contend that the so-called "late produced" data should be excluded and TCS's experts should be barred from relying upon it. TCS contends that plaintiffs' discovery arguments lack merit (*See* Declaration of Michelle La Mar, Docket Entry No. 139), and more significantly, that TCS's Motion to Exclude is not impacted by plaintiffs' discovery complaints.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

9

REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR

The substance of plaintiffs' discovery dispute was referred by this Court to Magistrate Sallie Kim, who issued an Order and Recommendation, Docket Entry No. 174. Magistrate Kim recommended that plaintiffs be given more time to file a reply memorandum in support of their motion for class certification. This Court adopted that recommendation and plaintiffs' reply to the class certification motion is now due June 15, 2017 (Docket Entry No. 175). Plaintiffs are also permitted to take another Rule 30(b)(6) deposition and depose TCS's experts for an additional half day. Magistrate Kim also recommended that the Court deny plaintiffs' motion to strike TCS's expert reports and testimony. Any alleged prejudice to plaintiff should be cured by Magistrate Kim's Order and Recommendation, and by this Court's extension of the briefing schedule.

Moreover, there is no ground to deny TCS's Motion to Exclude Dr. Neumark's Opinion Testimony based on plaintiff's discovery complaints. Allegedly "late-produced" data does not alter the fact that Dr. Neumark improperly counted foreign visa holders in his analyses, which greatly skewed his statistics on TCS's workforce, or that he ignored TCS's actual applicant pool in arriving at a "benchmark" figure for the "appropriate" percentage of South Asians in the workforce. Nothing in the "late-produced" data would alter these mistakes. Despite having the "late-produced" data for months, plaintiffs have made no offer of proof that Dr. Neumark would use that data to control for non-discriminatory variables. Instead, plaintiffs continue to argue that statistics that do not control for non-discriminatory variables support their motion for class certification. Under these circumstances, TCS's criticisms of Dr. Neumark's analyses remain legitimate and not affected by plaintiffs' discovery concerns.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10

REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR

## III. CONCLUSION

For the foregoing reasons, TCS respectfully requests that the Court grant its motion and exclude Dr. Neumark's opinions, report and testimony for all purposes in this case.

Dated: April 10, 2017

Respectfully submitted,

LOEB & LOEB LLP

By: /s/ Michelle M. La Mar
   Michelle M. La Mar
   Attorneys for Defendant
   TATA CONSULTANCY SERVICES, LTD.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

11

REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing: Notice of Submission was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system on April 10, 2017.

Dated: April 10, 2017                    /s/ *Michelle M. La Mar*
                                         Michelle M. La Mar

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12

REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF DAVID NEUMARK
CASE NO. 4:15-cv-01696-YGR