PAGES 1 – 38

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SALLIE KIM

STEVEN HELDT, BRIAN BUCHANAN,       )
AND CHRISTOPHER SLAIGHT,            )
                                    )
          PLAINTIFFS,               )
                                    )
  VS.                               ) NO. 15-CV-10696 YGR
                                    )
TATA CONSULTANCY SERVICES, LTD,     )
                                    )  SAN FRANCISCO, CALIFORNIA
          DEFENDANT.                )  THURSDAY
                                    )  APRIL 6, 2017
_____)


**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  11:02 A.M. – 11:38 A.M.**

**APPEARANCES:**

**FOR PLAINTIFFS**          KOTCHEN & LOW LLP
                            2300 M STREET, N.W.
                            SUITE 800
                            WASHINGTON, DC 20037
                     **BY:  DANIEL A. KOTCHEN, ESQUIRE**

                            KOTCHEN AND LOW LLP
                            1745 KALORAMA RD. NW, STE. 101
                            WASHINGTON, DC 20009
                     **BY:  MICHAEL VON KLEMPERER, ESQUIRE**
                          **LINDSEY GRUNERT, ESQUIRE**
                            (BOTH APPEARING TELEPHONICALLY)

(FURTHER APPEARANCES ON FOLLOWING PAGE)


*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
                 *RETIRED OFFICIAL COURT REPORTER, USDC*

1    **APPEARANCES (CONTINUED):**

2    **FOR DEFENDANTS**          LOEB AND LOEB LLP
                                 10100 SANTA MONICA BOULEVARD
3                                SUITE 2200
                                 LOS ANGELES, CALIFORNIA 90067
4                       BY:  **BERNARD R. GIVEN, II, ESQUIRE**
                            **PATRICK N. DOWNES, ESQUIRE**
5                           **MICHELLE M. LAMAR**
                            **ERIN M. SMITH, ESQUIRE**
6                                (ALL APPEARING TELEPHONICALLY)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1  THURSDAY, APRIL 6, 2017                    11:02 A.M.
 2  (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO
 3  IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER
 4  ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)
 5                        ---O0O---
 6                        PROCEEDINGS
 7       THE CLERK:  SO THIS IS CIVIL CASE 15-1696, HELDT
 8  VERSUS TATA CONSULTANCY SERVICES, LIMITED.
 9       COUNSEL, PLEASE STATE YOUR APPEARANCES, BEGINNING
10  WITH THOSE IN THE COURTROOM, AND THEN PLAINTIFFS' COUNSEL ON
11  THE PHONE, AND THEN DEFENDANT'S COUNSEL.  THANK YOU.
12       MR. KOTCHEN:  GOOD MORNING, YOUR HONOR.  DANIEL
13  KOTCHEN FROM THE LAW FIRM OF KOTCHEN & LOW ON BEHALF OF THE
14  PLAINTIFFS.
15       THE COURT:  THANK YOU, MR. KOTCHEN.  GOOD MORNING.
16       MR. KOTCHEN:  GOOD MORNING.
17       ON THE PHONE IS MICHAEL VON KLEMPERER AND LINDSEY
18  GRUNERT.
19       THE COURT:  OKAY.  WHAT WAS THE FIRST PERSON?
20       MR. KOTCHEN:  MICHAEL VON KLEMPERER.  AND LINDSEY
21  GRUNERT.
22       THE COURT:  THANK YOU.  (INDISCERNIBLE) GOT THIS FOR
23  ME.  PERFECT.  AND LINDSEY.
24       MR. KOTCHEN:  GRUNERT.
25       THE COURT:  GRUNERT.  OKAY.
```

```
 1                AND ON THE PHONE FOR DEFENDANTS?

 2           MR. GIVEN:  GOOD MORNING, YOUR HONOR.  BARNEY GIVEN

 3   ON BEHALF OF THE DEFENDANT TATA CONSULTANCY SERVICES, LIMITED.

 4           THE COURT:  THANK YOU.  ANYONE ELSE?  OKAY.  GREAT.

 5           MS. LAMAR:  GOOD AFTERNOON, YOUR HONOR.  MICHELLE

 6   LAMAR ON BEHALF OF DEFENDANT TATA CONSULTANCY SERVICES.

 7           THE COURT:  OKAY.  ANYONE ELSE?

 8           MR. DOWNES:  GOOD MORNING.  PATRICK DOWNES,

 9   D-O-W-N-E-S, ON BEHALF OF DEFENDANT.

10           THE COURT:  OKAY.  ANYONE ELSE?

11           MS. SMITH:  ONE MORE, YOUR HONOR.  ERIN SMITH ON

12   BEHALF OF THE DEFENDANTS.

13           THE COURT:  OKAY.  THANK YOU.

14           SO WHAT I WOULD ASK, AT LEAST ON THE PHONE, IF ONE OF

15   YOU -- IF YOU COULD DESIGNATE ONE PERSON TO BE THE PRIMARY

16   SPEAKER?  IT'S JUST REALLY TOUGH ON THE PHONE WITH STUFF LIKE

17   THIS.  SO WHO WILL THAT BE ON THE PHONE?

18           MR. GIVEN:  THAT WILL BE ME, MR. GIVEN, YOUR HONOR.

19           THE COURT:  GREAT.

20           MR. GIVEN:  AND DEPENDING ON THE QUESTION, THERE MAY

21   BE ONE OR TWO MATTERS MS. LAMAR MAY NEED TO ANSWER BASED ON HER

22   LEGACY KNOWLEDGE.

23           THE COURT:  OKAY.

24           MR. GIVEN:  BUT I WILL BE THE PRIMARY SPEAKER.

25           THE COURT:  OKAY.  GREAT.  IF IT'S MR. GIVEN, YOU
```

```
 1   DON'T HAVE TO SAY WHO YOU ARE, BUT IF IT'S MS. LAMAR AND YOU
 2   DECIDE TO ENTER IN THE CONVERSATION, PLEASE ANNOUNCE YOURSELF.
 3           AND HERE, BECAUSE WE HAVE MR. KOTCHEN IN PERSON, I'M
 4   HOPING THAT MR. KOTCHEN CAN DO MOST OF THE TALKING AND THAT THE
 5   PEOPLE ON THE PHONE WON'T HAVE TO SAY ANYTHING.  BUT, AGAIN, IF
 6   YOU HAVE TO SAY SOMETHING, PLEASE IDENTIFY YOURSELF.  OKAY?
 7           MS. GRUNERT:  YES, YOUR HONOR.
 8           THE COURT:  SO LET ME START WITH THE FIRST ISSUE,
 9   WHICH I THINK IS PROBABLY JUST AN ADMINISTRATIVE ONE, AND THAT
10   IS THE MOTION TO SEAL.
11           I WANTED TO SEE IF I UNDERSTOOD CORRECTLY WHAT THE
12   CURRENT SITUATION IS.  SO IS IT THE DEFENDANT'S POSITION OR
13   PLAINTIFFS' POSITION THAT SOMETHING HAS BEEN FILED UNDER SEAL
14   THAT SHOULD NOT -- THAT SHOULD HAVE BEEN REDACTED?
15           MR. KOTCHEN:  YOUR HONOR, THE MOTION TO SEAL WAS THE
16   MOTIONS THAT THE PLAINTIFFS FILED, BUT IT WAS THE DEFENDANT'S
17   DOCUMENT.  SO IT WAS THE DEFENDANT THAT REQUESTED THAT WE SEAL
18   THAT.
19           THE COURT:  OKAY.  SO -- BUT YOU'RE FOLLOWING THE
20   PROCEDURE UNDER THE LOCAL RULES, WHICH --
21           MR. KOTCHEN:  YES, YOUR HONOR.
22           THE COURT:  -- IS THAT YOU'RE FILING THE -- YOU'RE
23   PROPOSING THE REDACTED AND THE UNREDACTED VERSION?
24           MR. KOTCHEN:  YES, YOUR HONOR.
25           THE COURT:  OKAY.  SO, MR. GIVEN, FROM THE DEFENSE
```

1    POINT OF VIEW, DO YOU AGREE WITH THE MOTION TO SEAL?

2            **MR. GIVEN:**  YES.  WE HAD FILED THE MOTION, OR

3    REQUESTED IT, SO I THINK WE ARE FINE WITH THE PROTOCOL.  FROM

4    WHAT I'VE SEEN SO FAR BY THE FILINGS, I THINK THAT THEY'RE

5    FOLLOWING LOCAL RULE PROTOCOL FOR THE NORTHERN DISTRICT.

6            **THE COURT:**  OKAY.  BUT IN TERMS OF THE SUBSTANCE, DO

7    YOU AGREE WITH THE WAY THEY HAVE SUBSTANTIVELY REDACTED THE

8    DOCUMENTS?

9            **MR. GIVEN:**  YOUR HONOR, THAT ONE, I'M SORRY.  WE'LL

10   HAVE TO DEFER THAT ONE ISSUE OR THAT ISSUE TO MS. LAMAR.

11           **THE COURT:**  OKAY.  MS. LAMAR, HAVE YOU BEEN ABLE TO

12   LOOK AT IT?

13           **MS. LAMAR:**  I ACTUALLY HAVE LOOKED AT IT

14   TANGENTIALLY, YOUR HONOR, BUT WE HAVE -- WE REQUEST THAT THEY

15   REDACT EMPLOYEE NAMES AND EMPLOYEE INFORMATION.

16           **THE COURT:**  RIGHT.

17           **MS. LAMAR:**  AND THEY HAVE TRULY DONE THAT.

18           **THE COURT:**  OKAY.  GOOD.  SO AS I UNDERSTAND IT, IT'S

19   JUST THE NAMES, SALARY INFORMATION, DATES OF BIRTH, CONTACT

20   INFORMATION THAT HAS BEEN REDACTED; IS THAT CORRECT?

21           **MR. KOTCHEN:**  THAT'S MY UNDERSTANDING, YOUR HONOR.

22           **THE COURT:**  ALL RIGHT.  I'M GOING TO GO AHEAD AND

23   GRANT THE MOTION TO SEAL.

24           **MR. KOTCHEN:**  OKAY.

25           **THE COURT:**  BECAUSE IT WAS DONE APPROPRIATELY, AND I

1   DO THINK PERSONAL INFORMATION OF INDIVIDUALS IS AN APPROPRIATE

2   MATTER FOR SEALING.  SO WE'LL JUST HAVE A VERY SHORT ORDER ON

3   GRANTING THE MOTION TO SEAL.

4           **MR. KOTCHEN:**  OKAY.

5           **THE COURT:**  THANK YOU.

6           **MR. KOTCHEN:**  THANK YOU.

7           **THE COURT:**  THANK YOU.  GREAT.  WE CAN PUT THIS STACK

8   OF PAPER TO THE SIDE.  THOSE OF YOU ON THE PHONE CAN'T SEE THIS

9   GIANT STACK OF PAPERS THAT I HAVE, BUT IT'S A VERY SATISFYING

10  FEELING TO BE ABLE TO PHYSICALLY TOSS IT TO THE END.

11          OKAY.  SO LET'S MOVE ON -- AND ANOTHER PROCEDURAL

12  THING THAT I WANTED TO FIND OUT IS, I UNDERSTAND THAT RIGHT NOW

13  THERE'S A DISPUTE THAT YOU'VE TEED UP FOR ME AND THAT I'VE

14  GOTTEN SUPPLEMENTAL BRIEFING ON, ON THIS ISSUE, THE PRODUCTION

15  OF THE ADDITIONAL MATERIALS --

16          **MR. KOTCHEN:**  YES.

17          **THE COURT:**  -- AND WHETHER OR NOT I SHOULD ALTER THE

18  SCHEDULE AND WHAT SHOULD HAPPEN.  SEPARATELY, I ALSO RECEIVED A

19  JOINT DISCOVERY LETTER BRIEF, DOCUMENT 162, WHICH DEALS WITH

20  THE MOTION TO STRIKE THE EXPERTS AND THE DEPOSITION OF --

21  PROPOSED DEPOSITION OF MS. LAMAR.

22          **MR. KOTCHEN:**  YES.

23          **THE COURT:**  IS THAT A SEPARATE MOTION?

24          **MR. KOTCHEN:**  YOUR HONOR, THAT WAS A SEPARATE

25  MOTION --

 1                **THE COURT:**  OKAY.

 2                **MR. KOTCHEN:**  -- THAT WE THOUGHT MAYBE IT WOULD BE

 3     REFERRED TO YOU --

 4                **THE COURT:**  IT IS.

 5                **MR. KOTCHEN:**  -- BUT IT WAS SEPARATE --

 6                **THE COURT:**  EVERYTHING HAS BEEN REFERRED TO ME FOR

 7     ALL PURPOSES.  DISCOVERY -- SO ANY DISCOVERY DISPUTE THAT COMES

 8     FORWARD.  EVERY ONCE IN A WHILE THERE'S SOME CONFUSION ABOUT

 9     WHETHER SOMETHING IS DISCOVERY OR NOT DISCOVERY, AND IF THAT

10     HAPPENS, I'LL TALK TO JUDGE GONZALEZ ROGERS.  WE HAVE A VERY

11     CLOSE WORKING RELATIONSHIP.  I'LL FIND OUT FROM HER WHETHER I

12     SHOULD DEAL WITH IT OR WHETHER SHE WILL DEAL WITH IT, AND WE'LL

13     ALWAYS LET YOU KNOW.  MY GUESS ON THIS ONE IS I WILL DEAL WITH

14     THAT.

15                AND SOMETIMES IT IS THE CASE, AS WITH THIS REQUEST

16     FOR MOVING A DEADLINE DATE -- I'VE TALKED WITH JUDGE GONZALEZ

17     ROGERS ABOUT IT, AND SHE SAID TO ME I DO NOT -- I NEVER HAVE

18     THE POWER TO MOVE A DEADLINE FOR THE JUDGE, FOR THE ARTICLE III

19     JUDGE, BUT WHAT I CAN DO IS MAKE A RECOMMENDATION.

20                **MR. KOTCHEN:**  OKAY.

21                **THE COURT:**  SO SHE AND I HAVE SPOKEN ABOUT THIS.  SHE

22     DIDN'T GET A CHANCE TO READ THE PAPERS, BUT SHE REFERRED IT TO

23     ME BECAUSE SHE KNEW THAT I WOULD HAVE THE OPPORTUNITY TO SPEND

24     SOME TIME LOOKING AT IT.

25                **MR. KOTCHEN:**  OKAY.

1          **THE COURT:**  SO IF –– AND I SAY "IF" –– IF I MAKE A

2    RECOMMENDATION TO MOVE THE DEADLINE, I WILL SEND IT TO HER

3    IMMEDIATELY, AND SHE'LL DO THAT, BECAUSE I DO UNDERSTAND

4    THERE'S SOME TIME ISSUES HERE.

5          **MR. KOTCHEN:**  YES, YOUR HONOR.

6          **THE COURT:**  AND SO MY FIRST QUESTION IS ON THE

7    TIMING.  WHEN IS THE CURRENT TIMING?

8          **MR. KOTCHEN:**  YOUR HONOR, CURRENTLY WE HAVE A CLASS

9    CERTIFICATION REPLY BRIEF DUE ON APRIL 10TH.  THAT'S MONDAY.

10         **THE COURT:**  OKAY.

11         **MR. KOTCHEN:**  THAT'S MONDAY.

12         **THE COURT:**  RIGHT.  OKAY.  AND WHAT OTHER DEADLINES

13   DO YOU HAVE?  SUMMARY JUDGMENT?

14         **MR. KOTCHEN:**  NO.  SUMMARY JUDGMENT IS FULLY BRIEFED.

15         **THE COURT:**  OKAY.

16         **MR. KOTCHEN:**  THERE IS A MAY 16TH ORAL ARGUMENT DATE

17   FOR MOTION FOR SUMMARY JUDGMENT, CLASS CERTIFICATION, AND

18   MOTION TO AMEND.

19         **THE COURT:**  NOW, IN THE ORIGINAL PAPERS, MR. KOTCHEN,

20   I NOTICED YOU SAID YOU WERE CONCERNED ABOUT THE WAY THESE

21   PAPERS AFFECTED YOUR –– AFFECTED THE SUMMARY JUDGMENT.  IS THAT

22   STILL YOUR POSITION?

23         **MR. KOTCHEN:**  YOUR HONOR, THE SEQUENCE OF EVENTS,

24   THERE WAS A SPECIFIC DEADLINE THAT JUDGE GONZALEZ ROGERS HAD.

25         **THE COURT:**  RIGHT.

1          **MR. KOTCHEN:**  IT WAS A REQUEST ABOUT SUMMARY

2    JUDGMENT.  AND THERE WAS NO CHANCE THAT WE HAD -- BECAUSE ONE

3    THING I HOPE TO TAKE YOU THROUGH TODAY IS THE SEQUENCE OF

4    EVENTS TO GIVE A LITTLE MORE BACKGROUND --

5          **THE COURT:**  I THINK I HAVE THE SEQUENCE OF EVENTS

6    PRETTY WELL.  IF YOU COULD DEFER SLIGHTLY ON THAT?  I HAVE SOME

7    POINTED QUESTIONS FOR BOTH SIDES.

8          **MR. KOTCHEN:**  YES.

9          **THE COURT:**  IF THAT'S OKAY?

10         **MR. KOTCHEN:**  SURE.

11         **THE COURT:**  I MEAN, I HAVE HAD A CHANCE TO LOOK AT

12   THE MATERIALS, AND SO IT COULD BE THAT YOUR SEQUENCE OF EVENTS

13   WOULD DEAL WITH IT, BUT IT MIGHT BE A LITTLE BIT FASTER FOR ME

14   JUST TO SORT OF ASK YOU THESE QUESTIONS, IF THAT'S OKAY.

15         **MR. KOTCHEN:**  YES, IF IT'S -- SO WHEN YOU SEE A CHART

16   LIKE THIS, THE DISCOVERY PRODUCTION GRAPH, THAT -- THIS LIST,

17   THE SUMMARY JUDGMENT REQUEST DEADLINE -- AND YOU SEE THAT THE

18   VAST MAJORITY OF THE DOCUMENTS THAT WE GOT WERE PRODUCED JUST

19   BEFORE AND MOST OF THEM AFTER THAT DEADLINE.

20         **THE COURT:**  OKAY.  AND DOES DEFENSE COUNSEL HAVE A

21   COPY OF THIS POWERPOINT PRESENTATION?

22         **MR. KOTCHEN:**  LINDSEY, COULD YOU PLEASE EMAIL THAT

23   OUT TO DEFENSE COUNSEL, THE POWERPOINT PRESENTATION?

24         **MR. GIVEN:**  NO, YOUR HONOR.  THIS IS MR. GIVEN.  WE

25   DON'T.

1      **THE COURT:**  OKAY.

2      **MR. GIVEN:**  AND, ALSO, THIS IS WHY I THINK WE DIDN'T

3    WANT TO GET INTO A RECITATION --

4      **THE COURT:**  OKAY.

5      (SIMULTANEOUS COLLOQUY.)

6      **MR. GIVEN:**  -- HISTORY.  BECAUSE WE DISAGREE WITH HIS

7    ASSERTION --

8      **THE COURT:**  OKAY.

9      (SIMULTANEOUS COLLOQUY.)

10      **MR. GIVEN:**  THAT MOST OF THEM WERE JUST PRODUCED.

11      **THE COURT:**  LET ME JUST -- LET ME JUST --

12      **MR. GIVEN:**  SO WE WOULD --

13      (SIMULTANEOUS COLLOQUY.)

14      **THE COURT:**  LET ME HOLD OFF ON THE POWERPOINT FOR

15    NOW.  LET ME HOLD OFF ON THE POWERPOINT.  BUT I WOULD ASK THAT

16    YOU MAIL IT OVER TO THEM -- EMAIL IT OVER TO THEM IMMEDIATELY,

17    SO IF WE DO TAKE A LOOK AT IT, THEN I CAN REFER TO THE PAGE

18    NUMBER --

19      **MR. KOTCHEN:**  YES.

20      **THE COURT:**  -- AND THE DEFENSE COUNSEL CAN ALSO LOOK

21    AT THE SAME PIECE OF PAPER --

22      **MR. KOTCHEN:**  OKAY.

23      **THE COURT:**  -- JUST TO BE ON THE SAME PAGE.

24      **MR. KOTCHEN:**  OKAY.

25      **THE COURT:**  OKAY.  SO WHAT WAS THE DISCOVERY DEADLINE

1    CUTOFF?

2              **MR. KOTCHEN:**  THERE WAS NO DISCOVERY DEADLINE CUTOFF.

3              **THE COURT:**  OKAY.  SO THE ONLY -- THE DEADLINES THAT

4    YOU WERE WORRIED ABOUT WAS THE MOTION FOR SUMMARY JUDGMENT AND

5    CLASS CERTIFICATION?

6              **MR. KOTCHEN:**  THAT'S EXACTLY RIGHT, YOUR HONOR.

7              **THE COURT:**  OKAY.  ALL RIGHT.  SO STILL OPEN.

8              AND DO YOU HAVE A TRIAL DATE?

9              **MR. KOTCHEN:**  YOUR HONOR, I DO NOT THINK WE HAVE A

10   TRIAL DATE.

11             **THE COURT:**  OKAY.

12             **MR. KOTCHEN:**  THE ONLY SCHEDULE --

13             **MR. GIVEN:**  NO, WE DO NOT.

14             **THE COURT:**  OKAY.  GOOD.

15             (SIMULTANEOUS COLLOQUY).

16             **THE COURT:**  SEE, WE ALREADY HAVE AGREEMENT ON A

17   COUPLE OF ISSUES.

18             OKAY.  SO LET ME GO TO MR. GIVEN.  I HAVE SOME

19   QUESTIONS FOR YOU.

20             **MR. GIVEN:**  OKAY.

21             **THE COURT:**  OKAY.  SO, FIRST OF ALL, THE PLAINTIFFS

22   CLAIM THAT THE DOCUMENTS THAT WERE PRODUCED ARE ON PAGE 2 OF

23   THEIR SUPPLEMENTAL LETTER BRIEF, AND THEY LUMP THEM INTO THE

24   FOLLOWING CATEGORIES:  THE MANPOWER REPORTS -- AND THESE ARE

25   THEIR BULLET POINTS ON THE BOTTOM OF PAGE 2 AT THE BOTTOM.

1          **MR. GIVEN:**  RIGHT.

2          **THE COURT:**  THE UNALLOCATED REPORTS, THE

3    SPREADSHEETS, THE VISA UTILIZATION REPORTS, THE EMPLOYEE

4    ALLOCATION DATA, AND THE EMPLOYEE APPRAISAL DATA.

5          AND SO WHEN YOU RESPONDED, YOU USED SLIGHTLY

6    DIFFERENT TERMINOLOGY, BUT I'M WONDERING IF WE COULD USE THE

7    SAME TERMINOLOGY THAT THE PLAINTIFFS USE, JUST BECAUSE I

8    THINK -- JUST BECAUSE I READ THAT FIRST, IT'S A LITTLE BIT

9    EASIER FOR ME TO KEEP THAT IN MY HEAD.  IS THAT OKAY?

10         **MR. GIVEN:**  YES.  YES, YOUR HONOR.

11         **THE COURT:**  OKAY.  ALL RIGHT.  SO I MIGHT NEED YOU TO

12   TRANSLATE WHEN WE LOOK AT YOUR BRIEF SO THAT I'LL KNOW HOW TO

13   MATCH THEM UP, BUT I'LL START WITH THE PLAINTIFFS' POSITION.

14         SO ONE OF THE THINGS THAT PLAINTIFFS HAVE SAID IS

15   THAT THEIR DOCUMENT -- THE DOCUMENTS THAT YOU PRODUCED WERE

16   SPECIFICALLY IN RESPONSE TO REQUESTS NUMBER 4, 6, 8, AND 16 OF

17   THEIR RFPS THAT WERE ISSUED, THIS EXHIBIT 28 ON THEIR

18   SUPPLEMENTAL BRIEF ATTACHMENTS, AND THIS IS THEIR FIRST REQUEST

19   FOR PRODUCTION OF DOCUMENTS.

20         DO YOU AGREE WITH THAT STATEMENT?

21         **MR. GIVEN:**  WELL, NO, YOUR HONOR.  AGAIN, WE HAVE

22   FILED OBJECTIONS TO THE RESPONSES TO THE REQUESTS FOR

23   PRODUCTION BECAUSE OF THE WAY THEY WERE ARTICULATED.  SO -- AND

24   I THINK THAT'S A CENTRAL THEME HERE AS WE GO THROUGH THIS, YOUR

25   HONOR.

1          **THE COURT:**  OKAY.

2          **MR. GIVEN:**  THE INABILITY OF PLAINTIFFS, FOR SOME

3     REASON, TO PROPERLY ARTICULATE THEIR REQUESTS -- WHICH IS WHY

4     WE HAD A MASSIVE PRODUCTION AND SUPPLEMENTAL PRODUCTIONS.

5     WE'VE PRODUCED 6-1/2 MILLION DOCUMENTS, YOUR HONOR, SO FAR.

6          **THE COURT:**  OKAY.

7          **MR. GIVEN:**  SO I THINK YOU'LL SEE ME REPEAT THAT

8     THEME THROUGHOUT.

9          **THE COURT:**  OKAY.  SO I'M LOOKING AT YOUR RESPONSES

10    TO THE SAME ONE, AND, BASICALLY, WHAT IT SAYS IS YOU OBJECT TO

11    THE REQUEST AND THEN YOU'LL -- OVERBROAD.  AND THEN YOU SAY.

12              "SUBJECT TO, WITHOUT WAIVING THOSE

13          OBJECTIONS, PLAINTIFF WILL PRODUCE

14          NON-PRIVILEGED RESPONSIVE DOCUMENTS IN

15          CUSTODY OR CONTROL."

16          THAT SEEMS TO BE --

17          **MR. GIVEN:**  WE --

18          **THE COURT:**  THAT SEEMS TO BE -- THAT'S, FOR EXAMPLE,

19    IN RESPONSE TO NUMBER 4.

20          **MR. GIVEN:**  WHICH WE DID, YOUR HONOR, WE DID.  AND

21    JUST SO YOUR HONOR WILL KNOW -- AGAIN, THIS IS THE DIFFICULTY

22    AND THE BACKGROUND.  AFTER THE OBJECTIONS AND THE RESPONSES,

23    THERE WAS NOT A HEARING REQUESTED BY PLAINTIFFS, BUT THERE WAS

24    A MEET AND CONFER PROCESS ENGAGED IN WHICH THEN RESULTED IN

25    30(B)(6) DEPO NOTICES BEING ISSUED BY PLAINTIFFS.  THOSE

```
 1    30(B)(6) DEPOSITIONS WERE TAKEN, AND DOCUMENTS WERE PRODUCED IN

 2    CONNECTION WITH THAT PROCESS AS WELL.

 3         ESSENTIALLY, THOSE 30(B)(6) DEPONENTS, ALL THE

 4    ATTACHMENTS, YOU KNOW, THE EMAILS AS CUSTODIANS, ALL THOSE WERE

 5    GATHERED AND DOCUMENTS WERE PRODUCED.  SO, UNFORTUNATELY, YOUR

 6    HONOR, THERE IS -- AND THAT'S WHY I HAD TO CORRECT PLAINTIFFS'

 7    COUNSEL.  THERE IS SEQUENCING OF EVENTS, BUT IT ISN'T AS IF NO

 8    PRODUCTION EVER OCCURRED AND ALL OF A SUDDEN IT WAS A DUMP, YOU

 9    KNOW, IN LATE FEBRUARY, EARLY MARCH.  THERE WAS ONGOING

10    PRODUCTION BASED ON WHAT WE THOUGHT WERE APPROPRIATE OR

11    CERTAINLY AT LEAST MORE ARTICULATE REQUESTS AT THE TIME --

12         THE COURT:  OKAY.

13         MR. GIVEN:  -- FOR DOCUMENTS.

14         THE COURT:  OKAY.  THANK YOU.  I HAVE A QUESTION FOR

15    MR. KOTCHEN.  MR. KOTCHEN, WHAT IS IT EXACTLY YOU ARE ASKING

16    FOR THE COURT TO GIVE YOU TODAY?

17         MR. KOTCHEN:  YOUR HONOR, I THINK THERE ARE SEVERAL

18    ISSUES, AND I'LL LAY THEM OUT AT THE VERY END OF THE POWERPOINT

19    PRESENTATION.  WE HAVE FOUR RECOMMENDATIONS.

20         THE MOTION TO STRIKE THEIR EXPERT DECLARATIONS WE

21    THINK IS IMPORTANT.  SO IF WHAT WE'VE BEEN TALKING ABOUT,

22    DOCUMENTS, IN THAT FIRST CHART I SHOWED YOU DEALT WITH THEIR

23    DOCUMENT PRODUCTION.  THERE THE PREJUDICE OF KIND OF WHERE WE

24    STAND -- AND WE REQUESTED A CASE MANAGEMENT CONFERENCE.  WE DID

25    IT AS SOON AS THEIR CLASS CERTIFICATION OPPOSITION BRIEF WAS
```

```
 1   SET FORTH, AND THEIR EXPERTS' REPORTS WERE INCLUDED WITH THAT.

 2          THE MAGNITUDE OF KIND OF WHERE WE ARE CONTINUES TO

 3   UNFOLD BEFORE US.  BUT IF YOU LOOK AT THE DATE OF PRODUCTION

 4   GRAPH --

 5          THE COURT:  YOU'RE LOSING ME.  BUT, PLEASE, CAN WE

 6   PLEASE GET BACK TO WHAT YOU'RE ASKING?

 7          MR. KOTCHEN:  SURE.

 8          THE COURT:  I JUST WANT A BULLET-POINT LIST OF WHAT

 9   YOU WANT ME TO DO TODAY.

10          MR. KOTCHEN:  SO --

11          THE COURT:  I DON'T WANT THE REASONING YET.

12          MR. KOTCHEN:  I GOTCHA.

13          THE COURT:  SO IT WILL HELP ME TO KNOW WHAT YOU WANT.

14          MR. KOTCHEN:  THE FIRST THING IS AN EXTENSION OF THE

15   SCHEDULE.  WE THINK THAT --

16          THE COURT:  HOW MUCH TIME ARE YOU ASKING FOR?

17          MR. KOTCHEN:  THE CLASS CERTIFICATION REPLY BRIEF, WE

18   THINK THE DEADLINE SHOULD BE SET AFTER A DECISION ON WHETHER OR

19   NOT TO STRIKE THEIR EXPERT REPORTS, BECAUSE THAT WILL DICTATE

20   HOW MUCH TIME.  IF WE ARE GOING TO -- I TALKED TO DR. NIEMARK

21   (PHONETIC), OUR EXPERT, WE DON'T HAVE THE DATA THAT WE THINK --

22   CREDIBLE, RELIABLE DATA.  IF THEY'RE -- ONE THING WE THINK

23   NEEDS TO HAPPEN IS A CREDIBILITY PROCESS BE SET FORTH WHERE WE

24   COLLECT THE DATA.

25          THE COURT:  OKAY.  SO YOU WANT -- SO I UNDERSTAND
```

```
1    THIS.  YOU WANT AN EXTENSION OF THE CLASS CERTIFICATION MOTION

2    TO A DATE AFTER THE DECISION TO MAKE -- DECISION ON THE

3    STRIKING OF THE EXPERT REPORT?

4           MR. KOTCHEN:  WE THINK A DATE SHOULD BE SET AFTER

5    THAT DECISION.

6           THE COURT:  THAT'S RIGHT.

7           MR. KOTCHEN:  BECAUSE THAT HAS IMPLICATIONS ON --

8           THE COURT:  OKAY.  LET'S GO TO OPTION A.  LET'S SAY I

9    SAY NOT STRIKING THE MOTION, NOT STRIKING THE EXPERT REPORT,

10   HOW MUCH TIME WOULD YOU WANT?

11          MR. KOTCHEN:  SO IF YOU GO TO OPTION A, WE NEED TO

12   GET DATA, AND ONCE WE HAVE THE DATA, WE NEED TIME TO ACTUALLY

13   DO --

14          THE COURT:  OKAY.  NOW YOU'RE CHANGING YOUR RESPONSE

15   BECAUSE I SAID WHAT --

16          MR. KOTCHEN:  RIGHT.

17          THE COURT:  WHAT -- WHAT EXTENSION DO YOU WANT?  GIVE

18   ME ALL THE FACTORS YOU WANT ON THE EXTENSION.  EXPERT REPORT.

19   WHAT ELSE?

20          MR. KOTCHEN:  WELL, WE WOULD WANT THREE MONTHS TO

21   WORK WITH THE DATA AND THE DOCUMENTS, AND I --

22          THE COURT:  OKAY.

23          MR. KOTCHEN:  -- AFTER WE HAVE IT, AND I CAN

24   EXPLAIN --

25          THE COURT:  OKAY.
```

1          **MR. KOTCHEN:**  EXPLAIN THE LOGIC FOR THAT.

2          SO WE DON'T HAVE ALLOCATION DATA, COMPLETE ALLOCATION

3   DATA.  ONE OF THE THINGS THAT TATA HAD SAID --

4          **THE COURT:**  OKAY.  LIKE I SAID, I WILL HEAR THE

5   REASON.

6          **MR. KOTCHEN:**  OKAY.

7          **THE COURT:**  BUT FIRST I WANT TO KNOW EXACTLY WHAT IT

8   IS YOU WANT ME TO RULE ON.  WHAT IS IT YOU WANT?  BECAUSE I

9   READ THE PAPERS.

10          **MR. KOTCHEN:**  I GOT IT.

11          **THE COURT:**  I COULDN'T FIGURE IT OUT.

12          **MR. KOTCHEN:**  SO IF -- ON THE EXTENSION, IF THE CLASS

13   CERT EXPERTS ARE NOT BEING STRUCK, WE WANT A THREE-MONTH

14   EXTENSION AFTER WE GET THE DATA.  I CAN ALSO GIVE YOU THE

15   REASONING, IF YOUR HONOR --

16          **THE COURT:**  THAT STATEMENT ALSO IMPLIES YOU WANT MORE

17   DATA.

18          **MR. KOTCHEN:**  WE NEED A PROCESS TO BE ABLE TO GO AND

19   COLLECT DATA.

20          **THE COURT:**  OKAY.

21          **MR. KOTCHEN:**  I CAN ARTICULATE THE REASON --

22          **THE COURT:**  YOU WANT MORE DATA.  OKAY.  SO IF I DO --

23   IF I STRIKE THE EXPERT DECLARATIONS, THEN WHAT?

24          **MR. KOTCHEN:**  IT SUBSTANTIALLY NARROWS THINGS FOR US.

25          **THE COURT:**  BECAUSE I COULD STRIKE IT, AND I COULD

1    SAY -- OPTION C IS I COULD STRIKE IT BUT GIVE THEM A CHANCE TO

2    RESUBMIT OR SUGGEST -- I WOULD RECOMMEND TO JUDGE GONZALEZ

3    ROGERS THAT -- YOU KNOW, IN THIS HYPOTHETICAL, I WOULD SAY MORE

4    DATA, WHATEVER, STRIKE THE CURRENT EXPERT DECLARATIONS, BUT

5    THEN THEY HAVE A CHANCE TO RESUBMIT, AND THEN YOU START ALL

6    OVER AGAIN ON THE CERT.

7             **MR. KOTCHEN:**  YES.  IF YOU'RE STRIKING THE EXPERT

8    DECLARATIONS, INCLUDING THE ARGUMENTS THEY'RE MAKING BASED ON

9    THIS PRODUCTION OF DATA, WHEN IT WAS MADE, THEN I THINK WE

10   WOULD PROBABLY NEED FOUR TO SIX WEEKS.

11            **THE COURT:**  OKAY.  ALL RIGHT.  OKAY.  SO YOU WANT AN

12   EXTENSION.  WHAT ELSE?

13            **MR. KOTCHEN:**  WELL, AGAIN, ONE QUESTION IS, IS THERE

14   GOING TO BE A PROCESS BY WHICH WE CAN GO GET DATA.  IF,

15   AGAIN -- IF THEIR EXPERTS' REPORTS SAY --

16            **THE COURT:**  YOU THINK THERE'S DATA OUT THERE THAT YOU

17   HAVEN'T GOTTEN?

18            **MR. KOTCHEN:**  THERE'S ALLOCATION DATA OUT THERE THAT

19   THEY'VE NOT PRODUCED, AND I CAN TAKE YOU THROUGH EXAMPLES OF

20   ALLOCATION DATA THAT DOESN'T MAKE ANY SENSE TO US.

21            **THE COURT:**  OKAY.  WHAT ELSE DO YOU WANT?

22            **MR. KOTCHEN:**  WE WOULD LIKE THE ABILITY TO TAKE

23   MERITS DISCOVERY AS WELL.

24            **THE COURT:**  MERITS DISCOVERY?

25            **MR. KOTCHEN:**  JUST CONTINUE TO TAKE DISCOVERY.  SO,

1   FOR EXAMPLE, WE THINK THAT THIS IS A CASE WHERE THERE'S BEEN

2   DISCOVERY MISCONDUCT.

3            **THE COURT:**  ARE YOU PRECLUDED FROM TAKING MERITS

4   DISCOVERY RIGHT NOW UNDER JUDGE GONZALEZ ROGERS' ORDER?

5            **MR. KOTCHEN:**  NO, BUT THAT'S -- WE DO HAVE A DISPUTE

6   ABOUT WHETHER, I MEAN, THE DEPOSITION OF MS. LAMAR OR SOMEONE

7   ELSE THAT CAN TESTIFY TO ISSUES --

8            **THE COURT:**  OKAY.  SO WHEN YOU SAY MERITS DISCOVERY,

9   WHAT SPECIFICALLY ARE YOU TALKING ABOUT?

10           **MR. KOTCHEN:**  DOCUMENT PRODUCTION AND COLLECTION

11  DISCOVERY.

12           **THE COURT:**  NEW DOCUMENT PRODUCTION?

13           **MR. KOTCHEN:**  WELL, THE HISTORICAL RECORD HERE,

14  BECAUSE WE THINK THAT THERE ARE INSTANCES WHERE THEY WERE -- WE

15  WERE PREVENTED --

16           **THE COURT:**  OKAY.  SO HERE'S MY ISSUE WHEN YOU COME

17  TO ME AND SAY YOU WANT MORE DISCOVERY AND YOU'RE TALKING ABOUT

18  DOCUMENT REQUESTS THAT HAVE ALREADY BEEN ISSUED.

19           **MR. KOTCHEN:**  YES.

20           **THE COURT:**  YOU HAVE TO TEE UP FOR ME EXACTLY WHAT

21  REQUESTS YOU ISSUED, WHAT THEY SAID, AND WHY YOU DIDN'T GET

22  WHAT YOU NEED.  I ONLY HAVE THAT FOR 4, 6, 8, AND 16 RIGHT NOW.

23  YOU'RE TALKING NOW ABOUT SOMETHING THAT'S NOT BEFORE ME.

24           **MR. KOTCHEN:**  IT WAS IN THE LETTER BRIEF THAT WAS

25  SUBMITTED THAT'S BEEN REFERRED TO YOU.  THERE'S TWO ISSUES IN

```
 1    THE LETTER BRIEF.

 2              THE COURT:  OKAY.

 3              MR. KOTCHEN:  ONE IS THE -- STRIKING THE EXPERTS.

 4              THE COURT:  MM-HMM.

 5              MR. KOTCHEN:  AND THE SECOND ISSUE IS --

 6              THE COURT:  THE DEPOSITION OF MS. LAMAR.

 7              MR. KOTCHEN:  OR SOMEONE THAT CAN TESTIFY TO THOSE

 8    SAME ISSUES.

 9              THE COURT:  OKAY.  OR SOMEONE WHO CAN TESTIFY IS

10    NOT -- WHICH STATEMENTS ARE YOU TALKING ABOUT?  WHAT THE

11    PROCESS WAS FOR DISCOVERY COLLECTION?

12              MR. KOTCHEN:  WELL, SHE SUBMITTED AN AFFIDAVIT IN

13    SUPPORT OF THEIR MOTION -- I MEAN, THEIR CLASS CERTIFICATION

14    OPPOSITION.  THERE ARE STATEMENTS MADE IN THAT AFFIDAVIT, AND

15    WE HAVE SINCE LEARNED OTHER ISSUES AFTER DEPOSING THEIR EXPERT

16    ABOUT -- THEIR EXPERT ABOUT THEIR DOCUMENT COLLECTION AND

17    PRODUCTION THAT WE THINK ARE SERIOUS, AND WE'RE NOT -- WE DON'T

18    THINK WE CAN LEAVE THOSE ISSUES UNADDRESSED IF THIS -- THE

19    STATE OF DISCOVERY IS GOING TO BE ONE OF THE ISSUES AT ISSUE IN

20    THIS CASE.

21              THE COURT:  SO WHAT YOU WANT, YOU WANT THE EXTENSION.

22    YOU WANT A PROCESS OF GETTING DATA.  YOU'RE TALKING ABOUT DATA

23    THAT'S ALREADY BEEN ASKED FOR BUT YOU HAVEN'T GOTTEN.  AND THEN

24    YOU WANT TO TAKE THE DEPOSITION OF MS. LAMAR, WHICH I SAW --

25              MR. KOTCHEN:  YES.
```

1          **THE COURT:**  -- IN YOUR LETTER BRIEF.

2          **MR. KOTCHEN:**  YES.

3          **THE COURT:**  IS THAT IT?

4          **MR. KOTCHEN:**  THAT'S IT FOR NOW, YES.

5          **THE COURT:**  ALL RIGHT.  SO WITH REGARD TO MS. LAMAR'S

6     DEPOSITION, I WILL TELL YOU I AM INCLINED AGAINST THAT.

7          **MR. KOTCHEN:**  UNDERSTOOD.

8          **THE COURT:**  IT IS A REALLY UNUSUAL AND HOSTILE MOVE

9     IN LITIGATION TO DO THAT, AND MOST PEOPLE DON'T LIKE THAT.  I

10    AM -- I WOULD PUT THAT LAST ON THE THINGS THAT I WOULD EVER

11    GRANT, JUST TO LET YOU KNOW.  I WILL TAKE A LOOK AT IT.

12         **MR. KOTCHEN:**  TAKE A LOOK AT THE LETTER.  WHAT WE

13    SAID IS IT'S MS. LAMAR OR SOMEONE ELSE.  I AGREE IT'S UNUSUAL

14    TO TAKE THE OUTSIDE COUNSEL, BUT IF SOMEONE ELSE CAN TESTIFY

15    THAT THE ISSUES THAT SHE'S (INDISCERNIBLE) IN HER AFFIDAVIT.

16         **THE COURT:**  I'M -- THE PROBLEM THAT WE HAVE FROM OUR

17    DECISION-MAKING PROCESS, IS THAT IF LAWYERS WHO ARE ADMITTED TO

18    THE BAR COME TO US AND SAY THEY HAVE GONE THROUGH A CERTAIN

19    PROCESS OF COLLECTING DOCUMENTS, AS OPPOSED TO WHERE DOCUMENTS

20    RESIDE -- YOU KNOW, THERE ARE TWO DIFFERENT ISSUES.

21         **MR. KOTCHEN:**  YES.

22         **THE COURT:**  ONE IS WHAT KIND OF DOCUMENTS DOES THE

23    COMPANY HAVE.

24         **MR. KOTCHEN:**  YES.

25         **THE COURT:**  AND THE OTHER IS HOW DID YOU COLLECT

1   THEM.

2           **MR. KOTCHEN:**  YES.

3           **THE COURT:**  I WILL ACCEPT THE DECLARATION OF THE

4   LAWYER WHO'S ADMITTED BEFORE ME ON HOW THE COLLECTION PROCESS

5   OCCURRED.  IF THERE IS A PROBLEM THAT SHOWS THAT THERE IS A

6   COMPLETE LACK OF CANDOR ON THE PART OF THAT PERSON, THEN I

7   WOULD BE VERY CONCERNED ABOUT IT, AND THERE'S A MECHANISM FOR

8   DEALING WITH THAT.

9           **MR. KOTCHEN:**  OKAY.

10          **THE COURT:**  BUT AT LEAST BASED ON WHAT I HAVE SEEN, I

11  DON'T SEE THAT THAT CLEARLY.  IT'S A PRETTY BIG DEAL TO MAKE

12  THAT ACCUSATION THAT SOMEONE IS LYING ABOUT THE WAY THE

13  DOCUMENTS WERE COLLECTED.

14          **MR. KOTCHEN:**  THAT'S NOT THE ACCUSATION THAT WE HAVE

15  MADE.

16          **THE COURT:**  RIGHT.

17          **MR. KOTCHEN:**  WE ARE CONCERNED ABOUT -- WE ARE

18  CONCERNED ABOUT THE PROCESS.

19          **THE COURT:**  RIGHT.  SO I UNDERSTAND THAT YOU'RE

20  CONCERNED ABOUT WHAT EXISTS AND IN WHAT FORMAT IT EXISTS WITH

21  THE --

22          **MR. KOTCHEN:**  YES.

23          **THE COURT:**  -- WITH THE DEFENDANT AND THAT'S -- YOU

24  KNOW, THAT'S A GENERIC PROBLEM THAT EVERYONE ALWAYS HAS.

25          WHEN YOU TOOK THE 30(B)(6) DEPOSITION, DID YOU ASK

1    THOSE QUESTIONS?  THAT WAS MY UNDERSTANDING.  THAT WAS PART OF

2    THE 30(B)(6) DEPOSITION.

3          **MR. KOTCHEN:**  WELL, YOUR HONOR, WE TOOK A 30(B)(6)

4    DEPOSITION.  ONCE WE GOT DATA, WE REALIZED THERE WAS NEW DATA

5    JANUARY OF 2017.  WE PROMPTLY TEED UP 30(B)(6), ASKED THE

6    DEPONENTS ABOUT THAT DATA.

7          AFTER THAT 30(B)(6) CONCLUDED, WE THEN RECEIVED THAT

8    DATA, A WHOLE BUNCH OF OTHER DATA THAT WAS BRAND NEW.  AND THIS

9    WAS -- THE AMOUNT OF THE DATA THAT WE RECEIVED, FOR EXAMPLE, IN

10   FEBRUARY FAR EXCEEDED, WAS TOTALLY DIFFERENT THAN ANY OTHER

11   DATA THAT WE'VE RECEIVED PREVIOUSLY IN THE CASE.  AND SO THAT

12   IS ONE OF OUR CONCERNS, IS WHY WAS IT -- WHY WAS IT PRODUCED

13   THEN.

14        WE TOOK, LAST WEEK, THE DEPOSITION OF TATA'S EXPERT

15   WITNESS, AND TATA'S EXPERT WITNESS -- AND I QUOTE HIM HERE.  HE

16   TALKED ABOUT JANUARY 18TH, 2017.  HE WAS SITTING DOWN WITH THE

17   CLIENT, AND REALIZED HE DIDN'T IMPORT DATA.  HE REALIZED HE

18   DIDN'T HAVE THE DATA HE NEEDED, SO THEY WENT AND THEY GOT IT.

19   AND WHAT THEY GOT, FOR EXAMPLE, WAS COMPLETE ALLOCATION DATA,

20   ALTHOUGH WE HAVE CONCERNS ABOUT THAT, ABOUT THAT DATA, THAT I

21   CAN GET INTO.  ONCE HE REQUESTED IT, THEY WENT OUT AND THEY GOT

22   IT, AND THEN THEY GAVE IT TO US IN FEBRUARY.  IF YOU LOOK AT

23   OUR INTERROGATORY NUMBER 2 THAT WAS ISSUED IN AUGUST OF 2015,

24   WE REQUESTED ALLOCATION DATA.

25        **THE COURT:**  SO WHEN DID YOU HAVE TO FILE YOUR MOTION

 1    FOR CLASS CERTIFICATION?

 2              **MR. KOTCHEN:**  THE ORIGINAL DEADLINE WAS JANUARY 31ST.

 3    THAT WAS EXTENDED BY TWO WEEKS.

 4              **THE COURT:**  TO FEBRUARY?

 5              **MR. KOTCHEN:**  FEBRUARY 14TH.

 6              **THE COURT:**  OKAY.

 7              **MR. KOTCHEN:**  AROUND THAT.

 8              **THE COURT:**  OKAY.

 9              **MR. KOTCHEN:**  I DON'T KNOW THE EXACT DATE.

10              **THE COURT:**  AND DID YOU GET THIS ALLOCATION DATA THAT

11    THE EXPERT WITNESS RELIED UPON BEFORE OR AFTER -- LIKE HOW MANY

12    DAYS BEFORE THE CLASS CERTIFICATION MOTION?

13              **MR. KOTCHEN:**  WE GOT IT MAYBE NINE DAYS OR SO BEFORE.

14    BUT IT WAS PROBABLY EIGHT MILLION ENTRIES, AND WE HAD ALL SORTS

15    OF QUESTIONS.  IT WAS BRAND NEW.  THERE WAS NO WAY THAT WE

16    COULD ACTUALLY -- DISCOVERY'S BEEN GOING ON IN THIS CASE SINCE

17    AUGUST 2015.  THERE WAS NO WAY THAT WE COULD COMPREHEND IT AND

18    DO ANYTHING WITH IT TO INCORPORATE INTO OUR CLASS CERTIFICATION

19    MOTION.

20              **THE COURT:**  OKAY.  LET ME ASK MR. GIVEN ABOUT THIS.

21              MR. GIVEN, DO YOU HAVE ANYTHING TO SAY ABOUT THIS

22    PARTICULAR ISSUE, WHICH IS THE EXPERT WITNESS SAYING THAT HE

23    GOT ADDITIONAL DATA FROM THE CLIENT AND THEN IT WAS ONLY

24    PRODUCED TO THE PLAINTIFFS A FEW DAYS BEFORE THE MOTION FOR

25    CLASS CERTIFICATION?

 1          **MR. GIVEN:**  YES, YOUR HONOR.  YES, YOUR HONOR.

 2          **THE COURT:**  OKAY.

 3          **MR. GIVEN:**  THEY ESSENTIALLY HAD THIS DATA BEFORE.

 4   IT WAS A DIFFERENT WAY OF FORMATTING THIS DATA, WHICH, WHAT WE

 5   HAD TO DO WAS ENGAGE PEOPLE MANUALLY TO REFORMAT IN A MANNER

 6   THAT'S NOT KEPT IN THE ORDINARY COURSE.

 7          AND, AGAIN, I DON'T WANT TO REGURGITATE OUR

 8   OPPOSITION BRIEF, BUT MOST OF THE DATA THEY REQUESTED WAS

 9   SUBMITTED LONG BEFORE IN OTHER FORMATS.  AND I THINK THIS GOES

10   BACK TO THE VERY ISSUE OF THEIR REQUEST NUMBER 2, PROCESS TO

11   GET DATA.

12          YOU KNOW, YOUR HONOR, IT'S -- I'D LIKE TO SEE SOME

13   ARTICULATION ON THAT, BUT, AGAIN, THEY DON'T -- THEY APPARENTLY

14   DON'T WANT TO, DON'T UNDERSTAND HOW TO ANALYZE THE DATA THAT

15   WE'RE GIVING, AND SOMEHOW THEY CONVERT THAT INTO A DISCOVERY

16   FRAUD.  SO I WOULD LIKE TO WORK WITH THE COURT ON THAT, BUT I

17   DO DISAGREE WITH THE CHARACTERIZATION.

18          **THE COURT:**  OKAY.

19          **MR. GIVEN:**  AND I WOULD ALSO NOTE HE DID NOT ANSWER

20   YOUR QUESTION, YOUR SPECIFIC QUESTION.  YOU KNOW, YOU SAID --

21   YOU ASKED HIM DID YOU ASK THAT IN THE 30(B)(6), AND THEN WE GOT

22   A DIVERSIVE ANSWER.

23          **THE COURT:**  OKAY.  SO LET ME ASK YOU THIS, MR. GIVEN:

24   SO WITH REGARD TO YOUR THEME -- IF I HAD TO CHARACTERIZE YOUR

25   THEME, TELL ME THIS IS FAIR OR NOT.  IT'S THAT YOU GAVE THE

1    DATA TO THE PLAINTIFFS THAT'S IN DISPUTE.  THEY HAVE IT IN A

2    DIFFERENT FORMAT.  AND YOU HAVE REFORMATTED THE DATA SO THAT

3    IT'S EASIER TO READ OR EASIER TO REVIEW, BUT THAT THEY HAVE HAD

4    THEIR DATA IN DIFFERENT FORMATS.  IS THAT A FAIR

5    CHARACTERIZATION?

6            **MR. GIVEN:**  THAT'S THE GENERAL THEME FOR MOST OF THE

7    DISCOVERY DISPUTES, CORRECT.

8            **THE COURT:**  OKAY.

9            **MR. GIVEN:**  AND, YOUR HONOR, ONE THING I WOULD OFFER

10   AS WELL THAT MIGHT ASSIST THE PROCESS IS, YOU KNOW, IF THERE

11   WERE A BRIEF EXTENSION -- I KNOW THAT'S THEIR REQUEST NUMBER 1,

12   CERTAINLY, WE HAVE NOT DONE ANYTHING IMPROPER.  WE WOULD NOT

13   OPPOSE A BRIEF CONTINUANCE, BUT IT'S TOTALLY INAPPROPRIATE, WE

14   THINK, TO STRIKE DECLARATIONS IN CONNECTION WITH THAT WITH A

15   RECOMMENDATION WE GET TO REFILE OR TO ALTER THE SEQUENCE OF IT.

16           I MEAN, AGAIN, I THINK THIS COULD HAVE -- IF

17   PLAINTIFFS HAD BEEN A LITTLE MORE REASONABLE, WE COULD HAVE

18   MAYBE REACHED AN AGREEMENT ON A BRIEF EXTENSION TO AVOID ANY OF

19   THIS ISSUE, AND WE'RE STILL PREPARED TO DO THAT TODAY.

20           **THE COURT:**  OKAY.  SO I'M GOING TO TELL YOU RIGHT

21   FROM THE BEGINNING AT A MINIMUM WHAT I'M GOING TO DO IS I'M

22   GOING TO RECOMMEND TO JUDGE GONZALEZ ROGERS THAT SHE EXTEND THE

23   BRIEFING SCHEDULE ON THE MOTION FOR CLASS CERTIFICATION BY AT

24   LEAST TWO WEEKS, AND PART OF THE REASON IS -- ALTHOUGH I READ

25   YOUR POSITIONS, UNTIL I CAN ACTUALLY TALK TO YOU TODAY, I

1  DIDN'T HAVE A VERY CLEAR IDEA OF WHAT EXACTLY YOU WERE ASKING

2  FOR ON THE PLAINTIFFS' SIDE.

3          **MR. KOTCHEN:**  OKAY.

4          **THE COURT:**  AND FROM THE DEFENSE SIDE, I WANT TO MAKE

5  SURE I UNDERSTOOD WHAT YOUR POSITION WAS.  SO NOW I UNDERSTAND

6  IT, AND I CAN GO BACK AND LOOK AT IT WITH THIS BETTER EYE.

7  IT'S MUCH CLEARER TO ME.

8          AND I APOLOGIZE, BECAUSE YOU'VE BEEN SO USED TO

9  DEALING WITH EACH OTHER AND WITH JUDGE GONZALEZ ROGERS, EVEN

10 THOUGH I WENT BACK AND READ THE DOCKET, I JUST DON'T HAVE THE

11 BACKGROUND YOU HAVE ON THIS.  SO I WAS SORT OF AT SEA WHEN I

12 FIRST GOT THE BRIEFS, BUT NOW I HAVE A MUCH CLEARER PICTURE OF

13 IT.

14         SO I AM GOING TO RECOMMEND TO JUDGE GONZALEZ ROGERS

15 THAT SHE ACTUALLY GRANT A BRIEF EXTENSION JUST TO GIVE ME TIME

16 TO LOOK AT IT.  SHE KNOWS THIS IS A VERY FACT-INTENSIVE

17 SCHEDULE, AND THE REASON SHE GAVE IT TO ME IS RIGHT NOW SHE

18 CAN'T DEAL WITH IT, AND SHE KNOWS THAT I HAVE THE TIME.

19         **MR. KOTCHEN:**  OKAY.

20         **THE COURT:**  SO I WANT TO ACTUALLY REALLY DELVE DOWN

21 AND LOOK AT THE DOCUMENTS AND LOOK AT THE CLASH BETWEEN IT,

22 BECAUSE I AM CONCERNED IF THE DEFENDANTS ARE CORRECT AND THE

23 ISSUE IS THAT YOU'VE HAD THE DATA, BUT YOU JUST DIDN'T KNOW HOW

24 TO FORMAT IT, OR THEY FORMATTED IT IN A DIFFERENT WAY, THEN YOU

25 WERE SOMEWHAT OUT OF LUCK, BUT I DON'T KNOW IF THAT'S THE CASE

 1    OR NOT UNTIL I ACTUALLY LOOK AT THE DOCUMENTS.

 2            **MR. KOTCHEN:**  YOUR HONOR, I THINK I HAVE A PERFECT

 3    SOLUTION.  WHY DON'T YOU -- I WOULD RECOMMEND THAT YOU HAVE THE

 4    DEFENDANTS ONLY DO ANY ANALYSIS BASED ON DATA THAT THEY HAD

 5    PRODUCED PRIOR TO THE ORIGINAL CLASS CERTIFICATION DEADLINE.

 6    THAT WOULD BE OUR RECOMMENDATION.

 7            IF MR. GIVEN IS RIGHT, THAT ALL IT IS IS

 8    REFORMATTING, THEY DIDN'T PRODUCE NEW DATA, LET THEM GO -- THE

 9    DATA THAT WAS PRODUCED THEN, THEY CAN GO FORWARD AND DO ANY

10    ANALYSIS ON THAT.

11            **THE COURT:**  WELL, I THINK THE OTHER THEME THAT THE

12    DEFENSE HAS, WHICH -- AND TELL ME IF I'M WRONG, MR. GIVEN -- IS

13    THAT TO THE EXTENT YOU DIDN'T HAVE CERTAIN PIECES OF

14    INFORMATION, YOU WERE NOT ASKING THE RIGHT QUESTIONS OR NOT --

15            **MR. GIVEN:**  CORRECT.

16            **THE COURT:**  IN ORDER TO FIGURE OUT WHAT THE ANSWERS

17    ARE.  AND SO SOME OF THAT BURDEN -- IF THAT'S TRUE, AND I DON'T

18    KNOW IF THAT'S TRUE OR NOT, BUT THIS IS WHAT THE DEFENDANT'S

19    SAYING -- IF THAT'S TRUE, THEN THAT'S YOUR PROBLEM, IS WHAT

20    THEY'RE SAYING IN NOT SO ELEGANT TERMS.  I DON'T KNOW IF THAT'S

21    ACCURATE OR NOT, BUT I DO WANT TO GO BACK AND LOOK AT THE

22    EXHIBITS, BECAUSE YOU BOTH HAVE GIVEN ME QUITE A FEW EXHIBITS,

23    AND I WANT TO LOOK AT THEM AND SEE WHETHER THAT IS THE CASE OR

24    NOT.

25            **MR. KOTCHEN:**  YOUR HONOR --

1            **MR. GIVEN:**  IF I MAY BE HEARD, YOUR HONOR?

2            **THE COURT:**  LET ME HEAR FROM MR. GIVEN, THEN I'LL

3    HEAR FROM MR. KOTCHEN.

4            **MR. GIVEN:**  I OBVIOUSLY DISAGREE WITH THE REQUEST BY

5    PLAINTIFF.  IT'S, AGAIN, EXCLUSIONARY IN NATURE, WHICH IS

6    CONTRARY TO THE RULES, AND THIS IS WHAT WE HAVE BEEN DEALING

7    WITH, YOUR HONOR.

8            I HAVE COME AND I'VE OFFERED AN EXTENSION.  WE TRIED

9    TO BE COOPERATIVE.  THIS WHOLE IDEA IF THEY'RE GOING TO GET AN

10   EXTENSION, EXCLUSION IS DEFINITELY INAPPROPRIATE.  WE ARE FINE

11   AND WE ARE VERY HAPPY THAT THE COURT IS GOING TO GO REVIEW ALL

12   THE DOCUMENTS AND HAVE ITS OWN VIEW WITHOUT NARRATIVE LIKE

13   TODAY SO THAT IT CAN MAKE ITS CONCLUSION.

14           WE HAVE NO PROBLEM WITH THE TWO-WEEK EXTENSION.  WE

15   HONOR THAT, BUT I THINK, AGAIN, ALL OF THESE EXCLUSIONARY

16   EFFORTS ON THEIR PART, GIVEN EVERYTHING THAT'S ALREADY BRIEFED,

17   SO I'M NOT GOING TO REGURGITATE IT, ARE INAPPROPRIATE, AND I

18   THINK AGAIN IT CAN BE TAKEN IN STEPS.

19           **THE COURT:**  GO AHEAD, MR. KOTCHEN.

20           **MR. KOTCHEN:**  YOUR HONOR, TWO THINGS.  I BELIEVE THEY

21   DON'T WANT TO RELY ONLY ON DATA THAT WAS PRODUCED PRIOR TO THE

22   ORIGINAL CLASS CERTIFICATION DEADLINE.

23           IF I MAY APPROACH, YOUR HONOR?  THERE'S TWO EXHIBITS

24   THAT I THINK --

25           **THE COURT:**  WHY DON'T YOU TELL ME WHAT THEY ARE

```
 1   BECAUSE I HAVE THEM RIGHT HERE.

 2              MR. KOTCHEN:  THIS ONE WE CITED IS EXHIBIT 2 TO OUR

 3   NATIONAL NOTICE OF DISCOVERY MISCONDUCT.  THEN YOU COMPARE

 4   THOSE DATA FIELDS TO THE DATA THEY PRODUCED THAT'S LABELED IN

 5   EXHIBIT 10 OF OUR SUPPLEMENTAL BRIEF.

 6              THE COURT:  OKAY.

 7              MR. KOTCHEN:  AND IT'S JUST -- IT'S TOTALLY NEW DATA.

 8              SO, YOUR HONOR, YOUR QUESTION AS TO -- YOU ASKED THE

 9   QUESTION, WELL, MAYBE WE WEREN'T ASKING THE RIGHT QUESTIONS.

10   IF YOU -- ONE THING THEY ARE SILENT ON, IN AUGUST OF 2016, IN

11   THEIR BRIEFING, WE SAID -- WE ASKED FOR A SERIES OF

12   CONVERSATIONS -- ASKED A SERIES OF QUESTIONS.  WE SAID WE DON'T

13   SEE ALLOCATION DATA; THE ALLOCATION DATA IS NECESSARY FOR US IN

14   RESPONSE TO INTERROGATORY NUMBER 2, FOR EXAMPLE.  AND WE WERE

15   TOLD -- THE RESPONSE HERE IS:

16                  "TATA DOES NOT HAVE A DATABASE OR

17              HUMAN RESOURCE SYSTEM FROM WHICH A TATA CAN

18              PULL ALLOCATION DATA BY EMPLOYEE NAME, AND

19              THERE'S NO WAY TO PRINT THE REQUESTED

20              INFORMATION FOR THE CLASS PERIOD.

21                  "TATA ALLOCATION DATA MAY BE

22              LOCATED IN AN EMPLOYEE'S PERSONNEL FILE, BUT

23              THE FILES ARE IN INDIA AND ARE MOST LIKELY

24              HARD COPY AS OPPOSED TO ELECTRONIC FORMAT."

25              IN THEIR BRIEF, THEIR OPPOSITION BRIEF THEY JUST
```

1    SUBMITTED, ONE THING THEY SAY IS THEY JUST REALIZED NOW HOW TO

2    PULL ALLOCATION DATA FOR THEIR ENTIRE WORKFORCE.  THAT'S --

3    THAT IS ONE THING THEY SAID, AND THEY ONLY DID THAT AFTER THEIR

4    EXPERT SAID, I NEED MORE DATA.

5           **THE COURT:**  SO YOU'RE AGAIN FOCUSING ON THE

6    ALLOCATION DATA THAT YOU TALKED ABOUT EARLIER?

7           **MR. KOTCHEN:**  I'M FOCUSED ON THE ALLOCATION DATA.

8           **THE COURT:**  OKAY.

9           **MR. KOTCHEN:**  AND SO ON PAGE 3 THEY SAY:

10                  "ONLY RECENTLY DID TCS DISCOVER A

11              METHOD TO PRODUCE ALLOCATION DATA FOR THE

12              ENTIRE WORKFORCE."

13          BUT EVEN THE ALLOCATION DATA THAT THEY COLLECTED

14   IS -- THERE ARE HOLES IN IT, AND THAT'S WHY WE WANT TO

15   UNDERSTAND THE DATA, LIKE WHY THEY'RE NOT COLLECTING CERTAIN

16   ISSUES.  AND THAT'S WHERE I'M HOPEFUL THAT, WHETHER IT'S US

17   WORKING WITH THEM, SOMEONE COMING IN LOOKING AT THEIR DATA, HOW

18   TO PULL IT.

19          **THE COURT:**  SO, AGAIN, YOUR REQUEST TO HAVE A THIRD

20   PARTY COME IN, HIGHLY DISFAVORED.

21          **MR. KOTCHEN:**  OKAY.

22          **THE COURT:**  I MEAN, I THINK EXCLUSION IS A REALLY

23   DRASTIC REMEDY AS WELL.  YOU ARE SORT OF SWINGING FOR THE

24   FENCES ON ALL THE REQUESTS THAT YOU'VE MADE TO DEPOSE A LAWYER,

25   HAVE A THIRD PARTY COME IN.

1          **MR. KOTCHEN:**  RIGHT.

2          **THE COURT:**  YOU KNOW, EXCLUDE EVIDENCE.

3          THE APPROACH THAT I'M MORE LIKELY TO TAKE IS TO GRANT

4    ADDITIONAL TIME.  IF I LOOK AT THIS AND I THINK YOU NEED

5    ADDITIONAL TIME, I WOULD MOST LIKELY ALLOW ANOTHER 30(B)(6)

6    DEPOSITION.

7          **MR. KOTCHEN:**  OKAY.

8          **THE COURT:**  ALLOW YOU ANOTHER CRACK AT THEIR EXPERT

9    WITNESS, BECAUSE IF HE DIDN'T HAVE THE DATA BEFORE YOU WERE

10   ABLE TO DEPOSE HIM, THAT WOULD BE AN ISSUE.  AND THEN RESET SO

11   THAT YOU COULD FILE A MOTION FOR CLASS CERTIFICATION LATER.

12         **MR. KOTCHEN:**  RIGHT.  I MEAN, IF -- I GET IT.  SO I

13   UNDERSTAND YOUR POINT, YOUR HONOR.  IF YOU -- WE NEED DATA.

14   WE -- LIKE THE DATA WE NEED TO TAKE A 30(B)(6) TO UNDERSTAND

15   DATA.  THAT'S -- WE'RE HAPPY TO DO THAT.  BUT THEN WE NEED TIME

16   TO LOOK AT THE DATA AND ANALYZE IT, OUR EXPERT DOES, IF THEIR

17   REPORTS ARE STAYING IN AS IS.  IF THEY'RE -- IF YOU LOOK AT

18   IT --

19         **THE COURT:**  IT'S NOT GOING TO BE THREE MONTHS.

20         **MR. KOTCHEN:**  OKAY.  BUT THAT'S --

21         **THE COURT:**  I MEAN, IF YOU'RE GOING TO GET NEW DATA,

22   I'LL ALLOW YOU SOME TIME TO LOOK AT IT, BUT THE DATA THAT YOU

23   DO HAVE FROM JANUARY AND FEBRUARY, YOU KNOW, THE DATA YOU HAVE

24   IN YOUR HANDS NOW, IT'S NOW APRIL, HAVE YOU NOT BEEN ANALYZING

25   IT?

1          **MR. KOTCHEN:**  YOUR HONOR, WE'VE TRIED TO UNDERSTAND

2    THE DATA FROM FEBRUARY, AND I CAN -- I CAN GIVE YOU EXAMPLES OF

3    WHAT -- THERE'S THINGS THAT JUST DO NOT MAKE ANY SENSE TO US IN

4    THE DATA, AND THAT'S BEEN ONE OF THE ROADBLOCKS.  SO THE ANSWER

5    IS YES, WE'VE BEEN TRYING -- WE -- YOU'LL REMEMBER, YOUR HONOR,

6    THAT WE TRIED TO ASK QUESTIONS OF THEM:  COULD YOU JUST LET US

7    KNOW?  WE HAVEN'T GOTTEN TO THAT.

8          **THE COURT:**  THAT'S WHY I THINK THE 30(B)(6) IS

9    PROBABLY GOING TO ADDRESS THAT ISSUE BETTER, AND THEY HAVE TO

10   COME UP WITH SOMEONE TO ANSWER THOSE SPECIFIC QUESTIONS IN A

11   FORMAL DISCOVERY CONTEXT WHERE THEY'RE UNDER OATH.

12          I THINK THAT'S PROBABLY WHERE I'M HEADED.  IF I FIND

13   THERE'S BEEN SOME DEFICIENCY OR LATENESS IN THE PRODUCTION,

14   EVEN IF IT'S NOT ILL-INTENTIONED, BUT THAT IT'S BEING PRODUCED

15   TO YOU IN A MANNER THAT YOU COULDN'T ANALYZE OR UNDERSTAND,

16   THAT IS SOMETHING THAT I'M WILLING TO CONSIDER SERIOUSLY,

17   BECAUSE IT GIVES YOU A CHANCE TO DO IT, BUT IT DOESN'T -- YOU

18   KNOW, THE COURTS DISFAVOR COLLUSION, BRINGING IN PEOPLE,

19   DEPOSING LAWYERS.

20          I UNDERSTAND YOUR NEED TO GET UNDERSTANDING AROUND

21   IT, AND ASKING QUESTIONS WAS, YOU'RE RIGHT, THE APPROPRIATE

22   THING TO DO IN A MEET AND CONFER.  BUT IF YOU NEED TO HAVE HARD

23   ANSWERS, AND YOU CAN'T GET THEM, THEN I THINK THAT 30(B)(6),

24   ANOTHER CRACK AT 30(B)(6), MIGHT BE THE WAY THAT SOLVES YOUR

25   PROBLEM.

1          **MR. KOTCHEN:**  YES, YOUR HONOR.  I UNDERSTAND THAT.

2          THERE IS -- THERE ARE -- THERE ARE SOME DATA FIELDS

3     THAT WE DON'T HAVE, AND WE JUST DON'T UNDERSTAND THAT, AND I

4     WOULD REQUEST WE HAVE THE OPPORTUNITY TO SEEK AND SECURE SOME

5     MORE DATA FIELDS.

6          **THE COURT:**  I WOULD NEVER -- I THINK WHAT YOU'RE

7     GOING TO DO IS TAKE THE 30(B)(6) DEPOSITION AND FIND OUT

8     WHETHER OR NOT THEY HAVE THE ABILITY TO GET THOSE DATA FIELDS,

9     BECAUSE WHAT I UNDERSTAND FROM THE DEFENDANT, WHAT THEY'RE

10    SAYING IS WE'RE GIVING YOU EVERYTHING YOU HAVE; IF YOU'RE

11    ASKING FOR SOMETHING, WE EITHER DON'T HAVE IT, WE DON'T HAVE

12    THE ABILITY TO PULL IT.  THAT'S WHAT I'M HEARING FROM THEM.

13         IF YOU TAKE THE 30(B)(6) DEPOSITION AND THEY SAY, WE

14    DON'T HAVE IT, IT DOESN'T EXIST, IT'S UNDER OATH, IT'S BINDING

15    ON THE DEFENDANT, THEN YOU'RE STUCK.  IF THEY SAY, WE HAVE IT,

16    OH, MY GOSH, WE COULDN'T PULL IT, WE FORGOT TO GET IT FOR YOU,

17    IT IS RESPONSIVE TO SOMETHING THAT YOU'VE ASKED FOR YOU, YOU

18    KNOW, OR YOU ISSUE A DISCOVERY REQUEST THAT SPECIFICALLY ASKS

19    FOR IT, THEN YOU CAN FIGHT ABOUT WHETHER OR NOT IT'S

20    APPROPRIATE FOR THEM TO GIVE IT TO YOU.

21         IT'S THE KIND OF -- THAT'S THE WAY I WOULD APPROACH

22    THE SITUATION, BECAUSE IT'S HARD FROM MY PERSPECTIVE TO LOOK AT

23    THIS MASSIVE PROBLEM AND MANAGE IT.  IT DEAL MUCH BETTER WITH A

24    MORE DISCRETE ISSUE THAT'S BEEN TEED UP, IF THAT MAKES ANY

25    SENSE.

1              **MR. KOTCHEN:** YES, YOUR HONOR IT DOES.

2              **THE COURT:** OKAY. AND LET ME HEAR FROM MR. GIVEN,

3      BECAUSE I THINK YOU WANTED TO SAY SOMETHING.

4              **MR. GIVEN:** NO. ALL I WAS GOING TO SAY, YOUR HONOR,

5      IS WE WOULD ACCEPT THAT APPROACH. WE THINK THAT'S FINE.

6              AND ALSO JUST SO THE COURT KNOWS, WE HAD ALREADY

7      OFFERED -- WE HAVE TWO EXPERTS, YOUR HONOR. AND MR. ANDERSON,

8      WHO WAS DEPOSED RECENTLY, I ALREADY AGREED WITH

9      MR. KOTCHEN'S -- WITH MR. KOTCHEN THAT WE WOULD REPRODUCE HIM

10     AT A MUTUALLY AGREED DATE. SO WHEN WE GET A DATE TOGETHER, HE

11     WILL COME BACK AND BE DEPOSED AGAIN. SO THAT'S ALREADY BEEN

12     MADE AVAILABLE. AND WE ARE WAITING FOR A RESPONSE.

13             WE HAVE MADE -- MR. LAZERE (PHONETIC) AVAILABLE ON

14     THE 20TH OR 21ST OF THIS MONTH, AND WE'RE JUST WAITING TO HEAR

15     ON THAT. SO, AGAIN, WE'RE NOT -- WE'RE NOT SHIELDING OR HIDING

16     EXPERTS. THEY'RE THERE.

17             **THE COURT:** OKAY. SO LET ME -- THIS IS WHAT I'M

18     GOING TO DO. I'M GOING TO RECOMMEND TO JUDGE GONZALEZ ROGERS

19     THAT SHE EXTEND THE MOTION FOR CLASS CERTIFICATION BRIEFING BY

20     AT LEAST TWO WEEKS AT A -- FOR NOW, TO GIVE ME TIME TO REALLY

21     LOOK AT THIS AND THEN -- OR IF I AM ABLE TO LOOK AT THIS TODAY

22     AND SORT IT ALL OUT, THEN I'LL MAKE A RECOMMENDATION RIGHT

23     AWAY.

24             **MR. KOTCHEN:** OKAY.

25             **THE COURT:** BUT EITHER WAY A RECOMMENDATION IS GOING

1    TO GO TO JUDGE GONZALEZ ROGERS BY TOMORROW.

2              **MR. KOTCHEN:**  OKAY.

3              **THE COURT:**  SO YOU'LL KNOW -- I KNOW YOU'RE UNDER A

4    DEADLINE.

5              **MR. KOTCHEN:**  YES, YOUR HONOR.

6              **THE COURT:**  BY 9:00 A.M. AT THE LATEST.

7              **MR. KOTCHEN:**  OKAY.

8              **THE COURT:**  SO -- AND THEN I WILL LOOK AT THESE OTHER

9    ISSUES AND TRY TO FIGURE OUT WHAT I'M GOING TO RECOMMEND ON

10   THOSE.  BUT I DO WANT TO LOOK AT THE PAPERWORK AND REALLY SEE

11   WHAT THEY SAY.  I'LL PROBABLY JUST TAKE THESE HOME TONIGHT AND

12   REALLY READ THEM CAREFULLY.

13             **MR. KOTCHEN:**  OKAY.

14             **THE COURT:**  AND IF I CAN READ IT ALL TONIGHT AND MAKE

15   A DECISION, I'LL DO THAT BY 9:00 CLOCK TOMORROW.

16             **MR. KOTCHEN:**  OKAY.

17             **THE COURT:**  OKAY.

18             **MR. KOTCHEN:**  I APPRECIATE IT, YOUR HONOR.

19             **THE COURT:**  OKAY.

20             **MR. GIVEN:**  THANK YOU, YOUR HONOR.

21             **THE COURT:**  IS THERE ANYTHING ELSE ANYONE ELSE WANTS

22   TO SAY ABOUT TODAY?

23             **MR. GIVEN:**  NO.  I JUST WANTED -- BUT I DID WANT TO

24   CONFIRM, AS I UNDERSTAND IT -- AND MAYBE THIS IS PART OF YOUR

25   TENTATIVE AND YOU'RE GOING TO DECIDE TONIGHT -- IS MS. LAMAR'S

1    DEPO OFF OR IS IT STILL UNDER REVIEW?

2              **THE COURT:**  IT'S UNDER REVIEW, BUT I'M TELLING YOU

3    RIGHT NOW IT'S NOT GOING TO HAPPEN.

4              **MR. KOTCHEN:**  OKAY.  I GET IT.

5              **MR. GIVEN:**  THANK YOU, YOUR HONOR.

6              (SIMULTANEOUS COLLOQUY).

7              **MR. GIVEN:**  THANK YOU.

8              **THE COURT:**  BUT, MR. KOTCHEN, YOU CAN REST ASSURED

9    YOU DO NOT HAVE TO FILE A BRIEF ON MONDAY.

10             **MR. KOTCHEN:**  OKAY, OKAY.

11             **THE COURT:**  BECAUSE I'M SURE THAT JUDGE

12   GONZALEZ-ROGERS WILL ACCEPT MY RECOMMENDATION.

13             **MR. KOTCHEN:**  OKAY.  GREAT.

14             **THE COURT:**  THAT WILL GIVE YOU SOME COMFORT TONIGHT.

15             **MR. KOTCHEN:**  OKAY.  THANK YOU, YOUR HONOR.

16             **MR. GIVEN:**  THANK YOU, YOUR HONOR.

17             **UNIDENTIFIED SPEAKER:**  THANK YOU, YOUR HONOR.

18             (PROCEEDINGS ADJOURNED AT 11:38 A.M.)

19

20

21

22

23

24

25

1                    **CERTIFICATE OF TRANSCRIBER**

2

3        I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4    TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5    THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6    U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7    PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8    ABOVE MATTER.

9        I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10   RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11   WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12   FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13   ACTION.

14

15                    *mcolumbini*

16                    JOAN MARIE COLUMBINI

17                    APRIL 24, 2017

18

19

20

21

22

23

24

25