UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STEVEN HELDT, BRIAN BUCHANAN, and CHRISTOPHER SLAIGHT<br><br>Plaintiffs,<br>v.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br>Defendant. | Case No.: 4:15-cv-01696-YGR<br><br>**CLASS ACTION**<br><br>**JOINT LETTER BRIEF**<br><br>Complaint Filed: April 14, 2015 |

Pursuant to Federal Rules of Civil Procedure 37(a) and 37(d), Local Rule 37, and Magistrate Judge Kim's Standing Order, Plaintiffs Buchanan and Slaight ("Plaintiffs") and Defendant Tata Consultancy Services, Ltd. ("Tata"), by and through their undersigned counsel, hereby submit this Joint Letter Brief. Counsel hereby attest that they have complied with Judge Kim's meet and confer requirements by meeting and conferring telephonically on April 18 and 20, 2017. Further counsel hereby attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct.

Dated: April 27, 2017

/s/Daniel Kotchen
Daniel Kotchen

Attorney for Plaintiffs Buchanan and Slaight

/s/Michelle La Mar
Michelle La Mar

Attorney for Tata Consultancy Services, Ltd.

JOINT LETTER BRIEF - Case No. 4:15-cv-01696-YGR

13407103.3

205625-10015

**MATTER IN DISPUTE AND PENDING DEADLINES**

On April 12, 2017, Plaintiffs served a Rule 30(b)(6) deposition notice on Tata that included seven topics for examination. Exhibit 1. On April 14, Tata responded with a letter, objecting in whole to five topics, and in part to one topic (Topics 1(f), 3, 4, 5, 6, and 7). Exhibit 2. The parties met and conferred regarding the deposition notice and Tata's objections on April 18 and 20, and subsequently resolved their dispute regarding Topic 4.[1] Accordingly, the Topics that remain in dispute are Topics 1(f), 3, 5, 6, and 7.

Relevant case management deadlines include a May 8, 2017 deadline for Plaintiffs to take a Rule 30(b)(6) deposition regarding Tata's newly produced data, *see* R&R at 2:10-12 (Dkt. #174; Dkt. #184), and Plaintiff's June 15, 2017 class certification reply and supplemental summary judgment opposition briefing deadline, *see* Order Resetting Hearing and Briefing Dates (Dkt. #175).

**PLAINTIFFS' POSITION**

Given the scope of this class action, the parties have agreed to 30 depositions per side. Plaintiffs have not exceeded this number, and Tata's effort to artificially restrict Plaintiffs from taking plainly appropriate and highly relevant discovery should be rejected.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). As discussed below, each of the deposition topics are relevant and appropriate, and Tata should be ordered to produce a witness or witnesses to testify to these topics. *See Johns v. Bayer Corp.,* No. 09-cv-1935, 2012 WL 1520030, at *5 (S.D. Cal. Apr. 30, 2012) (granting plaintiffs' motion to compel the 30(b)(6) deposition of information "relevant to [the] party's claim and therefore discoverable"); *Siddiqi v. Regents of Univ. of Cal.*, No. C 99-0790, 2001 WL 36403966, at *2 (N.D. Cal. Nov. 26, 2001) (granting motion to compel

---

[1] Plaintiffs agreed to withdraw Topic 4 without prejudice pending Tata's response to Plaintiffs' interrogatory seeking comparable information. Tata does not agree that Topic 4 is appropriate— either as a deposition area of inquiry or an interrogatory— but nonetheless, Tata is determining what information is reasonably available to respond to the interrogatory.

1
JOINT LETTER BRIEF - CASE NO. 4:15-CV-01696-YGR
13407103.3
205625-10015

production of defendants' 30(b)(6) designee on an issue the court found to be "relevant and explicitly implicated by plaintiffs' ... Complaint.").

Number of Rule 30(b)(6) Depositions

Tata's argument that a party may take only a single Rule 30(b)(6) deposition per case without leave of the court is incorrect. *HVAC Tech LLC v. Southland Indus.*, No. 5:15-cv-2934-PSG, 2016 U.S. Dist. LEXIS 73585, at *3-4 (N.D. Cal. Apr. 8, 2016). As this court recently held, "[n]othing in the Federal Rules or in any cases located by the court … bars a party from using all [their] depositions on 30(b)(6) witnesses." *Id.* (holding that "a party may notice multiple 30(b)(6) depositions"). Moreover, the parties agreed to 30 depositions per side, and Tata never informed Plaintiffs that it intended to limit the number of 30(b)(6) depositions. If Tata intended to limit Plaintiffs to a single Rule 30(b)(6) deposition, it should have stated its position at the outset of the case. Further, limiting a party to a single Rule 30(b)(6) deposition makes no sense and would result in parties waiting as late as possible in discovery before issuing lengthy deposition notices covering every conceivable topic. This would benefit neither side, and would almost certainly make discovery more expensive and less efficient.[2]

Finally, as discussed in detail below, Topics 1(f), 3, 5, and 7 relate to the data produced late by Tata in January and February 2017, and are thus appropriate even under Tata's interpretation of Rule 30 and Judge Kim's April 7 Report and Recommendation. *See* R&R at 2:10-12 (Dkt. #174).

Topics 1(f) and 5

In Topics 1(f) and 5 Plaintiffs seek to examine Tata on claims it is making concerning its production of data prior to 2017. *See* Exhibit 1, Topics 1(f) and 5. Plaintiffs seek this discovery for two reasons. First, Tata moved to exclude the report and testimony of Plaintiffs' expert, Dr. David Neumark, arguing that he failed to take into account data produced in the case. *See* Tata's Mot. to

---

[2] For example, parties would be discouraged from taking discovery-related Rule 30(b)(6) depositions to determine things like appropriate custodians, the types of documents a party creates and maintains, and what databases and document repositories exist.

2

JOINT LETTER BRIEF - CASE NO. 4:15-CV-01696-YGR

13407103.3

205625-10015

1  Exclude at 3:13-20, 11:18-20 (faulting Dr. Neumark for failure to consider late-produced data)
2  (Dkt. #125); Anderson Report at 44-45 ("Dr. Neumark's analyses rest on incomplete data in two
3  important dimensions, even though I understand that Plaintiffs' Counsel was provided with the
4  same data I analyzed. . . . Dr. Neumark could have had access to a wealth of data showing U.S.
5  employee historical information, including hiring source, project begin and [end] dates,
6  unallocation information, applicant data, ratings, manager information and many more fields.
7  Instead of employing this data, Dr. Neumark testified that he chose to rely on only two files (an
8  Employee List and Separated Employee List) that ended in early 2015 after discussion with
9  Plaintiffs' Counsel.") (Dkt. #129). According to Tata, the data produced to Plaintiffs in late January
10 and February 2017 was produced earlier in the case, but in a different format, such that Plaintiffs
11 (and their expert) should have analyzed the data prior to moving for class certification. Hr'g Tr.
12 26:3-4 (Apr. 6, 2017) ("[Plaintiffs] essentially had this data before. It was a different way of
13 formatting this data.") (Ex. 3); *see also* R&R at 2:20-21 ("Defendant claims that it provided the
14 same data to Plaintiffs in separate formats and that, for the most part, Defendants merely re-
15 formatted existing data that had already been provided to Plaintiff") (Dkt. #174). But this
16 representation is inaccurate. Thus, in order to rebut Tata's *Daubert* arguments and claims as to
17 when it produced employee data, Plaintiffs seek to depose Tata on the veracity of its position that
18 the data produced in late January and February 2017 is the same as data that Tata previously
19 produced in discovery, but in a different format.

20  Second, Tata has indicated to Plaintiffs that it will likely seek to file a sur-reply if Dr.
21 Neumark supplements his original analysis with the newly-produced data. But Tata should not be
22 afforded this opportunity after waiting until January and February 2017 – roughly 1.5 years after
23 Plaintiffs' discovery requests – to produce robust employee data that it previously had not
24 produced. In order to oppose a motion to file a sur-reply, Plaintiffs wish to depose a Tata witness to
25 demonstrate that Tata's late January and February 2017 data productions consisted of new,
26 previously unproduced data. For example, if Tata seeks to file a sur-reply, Plaintiffs will argue that,

27
28

3

JOINT LETTER BRIEF - CASE NO. 4:15-CV-01696-YGR

13407103.3
205625-10015

1  because Tata waited to produce new employee data until it was too late to be incorporated in Dr.
2  Neumark's initial report, Tata should not be afforded an opportunity to file a sur-reply on the basis
3  of its late production of data.

Topic 3

Plaintiffs seek to understand the cause of major discrepancies between various data sets produced by Tata and to determine the accuracy and reliability of Tata's data. For instance, employee counts, including the number of deputees, differ substantially between the data sets, and Plaintiffs seek to determine the cause of these differences. Tata objected to Plaintiffs' inquiry regarding Table 1 of Dr. Anderson's report. This table, however, was derived from Tata's "Manpower Reports," and in light of this objection – and as Plaintiffs explained to Tata during a meet and confer – Plaintiffs now seek to depose Tata only as to the underlying data source (*i.e.*, Tata's employee lists and its "Manpower Reports").

Topic 6

Tata previously testified that its counsel communicated in writing with the Office of Federal Contract Compliance Programs ("OFCCP") concerning affirmative action analyses. Ganapathy (30(b)(6)) Dep. Tr. 12:16-13:1, 45:6-14 (Ex. 4). Tata committed to producing these written communications to Plaintiffs, but now states that it cannot find the communications. Plaintiffs thus wish to ask Tata which counsel communicated with the OFCCP, as the counsel almost certainly has the written OFCCP correspondence.

Topic 7

Topic 7 seeks information regarding a 50-person sample of allocation data provided to Tata's expert in the fall or summer of 2016. Exhibit 1, Topic 7. As addressed in Plaintiffs' Supplemental Discovery Brief, around the same time Tata's counsel falsely informed Plaintiffs that Tata did not have a database containing allocation data, it provided its expert a sample from such a database. *See* Pls.' Supp. Discovery Br. at 4 & n.4 (Dkt. #164).

4
JOINT LETTER BRIEF - CASE NO. 4:15-CV-01696-YGR
13407103.3
205625-10015

1   During the parties' April 20 meet and confer, Tata committed to producing the sample in question. But producing the sample will not resolve Topic 7. Plaintiffs intend to inquire when the sample was created, by whom, from what database it was extracted, and why and when it was requested. Tata argues that "[a]ny questions regarding information that Dr. Anderson received … should be directed to Dr. Anderson." Exhibit 2 at 2. But Plaintiffs have already questioned Dr. Anderson regarding the 50-person sample, and he did not know the answers to the preceding topics of inquiry. *See* Anderson Dep. Tr. 36:16-38:5 (Mar. 31, 2017) (Ex. 5). Moreover, it was Tata, not Dr. Anderson, who created the sample, and accordingly, Dr. Anderson lacks firsthand knowledge regarding how the sample was created and where it came from.

## DEFENDANT'S POSITION

On April 7, 2017, this Court issued an Order and Recommendations (ECF No. 174), allowing Plaintiffs to take a Rule 30(b)(6) deposition expressly limited to the subject matter of certain reports that were produced by TCS in January and February 2017, and listed in Plaintiffs' Supplemental Discovery Brief.  A true and correct copy of the Order—which was adopted on April 25, 2017— is attached hereto as Exhibit A.  Because this is Plaintiffs' ***third*** Rule 30(b)(6) deposition—the first two involved 16 topics (not including subtopics) and the testimony of seven witnesses (three of whom were deposed twice)—and because the deposition was granted for the sole purpose of allowing Plaintiffs to ask clarifying questions about the data produced in 2017, Plaintiffs are limited to the topics which have been designated by the Court.[3]  Nonetheless, on April 12, 2017, Plaintiffs served a Rule 30(b)(6) deposition notice that vastly exceeds the scope of the deposition permitted by the Court's Order.  The deposition notice is attached hereto as Exhibit B.

---

[3] *See* Fed. R. Civ. P. 30(a)(2)(A)(ii); *see also Groupion, LLC v. Groupon, Inc.*, 2012 U.S. Dist. Lexis 12684, *14-15 (N.D. Cal. 2012) ("…[the plaintiff] should have requested leave of the presiding judge to take a second 30(b)(6) deposition, having already noticed and taken one 30(b)(6) deposition"); *Burdick v. Union Sec. Ins. Co.*, 2008 U.S. Dist. Lexis 99994, *11-12 (C.D. Cal. 2008) (same).

5

JOINT LETTER BRIEF - CASE NO. 4:15-CV-01696-YGR

13407103.3

205625-10015

For instance, Topic 3 seeks testimony regarding the reasons for alleged differences between a table created by Dr. Edward Anderson (TCS's statistical expert) and spreadsheets produced by TCS.  Dr. Anderson's deposition is still open, and Plaintiffs remain free to question him regarding the information in his tables.  That subject matter is clearly outside the parameters of the Court's Order, and outside the firsthand knowledge of any TCS witnesses.[4]

Topic 6 seeks the status of TCS's production of certain correspondence between TCS and the Office of Federal Contract Compliance Programs.  Again, this subject matter has nothing to do with the data produced by TCS in 2017, and was not the subject of any discovery-related complaint that Plaintiffs submitted to the Court.  TCS voluntarily agreed to produce the correspondence at issue (consisting of a single letter) even though it was not the subject of a formal request.  The letter has not been located despite an exhaustive search.

Topic 7 seeks information regarding a 50-person data sample provided to Dr. Anderson in 2016.  Again, the deposition of Dr. Anderson is not yet complete, but he has already testified that he did not rely on the 50-person sample.  Moreover, the data included in the 50-person sample is data that has already been produced to Plaintiffs to the extent such data can be generated for the entire United States workforce during the class period (rather than on an individual basis, as was done for this small sample).

Finally, by way of the Rule 30(b)(6) notice, Plaintiffs seek to re-litigate the discovery dispute that this Court already heard and decided.  Topic 5 and subpart (f) of Topic 1 seek to inquire as to when and in what format TCS previously produced information that is similar to what it produced in January and February of 2017.  The Court did not find that the information produced by TCS in January and February of 2017 was actually responsive to any discovery requests

---

[4] Plaintiffs have agreed to withdraw Topic 4 without prejudice. Topic 4 seeks various categories of information regarding TCS's employment and termination of deputies—*e.g.* employees based outside of the United States, usually in India. Not only does this exceed the scope of what Plaintiffs have been permitted to inquire about, but as phrased, it is not properly the subject of deposition testimony at all.

propounded by Plaintiffs. Nor did the Court find that anything had been wrongly withheld by TCS. Nonetheless, the Order provided a remedy to Plaintiffs' concerns over the timing of TCS's data production, and their alleged inability to understand some of the spreadsheets.

Refusing to accept that the discovery "dispute" has already been heard and decided, Plaintiffs now argue that testimony on the subject matter of which records produced in 2015 and 2016 contain the same information as the records produced in 2017 is necessary because TCS' pending *Daubert* motion argues that Dr. Neumark neglected to consider evidence produced in 2017. This argument misrepresents the *Daubert* motion entirely. The *Daubert* motion argues that Dr. Neumark's analysis is unscientific and unreliable because he made no effort to control for factors other than race. Dr. Neumark's analysis also counts expatriates (or "deputees") as new hires in order to conclude that TCS employs a disproportionately large number of South Asian persons in the United States. No asssertion is made in the *Daubert* motion that Dr. Neumark's report should be disregarded because he did not look at evidence produced in 2017. Nonetheless, because Plaintiffs will have had the data at issue for several months before their supplemental replies are due, these topics inappropriate for testimony pursuant to Rule 30(b)(6). They exceed the Court's order and seek to burden TCS with further litigation over matters which are now moot.[5]

Since Plaintiffs refuse to serve a revised Rule 30(b)(6) notice that is confined to the subject matters permitted by the Court's Order, TCS respectfully requests the opportunity to seek a Protective Order. Although the deposition was noticed for May 2, 2017, the parties have yet to agree upon a mutually acceptable date. The parties met and conferred on two separate occasions regarding the scope of the deposition, but have not been successful in resolving this issue without Court intervention.[6]

---

[5] These topics are also objectionable because they are duplicative of Topics 1 through 4 from Plaintiffs' second Rule 30(b)(6) deposition notice (a copy of which is attached hereto as Exhibit C). Plaintiffs did not obtain leave of Court prior to noticing a second deposition under Rule 30(b)(6), but in the spirit of cooperation, TCS complied with the notice.

[6] Despite Plaintiffs' assertions, neither party in this action agreed that any witness (including TCS) could be deposed more than once.

| | |
|---|---|
| Dated: April 27, 2017 | Respectfully submitted, |
| | By: /s/Daniel Kotchen |
| | Daniel Kotchen (*pro hac vice*) |
| | Daniel Low, SBN 218387 |
| | Michael von Klemperer (*pro hac vice*) |
| | **KOTCHEN & LOW LLP** |
| | 1745 Kalorama Road NW, Suite 101 |
| | Washington, DC 20009 |
| | Telephone: (202) 471-1995 |
| | Email: dkotchen@kotchen.com; |
| | dlow@kotchen.com; |
| | mvk@kotchen.com |
| | |
| | *Attorneys for Plaintiffs Buchanan, Slaight, Webber, Masoudi, and Mandili* |
| | |
| Dated: April 27, 2017 | LOEB & LOEB LLP |
| | MICHELLE M. LA MAR |
| | PATRICK N. DOWNES |
| | LAURA A. WYTSMA |
| | ERIN M. SMITH |
| | |
| | By: /s/ Michelle M. La Mar |
| | Michelle M. La Mar |
| | Attorneys for Defendant |
| | TATA CONSULTANCY SERVICES, LTD. |

### **SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this documents has been obtained from the other signatories.

| | |
|---|---|
| DATED:  April 27, 2017 | By: /s/ Michelle M. La Mar |
| | Michelle M. La Mar |

8

JOINT LETTER BRIEF - CASE NO. 4:15-CV-01696-YGR

13407103.3

205625-10015

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system.

Dated: April 27, 2017                                       /s/ Michelle M. La Mar
                                                            Michelle M. La Mar