MICHELLE M. LA MAR (SBN 163038)
mlamar@loeb.com
PATRICK N. DOWNES (SBN 186461)
pdownes@loeb.com
LAURA A. WYTSMA (SBN 189527)
lwytsma@loeb.com
ERIN M. SMITH (SBN 235039)
esmith@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STEVEN HELDT, BRIAN BUCHANAN, and CHRISTOPHER SLAIGHT,<br><br>Plaintiffs,<br><br>v.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>Defendant. | Case No.: 4:15-cv-01696-YGR<br><br>Assigned to Hon. Yvonne Gonzalez Rogers<br><br>**TATA CONSULTANCY SERVICES, LTD.'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF MATERIAL FACTS**<br><br>Date:     August 22, 2017<br>Time:     2:00 p.m.<br>Location: Courtroom 1, 4th Flr., Oakland<br><br>Complaint Filed:     April 14, 2015 |

Tata Consultancy Services, Ltd. ("TCS") submits the following response to plaintiffs' Supplemental Statement of Additional Material Facts in Opposition to TCS' Motion for Summary Judgment.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13570201.1
205625-10015

TCS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL STATEMENT OF FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | **Issue No. 1: Plaintiffs Have Not Proven A Pattern or Practice of Discrimination** ||
|---|---|---|
| | **Plaintiffs' Additional Facts and Supporting Evidence Regarding Issue No. 1** | **TCS' Response and Supporting Evidence** |
| 1 | Pursuant to Department of Justice guidance, an employer may not discriminate in favor of visa workers over local workers "in hiring, firing and recruiting." DOJ Press Release (Apr. 3, 2017) (cautioning "employers who petition for H-1B visas not to discriminate against U.S. workers" and noting that "[e]mployers violate the INA [which prohibits national origin discrimination] if they have a discriminatory hiring preference that favors H-1B visa holders over U.S. workers.") (Ex. 71). | This is not a material fact, but a legal argument based upon plaintiffs' interpretation of a DOJ Press Release. This argument is not appropriately included in plaintiffs' Supplemental Statement of Material Facts ("Supp. SOF"). |
| 2 | Both expats and local hire candidates undergo the same application and interview process for U.S. positions, must be paid the same and are considered for the same openings and perform the same work. Pls.' Mot. for Class Cert. at 4 & n. 11 (Dkt. #115); Tata's Class Cert. Opp'n at 6 (Dkt. #127); Kumar (30(b)(6)) Dep. Tr. 27:13-29:1, 43:22-44:5 (Jan. 25, 2017) (Dkt. #115-5) (discussing application process expat must complete for U.S. positions); 20 CFR 655.731 (requiring payment of same wage); TCS121870-73 (listing open requirements for "LOCAL HIRE/EXPAT") (Ex. 72); TCSLTD003831136 (same) (Ex. 73); TCS150222-29 at 26 ("Please share Expat/Local Hire profiles for the below position[s]") (Ex. 74); TCSLTD000704279-81 at 79 ("Pls find attached the [job description] for 2 .Net Technical Lead (onsite) and 1 Test Manager (onsite) for Expat or Local Hire") (Ex. 75). | Undisputed that existing employees (including expats and local hires) undergo the same consideration and selection process before they are placed in open assignments. Kumar Dec. (ECF 141) ¶¶ 14, 16. However, whether they are considered for the same openings and perform the same work depends on each person's qualifications and geographic requirements. Kumar Dec. (ECF 141) ¶¶ 12-14.<br><br>Plaintiffs' legal contentions regarding 20 CFR 655.731 are not appropriately included in the Supp. SOF. |
| 3 | On May 23, 2017, Tata produced data concerning deputee terminations that it identifies as occurring outside of the United States, and Dr. Neumark supplemented his terminations analysis with this new data. Neumark Supp. Rpt. ¶ 7 (Ex. 76). However, even when accounting for terminations taking place outside of the U.S., Dr. Neumark's analysis did not change. *Id.* The termination rate for South Asians was still lower by 13.20 percentage points, or 62 standard deviations, | Disputed, but immaterial. TCS' termination practices in another country are not relevant. Plaintiffs continue to ignore undisputed evidence that deputees return to their home country and await work there rather than remain unassigned in the United States, and that deputees and local hires have different qualifications. TCS will Jindal Decl. (ECF 30) ¶ 14; Kumar Dec. ¶ 21; Anderson Decl. (ECF 129) |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13570201.1
205625-10015

2

TCS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL STATEMENT OF FACTS:
CASE NO.: 4:15-CV-01696-YGR

| Issue No. 1: Plaintiffs Have Not Proven A Pattern or Practice of Discrimination ||
|---|---|
| **Plaintiffs' Additional Facts and Supporting Evidence Regarding Issue No. 1** | **TCS' Response and Supporting Evidence** |
| and the statistical likelihood that this disparity is due to chance is less than 0.0000001%, or less than 1 in 1 billion. *Id.* ¶ 7, Tbl. 2.<br><br>Dr. Neumark also restricted the ACS data used for the external benchmarks analysis to occupations represented at Tata, and focused on the most common job titles at Tata. *Id.* ¶ 4. When restricting the occupations in this manner, the share of South Asians in the ACS data rose slightly. *Id.* ¶ 5. However, the share of South Asians at Tata is still markedly different from the share in the ACS data – 76.4% versus 15.8% – a difference that is over 200 standard deviations. *Id.* ¶ 5, Tbl. 1. The statistical likelihood that this disparity is due to chance is less than 0.0000001%, or less than 1 in 1 billion. *Id.* | ¶¶ 14-19, 57-70.<br><br>Furthermore, if Dr. Neumark's rationale is applied to its logical conclusion, a deputee's return to his or her home country must constitute a "termination" if the person's arrival in the United States is to constitute a "hiring." In that case, the termination rate of deputees would be nearly 100%, and not the rate suggested by Dr. Neumark. *See generally* Supplemental Declarations of G. Edward Anderson and Edward P. Lazear filed concurrently with TCS' Surreply in Opposition to Motion for Summary Judgment. ("TCS Supp. Expert Reports")<br><br>Finally, the ACS data is not the appropriate data to be utilized in connection with any statistical analysis pertaining to TCS' workforce when evidence of actual applicant pools is available. Anderson Dec. ¶¶ 10, 96. |

| Issue No. 2: There Is No Triable Issue Of Fact As To Buchanan's Individual Claims |||
|---|---|---|
| | **Plaintiffs' Additional Facts and Supporting Evidence Regarding Issue No. 2** | **TCS' Response and Supporting Evidence** |
| 4 | Buchanan was a top performer at Southern California Edison ("SCE") and had over 25 years of experience with the company, making him an ideal candidate for Tata rehire. *See* SCE000125-33 at 25, 33 (providing Buchanan with an "Exemplary" year end performance appraisal and noting "Brian is a pillar in our team. He is the one that the team looks to for guidance on process improvement and change management policies. . . . He provides Excellent support of the Service Management organization and other clients. It's a pleasure to have him on my team.") (Ex. 77); SCE000134- | TCS lacks firsthand knowledge of Buchanan's employment history with SCE, and therefore, does not dispute Buchanan's claim that he was a top performer at SCE. However, that fact is not material to TCS' motion. The material issues are whether (1) TCS had a job opening for which Buchanan was qualified, and (2) whether Buchanan applied for that job. |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13570201.1
205625-10015

3

TCS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL STATEMENT OF FACTS:
CASE NO.: 4:15-CV-01696-YGR

| Issue No. 2: There Is No Triable Issue Of Fact As To Buchanan's Individual Claims ||
|---|---|
| **Plaintiffs' Additional Facts and Supporting Evidence Regarding Issue No. 2** | **TCS' Response and Supporting Evidence** |
| 45 (noting commendable and exemplary 2012 performance review ratings) (Ex. 78); SCE000146-54 at 150 (commending Buchanan for continuing to "look[] for ways to improve his technical ability and stay on top of the latest tech trends that can benefit SCE" even after 25 years of service with the company) (Ex. 79); TCSLTD003517027-30 at 29 (noting that rehire of client employees "helps address transition risks, ensure[s] knowledge retention & enables business as usual.") (Ex. 80). | |
| 5. Stephen Bradley, a former SCE employee, testified in his deposition that Tata's conduct at the SCE job fair was discriminatory. Buchanan Dep. Tr. 75:25-76:12 (Mar. 10, 2017) (Q: "Do you have a belief that Tata … discriminated against you in any way based on your race or national origin?" A: "Yes, … I do believe that. When I was handing my resume [at the job fair], I just – having never experienced any kind of discrimination … I, you know, rarely felt that way. But yeah … it was different … it's just a feeling that I had." Q: "And that was based on your experience at the career fair?" A: "Yes.") (Ex. 81). | TCS disputes that any of its employees behaved in a discriminatory manner at the career fair. Mr. Bradley's testimony was that the career fair lacked a "warm and fuzzy feeling," but that the town hall meetings were different and TCS employees were not rude to him. La Mar Decl. (ECF 150-1) Ex. 3, 60:6-10; 71:19-72:13; 73:25-74:5. Nonetheless, this is all immaterial to Buchanan's individual claims. Buchanan expressly declined to attend the town hall meetings that he was invited to, and does not know whether they were discriminatory. Sharma Decl. (ECF 105-1) Ex. K; La Mar Decl. (ECF 105-6) Ex. A at 66:4-67:18, 65:21-66:3.<br><br>TCS did not hire any candidates who attended only the job fair. TCS hired one applicant (a woman with a Hispanic surname) who attended both the job fair and a town hall meeting. Ganapathy Dec. (ECF 142) ¶ 15. |
| 6. Tata hired a disproportionately high number of expats to staff the SCE client project. *See* TCSLTD003986082-89 at 87 (noting that as of February 2015, 70 expats were working on the SCE project (as compared to 67 local hires)) (Ex. 82); TCSLTD004034425-26 at 25 (spreadsheet indicating that as of May 27, | Disputed. Plaintiffs offer no evidence that the number of expats utilized was "disproportionately high." SCE identified the employees that it wanted to keep, and otherwise allowed TCS to staff the project with its existing employees, which include expats. An |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13570201.1
205625-10015

4

TCS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL STATEMENT OF FACTS:
CASE NO.: 4:15-CV-01696-YGR

| Issue No. 2: There Is No Triable Issue Of Fact As To Buchanan's Individual Claims ||
|---|---|
| **Plaintiffs' Additional Facts and Supporting Evidence Regarding Issue No. 2** | **TCS' Response and Supporting Evidence** |
| 2015, 102 expats were placed on the SCE project) (Ex. 83). | examination of the persons hired locally to perform work at SCE reveals no statistically significant racial disparity in the races of the applicants who received offers and those who did not. Ganapathy Dec. (ECF 142) ¶¶ 12, 16; Declaration of Edward P. Lazear (ECF 128) ¶ 73, Figure 5.<br><br>Ultimately this fact is not material to Buchanan's individual claims. |

| Issue No. 3: There Is No Triable Issue Of Fact As To Slaight's Individual Claims |||
|---|---|---|
| | **Plaintiffs' Additional Facts and Supporting Evidence Regarding Issue No. 3** | **TCS' Response and Supporting Evidence** |
| 7 | On April 10, 2013, Tata completed an involuntary termination form for Slaight listing his reason for termination as "INVOLUNTARY – Position Eliminated Altogether & No Suitable Position Found[.]" TCS029653-57 at 53 (Ex. 84). At this time, Slaight had been unallocated and on the bench for just 10 days. *Id.* | Undisputed. However, as the Involuntary Termination Form States, the termination was due to his release from his assignment due to "non-performance and behavioral issues," and that Slaight was found not suitable for one new assignment, and "refused to relocate" for a different one. TCS029653-57 at 53 (Ex. 84).<br><br>The declarations of other non-South Asian employees submitted by plaintiffs in support of their motion for class certification defy Slaight's claim that non-South Asian employees are benched for shorter periods, then fired. (*See* Declarations of Giovanni ¶¶ 4-5 (benched three months); Bedeiwi ¶¶ 4-5 (benched six months); Peck ¶ 5 (benched one year); Wilson ¶ 2 (benched 1.5 years)). |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13570201.1
205625-10015

5

TCS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL STATEMENT OF FACTS:
CASE NO.: 4:15-CV-01696-YGR

| | **Issue No. 4:  There Is No Discovery Dispute Precluding Summary Judgment** ||
|---|---|---|
| | **Plaintiffs' Additional Facts and Supporting Evidence Regarding Issue No. 4** | **TCS' Response and Supporting Evidence** |
| 8 | Plaintiffs provided their initial search terms to Tata on March 7, 2017. Email from M. von Klemperer to M. La Mar, *et al.* (Mar. 7, 2016) (Ex. 85). Tata ran these search terms on several test email boxes in July 2016 and provided Plaintiffs with a list of hits on the terms. Email from M. La Mar to D. Kotchen, *et al.* (July 11, 2016) (Ex. 86). | Disputed in part, and moot given the Court's recent Order.<br><br>TCS had to hire a vendor to convert 198 email boxes identified by plaintiffs from Lotus Notes into a searchable format before it could run plaintiffs' search terms.  Supp. La Mar Dec. ¶ 9.  Once that process was complete, TCS promptly began generating reports based on plaintiffs' expansive search terms.  *Id*.  TCS' counsel kept counsel for plaintiffs apprised of its status, and plaintiffs agreed that the time required to complete this task was a proper basis to extend the Court's scheduling order.  The parties stipulated accordingly.  *Id*.<br><br>Also, between March and July, 2016, TCS engaged in voluminous database production and the parties worked to identify the email accounts that plaintiffs wanted to have produced.  La Mar Dec. (ECF 139) ¶ 12- 18. |
| 9 | The parties engaged in both formal and informal discovery throughout 2016 and 2017, however, Tata often failed to promptly respond to Plaintiffs' discovery requests and follow-up questions. *See, e.g.*, Email from L. Grunert to M. La Mar, *et al.* (May 16, 2017) (Ex. 87); Email from L. Grunert to M. La Mar, *et al.* (June 6, 2017) (Ex. 88); (requesting update on answers to questions Rule 30(b)(6) witness was unable to answer fully (answers that are still outstanding over two months later)). | Undisputed that TCS provided information without a formal discovery request where it was feasible and appropriate to do so.  La Mar Dec. (ECF 139) ¶ 12- 18.  However, in an Order adopted by this Court, Magistrate Judge Kim agreed that TCS need not respond to questions posed via email which should have been raised by formal discovery requests.  (ECF 174, 184) ("The request to force Defendant to answer questions informally about documents that Defendant produced in January and February of 2017 is DENIED"). |
| 10 | Documents and data produced in January through May 2017 offer further evidence of Tata's corporate policy of favoring South Asian visa workers for U.S. positions. *See,* | Disputed.  Plaintiffs' interpretation of these documents as expressing a discriminatory preference for South Asian visa workers is incorrect.  *See* |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13570201.1
205625-10015

6

TCS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL STATEMENT OF FACTS:
CASE NO.: 4:15-CV-01696-YGR

| Issue No. 4:  There Is No Discovery Dispute Precluding Summary Judgment ||
|---|---|
| **Plaintiffs' Additional Facts and Supporting Evidence Regarding Issue No. 4** | **TCS' Response and Supporting Evidence** |
| *e.g.*, TCS057813-18 at 15 ("Leadership directive … to utilize every visa to the maximum extent.") (Ex. 2); TCSLTD003496554-58 at 57 ("Today's resourcing model is built on retention onsite for longer period and maximizing visa period[.]") (Ex. 89); TCSLTD004016550-53 at 50 ("As per Corporate directive we have to utilize the visa ready associates at onsite.") (Ex. 90); TCSLTD004040304-06 at 304 ("I understand the direction from our leadership team on leveraging visa ready expat associates[.]") (Ex. 91); TCSLTD001449986 (Jeevak Sharma, Human Resources: "Please refer to retention initiative for employees. We have instructed Monica to take RM's approval for all Expat employees to ensure we have explored all retention[] possibilities before proceeding with separation. . . . Please make sure you review every case to explore all retention possibilities[.]") (Ex. 92); TCSLTD003236913 ("As per recent Management decision, we have been advised to hold on to any offshore travel back and re-deploy [expats] at onsite if they are getting released.") (Ex. 93). In fact, a number of documents reflect Tata's plans to remove local hires from projects and to replace these individuals with visa holding expats. *See, e.g.*, TCSLTD005059003-07 at 05-06 (discussing plan to staff project with 5 rehires from client and the "rest of the team [with] expats[,]" and to remove all rehires from project within 12 months) (Ex. 94); TCSLTD003189623-31 at 31 ("During Mar' 2012, One of these two associates from offshore … are planned to get visa ready and will replace the onsite local recruit") (Ex. 95); TCSLTD001843641-46 at 42 ("As a backup plan we'd initiate L1 Visa for suitable profiles and plan to replace the local hire in the next 4-6 months") (Ex. 96); TCSLTD004623398-413 at 398 (discussing plan to release rehire after one year and noting | *e.g.* Kumar Dec. (ECF 141) ¶¶ 12-14; Ganapathy Dec. (ECF 142) ¶¶ 20-22; Jindal Dec. (ECF 130) ¶¶ 7-8, 14. Further, plaintiffs ignore the legitimate, non-discriminatory reasons why visa-ready associates are utilized. *Id*. Plaintiffs also ignore the qualifications and experience of visa-ready individuals, and the fact they are existing employees. *See id; see also* Anderson Decl. (ECF 129) ¶¶ 14-19, 57-70.<br><br>The other emails cited by plaintiffs do not reflect a consistent pattern or practice of instructions by TAG for its recruiters to identify South Asian candidates, but rather, isolated instances. Plaintiffs cite seven emails (out of over 5.6 million pages of emails produced in this case) to argue that TCS expressly directs vendors to find South Asian candidates. Galicki was just one of 17 different people who worked for TAG at any given time locating external job candidates. Chinnari Dec. (ECF 133) ¶ 4. Through TAG, 16,968 offers of employment were made for technical positions during the class period. *Id*. at ¶ 9. The emails at issue reflect only *six* of those positions.<br><br>Two of the emails (Supp. SOF, Ex. 107 and 108) show Galicki, who self-identifies as white, asking a third-party headhunter, John Fowler, who is believed to be white, for resumes. *See* concurrently filed Supplemental Declaration of Michelle La Mar, Ex. 6. Fowler's response to both inquiries indicates that he (Fowler) has assigned an Indian member of his staff to assist in locating candidates. These emails |

Loeb & Loeb
A Limited Liability Partnership Including Professional Corporations

13570201.1
205625-10015

7

TCS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF FACTS:
CASE NO.: 4:15-CV-01696-YGR

| Issue No. 4: There Is No Discovery Dispute Precluding Summary Judgment ||
|---|---|
| **Plaintiffs' Additional Facts and Supporting Evidence Regarding Issue No. 4** | **TCS' Response and Supporting Evidence** |
| "I have already identified her replacement 'Sunil Patra' and his L1A Individual visa petition has been approved.") (Ex. 97).<br><br>These materials also reflect instructions from business units to the Talent Acquisition Unit ("TAU") and from TAU to vendors to favor Indian or "desi" applicants. *See, e.g.* TCSLTD005353314-17 at 14-16 (Senthil Kumar Sivagnanam, Offshore Lead: "Pls. can you get a Local Hire preferably Indian[?] . . . We need only Indians for this requirement[.]" … Brian Galicki, Senior Talent Acquisition Specialist: "[F]inding a Desi should not be an issue and [I] will only look for this but obviously we cannot release this sort of info to the outside world :)") (Ex. 101); TCSLTD003481371-77 at 76 ("Hiring trends in FY12 indicate Hiring Managers within ISUs have higher affinity towards selecting local hire candidates who are of Indian-origin.") (Ex. 102); TCSLTD005349892-93 at 92 (informing recruiter "I need more candidates for this but they[]must be Desi") (Ex. 103); TCSLTD005204587-91 at 87, 88 (Tulika Saksena, Project Manager: "I don't know how to ask this subtly..do u think we can get someone 'desi' for this re[quisition]?" … Brian Galicki, Senior Talent Acquisition Specialist: "No problem I'll let [the recruiter] know[.]") (Ex. 104); TCSLTD005342029-30 at 29 (noting the recruiter's candidate is "[n]ot a desi but might do") (Ex. 105); TCSLTD005328697-99 at 97-98 (Brian Galicki, Senior Talent Acquisition Specialist: "Doesn't seem like a Desi name to me?" Rajes S., E*Pro Inc. Rrecruiter: "Yes, he is Brian. Tejas is a common name in North India") (Ex. 106); TCSLTD005212451-52 at 51 ("My top Indian is on it") (Ex.107); TCSLTD005275731-33 at 31 ("My number 1 Indian is on it.") (Ex. 108). | reflect Fowler's staffing choices, not TCS'.<br><br>Four of the emails refer to instances where a hiring manager (TCS had 2,518 hiring managers during the relevant time period) indicated "desi" candidates would be best suited for a role due to the "offshore" coordination needed. (Supp. SOF Exs. 101, 103, 104, 105). "Offshore coordination" entails a significant amount of late night and early morning engagement with overseas teams.  It is nonetheless a violation of TCS policy to prefer candidates of any race for a position, as the emails acknowledge.  Chinnari Dec. ¶¶ 6, 11.  Ultimately the emails provide no evidence that discrimination actually occurred; in fact, Galicki acknowledges in one of the emails that the candidate provided is "not desi but might do." (Supp. SOF Ex. 105).  Similarly, the seventh email is a comment by Galicki that a candidate's name does not sound "desi," but that Galicki "submitted him anyhow."  (Supp. SOF Ex. 106).<br><br>All that may be gleaned from these seven emails, which are between 3.5 and five years old, is that on four occasions, a hiring manager personally believed that a South Asian candidate might be better suited for a position due to the requirements.  These personal beliefs are inconsistent with TCS policy, and the emails at issue do not bolster plaintiffs' claims of a companywide pattern of discrimination.<br><br>Dr. Neumark's analyses are unscientific and unreliable.  See generally Anderson Dec. (ECF 129) ¶¶ 6-12; Lazear Dec. |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13570201.1
205625-10015

8

TCS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL STATEMENT OF FACTS:
CASE NO.: 4:15-CV-01696-YGR

| Issue No. 4:  There Is No Discovery Dispute Precluding Summary Judgment ||
|---|---|
| **Plaintiffs' Additional Facts and Supporting Evidence Regarding Issue No. 4** | **TCS' Response and Supporting Evidence** |
| Further, Tata's data shows a disproportionate hiring of South Asians in the U.S. and its dramatically higher termination rates of non-South Asians (particularly from the bench). Neumark Supp. Rpt. Tbl. 1 (noting that while South Asians make up only 15.79% of the relevant labor market, they make up over 76% of Tata's U.S. workforce) (Ex. 76); *id.* Tbl. 2 (finding 62.01 standard deviation distinction between South Asian and non-South Asian terminations, and 55.05 standard deviation distinction between South Asian and non-South Asian terminations from the bench); TCSLTD001421181-94 at 92 (noting that from April 2015 to March 2016, just 6 expats were involuntarily terminated (as compared to 508 local hires) and that 390 locals (17.17%) were terminated from the bench) (Ex. 98); TCSLTD001417947-60 at 54 ("26% of Local Hire Attrition is Involuntary") (Ex. 99); TCSLTD001406961-7003 at 682 ("73% of [local hire] terminations are due to unallocation") (Ex. 100). | (ECF 128) ¶¶ 53-60; *see also* TCS' Supplemental Expert Reports. |

The undersigned attests that the evidence cited herein fairly and accurately supports the facts as asserted.

Dated: July 6, 2017

LOEB & LOEB LLP
MICHELLE M. LA MAR
LAURA A. WYTSMA
PATRICK N. DOWNES
ERIN M. SMITH

By: /s/ Michelle M. La Mar
Michelle M. La Mar
Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13570201.1
205625-10015

9

TCS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF FACTS:
CASE NO.: 4:15-CV-01696-YGR

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system on July 6, 2017.

Dated:  July 6, 2017          /s/ *Michelle M. La Mar*
                                        Michelle M. La Mar

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

13570201.1
205625-10015

10

TCS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL STATEMENT OF FACTS:
CASE NO.: 4:15-CV-01696-YGR