MICHELLE M. LA MAR (SBN 163038)
mlamar@loeb.com
PATRICK N. DOWNES (SBN 186461)
pdownes@loeb.com
LAURA A. WYTSMA (SBN 189527)
lwytsma@loeb.com
ERIN M. SMITH (SBN 235039)
esmith@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STEVEN HELDT, BRIAN BUCHANAN, and CHRISTOPHER SLAIGHT,<br><br>Plaintiffs,<br><br>v.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>Defendant. | Case No.: 4:15-cv-01696-YGR<br><br>Assigned to Hon. Yvonne Gonzalez Rogers<br><br>**REBUTTAL DECLARATION OF EDWARD P. LAZEAR**<br><br>Date: August 22, 2017<br>Time: 2:00 p.m.<br>Location: Courtroom 1, 4th Flr., Oakland<br><br>Complaint Filed: April 14, 2015 |

Rebuttal Declaration of Edward P. Lazear

## I. Introduction

1. My original report in this matter was dated March 20, 2017. Since then, Plaintiffs have submitted a Reply Memorandum in Support of their Motion for Class Certification along with the Supplemental Expert Report of David Neumark ("Neumark Supplemental Report").

2. This Rebuttal Declaration considers the issue of whether transfers from worldwide Tata (referred to as "expats" or "deputees") should be considered along with U.S. local hires to determine whether Tata disproportionately favored South Asians. My original report explained that, as a matter of labor economics, an economic analysis of Plaintiffs' claims of racial discrimination should not include within-company transfers because they are not comparable to new hires. I argued that there are strong business reasons having nothing to do with a desire to discriminate that would cause a firm to prefer within-company transfers, when appropriate, to new hires. Because Tata is an Indian company and because Tata's employee base is disproportionately Indian, within-company transfers will almost by necessity be Indian. But this sheds no light on Tata's desire to discriminate because there is a well-accepted business rationale for using Tata's current employees whenever it is cost effective to do so. As discussed below, nothing in Plaintiffs' submissions changes this opinion.

3. My qualifications, list of litigation-related prior testimony, and statement of compensation are contained in my original report. In reaching my opinion, I relied on the materials discussed or cited in this report along with my experience as a labor economist.

## II. Expats Are Properly Excluded from the Economic Analysis of Racial Discrimination

4. Dr. Neumark claims that "arguing that prior Tata experience of deputees makes deputees more qualified or fundamentally different from local hires who may have experience with different companies is unwarranted."[1]

---

[1] Neumark Supplemental Report, ¶10.

5.      To support this, Dr. Neumark notes that "[w]ell-established theory and evidence on the human capital model demonstrates that both labor market experience (i.e. past work without regard to at which employer), as well as tenure (i.e. past work for the same employer), are both associated with increases in human capital that make a worker more productive at a job."[2] We both agree on this point – over five decades of literature attest to this.[3] Having worked in this area almost since its inception and as the founding and almost 20-year editor of the major journal in the field, there is no doubt that virtually all studies find effects of firm-specific human capital on wages and turnover. Indeed, I am baffled by Neumark's claim to the contrary. The literature may dispute the magnitude of the difference, but never the fact that local experience is likely to differ in its impact on local productivity from general experience obtained elsewhere. Indeed, based on the existing literature, virtually every labor economist I know emphasizes the distinction between firm-specific and general human capital in productivity, wage determination, and turnover. This is an integral part of my lecture notes at Stanford. Indeed, I spend almost a week of my ten-week course "Incentives and Productivity" at Stanford on this topic. Additionally, my 2009 paper in the *Journal of Political Economy,* was motivated by trying to rationalize why firm-specific human capital effects are generally found to be so important empirically.[4] Technical arguments aside, can it really be questioned that, other things equal, companies may, for business reasons, prefer to use existing employees to hiring ones?

6.      Dr. Neumark cites two sources that he believes support the view that he expresses in his reply, namely, that firm-specific human capital is non-existent. One concludes the opposite and the other cautions against drawing precisely the inference that Dr. Neumark draws. Dr. Neumark writes, "wage increases – and hence, according to the human capital model, increases in productivity – associated with more tenure vs. more labor market experience are about equal."[5] But his first cite, a 2005 study by Altonji and Williams, concluded instead that experience with a

---

[2] Id.
[3] Google Scholar cites over 70 articles in 2017 alone that discuss firm-specific capital.
[4] See Lazear, Edward P., "Firm-Specific Human Capital: A Skill-Weights Approach," *Journal of Political Economy,* 2009, vol. 117, no. 5, October, pp 914-40. From the introduction: "Firm-specific human capital raises the productivity of the worker at the current firm, but not elsewhere, setting up a bilateral monopoly situation between the worker and firm. Examples of firm-specific human capital include learning techniques that are idiosyncratic to a particular firm, knowing the identities of the relevant players within an organization and other details of a particular firm's layout and location that pertain to that firm only."
[5] Neumark Supplemental Report, ¶10.

specific firm ("tenure") increases wage, and hence productivity, over and above the increases that are attributable to general labor market experience of 11 percent.[6] Moreover, the same analysis concludes that "[p]erhaps surprisingly, the return to tenure has probably increased over time."[7]

7. Dr. Neumark further cites a 1995 study by Derek Neal as support for the claim that "research indicates that experience with a particular company may be no more valuable than experience in the same industry with a different company."[8] However, the study explicitly cautions against interpreting its finding too strongly, stating that "… these results should not be taken as evidence that workers possess few firm-specific skills."[9]

8. Neumark further disputes that there is a shortage of local hires with the same skills as the deputees based on his own assessment of Tata's skill requirements.[10] Kumar's declaration supports the firm specific skills of the deputees that new hires would not possess: "All 'visa ready' employees and 'expats' have specialized training and knowledge with respect to carrying out IT projects in a multi-location, multi-time zone operation. This is TCS' Global Networked Delivery Model. … The applicable qualifications and skills associated with this model have been reviewed by governmental authorities as being in short supply in the United States, and as such, visas have been issued to those existing employees holding such skill sets."[11]

9. In sum, Dr. Neumark's claim that prior experience with Tata does not make deputees different from local hires is not supported by any of the research he cites.

---

[6] Altonji, Joseph and Nicolas Williams, 2005, "Do Wages Rise with Job Seniority? A Reassessment", *Industrial and Labor Relations Review*, 58(3) pp. 370-97, at p394: "Our main conclusion is that the data… imply a return to ten years of tenure of about .11." The regressions that lead to this conclusion include a control variable for general labor market experience. This means the return they find for tenure is the return over and above that which is associated with general labor market experience. See the Wage Model on p. 372.
[7] Id. at p. 370.
[8] Neumark Supplemental Report, ¶10.
[9] Neal, Derek, 1995, "Industry-Specific Human Capital: Evidence from Displaced Workers," Journal of labor Economics, 13(4), pp. 653-77, at p. 668.
[10] Neumark Supplemental Report, ¶11.
[11] Declaration of Umesh Kumar, May 16, 2017, ¶13.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th day of July, 2017, at Stanford, California.

_____
EDWARD P. LAZEAR

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system on July 11, 2017.

Dated: July 11, 2017                /s/Michelle M. La Mar
                                    Michelle M. La Mar

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations