Daniel Low, SBN 218387
Daniel Kotchen (*pro hac vice*)
Michael von Klemperer (*pro hac vice*)
Lindsey Grunert (*pro hac vice*)
**KOTCHEN & LOW LLP**
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: (202) 471-1995
E-mail:  dlow@kotchen.com;
E-mail:  dkotchen@kotchen.com;
E-mail:  mvk@kotchen.com
E-mail:  lgrunert@kotchen.com
Attorneys for PLAINTIFFS AND THE CLASS

MICHELLE M. LA MAR (SBN 163038)
mlamar@loeb.com
TERRY D. GARNETT (SBN 151212)
tgarnett@loeb.com
PATRICK N. DOWNES (SBN 186461)
pdownes@loeb.com
ERIN M. SMITH (SBN 235039)
esmith@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BRIAN BUCHANAN, CHRISTOPHER SLAIGHT, SEYED AMIR MASOUDI AND NOBEL MANDILI<br><br>Plaintiffs,<br><br>v.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>Defendant. | Case No.: 4:15-cv-01696-YGR<br><br>CLASS ACTION<br><br>**SUPPLEMENTAL JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date:  January 29, 2018<br>Time:  2:00 p.m.<br>Location: Courtroom 1, 4th Flr., Oakland<br><br>Action Filed:        April 14, 2015 |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

## SUPPLEMENTAL JOINT CASE MANAGEMENT CONFERENCE STATEMENT

Plaintiffs Brian Buchanan, Christopher Slaight, Seyed Amir Masoudi and Nobel Mandili ("Plaintiffs") and Defendant Tata Consultancy Services, Ltd. ("TCS") jointly submit this Supplemental Joint Case Management Statement.  The parties agree that the following issues be addressed at the forthcoming Case Management Conference:

      a.  Class notice;

      b.  Discovery plan and management;

      c.  Trial and related dates.

TCS further suggests that the following issues be addressed at the Case Management Conference:

      d.   Class member identification;

      e.  Timing for motion related to whether class members who signed arbitration agreements containing class waivers must pursue their claims in arbitration rather than this action;

      f.  Timing for motion to bifurcate Brian Buchanan's action (should such a motion be necessary);

      g.  Timing for potential motion to decertify.

## A.   Current Procedural Posture

This is a class action employment discrimination case filed April 14, 2015. Following class-related discovery, on December 27, 2017, the Court granted in part and denied in part Plaintiffs' motion for class certification (the "Class Certification Order") and certified the following class:

> **Termination Class:**  All individuals who are not of South Asian race or Indian national origin who were employed by Tata [TCS] in the United States, were placed in an unallocated status and were terminated between April 14, 2011 and the date of class certification.

(Dkt. No. 244, p. 30.)  The court denied Plaintiffs' request to certify a "hiring class."  TCS filed a petition in the Ninth Circuit, pursuant to Federal Rule of Civil Procedure 23(f), for permission to take an interlocutory appeal of the Class Certification Order. Plaintiffs filed

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

1

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

an answer in opposition to TCS' petition on January 22, 2018.  TCS also filed with this Court a motion to stay these proceedings pending appeal, which is currently noticed for hearing on February 27, 2018.  (Dkt. No. 248.) Plaintiffs oppose this motion and will submit an opposition brief on January 26, 2018. TCS filed an almost identical motion to stay before the Ninth Circuit on January 22, 2018, which Plaintiffs will also oppose, in part because they believe it is procedurally improper. Plaintiffs filed a Fourth Amended Complaint on January 8, 2018 and TCS answered the complaint on January 22, 2018.

As discussed below, TCS intends to file a motion to compel arbitration before the Phase I trial.   TCS also notes it may conceivably move for summary judgment on the newly amended plaintiffs, and/or renew its motion on Mr. Slaight, before the Phase I trial, provided it obtains consent from this Court pursuant to this Court's standing order. Finally, pending Plaintiffs' compilation of the proposed class and further discovery, TCS may move to decertify the class.

Plaintiffs submit that a motion to decertify the class would be inappropriate, as the Court just addressed class certification.  Similarly, Plaintiffs believe that a second round of summary judgment motions would be inappropriate for numerous reasons, including that the deadline for summary judgment has passed, that the Court's standing order permits only one summary judgment motion per side, and such a motion would be futile. For example, TCS' failure to rebut Plaintiffs' prima facie case would make any subsequent summary judgment motions challenging the claims of the new Plaintiffs futile. *See* Order at 29-30 (Dkt. No. 244). And for the reasons addressed below, TCS' proposal to move for arbitration is inappropriate and futile.

**B.**     **Jurisdiction and Venue**

The parties outlined their positions on jurisdiction and venue in the initial Case Management Conference Statement at Dkt. No. 55.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

2

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

**C.      Facts**

The Court summarized the facts of the case in its December 27, 2018 Class Certification Order (Dkt. No. 244.)

**D.      Legal Issues**

At issue is whether TCS discriminated against Plaintiffs and members of the certified termination class based on race and national origin.  Specifically, the issue is whether TCS' hiring and termination policies constitute a pattern and practice of disparate treatment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.[1]

**1.      Plaintiffs' Position**

Below, TCS raises two class issues and one issue related to bifurcation of named plaintiff Brian Buchanan's claim.[2]

***Class Issues***

TCS seeks to narrow the class and thereby limit class members' ability to recover for TCS' pattern and practice of discrimination by (a) redefining the class definition and (b) limiting the scope of class notice.  First, TCS argues that a number of class members

---

[1] TCS submits that the "hiring" issue is limited solely to Brian Buchanan, whose claims should be extracted from the class proceedings for all purposes.  The cases cited by Plaintiff below allegedly allowing individuals to proceed under the pattern and practice framework are easily distinguishable.  Unfortunately, Plaintiffs presented such citations under an hour and a half before the filing deadline of this CMC Statement to the Court.  Plaintiffs attempts to recharacterize the quick turnaround provided to TCS for multiple last minute reworked arguments and new caselaw in footnote 2 is unavailing.  In short, Plaintiffs arguments make TCS' point, a motion to bifurcate should be scheduled and heard by this Court and should not be litigated in the CMC Statement.

[2] In footnote 1 and in various footnotes below, TCS contends that Plaintiffs did not provide it with Plaintiffs' edits to this CMC Statement with sufficient time to respond. Plaintiffs provided TCS with Plaintiffs' edits on Sunday at 5 pm (after receiving TCS' draft Friday evening). After committing to providing Plaintiffs with their edits by yesterday around 5 pm, TCS ultimately did not provide Plaintiffs with their edits until nearly midnight. TCS' edits were substantial and required Plaintiffs to modify their portion of the CMC Statement today. Plaintiffs provided their edits to TCS nearly an hour and a half before the deadline.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

3

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

have arbitration clauses "substantially similar" to Mr. Webber's and that the class now needs to be redefined to exclude these individuals. TCS intends to file a motion to compel arbitration to exclude these individuals from the class. Plaintiffs believe that TCS' motion would be futile. TCS has never substantively raised class member arbitration before, and has thus waived its right to arbitrate.

This case was filed in April 2015. (Dkt. #1). After Plaintiffs filed class claims challenging TCS' discriminatory scheme, TCS – in July 2015 – started to require new employees to sign arbitration agreements. (Dkt. #111 at 10). Then, while TCS was in the process of imposing its arbitration agreements on new employees, TCS and Plaintiffs agreed in August 2015 that they "do not believe this case is suitable for reference to binding arbitration." Joint CMC Statement ¶ 14 (Dkt. #55).[3] TCS then filed multiple Answers (raising over twenty affirmative defenses each) that made no mention of arbitration. *See* Answer to 2d Am. Compl. at 7-11 (failing to raise arbitration as affirmative defense) (Dkt. #75); Answer to 3d Am. Compl. at 7-11 (same) (Dkt. #84). TCS only included arbitration as an affirmative defense yesterday, January 22, 2018, after it received Plaintiffs' portion of the draft CMC in which Plaintiffs argued waiver. Answer to 4th Am. Compl. at 12 (raising arbitration as an affirmative defense for the first time) (Dkt. #252).[4]

TCS also failed to substantively address arbitration during class certification briefing. For example, TCS failed to seek to exclude class members who signed arbitration agreements from the class definition. Its sole mention of arbitration was confined to a single footnote involving numerosity. Def.'s Opp'n to Class Cert. at 12 n.7 (Dkt. #127);

---

[3] The parties also agreed that "[t]he case will be tried to a jury." *Id.* ¶ 18.

[4] While TCS contends below that TCS' counsel raised the arbitration "in conversations with Plaintiffs' counsel," Plaintiffs' counsel have no recollection of such conversations (even if off-the-record conversations were somehow sufficient to avoid waiver, which they are not). *Cf. Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) (noting that even mentioning arbitration in a pleading or motion is insufficient to defeat a claim of waiver).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

4

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

*see, e.g.*, *United States v. Strong*, 489 F.3d 1055, 1060 n.4 (9th Cir. 2007) (finding "summary mention of an issue in a footnote" resulted in waiver) (citation omitted); *accord Foti v. McHugh*, 247 F. App'x 899, 901 n.2 (9th Cir. 2007).[5] Defendants' 23(f) petition likewise makes no mention of arbitration as an issue relevant to class certification. *See generally* TCS' Petition to Appeal (Dkt. #248-2).

A party may waive its right to compel arbitration where it engages in acts inconsistent with the right to arbitration resulting in prejudice to the party opposing arbitration. *Martin*, 829 F.3d at 1124-28 (affirming waiver of arbitration where defendants "spent seventeen months litigation the case," and "did not even note their right to arbitration until almost a year into the litigation" resulting in "obvious prejudice"). Courts have repeatedly found waiver of rights to compel arbitration of class members where defendants have sat on their rights in this way, including where defendants failed to plead arbitration as an affirmative defense, where defendants engaged in extensive class discovery without raising arbitration, where defendants have opposed class certification motions without substantively raising arbitration as a defense, and where defendants continued litigating the case after class certification, such as by filing 23(f) petitions that do not raise the issue of arbitration. *See, e.g.*, *In re Cox Antitrust Litig.*, 790 F.3d 1112, 1117-18 (10th Cir. 2015) (finding waiver of right to compel arbitration of class members where defendant waited until "after briefing and discovery is complete and after [defendant] lost on the merits" on class certification, after which defendant "attempted to appeal the district court's certification decision … while remaining silent" on arbitration issue); *In re Checking Account Overdraft Litig.*, MDL No. 2036, 2016 U.S. Dist. LEXIS

---

[5] *See also HomeAway Inc. v. City & Cnty. of S.F.*, No. 14-cv-04859-JCS, 2015 U.S. Dist. LEXIS 9912, at *32-33 (N.D. Cal. Jan. 27, 2015) (quoting *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 929, 935 (N.D. Cal. 2008) ("'[a] footnote is the wrong place for substantive arguments on the merits of a motion'")); *Sanders v. Sodexo, Inc.*, No. 15-cv-00371, 2015 U.S. Dist. LEXIS 96073, *13-14 (D. Nev. July 20, 2015) ("Defendants are cautioned that this court will continue to ignore substantive arguments raised in footnotes").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

145813, at *27-28 (S.D. Fla. Oct. 17, 2016) ("Because Wachovia chose to try to win the case on the merits by filing dispositive motions and obtaining discovery, all of which were geared primarily to defeating the claims of the class, it cannot now invoke arbitration against the unnamed class members."); *Oregel v. PacPizza, LLC*, 237 Cal. App. 4th 342, 355-56 (Cal. Ct. App. 2015) (finding waiver where defendant "filed *two* answers in which it failed to assert the existence of an arbitration agreement as an affirmative defenses," then participated extensively in litigation (such as engaging discovery) without mentioning arbitration until after filing of class certification motion) (emphasis in original); *Roberts v. El Cajon Motors, Inc.*, 200 Cal. App. 4th 832, 844-46 (Cal. Ct. App. 2011) (finding waiver of right to compel arbitration in class action where party delayed for five months after filing of complaint before moving for arbitration, during which the parties engaged in extensive class discovery).[6]

Moreover, TCS' agreements contain an explicit waiver of any class action, requiring employees only to pursue claims on an individual basis:

> You and the Company further agree that claims must be brought in each party's individual capacity, and that the arbitrator may not consolidate more than one person's/entity's claims, and may not otherwise preside over any form of a representative or class proceeding.

Dkt. #143-16 at 2.

> THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITIES AND NOT

___

[6] *Larsen v. Citibank FSB (In re Checking Account Overdraft Litig.),* 780 F.3d 1031 (11th Cir. 2015) and *Carter v. XPO Last Mile, Inc.,* No. 16-cv-01231-WHO, 2016 U.S. Dist. LEXIS 137176 (N.D. Cal. 2016), raised by Defendants below, do not address a situation where a party has failed to timely raise an arbitration issue, and are thus inapposite. And while the Court did not find waiver in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 U.S. Dist. LEXIS 55033, *28 (N.D. Cal. 2011), the court noted that its fact-specific decision was "extremely close," and numerous other courts have found that waiting until after class certification to move for certification of class members constitutes "improper gamesmanship," and resulted in waiver. *See In re Cox Antitrust Litig.*, 790 F.3d at 1119 (distinguishing *In re TFT-LCD* and compiling cases).

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE OR COLLECTIVE PROCEEDING.

*Id.* at 6.

The Ninth Circuit has found that class action waivers of this sort were unenforceable. *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 979 (9th Cir. 2016). Below, TCS argues that this Court has distinguished *Morris*. That is not accurate – the Court found Steven Webber's claim futile because his arbitration agreement "contains no language preventing Webber from bringing claims in an arbitration forum together with other employees." Order at 12:11-12 (Dec. 27, 2017) (Dkt. #244). But the arbitration language quoted above clearly and unambiguously prevents a class or collective action in any forum and thus violates *Morris*.

Second, before TCS supplements data through 2017, TCS demands that Plaintiffs submit to TCS a preliminary list of class members and then provide a second list after TCS supplements its data. According to TCS, it can use the preliminary class list to begin the process of disputing which individuals are actually class members and thus should not receive class notice. But TCS can as readily ascertain class membership as Plaintiffs, as the class is defined based on objective criteria. Order at 36 (Dec. 27, 2017) (Dkt. #244). Data relevant to ascertaining class membership is in TCS' s possession, and TCS presumably could have analyzed its own data to ascertain class membership at any time to determine whether class members had signed arbitration agreements. Depending on the contents of Tata's data, however, ascertaining whether certain individuals are class members may require an inquiry beyond TCS's data, such that Plaintiffs may not be able to prepare an exact list of class members prior to issuing notice. *See id.* at 36 ("Rule 23 can be satisfied even where ascertaining class membership requires self-identification.").

Moreover, TCS' request is impractical. To come up with a list of individuals to whom notice should be sent, Plaintiffs need to compare individuals terminated to individuals who were benched by TCS. TCS last produced employee benching data on February 9, 2017 and employee terminations data on May 23, 2017. While this data needs

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

to be supplemented through December 27, 2017, the data thus far has over **28,000** files identifying who was benched and when, and will take time to create a list for the purpose of providing notice. The data is complicated, and Plaintiffs do not intend to conduct their analysis more than once, so as to avoid duplication of effort, administrative challenges, and unnecessary costs and complexity.  No reason exists why TCS cannot supplement its data within 30 days (it's readily available to TCS),[7] which would enable Plaintiffs to promptly begin compiling a single list for notice.

TCS' attempt to limit who receives class notice is also improper.  No legitimate reason exists to limit notice.  If TCS believes that individuals are seeking to recover damages that are not legitimately class members, it will have every opportunity to dispute these individuals' claims during Phase II, when individual class members may advance claims for damages, and TCS may raise individualized defenses.

### Bifurcation of Mr. Buchanan's Claim

Below, TCS argues that Mr. Buchanan's claim should be bifurcated from this case and that Mr. Buchanan should no longer be allowed to pursue a pattern and practice claim. TCS is mistaken.  First, if TCS wishes to bifurcate the two cases, it should formally file a motion to bifurcate as opposed to seeking bifurcation in a case management statement.

Second, contrary to TCS' argument, Mr. Buchanan's claim involves the same corpus of facts as the other Plaintiffs – *e.g.*, TCS' leadership directive, mapping of visa ready South Asians to U.S. positions irrespective of qualifications, earmarking jobs only for visa holders, maintaining an overwhelming South Asian workforce, training less-qualified visa holders, etc. *See* 4th Am. Compl. ¶¶ 23-33 (Dkt. #246). Bifurcation would

---

[7] TCS argues below that it will take 75-90 days to pull the supplemental data. However, when TCS gathered similar data at the request of its expert, TCS was able to pull this data in just three weeks. *See* Pls.' Supp. Discovery Brief at 1 (Dkt. #164) (noting that TCS produced over 7,400 Manpower Reports and 21,000 unallocated reports to Plaintiffs and its expert, Dr. Anderson, shortly after this data was requested by him).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

require two trials involving the same witnesses and corpus of facts, and would thus waste judicial resources and Plaintiffs' resources.

Third, contrary to Tata's position below, courts (including the Ninth Circuit) have permitted individual plaintiffs to proceed under a pattern and practice theory of liability.[8] Indeed, TCS itself adopted the pattern or practice framework when moving for summary judgment and seeking to dismiss Mr. Buchanan's individual claim. *See* Tata's Mot. for Summ. J. (Dkt. #106). The Court then applied this same framework and denied TCS' motion for summary judgment. *See* Order at 20-30 (Dec. 27, 2017) (Dkt. #244). Having failed to dismiss Mr. Buchanan's individual pattern and practice claim, TCS cannot now bar Mr. Buchanan from advancing a claim that the Court has already found triable. Indeed, much like other motions TCS intends to file going forward (*e.g.*, motion to decertify, motion for summary judgment on "class issues," motion for summary judgment as to the named Plaintiffs), TCS' effort to bar Mr. Buchanan from litigating a pattern and practice case appears designed to have the Court revisit decisions already made.

---

[8] *See e.g.*, *Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005) (allowing individual to bring claim that "was premised on the theory that the Navy had engaged in a pattern or practice of discriminatory hiring practices" and noting that plaintiff "had to establish, by a preponderance of the evidence, that racial discrimination was the Navy's 'standard operating procedure -- the regular rather than the unusual practice.'") (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)); *Charles v. Nike, Inc.*, 255 Fed. Appx. 127, 128 (9th Cir. 2007) (noting district court properly granted summary judgment on plaintiff's pattern and practice claims when she failed to "offer statistics of the composition of the qualified employee or application pool" and failed to "produce evidence to establish that racial discrimination was Nike's 'standard operating procedure.'") (quoting *Obrey*, 400 F.3d at 694); *Lindsey v. Clatskanie People's Util. Dist.*, 140 F. Supp. 3d 1077, 1089 (D. Or. 2015) (holding that individual plaintiff "presented enough evidence to withstand summary judgment on the pattern-or-practice" claim); *Trulsson v. Cnty. of San Joaquin*, No. 11-cv-02986, 2013 U.S. Dist. LEXIS 125669, at *20 (E.D. Cal. Sept. 3, 2013) (denying defendants' motion for summary judgment when plaintiff "offered anecdotes and statistics regarding the experiences of other female employees … as required ultimately to support her claim that her termination and lack of promotion were the result of a pattern and practice of discrimination").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

9

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

## 2.    TCS' Position

Plaintiffs have presented multiple pages of argument and errant legal authorities just under an hour and a half before the Court's filing deadline for this CMC Statement.  What is made clear by Plaintiffs efforts is that the very motions TCS requests are warranted and should be calendared as to each issue raised by TCS below.  In summary of TCS' positions, TCS believes that three significant issues exist at this juncture:

### Class Issues.

First, TCS believes that class members with arbitration provisions are subject to arbitration, and may now be compelled to arbitrate.  *See Larsen v. Citibank FSB (In re Checking Account Overdraft Litig.),* 780 F.3d 1031 (11th Cir. 2015) (once class is certified, defendants may file motions to compel arbitration of class members that have signed arbitration agreements with class waivers); *see also Carter v. XPO Last Mile, Inc.,* 2016 U.S. Dist. LEXIS 137176 (N.D. Cal. 2016).  In its December 27, 2017 Order, the Court found that plaintiff Webber had signed an enforceable arbitration agreement with TCS, which made the amendment of the class complaint to add Webber "futile."  Order, Dkt. No. 244, pp. 11-12.  The class members for whom arbitration is now sought were all hired by TCS after July 15, 2015, and all executed the same or substantially similar arbitration agreement as Mr. Webber at the inception of their employment.  Yet, despite the Court's prior ruling as to Mr. Webber, Plaintiffs have insisted that such employees be included as class members in the civil litigation and that the issue can be reserved for Phase II.  Given Plaintiffs' position, TCS has no choice but to move to compel arbitration.  This is not an issue for Phase II.  Under the circumstances here, TCS' motion should be heard before any notice is sent to the class, and only after Plaintiffs have identified which employees they contend comprise the class.

Plaintiffs' argument that TCS has waived its right to bring such a motion is wrong both as a factual and legal matter.  In point of fact, counsel for TCS raised this issue numerous times in conversations with Plaintiffs' counsel prior to the class certification

15587376.4922222-11175

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

briefing.  Further, TCS raised the issue with the Court in opposition to Plaintiffs' motion for leave to amend to add a class representative subject to an arbitration agreement.  *See, e.g.*, Dkt. No. 111 (TCS' Opposition to Plaintiffs' Motion for Leave to Amend), p. 11. Moreover, as a matter of law, it is clear that TCS could not have earlier sought to compel arbitration with respect to the claims of absent or putative class members, and that its ability to compel arbitration ripened only after the class was certified.  *See, e.g.*, *Larsen v. Citibank FSB, supra*, 780 F.3d at 1137 (holding that pre-certification, a district court lacks jurisdiction to rule on the arbitration obligations of the unnamed putative class members); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 U.S. Dist. LEXIS, *28 (N.D. Cal. 2011) ("Critically, defendants seek to enforce arbitration agreements only against unnamed class members and do not seek to enforce any arbitration agreement against the named plaintiffs…It does not appear to the Court that defendants could have moved to compel arbitration against such entities prior to the certification of a class in this case because, as defendants point out, 'putative class members are not parties to an action prior to class certification'").[9]

Plaintiffs further erroneously argue that arbitration agreements which waive an employee's ability to participate in class proceedings in court are unenforceable.  Notably, the authority relied upon by Plaintiffs for this proposition—*Morris v. Ernst & Young, LLP*, 834 F.3d 975, 979 (9th Cir. 2016)— is currently on appeal before the United States Supreme Court.  Moreover, this Court has already ruled that *Morris* is distinguishable and inapplicable to this case.  Dkt. No. 244 at 12:3-17.  Plaintiffs also appear to rely on *Morris* for the proposition that arbitration agreements are not enforceable when executed by putative class members (or already-existing employees) when an action is pending. However, *Morris* does not rule on this issue.  In addition, TCS' arbitration provision was only made applicable to *new* hires that held no possible claim at the time of hiring. *Jimenez v. Menzies Aviation Inc.*, 2015 U.S. Dist. Lexis 108 223 *18 (N.D. Cal. 2015)

---

[9] TCS further notes that no deadline for amendments has passed.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

(Noting the enforceability of an ADR policy for new employees who did not have pending claims at the time the policy was issued).  Here, such new employees were hired and thus not part of the hiring class, and were also active employees and thus not part of the termination class.[10]

The second significant issue (which dovetails with the first) is that Plaintiffs contend they are unable to provide a preliminary class list despite having received class data through roughly mid-April, 2017.[11]  Plaintiffs contend they need supplemental data (presumably covering mid-April, 2017 through the date of certification) in order to compile the class list of terminated employees.  TCS believes it will take approximately 75-90 days [12]from the CMC to provide that supplemental information, as it is not readily available.  Indeed, Plaintiffs seek updated information as to TCS' entire workforce in regards to (1) active and separated employee lists; (2) employee allocation data; (3) employee role history data; (4) employee joining location reports; (5) employee work location history data; (6) employee appraisal data; and (7) local *and* expat termination data.

However, after multiple years of litigation and the production of class termination data covering five years, Plaintiffs should be able to ascertain which terminated employees they contend are class members up to the date of the last production.  TCS can simultaneously begin analyzing the proposed class list in order to move the litigation forward.  For example, TCS can review Plaintiffs preliminary class list to determine

---

[10] Plaintiff's latest draft includes multiple cases on waiver which are factually distinct from the facts of this case.  Plaintiffs arguments are not even couched in the tripartite test for such a determination.  Notably, the volume of discussion alone suggests that TCS' Motion to Compel Arbitration should be calendared as set forth in TCS' schedule.

[11] Plaintiffs incorrectly assert that TCS last produced employee data in February 2017.  Indeed, on May 23, 2017, TCS produced further employee separation data (Separation Details excel files, Bates Stamped TCSPROD000001971, TCSPROD000001979, TCSPROD000001985) with separation dates up to April 21, 2017. This data also includes the reason for separation.

[12] Plaintiffs latest draft CMC presented an hour and a half prior to filing attempts to malign TCS' prior production of information by stating that TCS supplied it's expert with similar information within 30 days and thus does not need the time requested.  Plaintiffs note two reports for reference.  However, Plaintiffs are not asking for these reports. Rather, they are asking for different items to be updated.  TCS' estimate for production takes into account the items actually requested by Plaintiffs.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

12

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

whether any class member has an arbitration provision or has otherwise been inappropriately included.  To be clear, TCS does not oppose Plaintiffs' taking additional time to ascertain their class.  However, TCS does require time to dispute that list, compel arbitration of identified members, and move to decertify should the proposed class warrant such action.  Plaintiffs' proposed schedule does not afford TCS such time, particularly if no preliminary class list is provided.

**Individual Issues**.

The third significant case management issue is that Plaintiffs propose including Mr. Buchanan in their Phase I trial.  Mr. Buchanan was the named plaintiff for the hiring class.  The hiring class was not certified.   TCS believes including Mr. Buchanan in Phase I would be inappropriate because (1) he is not a member of the termination class, (2) his claims are predicated upon an entirely different alleged practice that this Court has already determined is not supported by substantial evidence (i.e. failure to hire non-South Asian individuals), and (3) individual plaintiffs such as Mr. Buchanan cannot avail themselves of a "pattern-or-practice" theory of liability.  *See, e.g., Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001); *see also Bacon v. Honda of Am. Mfg.*, 370 F.3d 565, 575 (6th Cir. 2004) ("We subscribe to the rationale that a pattern-or-practice claim is focused on establishing a policy of discrimination; because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case"); *Mansourian v. Bd. of Regents*, No. CIV. 2-03-02591-FCD-EFB, 2007 U.S. Dist. LEXIS 77534, *24 (E.D. Cal. 2007) ("Because a pattern or practice theory of recovery is focused on establishing a policy of discrimination and not on individual decisions affecting specific plaintiffs, 'it is inappropriate as a vehicle for proving discrimination in an individual case'") (reversed on other grounds by *Mansourian v. Regents of the Univ. of Cal.*, 602 F.3d 957 (9th Cir. 2010)); *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 149 (2nd Cir. 2012) (declining to allow nonclass private plaintiffs to use the pattern-or-practice

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

13

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

method of proof due to inherent conflict with Supreme Court mandate that the burden of persuasion remain at all times with the plaintiff in individual disparate treatment cases).[13]

TCS proposes resolving Mr. Buchanan's claim on a single plaintiff basis, meaning the Court should set a reasonable trial date for Mr. Buchanan at the CMC.  With respect to Mr. Buchanan, TCS suggest the following pretrial schedule:

- Trial: six months from case management conference
- Pre-trial conference:  third Friday preceding trial date
- Pre-trial conference statement: 14 days before pre-trial conference
- Trial readiness filings and binder:  7 days prior to pre-trial conference.
- Motions in limine:  Parties to exchange 28 days prior to pre-trial conference. Parties to meet and confer per Court's standing order.  Any motions in limine not resolved shall be submitted with the pre-trial conference statement.
- Exhibits:  Parties shall exchange one set 28 days before pre-trial conference. Parties to meet and confer regarding admissibility.

E.    **Motions**

As noted above, TCS anticipates the following future motions:

- TCS' motion to stay  (already pending and scheduled for hearing on February 27, 2018)
- TCS' motion to compel arbitration of claims filed by unnamed class members who have signed arbitration agreements with class action waivers
- TCS' motion to bifurcate Mr. Buchanan's claims
- TCS' Rule 56 motions as to the named Plaintiffs and class issues
- TCS' decertification motion

---

[13] Plaintiffs have left Defendants little time to distinguish the errant legal authorities in light of the filing deadline of the CMC Statement.  Again, as with Plaintiffs other arguments the discussion by Plaintiffs cited above illustrates the need for the requested calendaring of a Motion to Bifurcate.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

14

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

Plaintiffs believe TCS' proposed motions would be improper and/or futile. In addition to arbitration and bifurcation (addressed above), TCS' proposal to file another round of summary judgment motions and to move for decertification is inappropriate. At the outset of this case, the Court scheduled deadlines for summary judgment and class certification motions. Order (Dkt. #69). These deadlines have now passed. Moreover, the Court's standing order makes clear that "[a]ll issues shall be contained within one [summary judgment] motion." Standing Order at 4. Finally, the Court found that TCS failed to rebut Plaintiffs' prima facie pattern or practice case, making any subsequent summary judgment motion futile. *See* Order at 29-30 (Dkt. No. 244). Accordingly, Plaintiffs submit that the Court should not entertain TCS' proposal to relitigate issues that have already been briefed extensively and decided (or to raise new issues that should have been raised in connection with past briefing). *See, e.g.*, L.R. 7-9 (setting strict prerequisites to move for reconsideration).

## F.  **Amendment of Pleadings**

Plaintiffs filed a Fourth Amended Complaint on January 8, 2018 and TCS answered the complaint on January 22, 2018.  The parties agree that there will be no further amendments to the pleadings absent a showing of good cause.

## G.  **Evidence Preservation**

The parties' positions on evidence preservation have not changed since the initial case management conference statement.   Dkt. No. 55.

## H.  **Initial Disclosures**

The parties have exchanged initial disclosures and will supplement as necessary.

## I.  **Scheduling**

The parties agree that Phase I fact discovery should conclude six months from the CMC.   The parties also agree that Phase II issues should be resolved after the Phase I trial occurs.   The parties disagree on the issues below.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

### 1.   Plaintiffs' Position

Plaintiffs propose the following schedule:

- TCS supplements data production – 1 month from CMC.

- Notice Issued with 60-day Opt-Out Period – 3 months from TCS' supplementation of data production.

- Phase I Trial – 6 months after Notice issued – This phase of trial will resolve all Phase I issues for the class, as addressed in the Court's certification order, as well as the claims of the Named Plaintiffs and Mr. Buchanan in their entirety.

Plaintiffs take issue with numerous aspects of TCS' proposal below. First, as noted above, no reason exists why it should take TCS three months to supplement their data production – supplementation should take no longer than 30 days. Second, while Plaintiffs believe TCS has waived its right to arbitrate the claims of class members, no reason exists why notice should be delayed while that issue is resolved. Third, for the reasons addressed above, TCS' proposal that Plaintiffs provide a "final class list" is inappropriate and impractical. Rather, Plaintiffs will work with TCS' data to create the most accurate class notice list possible "through reasonable effort." *See* Fed. R. Civ. P. 23(c)(2)(B) (the class need only receive "the best notice that is practicable under the circumstances including individual notice to all class members who can be identified through reasonable effort"). If an individual receives notice who does not meet the class definition, that person will not recover during Phase II. Likewise, if an individual does not receive notice who is a class member, that person would not be prevented from recovering during Phase II simply because Plaintiffs were unable to identify her before issuing notice. Finally, as set forth above, Plaintiffs do not believe a second round of summary judgment briefing or a motion for decertification are appropriate.

### 2.   TCS' Position

TCS proposes the following schedule:

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

- Within one month after the CMC, Plaintiffs to provide preliminary class list based on discovery already produced covering 2011 through April, 2017.  If Plaintiffs' are unable to do this without a supplemental production from TCS, the schedule would need to be expanded accordingly in order to allow for such a production.

- TCS shall supplement discovery with respect to the termination class no later than three months from the CMC.

- Plaintiffs will serve their final proposed class list one month following TCS' supplemental production.

- Motion to compel arbitration shall be filed 45 days after Plaintiffs produce their final proposed class list.

- Phase I discovery shall conclude six months from CMC.

- Within six months after the CMC, TCS shall seek consent from the Court to move for summary judgment or renew motion for summary judgment.

- Within 90 days following TCS' receipt of Plaintiffs' final class list and the Court's decision on arbitration, TCS may seek to decertify the class.

- As to Notice, TCS agrees a 60 day opt-out period is appropriate, but maintains that class notice cannot be sent until Plaintiffs ascertain their class, TCS supplements its discovery and the motion to compel arbitration is resolved.  Therefore, TCS proposes that class notice be issued no earlier than 45 days after the Court has resolved the arbitration motion and the parties have agreed upon the list of persons entitled to receive notice.

- Phase 1 trial—TCS agrees with Plaintiffs that trial should be set six months after class notice is sent.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR

**J.**     **Related Cases**

There are no known related court actions.  Plaintiff Brian Buchanan currently has a Title VII charge of national origin and race discrimination against TCS pending with the Equal Employment Opportunity Commission.

**K.**     **Relief**

The relief sought is set forth in Plaintiffs' Prayer for Relief, 4th Amended Complaint (pp. 33-34) (Dkt. No. 246).

**L.**     **Settlement and ADR**

The parties are not opposed to further settlement discussions.

**M.**     **Consent to Magistrate Judge For All Purposes**

TCS declined to consent to a magistrate judge for all purposes.

**N.**     **Expedited Trial Procedures**

The parties do not believe this case is suitable for expedited trial procedures.

**O.**     **Trial**

The case will be tried to a jury.  The parties anticipate that Phase I will take approximately three to four weeks.

Dated:   January 23, 2018                         LOEB & LOEB LLP
                                                   MICHELLE M. LA MAR
                                                   PATRICK N. DOWNES
                                                   ERIN M. SMITH

                                                   By: /s/Michelle M. La Mar
                                                        Michelle M. La Mar
                                                        Attorneys for Defendant
                                                        TATA CONSULTANCY SERVICES, LTD.

                                                   By: /s/Daniel Kotchen
                                                        Daniel Kotchen
                                                        Attorney for Plaintiffs

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15587376.4922222-11175

18

SUPPLEMENTAL CMC STATEMENT
CASE NO.: 4:15-CV-01696-YGR