MICHELLE M. LA MAR (SBN 163038)
mlamar@loeb.com
TERRY D. GARNETT (SBN 151212)
tgarnett@loeb.com
PATRICK N. DOWNES (SBN 186461)
pdownes@loeb.com
ERIN M. SMITH (SBN 235039)
esmith@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendant
TATA CONSULTANCY SERVICES,
LTD.

DANIEL LOW, SBN 218387
dlow@kotchen.com
DANIEL KOTCHEN (*pro hac vice*)
dkotchen@kotchen.com
MICHAEL VON KLEMPERER (*pro hac vice*)
mvk@kotchen.com
LINDSEY GRUNERT (*pro hac vice*)
lgrunert@kotchen.com
KOTCHEN & LOW LLP
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: 202.471.1995

Attorneys for Plaintiffs and the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

BRIAN BUCHANAN, CHRISTOPHER SLAIGHT, SEYED AMIR MASOUDI AND NOBEL MANDILI,

Plaintiffs,

v.

TATA CONSULTANCY SERVICES, LTD.,

Defendant.

Case No.: 4:15-cv-01696-YGR

**CLASS ACTION**

**DISCOVERY JOINT LETTER BRIEF**

Action Filed:    April 14, 2015

Counsel attest that they have complied with Judge Kim's meet and confer requirements by meeting and conferring telephonically on March 13, 2018. Further, counsel attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct. This dispute involves six subpoenas issued by Plaintiffs. *See* M. von Klemperer Decl., Exhibits 1-6. Relevant case management deadlines include a May 15, 2018 discovery cutoff and the start of trial, scheduled for November 5, 2018. *See* Case Mgmt. Order (Dkt. #258).

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015

DISCOVERY JOINT LETTER BRIEF

Dear Magistrate Judge Kim,

**Issue:** Defendant Tata Consultancy Services, Ltd. ("TCS") requests a protective order regarding six subpoenas plaintiffs intend to serve on TCS customers. This is a class action case alleging a pattern and practice of discrimination under Title VII related to TCS' termination policies. Plaintiff Buchanan also has an individual, non-class claim related to an alleged TCS hiring decision. The six subpoenas are not relevant to the actual class the Court certified and are a backdoor attempt to seek discovery regarding a putative hiring class that the Court declined to certify. At best, the subpoenas are disproportionate to any Phase I trial contemplated by the Court.

**Background:** By way of background, the Phase 1 trial involves a termination class comprised of non-South Asian ex-employees, and also an individual claim by plaintiff Brian Buchanan based on TCS' decision not to hire him. While plaintiffs attempted to certify a ***hiring*** class, the Court denied certification and found insufficient evidence of any general policy of discrimination. "By contrast, plaintiffs fail to offer sufficient proof that TCS 'operated under a general policy of discrimination' with regard to the proposed Hiring Class [and, *inter alia*, . . . .¶] plaintiffs offer no evidence of a '[l]eadership directive,' '[c]orporate directive,' or '[m]anagement decision' with regard to hiring." Dkt. No. 244 at 34.

**Argument:** As plaintiffs' position (set forth below) demonstrates, the instant discovery seeks to re-litigate issues related to the non-certified hiring class. Each subpoena includes the following document request:

> From April 14, 2011 through the present, produce each contract provision or obligation that requires, recommends, or otherwise incentivizes [TCS] to consider for employment, ***hire, or re-hire*** your current or former employees.  (emphasis added)

> Each subpoena includes the following deposition topics:

> Any obligation contained or incorporated in your contract(s) with [TCS] requiring, recommending, or otherwise incentivizing [TCS] to consider for employment, ***hire, or re-hire*** your current or former employees, including but not limited to the content, purpose, negotiation of, implementation of, and any breach of each such obligation, and the party requesting the obligation. (emphasis added)

> Your communications with [TCS] concerning [TCS]'s use of individuals with visas (e.g., H-1B visas) to service you or otherwise fulfill obligations in [TCS]'s contract(s) with you.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015

1

DISCOVERY JOINT LETTER BRIEF

Training and/or knowledge transfer performed by your employees for [TCS] employees.

None of these requests or deposition topics have anything to do with terminations of TCS workers.

Plaintiffs argue that the subpoenas are relevant to the termination class because "[TCS] argued that it has increased diversity . . . during the class period." TCS raised the argument about diversity and decreasing South Asians in its workforce in connection with plaintiffs' arguments regarding the hiring class that was not certified. The decrease of South Asians in TCS' workforce, however, is not probative of the percentage of non-South Asians that TCS benched (put on inactive status) and then terminated. As the District Court noted in the same Order cited by plaintiffs, "TCS offers no evidence as to whether the statistical discrepancy between the percentage of South Asians and non-South [Asians] involuntarily *terminated* from the bench decreased during the class period." Dkt. No. 244 at pp. 28-29 (emphasis added). In short, assuming the subpoenaed parties had information to rebut a decrease in South Asians in TCS' workforce overall, that evidence is not relevant to statistics on terminations. That termination data exists solely within TCS. Burdening third parties with discovery concerning information that would be relevant to a hiring class that was not certified presents the type of case management issue a party may raise to quash or limit a third party subpoena. *See, e.g., Racing Optics v. Aevoe Corp,* 2016 U.S. Dist. LEXIS 98776 at * 5-6 (on motion by a party, court denied discovery directed to a third party that was out of proportion to the claims asserted).

Moreover, plaintiffs' expert, Dr. Neumark, opined that the relevant labor market for the termination class was "[TCS'] workforce in the United States" because "terminations can occur only among [TCS] employees." This is exactly TCS' point here. *See* Declaration of Terry D. Garnett ("Garnett Decl."), ¶ 2, Ex. A and ¶ 3, Ex. B. Third parties will not have data indicating which TCS employees were involuntarily terminated from TCS' bench (bench is inactive status). Indeed, TCS has already produced allocation and manpower reports showing TCS' United States workforce and project assignments. TCS' clients will not have this data.

Plaintiffs argue that there is evidence in *TCS documents* that TCS intends to "quickly fire re-hires." Putting aside whether the TCS documents cited by plaintiff suggest any termination of "re-

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

hires" was the result of discrimination (they do not), those documents relate to potential termination decisions that would again be made by TCS (if at all), and *not* the subpoenaed parties.  For example, the documents show that TCS would retain (not terminate) employees "rehired" from a TCS client, if the rehire had the appropriate skills and willingness to relocate. *See, e.g.,* TCSLTD002294293 (like all TCS employees, rehires would be released "unless they get a suitable account"); TCSLTD005104835("TCS is confident of providing opportunities to impacted [] employees as long as they are willing to embrace …mobility which is a key requirement in this industry"). Put simply, the documents referenced by plaintiffs do not demonstrate that TCS' clients would have any information relevant to the claims of a termination class. Plaintiffs' assertion to the contrary is really an attempt to obtain data on the hiring class that the District Court did not certify.

Moreover, whether clients such as the subpoenaed parties request that TCS *hire* "individuals with visas" is an issue that pertains to hiring, not terminations. The six subpoenas call for documents and testimony related to TCS' hiring practices which could only be pertinent to Mr. Buchanan's individual claim, but at locations irrelevant to him. Plaintiff Buchanan was employed at Southern California Edison ("SCE"). TCS is not objecting to plaintiffs' subpoena on SCE. But, the non-SCE subpoenas seek discovery completely disproportionate to Mr. Buchanan's individual claim. The subpoenas call for documents and testimony from six large companies involving nationwide hiring practices. Mr. Buchanan never worked at these companies. Thus, the subpoenas are disproportionate to Mr. Buchanan's single plaintiff claim. *See* Fed. Rule of Civ. P., Rule 26 (discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action and the amount in controversy … and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

Plaintiffs informed the Court that Buchanan's evidence will essentially be the same as the Phase 1 evidence related to terminations and thus his individual claim should not be bifurcated from Phase 1. The Phase 1 trial requires plaintiffs to demonstrate that discriminatory terminations were TCS' standard operating procedure, and also Buchanan's stand-alone employment claim that TCS discriminated when it failed to hire Buchanan at a job fair. But, the subpoenas belie plaintiffs' representation to this Court that Mr. Buchanan's individual claim can proceed with the Phase 1

3
DISCOVERY JOINT LETTER BRIEF

termination class. Dkt. No. 253 at pp. 8-9. Indeed, plaintiffs' portion of the recent joint case management statement stated that "Mr. Buchanan's claim involves the same corpus of facts as the other Plaintiffs" and bifurcation of his claims "would require two trials involving the same witnesses and corpus of facts, and would thus waste judicial resources and Plaintiffs' resources."  Dkt. No. 253 at pp. 8-9. None of the information sought here pertains to TCS' practices in terminations, and plaintiffs' representation is now demonstrably untrue.

If plaintiffs are permitted to take discovery under the six subpoenas, and try Mr. Buchanan's claim with class claims, the evidence presented at trial will *not* be the same. Evidence regarding TCS' hiring for client accounts is materially different than whether TCS' standard operating procedure in terminating class members is discriminatory. Use of the contemplated discovery in the Phase 1 trial here will also likely cause juror confusion and unfair prejudice. *See Collins v. City & County of San Francisco,* 2014 U.S. Dist. LEXIS 151219 at *9-10 (N. D. Cal. 2014.

Under these circumstances, the Court has the power to issue a protective order and deny the discovery sought by the six subpoenas. *See* Fed. Rule of Civ. P., Rule 26. Plaintiffs' authority admits as much.  *See, e.g., Wells Fargo & Co. v. ABD Ins.*, 2012 U.S. Dist. LEXIS 173365, at *6-7 (N.D. Cal. Dec. 6, 2012). TCS has standing to ask the Court to forbid plaintiffs from issuing third party subpoenas because the subpoenas impact case management matters. "A party may object to Rule 45 subpoenas directed to third parties where the subpoenas affects matters of case management." *Methode Elecs., Inc. v. Infineon Techs. Corp.*, 2002 US Dist. Lexis 28797 (N.D. Cal. 2002) *citing Marvin Lumber and Cedar Co. v. PPG Industries, Inc.*, 177 F.R.D. 443, 445 (D.Minn. 1997) (granting motion for protective order quashing third-party subpoena seeking production of documents after the discovery period). Contrary to plaintiffs assertion, "timing" of a subpoena is only one case management issue that a court may address under Rule 26.. *Id.; see also, Racing Optics v. Aevoe Corp,* 2016 U.S. Dist. LEXIS 98776 at * 5-6; *Proficio Mortg. Ventures, llc v. Fed. Sav. Bank,* 2016 U.S. Dist. LEXIS 50355 (D. Nev. 2016)(a party may object to a subpoena issued to a non-party if the subpoena seeks irrelevant information).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015

4

DISCOVERY JOINT LETTER BRIEF

**PLAINTIFFS' POSITION**

In this certified nationwide class action, Plaintiffs have presented evidence demonstrating that Tata (an outsourcing company) engages in a company-wide practice of favoring South Asian visa holders ("expats") when staffing projects in the U.S., resulting in the grossly disproportionate "benching" and corresponding termination of non-South Asian employees. As the Court found in certifying the terminations class and denying Tata's motion for summary judgment, "TCS internal documents . . . suggest that defendant's policy of prioritizing benched expats in staffing Projects represents a 'general policy of discrimination.'" Omnibus Order at 33 (Dkt. #244). The Court further described this as "a general policy of discrimination in client project allocations," and found that "plaintiffs proffer substantial evidence regarding the implementation of said policy." *Id.* at 33-34. In addition, Plaintiff Buchanan advances a pattern and practice claim for discrimination against non-South Asians in hiring. *See id.* at 40-42.

At issue here, Plaintiffs seek discovery from six Tata clients regarding: (1) Tata's contractual obligations to rehire clients' former employees when work is outsourced to Tata, (2) communications between the clients and Tata regarding Tata's reliance on expats, and (3) training provided by the client for Tata's largely inexperienced expat workforce. *See* Appx. A to Exs. 1-6. Tata's request for a protective order should be denied because: Tata lacks standing to object to the third-party subpoenas under either Rule 45 or Rule 26(c); and the subpoenas are narrowly tailored to seek probative information of central relevance in this case.

**Rule 45 Standing**. Tata lacks standing to challenge the third-party subpoenas under Rule 45 and does not contend otherwise. A party lacks standing to quash a subpoena issued to a non-party "unless the [objecting] party claims a personal right or privilege with respect to the documents requested," which Tata does not claim. *Wells Fargo & Co. v. ABD Ins.*, 2012 U.S. Dist. LEXIS 173365, at *6-7 (N.D. Cal. Dec. 6, 2012).

**Rule 26(c) Standing**. Tata similarly lacks standing to challenge the subpoenas under Rule 26. For good cause shown, a court may limit the scope of discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," under Rule 26(c)(1). In the Northern District of California, "a party may seek a protective order pursuant to Rule 26(c)

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015

5

DISCOVERY JOINT LETTER BRIEF

regarding a subpoena issued to a non-party if it believes its own interest is jeopardized by the discovery sought from the non-party." *Wells Fargo*, 2012 U.S. Dist. LEXIS 173365, at *6-7; *accord Miller v. Ghirardelli Cho. Co.*, 2013 U.S. Dist. LEXIS 179917, at *7 (N.D. Cal. Dec. 19, 2013); *Kremen v. Cohen*, 2012 U.S. Dist. LEXIS 84328, at *8-9 (N.D. Cal. June 18, 2012). Cognizable interests include privacy, free expression, and being personally oppressed.[1] Here, Tata points to no such interest or claim of oppression. Nor could it.

The sole basis for Tata's assertion of standing is "because the subpoenas impact case management matters." But, as the rule announced in *Wells Fargo*, *Ghiradelli Chocolate*, and *Kremen* demonstrates, the Northern District of California does not recognize a "case management" exception to the standing requirement. Moreover, case management standing concerns the timing of subpoenas and not their substance—it is inapplicable to a relevance challenge. *See Methode Elecs., Inc. v. Infineon Techs. Corp.*, 2002 U.S. Dist. LEXIS 28797, at *13 (N.D. Cal. Mar. 15, 2002) (issued during stay); *see also Marvin Lumber & Cedar Co. v. PPG Indus.*, 177 F.R.D. 443, 445 (D. Minn. 1997) (issued after discovery closed).[2] Accordingly, Tata lacks standing.

**Relevance**. Even if Tata had standing to challenge the subpoenas on relevance grounds— which it does not—the subpoenaed testimony and contracts are relevant to the terminations class claims and Mr. Buchanan's individual claims. "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Talavera v. Sun Maid Growers*, 2017 U.S. Dist. LEXIS 16509, at *3-4 (E.D. Cal. Feb. 6, 2017). The scope of discovery for a subpoena issued under Rule 45 is the same as the scope under Rule 26(b). Fed. R. Civ. P. 45, 1970 Advisory Comm. Note. Under Rule 26(b)(1), a party

---

[1] *E.g.*, *Shinedling v. Sunbeam Prods.*, 2013 U.S. Dist. LEXIS 198236, at *6 (C.D. Cal. 2013) (privacy); *Chevron Corp. v. Donziger*, 2013 U.S. Dist. LEXIS 119622, at *5 (N.D. Cal. 2013) (first amendment rights); *Wells Fargo*, 2012 U.S. Dist. LEXIS 173365, at *11-12 (considering challenge where defendant itself was oppressed by issuance of 142 subpoenas to its clients and some threatened to terminate business relationships as a result).

[2] Tata's citations to two District of Nevada cases, which do not actually consider "case management" standing, are similarly unavailing. First, *Racing Optics v. Aevoe Corp,* 2016 U.S. Dist. LEXIS 98776 at * 5-6 (D. Nev. 2016) does not consider standing under Rule 26(c)—it went unchallenged. Second, *Proficio Mortg. Ventures*, is based on a line of Nevada cases that apply a test different than the prevailing test in this District, announced and applied in *Wells Fargo*, *Ghiradelli Chocolate*, and *Kremen*. 2016 U.S. Dist. LEXIS 50355 (D. Nev. 2016).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015

6

DISCOVERY JOINT LETTER BRIEF

may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevance "broadly [] encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978). Here, the narrowly tailored subpoenas seek 3 categories of information regarding central issues.

*1. Re-hiring Obligations*: In opposing class certification, Tata argued that it has increased diversity and pursued a formal policy of inclusion during the class period. Omnibus Order at 28-29 & n. 19. Tata will likely make similar arguments at trial (above, Tata argues that it raised its diversity efforts only in opposition to the hiring class, but Tata does not disavow this defense going forward, and in fact raises it in its post-certification Answer).[3] Available discovery suggests that any change in the demographics of Tata's workforce was likely the result of contractual re-hire obligations imposed by Tata's clients—not Tata's own good faith diversity efforts. TCSLTD005104833-38 at 37 ("one of the key elements of this deal is the angle of rehiring[, a]s part of the proposal [the client] had asked if we would rehire some of the [exiting] employees"). In fact, evidence demonstrates re-hires are a sizable portion of Tata's non-expat workforce. TCSLTD005059003-07 at 06 ("Other than the rehires, rest of the team is expats."). The RFP and Deposition Topic 1 seek evidence to rebut Tata's defenses.

Similarly, emails produced in discovery suggest that some clients contractually require Tata to retain re-hired employees for a minimum period and that, from the outset of their employment, Tata plans to quickly fire re-hires. *See, e.g.*, TCSLTD002294291-95 at 95 ("please remember that due to contract obligations the 3 former [client employees] . . . can't be released until March 1st."); TCSLTD005059003-07 at 05 ("we are planning to rehire 5 ppl and remov[e] all within 12 months"). Any such contract provisions, their purpose, and any breach of the provisions, are highly relevant to Tata's treatment and termination of locally hired employees.

*2. Visa Workers:* Available evidence suggests that Tata has a corporate policy of favoring visa workers (99.9% of whom are South Asian) when staffing client projects, which results in the

---

[3] *See* Answer to 4th Am. Compl. at 9 (Dkt. #252) (raising as affirmative defense Tata's "policies and programs prohibiting all forms of discrimination")

benching and termination of non-South Asians. *See, e.g.*, Omnibus Order at 33 (discussing evidence). Deposition Topic 2 seeks additional information regarding client concerns or involvement with Tata's decision to staff the client's project almost exclusively with such workers, and therefore is of central relevance to this case.

*3. Knowledge Transfer:* Currently available information suggests that many of the visa workers Tata selects to fill client sites are unqualified for the work they are selected to perform— even though qualified non-South Asian benched employees are available to fill those positions. *See, e.g.*, Pls.' Class Cert. Reply at 12 & n.28 (Dkt. #196) (discussing evidence). This has required outgoing client employees to train Tata's incoming employees before being terminated. *See, e.g.*, Pls.' Resp. Separate Statement ¶ 23 (Dkt. #121). Deposition Topic 3 seeks additional information to demonstrate that Tata's discriminatory preference is to staff projects with South Asian visa workers, regardless of qualifications, and not to select the best candidates for the job.

*Buchanan's Claims:* In addition to being relevant to the terminations class, the subpoenaed information is also relevant to Mr. Buchanan's pattern and practice hiring discrimination claim, which Tata has unsuccessfully sought to dismiss. *See* Omnibus Order at 40-42. Mr. Buchanan himself was terminated from a Tata client, sought to be rehired by Tata, and was rejected. He was also forced to train unqualified Tata visa workers to take over his job. Evidence regarding similar conduct by Tata is relevant to whether Tata engaged in a pattern and practice of such behavior.[4]

*Proportionality:* Tata argues that the subpoenas and "disproportionate to Mr. Buchanan's individual claim," but the subpoenas seek information of central relevance to the class claims as well. Moreover, the subpoenas are reasonable in scope. Plaintiffs directed their subpoenas to a very small number of Tata's U.S. clients, limited the number of depositions topics to three, and narrowly request contract provisions related to one of the topics.

---

[4] Tata also devotes a paragraph to the prospect of bifurcating Mr. Buchanan's claims. But Plaintiffs oppose bifurcation, and the Court has expressed that its "inclination is to deny it." Hr'g Tr. at 14:1-15:1 (Jan. 29, 2018) (Dkt. #262). Moreover, even if bifurcation were appropriate, that would not somehow render information relevant to the terminations claims undiscoverable.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

1   Dated:   March 20, 2018                    LOEB & LOEB LLP
2                                               MICHELLE M. LA MAR

3                                               BY: /s/ Michelle M. La Mar
4                                                    Michelle M. La Mar
                                                     Attorneys for
5                                                    TATA CONSULTANCY SERVICES, LTD.

6                                               KOTCHEN & LOW LLP

7
8                                               By: /s/ Michael von Klemperer
                                                     Michael von Klemperer
9                                                    Attorneys for Plaintiffs and the Class

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015                    9
                            DISCOVERY JOINT LETTER BRIEF

1

### **CERTIFICATE OF SERVICE**

2    I certify that a true and correct copy of the foregoing **DISCOVERY JOINT**

3 **LETTER BRIEF** was served on all counsel of record by electronic service through the

4 Clerk of the Court's CM/ECF filing system on March 20, 2018.

5 Dated: March 20, 2018                    /s/Terry D. Garnett

6                                          Terry D. Garnett

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

PROOF OF SERVICE
CASE NO. 4:15-cv-01696-YGR