MICHELLE M. LA MAR (SBN 163038)
mlamar@loeb.com
TERRY D. GARNETT (SBN 151212)
tgarnett@loeb.com
PATRICK N. DOWNES (SBN 186461)
pdownes@loeb.com
ERIN M. SMITH (SBN 235039)
esmith@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.

DANIEL LOW, SBN 218387
dlow@kotchen.com
DANIEL KOTCHEN (*pro hac vice*)
dkotchen@kotchen.com
MICHAEL VON KLEMPERER (*pro hac vice*)
mvk@kotchen.com
LINDSEY GRUNERT (*pro hac vice*)
lgrunert@kotchen.com
KOTCHEN & LOW LLP
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: 202.471.1995

Attorneys for Plaintiffs and the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BRIAN BUCHANAN, CHRISTOPHER SLAIGHT, SEYED AMIR MASOUDI AND NOBEL MANDILI,<br><br>Plaintiffs,<br><br>v.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>Defendant. | Case No.: 4:15-cv-01696-YGR<br><br>**CLASS ACTION**<br><br>**DISCOVERY JOINT LETTER BRIEF**<br><br>Action Filed:       April 14, 2015 |

Counsel attest that they have complied with Judge Kim's meet and confer requirements by meeting and conferring telephonically on March 29, 2018.  Further, counsel attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct. This dispute involves plaintiffs' notice of deposition to Mr. Surya Kant, TCS' President of North America, the United Kingdom, and Europe.  Relevant case management deadlines include a May 15, 2018 discovery cutoff and the start of trial, scheduled for November 5, 2018. *See* Case Mgmt. Order (Dkt. #258).

16118039.1205625-10015

DISCOVERY JOINT LETTER BRIEF

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

Dear Magistrate Judge Kim,

**Issue:** Defendant Tata Consultancy Services, Ltd. ("TCS") requests a protective order regarding plaintiffs' notice of deposition to Surya Kent, TCS' President of North America, the United Kingdom and Europe. Mr. Kent is an apex witness, with no unique knowledge regarding the subject matter of this litigation, which is an employment class action in which the Court certified a termination class. Dkt No. 244. While plaintiffs contend they need to depose Mr. Kant about TCS' alleged "leadership directive" to favor South Asian visa holders, and TCS' affirmative action policy, those topics have been addressed already by TCS' Head of Resource Management and Head of Diversity and Workforce Effectiveness, both of whom testified as a TCS company representative pursuant to Rule 30(b)(6). *See* Declaration of Terry D. Garnett ("Garnett Decl."), Exs. A, B, C. Plaintiff has not identified any testimony that Mr. Kant could provide that earlier witnesses could not (because there is none). Out of the 1.7 million documents produced by TCS, plaintiffs point to a few bearing Mr. Kant's name and suggest those compel his deposition. Not so (as set forth below). Depositions of apex witnesses "create[] a tremendous potential for abuse and harassment," which would be the result here if a protective order is not entered. *Schneider v. Chipotle Mexican Grill, Inc.,* 2017 U.S. Dist. LEXIS 152248, *4 (N.D. Cal. 2017).

**Background:** TCS has entertained three separate series of Rule 30(b)(6) depositions requiring six separate witnesses and resulting in ten deposition transcripts. Several of the 30(b)(6) deposition topics concerned TCS' visa policies and practices, TCS' alleged "preference" for certain races or national origins in making staffing decisions, TCS' staffing process, and TCS' affirmative action plan. Garnett Decl., Ex. D (Request/Topic Nos. 1-6, 9, 10-11, 13, 16), and Ex. E p. 2 (Topic 5). At least three TCS 30(b)(6) witnesses were questioned extensively on these topics. Not a single witness referred a question to Mr. Kant or suggested he would have information the witness did not. Significantly, Mr. Umesh Kumar, TCS' Head of Resource Management, testified at length about TCS' staffing procedures, its "leadership directive" to use visas to the maximum extent (explaining that did not mean TCS prefers visa holders over others for assignments), and TCS' use of "visa-ready" associates (explaining that positions are not filled based on visa status).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015

1

DISCOVERY JOINT LETTER BRIEF

1  Garnett Decl., Ex. A, e.g., 80:23-82:16.  Mr. Balaji Ganapathy, TCS' Head of Diversity and
2  Workforce Effectiveness, testified at length about TCS' affirmative action plan and policies.
3  Garnett Decl., Ex. C.  Plaintiffs complaint that these witnesses failed to "adequately address the
4  'leadership directive,'" is just another way to say that plaintiffs disagree with the witnesses
5  answers on the subject.  It's not a surprise that TCS contests plaintiffs' distortion of TCS
6  documents.  In addition, in response to broad document requests, TCS has produced over 7.5
7  million pages to plaintiffs.

8  The relatively few TCS documents referenced by plaintiffs do not suggest Mr. Kant would
9  have any unique information about TCS' "leadership directive" or alleged "preference" for "visa-
10 ready" associates. One email dated May 4, 2015, refers to Mr. Kant's pending approval to
11 expedite a single L1A visa holder, NV Subarrao, and includes many other recipients, including
12 Kumar, who was already deposed. (TCSLTD004024600-08).  L1A visas allow a U.S. employer
13 like TCS to transfer an executive from a foreign office to the U.S.  The document does not relate
14 to the use of "visas to the maximum extent" or suggest a "leadership directive" to favor "visa-
15 ready" associates. Instead, it refers to a TCS internal transfer of a single manager. The second
16 document relied upon by plaintiffs is similarly unremarkable. That document
17 (TCSLTD004114270-73) is an email dated May 23, 2012, from Mr. Kant to Mr. Kumar (already
18 deposed) referring to TCS' acute staffing needs.  While this email refers to a staffing shortage,
19 again, it says nothing about a leadership directive to favor South Asians or any so-called
20 "preference" for "visa-ready" associates.  Finally, plaintiffs point to a generalized introduction to
21 an affirmative action plan penned by Mr. Kant (TCS 021917-50) in which he encourages a
22 diverse, inclusive workplace.  The introduction is general in nature and fails to establish any
23 unique knowledge held by Mr. Kant.[1]

---

[1] After the meet and confer process ended plaintiffs disclosed for the first time in their draft of this Joint Letter Brief additional TCS documents.  Those belatedly disclosed TCS documents do not support plaintiffs' argument: TCSLTD004010786-90 (Kant on email chain with six others including Kumar (already deposed) regarding staffing shortfall which can be filled by anyone except "new" local hire); TCSLTD004118596-98 (Kumar (already deposed) updating Kant on staffing numbers including visa *and* non-visa employees); TCSLTD005611856-60 (Kant along with 6 others, including Jindal (already deposed) discuss specific request (not policy) for

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015

2
DISCOVERY JOINT LETTER BRIEF

Plaintiffs selective reliance on deposition testimony of Mr. Devenny does not support Mr. Kant's deposition. Mr. Devenny was head of the "energy and resources vertical" for the U.S. at TCS, and his role at the company was admittedly limited to sales people in that vertical, with limited involvement with software engineers. Garnett Decl., Ex. F, 33:9-14; 43:13-24; 214:2-21. Mr. Devenny did not report to Mr. Kant, but instead reported to Mr. Krish Rao; Mr. Rao had five other verticals that reported to him. Garnett Decl., Ex. F, 36:19-38:9. Mr. Devenny has limited or no knowledge about what occurred in TCS "verticals" in which he did not work, and he had no idea if there was any TCS policy to favor placement of visa workers at TCS, in his or any other vertical. Garnett Decl., Ex. F, 208:22-210:6.

While Mr. Devenny had some, mostly *group* involvement with Mr. Kant,[2] Mr. Devenny's beliefs about what Mr. Kant knew are pure speculation. For example, when asked to name a single software engineer that Mr. Kant interviewed, Mr. Devenny could not, and in his own words he was simply guessing at Mr. Kant's role: "it's my belief based on what I saw was the practice that he [Kant] would have meet [sic] most people … my **guess** is he met those network engineers, he met those software engineers …" Garnett Decl., Ex. F, 214:2-21 (emphasis added). Mr. Devenny equally surmised that Mr. Kant signed off on all terminations based on his "logic" but again, he could only guess. Garnett Decl., Ex. F, 210:23-211:9. Significantly, Mr. Devenny testified that Mr. Kant would *not* have made decisions related to hiring and terminations alone, but had a team of executives that would advise him, which supports TCS' position that Mr. Kant has no unique knowledge pertinent to this lawsuit. Garnett Decl., Ex. F, 189:15-190:13; 215:16-216:6. Finally, the one termination at TCS about which Mr. Devenny has personal knowledge was not based on discrimination but was a merit-based termination. Garnett Decl., Ex. F, 94:14-95:9.

---

visa approval); TCSLTD005547786-88 (along with 6 others, including Jindal (already deposed) Kant participated in green card proposal); TCSLTD005571137-40 (along with 5 others, including Jindal (already deposed) Kant discusses specific green card application).

[2] Garnett Decl., Ex. F, 37:18-39:21 (Devenny met with Kant on group calls mostly).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015

3

DISCOVERY JOINT LETTER BRIEF

**Argument:** "When a party seeks the deposition of a high-level executive (a so-called 'apex' deposition), the court may exercise its discretion under the federal rules to limit discovery." *Schneider,* 2017 U.S. Dist. LEXIS 152248, at *4, *citing Affinity Labs of Tex. V. Apple, Inc.,* 2011 U.S. Dist. LEXIS 53649 (N.D. Cal. 2011). While it is unusual for a court to prohibit a deposition, "where a high-level decision maker removed from the daily subjects of the litigation has no unique knowledge of the facts at issue, a deposition of the official is improper." *Id.* at *4, 5. "In deciding whether an apex deposition may proceed, courts consider: (1) whether the deponent has unique, first-hand, non-repetitive knowledge of the facts at issue in the case, and (2) whether the party seeking the deposition has exhausted less intrusive discovery methods." *Newmark Realty Capital, Inc. v. BGC Partners, Inc.,* 2018 U.S. Dist. LEXIS 17786, *3 (N.D. Cal. 2018), *citing Apple Inc. v. Samsung Elecs. Co.,* 282 F.R.D. 259, 263 (N.D. Cal. 2012).

Mr. Kant has no unique knowledge related to this litigation. Already, plaintiffs have deposed at least two Rule 30(b)(6) witnesses addressing TCS's "leadership" or "management" directive to use visas to the "maximum extent" or to TCS' use of visas. TCS provided 30(b)(6) witnesses to testify about TCS' use of "visa-ready" associates and about TCS' affirmative action plans and policies. Garnett Decl., Exs A, 15:16-22, 16:10-17:9, 19:10-15, 20:6-16, 30:10-25, 80:8-82:16, 83:15-84:22, 85:11-86:6, 87:23-89:19; Ex. B, 38:7-39:14, 42:7-23, 43:25-44:23, 56:14-22, 59:18-60:18; Ex C, 14:1-15:16, 16:14-17:14, 28:14-29:9, 33:2-22, 35:2-37:2; and G. Mr. Kant has no unique knowledge on these subjects. Plaintiffs own argument demonstrates that TCS has produced documents concerning these matters, and deposition testimony establishes that plaintiffs have deposed TCS previously concerning the subject matter of its proposed deposition of Mr. Kant. No witness has referred a question to Mr. Kant. As TCS' President of North America, the United Kingdom and Europe, Mr. Kant is an apex witness. Since Mr. Kant has no unique knowledge regarding the subject matter of this litigation, and since plaintiffs have already used other discovery methods to address the topics on which they want to depose him, TCS respectfully requests that the Court enter a protective order preventing Mr. Kant's deposition from proceeding. Indeed, on this record, TCS is concerned that plaintiffs' deposition notice to Mr. Kant is designed to harass and burden TCS' management.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015

4

DISCOVERY JOINT LETTER BRIEF

**PLAINTIFFS' POSITION**

Because Mr. Kant has unique personal knowledge relevant to Plaintiffs' claims, Tata cannot carry its "heavy burden" to justify the "very unusual" step of prohibiting his deposition. Contrary to Tata's assertions, Plaintiffs seek to depose Mr. Kant, President of Tata North America, to obtain answers to questions that Tata has doggedly avoided answering throughout this litigation. Moreover, ample evidence suggests that Mr. Kant possesses personal knowledge of Tata's U.S. staffing, terminations, HR policies, and diversity efforts, as explained below.

*Background*: This certified class action concerns Tata's company-wide pattern and practice of favoring South Asians when staffing IT projects in the U.S., resulting in the highly disproportionate (and discriminatory) benching and termination of non-South Asian employees. *See* Omnibus Order at 4-5, 22-24, 33 (Dkt. #244). Indeed, Plaintiffs have presented evidence that Tata has an explicit corporate directive to staff U.S. positions with expats and "visa ready" associates and to use visa workers to the "maximum extent." *See id.* at 23-24. Emails discussing this policy refer to it, *inter alia*, as a "leadership directive," "Corporate directive," "Management decision," and/or instruction from the "Leadership Team." *See id.* (reviewing evidence). Tata has placed the existence of this policy at issue by claiming that no such policies exist. *See, e.g.*, Ganapathy Decl. ¶ 19 (Dkt. #142). Mr. Kant is an appropriate witness to address Tata's company-wide practices and its "leadership directive[s]," as testimony and documents have demonstrated.

*Legal Standard*: When invoking the so-called "apex doctrine" "the party opposing discovery. . . bears the burden of showing that the deposition should not be allowed." *See In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 07cv05634 CRB (DMR), 2014 U.S. Dist. LEXIS 29947, at *15-16 (N.D. Cal. Mar. 6, 2014). This is "a heavy burden." *Id.* (collecting cases). Generally, when "determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Liveperson, Inc. v. [24]7.AI, Inc.*, No. 3:17cv01268-JST (KAW), 2018 U.S. Dist. LEXIS 42232, at *4 (N.D. Cal. Mar. 14, 2018). "The apex deposition principle is not an automatic bar that Plaintiffs must overcome by a showing of good cause." *Id.* "Rather, it is a protective tool that is selectively

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015

5

DISCOVERY JOINT LETTER BRIEF

employed on a case by case basis when deemed appropriate." *Id.*; *accord Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) ("it is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances.").

*No Showing of Prejudice:* Tata has failed to meet its burden of showing "specific prejudice or harm will result if no protective order is granted," as it does not identify *any* specific prejudice that would result. *In re Transpacific*, 2014 U.S. Dist. LEXIS 29947, at *14. And even if asserted by Tata, a "busy schedule," *id.* at *18-19 (collecting cases), or "demanding professional responsibilities" would be insufficient to demonstrate the requisite prejudice. *RxD Media LLC v. IP Application Dev. LLC*, No. 3:15mc80291-SK, slip op. at 3-4 (N.D. Cal. Jan. 8, 2016).

*Personal Knowledge*: The nature of this suit, Tata's corporate structure, and documents and recent deposition testimony demonstrate that Mr. Kant possesses unique personal knowledge relevant to this litigation. First, the claims at issue and Tata's corporate structure make deposing Mr. Kant particularly appropriate. This certified class action concerns a company-wide policy of discriminating against non-South Asians when staffing positions in the U.S. pursuant to a "leadership directive." *See* Omnibus Order at 4-5, 22-24, 33. As an outsourcing company, staffing is at the core of Tata's business. Moreover, Tata maintains a "flat" leadership hierarchy with very few levels of management between Mr. Kant and department leaders (such as HR and various business units). *See* Devenny Rough Dep. Tr. at 113:20-114:6, 134:19-23, 182:17-183:6, 197:17-23 (Apr. 2, 2018). As a result, Mr. Kant directly manages much of the company's U.S. operations. For example, most U.S. operational decisions required "buy in" from Mr. Kant, who often made decisions himself based on advice from lower-level executives. *Id.* at 188:6-8, 189:15-190:6.

In addition, available discovery suggests that Mr. Kant was personally involved in staffing decisions that treated expats preferentially. For example, documents produced by Tata demonstrate that Mr. Kant was directly involved in staffing, HR matters, diversity efforts, and visa issues.[3] Paul Devenny, a former Tata executive who worked regularly with Mr. Kant, recently

---

[3] *See, e.g.*, TCSLTD004024600 at 00 (noting "Corporate Approval for L1A Blanket [visa]" was "Pending with Mr. Surya Kant"); TCSLTD004114270 at 71 (discussing staffing of over 100 positions servicing [a customer], of which "[m]ost of them are movement from offshore and . . .

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015

6

DISCOVERY JOINT LETTER BRIEF

testified that Mr. Kant knew of discriminatory practices at Tata and personally approved "all human resources and labor activity" in the U.S. *See* Devenny Tr. at 136:22-137:1,[4] 182:8-10. In fact, Mr. Kant "owned human resources in the United States," and HR policies "would not have gone into action if he hadn't signed [them]." *Id.* at 185:5-186:8. Given Mr. Kant's role as "the operational head of the United States," Tata could not have implemented a company-wide pattern and practice of discrimination "without his buy in." *Id.* at 187:17-188:23.[5]

Above, Tata argues Mr. Devenny's testimony is "unpersuasive." But Plaintiffs seek to depose Mr. Kant about Tata's corporate practices in the U.S.—an area Mr. Kant is uniquely suited to address. Moreover, Mr. Devenny worked regularly with Mr. Kant, meeting with him monthly, and was therefore well positioned to know the scope of Mr. Kant's practices and responsibilities for Tata's U.S. operations. *Id.* at 37:23-38:18, 195:3-12, 196:5-6 ("There's only one person between myself and Sury"). And Mr. Devenny's testimony is supported by Tata's own documents, which demonstrate that Mr. Kant was personally involved in Tata's staffing, visa approvals, and diversity efforts. *See* n.3, *supra.* Further, the premise of Tata's persuasiveness challenge is

---

are awaiting visa stamping"); TCS021917 at 19 (affirmative action memorandum from Mr. Kant); TCSLTD005547786 at 86 (personally approving an employee's green card sponsorship due to visa limitations), TCSLTD005571137 at 38 (same), TCSLTD005611856 at 57-59 (same and weighing in on the policy underlying which employees are eligible); TCSLTD004010786 at 87 (participating in an email chain regarding a particular position that "has to be [filled by] an expat based in US"); TCSLTD004118596 at 96-97 (participating in an email chain regarding a particular position that is open to "visa ready [employees] only").

Above, Tata criticizes Plaintiffs for failing to disclose every supporting document before the drafting of this joint brief even began. Even if the Court's Standing Order included such a requirement—which it does not—each of these documents was produced *by Tata*. Nor has Tata held itself to this same standard by, *e.g.*, citing new testimony above not disclosed during the meet and confer.

[4] "Q: Okay. So back to -- to Sury. You believe he was aware that [a subordinate] was discriminating? A: Yes. I would believe he would have to have been aware, based on his role in the practices of that company." *See also* Devenny Tr. at 94:16-21, 184:1-8, 185:15-22, 185:23-186:14 (discussing Mr. Kant's personal involvement in terminations, staffing, HR policies, and diversity efforts).

[5] "Q: . . . If Tata had a corporate policy of favoring the use of visa workers to staff U.S. positions, would that be something that Mr. Kant would be aware of, in your experience? . . . A: Most certainly he would be aware of that, if one existed, yes." *Id.* at 187:17-25.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015

7

DISCOVERY JOINT LETTER BRIEF

misplaced—the party seeking a deposition is "not required to prove that [the proposed deponent] certainly has such information; [the party] cannot be certain that he does or does not until it has taken his deposition." *Powertech Tech., Inc. v. Tessera, Inc.*, No. 11cv6121 CW, 2013 U.S. Dist. LEXIS 105275, 2013 WL 3884254, at *2 (N.D. Cal. July 26, 2013). If it is Tata's implausible position that Mr. Kant lacked knowledge of Tata's company-wide discriminatory practices, Mr. Kant should be required to so testify under oath. *See RxD Media*, No. 3:15mc80291-SK, slip op. at 3-4 ("a claimed lack of knowledge, by itself is insufficient to preclude a deposition.").

*Not Duplicative*: Additionally, Mr. Kant's testimony would not be duplicative of testimony already obtained. As noted above, he has personal knowledge regarding a wide range of central issues and is the chief decision-maker for Tata in the United States. And while others advised Mr. Kant regarding some decisions, the testimony of a decision-maker and his advisers are not interchangeable. Further, throughout the depositions that Tata cites above, the deponents either denied knowledge of the contested "leadership directive" or failed to adequately address it. For example, while Umesh Kumar, Tata's Head of the Resource Management Group, provided testimony concerning Tata's general staffing procedures, he denied the existence of any policy favoring visa holders in staffing U.S. positions (despite voluminous evidence to the contrary).[6] Similarly, Balaji Ganapathy, Tata's Head of Workforce Effectiveness, stated that he was "not aware" of the leadership directive. Ganapathy Decl. ¶ 19 (Dkt. #142). Because Plaintiffs have not yet received a satisfactory explanation of the leadership directive at issue from lower-ranked employees, Mr. Kant's testimony would not be duplicative.

*Conclusion*: In sum, Mr. Kant possesses unique personal knowledge regarding Tata's personnel practices and policies, and this information is not duplicative of discovery obtained thus far, and Tata has failed to identify any specific prejudice, rendering his deposition wholly appropriate. Plaintiffs are sensitive to scheduling concerns and will work diligently to find a convenient time for the deposition and minimize the burden to Mr. Kant.

---

[6] When asked how "a leadership directive [] to use visas to the maximum extent" would affect U.S. employee allocations, he testified that positions were "not filled [based on an employee's] visa status," but rather based on "skills." Kumar 30(b)(6)) Dep. Tr. at 82:4-16 (Jan. 25, 2018).

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015

8

DISCOVERY JOINT LETTER BRIEF

| | |
|---|---|
| Dated: April 5, 2018 | LOEB & LOEB LLP<br>MICHELLE M. LA MAR<br><br>BY: /s/ Michelle M. La Mar<br>    Michelle M. La Mar<br>    Attorneys for<br>    TATA CONSULTANCY SERVICES, LTD.<br><br>KOTCHEN & LOW LLP<br><br>By: /s/ Michael von Klemperer<br>    Michael von Klemperer<br>    Attorneys for Plaintiffs and the Class |

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

16118039.1205625-10015

9

DISCOVERY JOINT LETTER BRIEF

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **DISCOVERY JOINT LETTER BRIEF** was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system on April 5, 2018.

Dated: April 5, 2018        /s/Keisha M. Lyles
                            Keisha M. Lyles

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

PROOF OF SERVICE
Case No. 4:15-cv-01696-YGR