Daniel Low, SBN 218387
Daniel Kotchen (*pro hac vice*)
Michael von Klemperer (*pro hac vice*)
Lindsey Grunert (*pro hac vice*)
**KOTCHEN & LOW LLP**
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: (202) 471-1995
E-mail: dlow@kotchen.com;
E-mail: dkotchen@kotchen.com;
E-mail: mvk@kotchen.com;
E-mail: lgrunert@kotchen.com

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| BRIAN BUCHANAN, et al.,<br><br>Plaintiffs,<br>v.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>Defendant. | Case No. 4:15-cv-01696-YGR (SK)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO INVALIDATE RELEASE AGREEMENTS**<br><br>Hon. Yvonne Gonzalez Rogers<br><br>Date: July 31, 2018<br>Time: 2:00 p.m.<br>Location: Courtroom 1, 4th Flr., Oakland<br><br>Complaint Filed: April 14, 2015<br>Trial Date: November 5, 2018 |

**PLAINTIFFS' NOTICE OF MOTION & MOTION TO INVALIDATE RELEASE AGREEMENTS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that at 2:00 p.m. on July 31, 2018, 2018, in Courtroom 1, 4th Floor of the above-titled court, located at 1301 Clay Street, Oakland, California 94612, Plaintiffs Brian Buchanan, Christopher Slaight, Seyed Amir Masoudi, and Nobel Mandili will, and hereby do, move this Court to invalidate the release agreements entered into between approximately 246 class members and Defendant Tata Consultancy Services, Ltd. ("TCS") that were obtained by TCS without disclosing the existence of this lawsuit and relevant details to class members. Plaintiffs also move this Court for an Order requiring corrective notice to be issued by TCS to the individuals who signed the release agreements and prohibiting TCS from engaging in any further *ex parte* contact with class members.

Date: June 19, 2018

/s/Daniel Kotchen
Daniel Kotchen
Daniel Low (SBN 218387)
Michael von Klemperer (*pro hac vice*)
Lindsey Grunert (*pro hac vice*)
KOTCHEN & LOW LLP

*Attorneys for Plaintiffs and the Class*

# TABLE OF CONTENTS

PLAINTIFFS' NOTICE OF MOTION & MOTION TO INVALIDATE RELEASE AGREEMENTS ..... i

TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO INVALIDATE RELEASE AGREEMENTS ..... 1

I. STATEMENT OF ISSUES TO BE DECIDED ..... 1

II. BACKGROUND ..... 1

III. LEGAL STANDARD ..... 3

IV. DISCUSSION ..... 5

A. TCS's Releases Are Invalid Because They Omitted Material Information And Misled Class Members. ..... 6

B. TCS Should Be Prohibited From Seeking Repayment of The Severance Paid to Former Employees. ..... 7

C. TCS Should Be Required to Issue Corrective Notice to The Class and Be Prohibited From Further Ex Parte Communications With the Class. ..... 7

V. CONCLUSION ..... 8

# TABLE OF AUTHORITIES

**Cases**

*Camp v. Alexander*, 300 F.R.D. 617, 620 (N.D. Cal. 2014)....................5, 7, 8

*Cheverez v. Plains All Am. Pipeline, LP*, No. CV15-4113 PSG (JEMx), 2016 U.S. Dist. LEXIS 27818 (C.D. Cal. Mar. 3, 2016)....................5, 6, 7, 8

*County of Santa Clara v. Astra USA, Inc.*, No. C 05-3740 WHA, 2010 U.S. Dist. LEXIS 78312 (N.D. Cal. July 8, 2010)....................5, 6, 7, 8

*Faison v. Thornton*, 863 F. Supp. 1204 (D. Nev. 1992)....................9

*Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758 (N.D. Ohio 2010)....................5

*Georgine v. Amchem Prods.*, 160 F.R.D. 478 (E.D. Pa. 1995)....................6

*Gonzalez v. Preferred Freezer Servs. LBF, LLC*, No. CV 12-03467-ODW (FMOx), 2012 U.S. Dist. LEXIS 139764 (C.D. Cal. Sep. 27, 2012)....................4, 5

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)....................5

*In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005)....................5

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977)....................4

*Kirola v. City & County of S.F.*, No. C 07-03685 SBA, 2010 U.S. Dist. LEXIS 97634 (N.D. Cal. Sep. 2, 2010)....................6, 8

*Marino v. CACafe, Inc.*, No. 16-cv-6291 YGR, 2017 U.S. Dist. LEXIS 64947 (N.D. Cal. Apr. 28, 2017)....................passim

*Nakamura v. Wells Fargo Bank, Nat'l Ass'n*, No. 17-4029-DDC-GEB, 2018 U.S. Dist. LEXIS 27469 (D. Kan. Feb. 21, 2018)....................5, 6

*Retiree Support Grp. of Contra Costa County v. Contra Costa* County, No. 12-cv-00944-JST, 2016 U.S. Dist. LEXIS 99702 (N.D. Cal. July 29, 2016)....................6

*Slavkov v. Fast Water Heater I, LP*, No. 14-cv-04324-JST, 2015 U.S. Dist. LEXIS 149013 (N.D. Cal. Nov. 2, 2015)....................4, 5, 8

*Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485 (C.D. Cal. 2006)....................6, 9

**Other Authorities**

*Manual for Complex Lit.* (4th ed. 2004)....................4, 6

**Rules**

Fed. R. Civ. P. 23(d) .......... 5, 6

Fed. R. Civ. P. 37(c).......... 2

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO INVALIDATE RELEASE AGREEMENTS

On the very last day of discovery (May 15, 2018), Defendant Tata Consultancy Services, Ltd. ("TCS") produced 346 Separation and Release Agreements ("Releases") between TCS and former TCS employees, including Releases with approximately 246 class members.[1] Two hundred and forty one of these Releases were secured after Plaintiffs filed this class action lawsuit, including at least three Releases secured after this Court's class certification order. The remaining five Releases were obtained before the suit was filed, but after Steven Heldt filed an EEOC charge seeking to advance discrimination class claims on behalf of terminated TCS employees.

Plaintiffs move to invalidate the Releases between TCS and class members because TCS obtained the Releases without disclosing the existence and details of the class claims at issue in this lawsuit. Courts have held that it is improper for defendants to fail to disclose the existence of class actions before obtaining releases from putative class members. Because the releases were misleading and improperly obtained, they should be invalidated, corrective notice should be issued, and further *ex parte* communications with class members should be prohibited.

### I. STATEMENT OF ISSUES TO BE DECIDED

1) Whether the Separation and Release Agreements with class members are invalid;
2) Whether corrective notice should be issued;
3) Whether TCS should be prohibited from engaging in any further *ex parte* contact with class members.

### II. BACKGROUND

Mr. Heldt, a terminated TCS employee, filed an initial EEOC charge on October 30, 2014

[1] Plaintiffs calculated the number of Releases with class members by excluding from the calculation individuals with South Asian names and then narrowing the list of individuals to those whose termination reason was coded as being "unallocated" (which includes 224 former employees) as well as termination reason codes that suggest unallocation – *i.e.*, "position elimination" (10 individuals), "redundancy" (7 individuals), "reason unknown" (4 individuals), and "business exigency" (1 individual). Thus, the number of Releases that involve class members – 246 – is an approximation only. Because TCS disclosed the Releases on the very last day of discovery (which were otherwise responsive to Plaintiffs' discovery requests), Plaintiffs could not issue any follow up discovery to TCS concerning the Releases. Plaintiffs thus seek an order invalidating any Release entered with a class member and propose determining the exact number of Releases to be invalidated during Phase II.

seeking to advance discrimination claims against TCS "on his own behalf, and on behalf of a class of individuals similarly affected by Tata's discriminatory employment practices." *See* Heldt EEOC Charge Attachment (Dkt. #25-1). Plaintiffs filed their initial class action Complaint on April 14, 2015. Compl. (Dkt. #1).

After the filing of these documents, TCS began a concerted effort to secure from terminated employees Releases in exchange for, in most cases, [redacted][2] Specifically, TCS secured Releases with (a) five class members after Mr. Heldt filed his EEOC charge but prior to the filing of the class action suit and (b) 241 class members after the filing of the class action lawsuit. *See* Kotchen Decl. ¶¶ 2-3; *see also* Sharma Decl. ¶ 3 (Dkt. #338); Sharma Decl. Ex. A.1 (listing 346 separated employees who signed releases). TCS secured at least three Releases after the Court granted class certification on December 27, 2017.[3] The Releases purport to [redacted]. *See, e.g.*, TCSLTD007719683-87 at 83-84 (Ex. 1).

None of the Releases mention Plaintiffs' class action lawsuit, any details about class claims, or the specific rights, legal claims, and remedies that class members purportedly relinquished by signing the Releases. *See, e.g.*, Exs. 1-2, 4-6.[4] In addition, the releases also lack contact information for class counsel. *See, e.g.*, Exs. 1-2, 4-6. Further, even though the information was responsive to an

---

[2] Of the 246 Releases, [redacted] Kotchen Decl. ¶ 4.

[3] *See* Omnibus Order at 39, 42 (Dkt. #244); TCSLTD007718791-95 (release [redacted]) (Ex. 4); TCSLTD007718887-91 (release [redacted]) (Ex. 5); TCSLTD007719236-39 (release [redacted]) (Ex. 6).

[4] In discovery, Plaintiffs requested documents related to TCS's affirmative defenses. *See* Pls.' 7th Set of RPDs to Tata at Req. No. 11 (Ex. 9). TCS only produced the releases themselves, and not any communications related to the releases, presumably because they did not inform class members of the lawsuit. Release-related communications with putative class members were also responsive to other document requests issued by Plaintiffs. *See* Pls.' 1st Set of RPDs Directed to TCS at Req. No. 17 (August 28, 2015 document request for "Documents and ESI relating to the above captioned case, *Heldt, et al. v. Tata Consultancy Services, Ltd.*, 4:15-cv-01696-YGR, N.D. Cal.") (Ex. 3); Pls.' 4th Set of RPDs Directed to TCS at Req. No. 1 (April 11, 2017 document request for "Documents and ESI relating to any communications between Tata (and/or its counsel) and any third party regarding the above captioned case") (Ex. 10).

interrogatory Plaintiffs issued in August 2015,[5] TCS delayed providing class members' contact information to Plaintiffs until the very last day of discovery (May 15, 2018), thereby ensuring that terminated employees would not receive information concerning the lawsuit while being presented with the Releases. *See* Email from L. Williams to M. von Klemperer, *et al.* (May 15, 2018) (Ex. 7).

TCS has asserted the Releases as an affirmative defense in this lawsuit. *See* Answer to 4th Am. Compl. ¶ 21 (Dkt. #252) But, in response to an interrogatory seeking the factual bases for TCS' affirmative defenses, TCS refused to disclose the existence of the Releases or its efforts to continue to secure additional Releases. *See* Def.'s Resp. to Pls.' 5th Set of INTs at 17 (Ex. 8) ("Defendant has not had the opportunity to investigate the claims of individual class members as Plaintiffs have yet to identify them . . . [t]o the extent a plaintiff signed a release prior to the filing of this Action; his or her claim is also barred."). Similarly, until the very last day of discovery (when TCS produced the Releases themselves), TCS also refused to produce any documents relating to its securing of the Releases, which were responsive to Plaintiffs' document requests. *See supra* note 4.

## III. LEGAL STANDARD

In seeking a release from putative class members, a defendant "may not give . . . misleading . . . information, [or] conceal material information." *Manual for Complex Lit.* § 21.12 (4th ed. 2004). Defendants' communications with putative class members about a release should "'contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member.'" *Slavkov v. Fast Water Heater I, LP*, No. 14-cv-04324-JST, 2015 U.S. Dist. LEXIS 149013, at *6-7 (N.D. Cal. Nov. 2, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977)).

When seeking a release, defendants have been required to disclose information about a pending class action to putative class members, such as: the name and number of the pending class action lawsuit; the basis of the class claims; contact information for plaintiffs' attorneys; and a statement regarding the effect the release would have on the employee's ability to participate in the class action. *Gonzalez v. Preferred Freezer Servs. LBF, LLC*, No. CV 12-03467-ODW (FMOx), 2012

[5] *See, e.g.*, Pls.' 1st Set of INTs Directed to TCS at Rog No. 2 (asking for the "most current contact information" for all TCS employees since 2011, including those who had been terminated) (Ex. 11).

U.S. Dist. LEXIS 139764, at *9-10 (C.D. Cal. Sep. 27, 2012); *see also Marino v. CACafe, Inc.*, No. 16-cv-6291 YGR, 2017 U.S. Dist. LEXIS 64947, at *6 (N.D. Cal. Apr. 28, 2017).

When defendants have failed to disclose such information about a pending class action, courts in this district have repeatedly invalidated agreements signed by putative class members and required defendants to issue corrective notices. *See, e.g.*, *Marino*, 2017 U.S. Dist. LEXIS 64947, at *6-7 (invalidating releases and ordering corrective notice where "communications did not inform putative class members that there was a lawsuit pending that concerned their legal rights, the nature of the claims, plaintiff's counsel's contact information, [or] the status of the case"); *Slavkov*, 2015 U.S. Dist. LEXIS 149013, at *7, 19-20 (invalidating releases and ordering curative notice where communications contained material omissions and misleading statements); *Camp v. Alexander*, 300 F.R.D. 617, 620, 625-27 (N.D. Cal. 2014) (invalidating opt-out declarations solicited by defendants and requiring corrective notice where defendants failed to attach a copy of the complaint, include any explanation of the plaintiffs' claims, or contact information for plaintiffs' counsel); *County of Santa Clara v. Astra USA, Inc.*, No. C 05-3740 WHA, 2010 U.S. Dist. LEXIS 78312, at *22-23 (N.D. Cal. July 8, 2010) (invalidating releases where defendant did not attach plaintiffs' complaint, explain plaintiffs' claims, the status of the case, or include contact information for plaintiffs' counsel).[6]

Courts have "'broad authority'" to take corrective action pursuant to Fed. R. Civ. P. 23(d), which gives district courts broad authority to enter appropriate orders governing the conduct of

---

[6] "Other courts throughout the country have also restricted communications or invalidated releases when the communications suffered from similar deficiencies." *Slavkov*, 2015 U.S. Dist. LEXIS 149013, at *8 (collecting cases); *see, e.g.*, *Cheverez v. Plains All Am. Pipeline, LP*, No. CV15-4113 PSG (JEMx), 2016 U.S. Dist. LEXIS 27818, at *11-12 (C.D. Cal. Mar. 3, 2016) (invalidating release where there was a "likelihood that the fairness of the litigation process has been compromised" based on failure of release agreements to provide "an explanation of the Plaintiffs' claims or the contact information for Plaintiffs' counsel"); *Gonzalez*, 2012 U.S. Dist. LEXIS 139764, at *4 ("the waiver misleadingly failed to provide the potential plaintiffs with adequate notice of this case in order to make an informed decision regarding waiver of their rights"); *Nakamura v. Wells Fargo Bank, Nat'l Ass'n*, No. 17-4029-DDC-GEB, 2018 U.S. Dist. LEXIS 27469, at *16 (D. Kan. Feb. 21, 2018) ("failure to include class action information in the [request for a release] is in direct conflict with existing law"); *Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758, 765-66 (N.D. Ohio 2010) ("defendant's failure to notify putative class members of this litigation before obtaining settlements and releases . . . constituted a misleading communication"); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 251-52 (S.D.N.Y. 2005) (refusing to enforce agreements where defendant had failed to inform putative class members of the pending class action lawsuit).

counsel and parties in a putative class action to protect class members and safeguard the administration of justice and the integrity of the class certification process. *Marino*, 2017 U.S. Dist. LEXIS 64947, at *4 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). Such corrective action includes, *e.g.*, invalidating the releases, ordering corrective communications, and banning *ex parte* communications related to the lawsuit. *Id.* at *8-9.

When releases have been invalidated for lack of adequate disclosures, courts – including this court – have permitted putative class members to retain the settlement payments. *Id.* at *8 ("All releases . . . are hereby invalidated. However, the Court prohibits [defendant] from requesting any reimbursement of payments made."); *County of Santa Clara*, 2010 U.S. Dist. LEXIS 78312, at *22 ("the recipients are entitled to cash the [settlement] checks . . . without prejudice to seeking even greater in this or separate lawsuits."); *Cheverez*, 2016 U.S. Dist. LEXIS 27818, at *14, 20-21; *see also Nakamura*, 2018 U.S. Dist. LEXIS 27469, at *2-3 (defendant agreed putative class members who signed releases that failed to disclose the class action could "rescind the release, keep the settlement money, and be a part of the class action").

"Once a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel." *Manual for Complex Litig.* § 21.33 (4th ed. 2004); *accord Kirola v. City & County of S.F.*, No. C 07-03685 SBA, 2010 U.S. Dist. LEXIS 97634, at *6 (N.D. Cal. Sep. 2, 2010) ("the applicable rules of Professional Conduct prohibit communications by an attorney . . . with individual class members once a class action has been certified.") (citing Cal. R. Prof. Conduct 2-100; ABA Rule 4.2). "If improper communications occur, curative action might be necessary, such as . . . voiding improperly solicited opt outs[.] . . . Other sanctions may be justified." *Manual for Complex Litig.* § 21.33 (4th ed. 2004) (citing *Georgine v. Amchem Prods.*, 160 F.R.D. 478, 502-08 (E.D. Pa. 1995)); *see also Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485, 489-90 (C.D. Cal. 2006) (invalidating opt-ins improperly solicited by defendant and entering order restricting communications between defendant and class members).

## IV. DISCUSSION

Rule 23(d) imposes a duty on district courts to exercise control over class actions to "'protect class members'" and "'safeguard generally the administering of justice and the integrity of the class

certification process.'" *Marino*, 2017 U.S. Dist. LEXIS 64947, at *4 (Gonzales Rogers, J.) (quoting *Retiree Support Grp. of Contra Costa County v. Contra Costa* County, No. 12-cv-00944-JST, 2016 U.S. Dist. LEXIS 99702, at *16 (N.D. Cal. July 29, 2016)). When "releases . . . were obtained by deceptive omissions of material information . . . the releases are invalid," *id.* at *7, and it is appropriate to issue a corrective notice and to prohibit further *ex parte* communications between defendant and class members related to the lawsuit. *Id.* at *8-9.

**A. TCS's Releases Are Invalid Because They Omitted Material Information And Misled Class Members.**

Here, TCS omitted material information and misled class members. With respect to the approximate 241 class members whose Releases post-dated the filing of the class action complaint, TCS failed to disclose *any* information related to the lawsuit, including: the existence of this lawsuit, the name and case number, a copy of the complaint, a description of the class claims, the status of the case, or contact information for Plaintiffs' counsel. *See, e.g.*, Exs. 1-2, 4-6. With respect to the five class members whose Releases were obtained before the class action suit was filed but after Mr. Heldt filed his EEOC charge, TCS failed to disclose *any* information related to the EEOC charge, which included a request to assert class claims. *See, e.g.*, TCSLTD007719700-03 (Ex. 2).

Failure to disclose to putative class members information concerning class claims is a material omission, is deceptive and misleading, and warrants corrective action, as the communications prevented recipients from making an informed decision about waiving their rights. *Marino*, 2017 U.S. Dist. LEXIS 64947, at *7-9; *Cheverez*, 2016 U.S. Dist. LEXIS 27818, at *11-12; *Camp*, 300 F.R.D. at 625-27; *County of Santa Clara*, 2010 U.S. Dist. LEXIS 78312, at *22-23. Circumstances further "suggest that defendant[] sought to ensure that putative class members were not given full information before they signed the releases" because, for example, TCS "communicated with putative class members after the lawsuit was filed, but before they had received any formal notice and before plaintiff's counsel had been given an opportunity to communicate with them," because of "[t]he speed with which the . . . release requests were distributed after" the lawsuit was served, and because of TCS's "resistance to providing class member contact information." *Marino*, 2017 U.S. Dist. LEXIS 64947, at *5-6. Here, notice has not yet been issued, TCS began demanding release from terminated

non-South Asian employees once it was aware of Plaintiffs' class claims, and TCS delayed providing class members' contact information to Plaintiffs until the last day of discovery in May 2018. Email from L. Williams to M. von Klemperer, *et al.* (May 15, 2018) (Ex. 7).

Under these circumstances, the Releases pertaining to approximately 246 class members should be invalidated to the extent that they purport to release the claims in this lawsuit. *Marino*, 2017 U.S. Dist. LEXIS 64947, at *6-7 (invalidating releases where "communications did not inform putative class members that there was a lawsuit pending"); *Slavkov*, 2015 U.S. Dist. LEXIS 149013, at *19-20 (invalidating releases); *Camp*, 300 F.R.D. at 620, 625-27 (invalidating opt-out declarations); *County of Santa Clara*, 2010 U.S. Dist. LEXIS 78312, at *22-23 (invalidating releases).

**B. TCS Should Be Prohibited From Seeking Repayment of The Severance Paid to Former Employees.**

TCS should be prohibited from seeking repayment of the amounts paid to terminated employees in connection with the Releases. *Marino*, 2017 U.S. Dist. LEXIS 64947, at *8 ("the Court prohibits [defendant] from requesting any reimbursement of payments made."); *Cheverez*, 2016 U.S. Dist. LEXIS 27818, at *14, 20-21. As evidenced by the language of the Releases, [redacted] which were unknown to the individuals signing the Releases. *See, e.g.*, TCSLTD007719683-87 at 83 (Ex. 1).

**C. TCS Should Be Required to Issue Corrective Notice to The Class and Be Prohibited From Further *Ex Parte* Communications With the Class.**

In addition, TCS should be required to issue a corrective notice to inform approximately 246 class members that they may participate in this lawsuit without violating the Releases and without being required to repay amounts previously received from TCS. *Marino*, 2017 U.S. Dist. LEXIS 64947, at *5-6, 8; *Slavkov*, 2015 U.S. Dist. LEXIS 149013, at *21; *Camp*, 300 F.R.D. at 620, 625-26. The parties should be ordered to meet and confer on the form of the notice, which should be similar in content to the notice issued in *Marino*. *See* 2017 U.S. Dist. LEXIS 64947, at *9-14 (attaching approved curative notice informing class members that release is invalid and no repayment is required); *Slavkov*, 2015 U.S. Dist. LEXIS 149013, at *21 (ordering the parties to submit proposed curative notices).

TCS entered into at least three Releases with class members after class certification was granted. *See* Exs. 4-6.[7] TCS's post-certification communications with class members violated its professional obligations not to engage in *ex parte* communications with a represented party pursuant to ABA Rule 4.2 and California Rule of Professional Conduct 2-100. *Kirola*, 2010 U.S. Dist. LEXIS 97634, at *6. While TCS is already prohibited by these rules from such *ex parte* communications, in light of its earlier violations, the Court should enter an order that explicitly prohibits TCS and its counsel "from engaging in any *ex parte* communications with . . . class members regarding any of the subjects of this litigation, or any release of claims herein." *Marino*, 2017 U.S. Dist. LEXIS 64947, at *8-9; *see also Wang*, 236 F.R.D. at 490 (restricting communications with class members).

In addition, to the extent that TCS has obtained additional information relevant to this lawsuit as a result of these unethical communications, TCS "should be prohibited from using any information improperly obtained and further, should disclose the information received by [TCS] during the *ex parte* conversations." *Faison v. Thornton*, 863 F. Supp. 1204, 1216 (D. Nev. 1992) (disqualifying counsel for engaging in *ex parte* communications and awarding fees).

## V. CONCLUSION

For the foregoing reasons, the Releases signed by TCS and approximately 246 class members should be invalidated, corrective notice should be issued, and TCS should be prohibited from engaging in any further *ex parte* contact with class members.

Dated: June 19, 2018

Respectfully submitted,

By: /s/ Daniel Kotchen
Daniel Low (SBN 218387)
Daniel Kotchen (*pro hac vice*)
Michael von Klemperer (*pro hac vice*)
Lindsey Grunert (*pro hac vice*)
KOTCHEN & LOW LLP

*Attorneys for Plaintiffs and the Class*

[7] It is unclear whether TCS unsuccessfully solicited Releases from other individuals or continues to solicit Releases from class members post-certification.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system.

Dated: June 19, 2018

By: /s/Daniel Kotchen
Daniel Kotchen