DANIEL LOW, SBN 218387
dlow@kotchen.com
DANIEL KOTCHEN (*pro hac vice*)
dkotchen@kotchen.com
MICHAEL von KLEMPERER (*pro hac vice*)
mvk@kotchen.com
LINDSEY GRUNERT (*pro hac vice*)
lgrunert@kotchen.com
KOTCHEN & LOW LLP
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: 202.471.1995

*Attorneys for Plaintiffs and the Class*

MICHELLE M. LA MAR (SBN 163038)
mlamar@loeb.com
TERRY D. GARNETT (SBN 151212)
tgarnett@loeb.com
PATRICK N. DOWNES (SBN 186461)
pdownes@loeb.com
ERIN M. SMITH (SBN 235039)
esmith@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

*Attorneys for Defendant Tata
Consultancy Services Ltd.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER SLAIGHT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TATA CONSULTANCY SERVICES, LTD., <br><br> Defendant. | Case No. 4:15-cv-01696-YGR (SK) <br><br> **CLASS ACTION** <br><br> **DISCOVERY JOINT LETTER BRIEF REGARDING DEFENDANT'S PRIVILEGE LOGS** <br><br> Complaint Filed:  April 14, 2015 <br> Trial Date:  November 5, 2018 |

Dear Magistrate Judge Kim,

### MEET AND CONFER ATTESTATION

Counsel attest that they have complied with Judge Kim's meet and confer requirements by meeting and conferring telephonically on August 6, 2018.  Further, counsel attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct. This dispute involves Plaintiffs' challenge to Tata's privilege logs.

Relevant case management deadlines include an August 31, 2018 exchange of exhibit lists; September 28 motions *in limine* deadline, October 5 submission of exhibit lists, and a November 5 trial date. *See* Pretrial Order No. 1 (Dkt. #431)

**PLAINTIFFS' PORTION**

TCS has not, because it cannot, justify the privilege assertions for the thirteen documents discussed herein, despite ample opportunity to do so. As a result, the Court should order TCS to produce the documents at issue because TCS has failed to establish the elements of the privilege. In the alternative, the Court should order TCS to produce the documents for inspection *in camera*.

In response, TCS continues to complain that it should not be required to meet its burden to justify its assertions of privilege, casts aspersions on Plaintiffs' legitimate efforts to obtain usable logs and unprivileged documents (many of which have been produced as a result of challenges), and attempts to capitalize on its own untimeliness in producing compliant privilege logs to avoid review of its assertions. Considering TCS only produced "complete" privilege logs on May 31, TCS is no victim, and the Court should not countenance its continued gamesmanship.

**Legal Standard**: When withholding responsive discovery on the basis of privilege, Rule 26(b)(5)(A)(ii) requires a party to describe the documents in a manner sufficient to enable other parties to assess the claimed privilege. *Accord* Standing Order at 6-7. In addition, the proponent of a privilege bears the burden of establishing all elements of the asserted privilege. *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002); *accord Virtue Global Holdings Ltd. v. Reardon LLC*, No. 3:15-cv-797-JST (SK), 2016 U.S. Dist. LEXIS 53076, at *10 (N.D. Cal. Apr. 20, 2016).

*(A) Redacted Sharma Email*: On July 15, 2018 TCS produced a heavily redacted document, which contains two draft emails to a class member, which both begin "Dear Matt," but are otherwise redacted. *Id. See* Ex. 1 (TCSLTD008387246). "The fact that a person is a lawyer does not make all communications with that person privileged." *Martin*, 278 F.3d at 999. Rather, the Attorney-Client privilege applies "(1) [w]hen legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *Id.* A communication is not "made in confidence" if the document is intended to be disclosed at the time it is created. Epstein, Attorney-Client Privilege & Work-Product Doctrine § 1.III.E3.C (6th ed. 2017).

The "Dear Matt" emails were clearly intended to be sent to him and, therefore, were not "made

1

in confidence." *See id.* § 1.III.E3.D ("When a document is created with the intention that it be sent to an adversary, no privilege claim can be asserted [even] when it turns out that the document was never in fact communicated to the adversary."). In addition, drafts of documents ultimately disclosed are discoverable because confidentiality was not maintained. *Id.* § 1.III.E3.E (explaining that drafts of subsequently disclosed documents are often unprivileged).[1] Even if the email were never sent (a fact unsupported by any evidence), subsequent emails suggest that the substance of that communication was eventually conveyed to Matt, albeit via telephone (to avoid a written record), *see* Ex. 2, and therefore any possible privilege was not maintained.

   *(B) Emails with No Attorney or Attorney CC'ed*:[2] TCS has invoked attorney-client privilege and the common interest doctrine to withhold eight emails on which attorneys are only CC'ed (Documents 1-9). *See* Ex. 3.

   *Attorney-Client Claims*: TCS vaguely asserts that the documents reflect advice from counsel even though counsel is merely CC'ed on an email among non-attorneys. This is insufficient to sustain TCS's burden to demonstrate that the documents are part of a communication "from a professional legal adviser in his or her capacity as such." *See Martin*, 278 F.3d at 999; *See also IP Co. v. Cellnet Tech.*, No. 08-80126, 2008 U.S. Dist. LEXIS 79776, at *9 (N.D. Cal. Aug. 18, 2008) ("it is well settled that merely copying an attorney on an email does not establish that the communication is privileged").

   *Common Interest*: The common interest privilege protects documents shared between parties who have a common *legal* interest; it does not extend to communications regarding a common *business* interest, even if they touch upon legal issues. *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579-80. (N.D. Cal. 2007). Even when parties share a common legal interest, the

---

[1] The treatise explains: "The question has often arisen to what extent are prior drafts of matters that are intended to be disclosed either in a public filing or in some proceeding or even where intended for transmission to some third private party, discoverable, because the requisite confidentiality never attached to the making of the communications such as to give rise to privilege? The answer is surprisingly often. Albeit, courts seem inclined, increasingly, to accord prior drafts work-product protection (assuming an anticipation of litigation element can be found), but if not, often prior drafts are discoverable, much as this will surprise most attorneys." *Id.*

[2] Previously this section included eleven additional emails with no attorney and one additional email with an attorney CC'ed, but TCS agreed to produce them after receiving Plaintiffs' brief. Plaintiffs withdrew one challenge based on additional information obtained during briefing.

JOINT LETTER BRIEF RE PRIVILEGE LOGS                                          No. 4:15-cv-01696-YGR (SK)

particular communication at issue must be designed to further that legal effort. *Id.* "[A] shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012).

Documents 1-2 concern communications with TCS vendors or clients concerning contracts and assert the common interest privilege. Document 1 concerns a Master Services Agreement with TCS's clients and includes the clients on the communications. Document 2 concerns a statement of work, which (as Plaintiffs understand it) is an agreement among TCS and a client concerning a discrete project or projects. The common interest privilege does not apply if the underlying communication is not privileged. *See Nidec*, 249 F.R.D. at 578. No attorney-client privilege attaches to a contract or draft contract because contracts, by their very nature, are both intended to be disclosed and actually disclosed—they are not made in confidence and any privilege is waived by the subsequent disclosure. *See* Epstein § 1.III.E3.C.[3] In addition, *Elec. Frontier Found. v. United States*, DOJ, 2018 U.S. Dist. LEXIS 110442, at *10 (N.D. Cal. July 2, 2018), which concerns an internal DOJ memorandum, does not hold to the contrary. *See also* Epstein §§ 1.III.E3.E (explaining that courts have found draft complaints to be unprotected by attorney-client privilege (although they may be work product, like a draft brief)). And no authority supports TCS's supposed "widely available" requirement—disclosure is disclosure.

Even if it did apply, in negotiating contracts, TCS may share a common business interest with clients—doing work together—but they have separate counsel and negotiate against each other, rendering their legal interests adverse. *See id.* at 579. In addition, no attorney-client privilege applies to draft contracts. *See* Epstein §§ 1.III.E3.C-E.

Documents 3-4, with the subjects "Re: TCS BA on Hilton Account" and "Re: FW: Fw: TCS BA on Hilton Account" concern a staffing issue and the communications assuredly involve a TCS client (although none is copied on the withheld email). There is no apparent cognizable common legal interest among TCS and its client nor is it clear how this specific communication relates to any such

---

[3] *See also SunTrust Mortg., Inc., v. Busby*, No. 2:09cv3, 2010 U.S. Dist. LEXIS 34990, at *4-5 (W.D.N.C. 2010) ("simply because an attorney is employed to create a legal document does not forever impress such document with the attorney-client privilege . . . [i]f that were the case, then contracts . . . would never be subject to disclosure").

interest. Documents 5-8 relate to an allegation of theft against a former TCS employee, which Plaintiffs surmise resulted in TCS filing an arbitration demand against him, based on the email subject lines and privilege descriptions. The other party on the communication is Diverse Lynx, a third-party recruiter who finds job candidates and pitches them to TCS—like a headhunter. Plaintiffs cannot imagine why a headhunter would be co-Plaintiff with TCS in litigation related to theft by a former TCS employee. Although they may have had some shared desire to see the employee brought to justice, "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception." *In re Pac. Pictures*, 679 F.3d at 1129. In addition, TCS asserts a settlement privilege for Document 8. But, in this District "[n]either Rule 408 nor Rule 501 creates a federal settlement privilege." *Matsushita Elec. Indus. Co. v. Mediatek, Inc.*, 2007 U.S. Dist. LEXIS 27437, at *10 (N.D. Cal. Mar. 30, 2007).

*(C) Emails on the Williams Log*: Documents 9-12 come from the separately produced "Williams" privilege log and were withheld pursuant to claims of attorney-client privilege, but appear to be draft documents created for the purpose of disclosure to third parties. Each document appears to be an outward-facing communication (three job offer letters and a form intended for newly hired employees), however, TCS claims the documents "reflect[] legal advice" from counsel. To the extent that the documents reflect legal advice, in the sense that an attorney had a hand in drafting the document, that does not render a document privileged. "[D]ocuments do not *ipso facto* become impressed with any privilege merely because an attorney created them." Epstein § 1.III.E3.D. Rather, as explained above, draft documents are often discoverable. *Id.* § 1.III.E3.E (explaining that draft documents, such a press releases edited by attorneys, are discoverable).

**Relief Requested**: The Court should order TCS to produce the thirteen documents at issue because TCS has failed to establish the elements of the privilege, despite ample opportunity to do so. In the alternative, the Court should order TCS to produce the documents for inspection *in camera*, to determine whether any privilege applies and, if so, whether the documents are should be partially produced with redactions.

JOINT LETTER BRIEF RE PRIVILEGE LOGS                                    No. 4:15-cv-01696-YGR (SK)

**DEFENDANT'S PORTION**

Plaintiffs' consistently complain that TCS has not addressed their privilege log concerns in a timely fashion, but their own privilege log was produced in September 2017 and consisted of a mere 109 total documents. Still, Plaintiffs took 9 months—until the last day of discovery—to supplement their privilege log. Meanwhile, in response to Plaintiffs' demands, TCS has produced over 1.8 million documents in this matter, and consequently also produced a sizable privilege log. TCS produced this log in March 2018, and has continually amended it as necessary, including to address Plaintiffs' ever-increasing and piecemeal demands for more and more information to support TCS' legitimate privilege assertions. TCS has fully met its burden regarding its privilege log and has consistently provided Plaintiffs with a clear basis for the privilege.

TCS has addressed each of Plaintiffs' laundry list of complaints, which it categorized in Excel Spreadsheets A, B, C, D, E, F, G, H, I, J, K, L, M, and N (14 categories, with tens of thousands of documents PLUS attachments). Many of Plaintiffs' complaints proved factually inaccurate on their face. TCS devoted hundreds of attorney hours to investigate when Plaintiffs asserted incorrectly, for example, that thousands of entries lacked an attorney, when the attorney was listed.

By this motion, Plaintiffs have boiled their complaints down to 13 documents. Each of those documents is privileged and TCS' log is sufficient to establish that privilege. Plaintiffs' motion should be denied in its entirety. If the Court wishes to expend the time and resources to review the documents, *in camera,* however, TCS will provide them willingly in the hope that review will end this never-ending parade of attacks on TCS' log.

*(A) Redacted Sharma Email:*

TCS produced a redaction log on August 10, 2018 and has repeatedly stated that this document was redacted in order to prevent disclosure of privileged attorney-client communications. The redacted portions of the document are email exchanges wherein a TCS employee requests, and then receives, legal advice from TCS Employment Counsel regarding how to properly draft an email related to a TCS severance offer.

Plaintiff's argument that the communication was not "made in confidence" is undermined by the admitted fact that this communication involved a draft sent for attorney approval and was

5

obviously not a final version intended to be disclosed or sent in that preliminary form, making it clearly privileged. *See In re Adobe Systems, Inc. Sec. Litigation*, 1991 U.S. Dist. LEXIS 15929 at *11-12 (N.D. Cal. October 23, 1991). Plaintiffs' cited authority for compelling production of this type of draft attorney communication is primarily discussing documents intended by the client to be made widely available in a non-confidential context—such as public disclosures or SEC filings. Edna Selan Epstein, Attorney-Client Privilege & Work-Product Doctrine § 1.III.E3.C (6th ed. 2017). Plaintiffs' seek to erroneously expand this narrow exception and their argument would mean that attorney drafts of client briefs and executed contracts would also suddenly no longer be afforded the protections of the attorney client privilege.  Clearly, however, such documents are privileged. *Elec. Frontier Found. v. United States*, DOJ, 2018 U.S. Dist. LEXIS 110442, at *10 (N.D. Cal. July 2, 2018) (the Court found that an attorney-prepared draft memorandum was protected by the attorney-client privilege and accordingly exempt from disclosure).

### (B) Emails with No Attorney or Attorney CC'ed:

The first two documents challenged by Plaintiffs do not involve third parties and are communications entirely between TCS employees where legal advice from counsel regarding contract negotiations is considered. Document 1 is an email between TCS employees, including several TCS attorneys, where legal issues and actions requested at the direction of counsel are discussed—there are no clients included on the email.[4]  Document 2 is similarly an email between TCS employees, including TCS Counsel, where legal issues and actions at the direction of counsel are discussed—again, there are no clients included on the email.[5] These communications relaying TCS Counsel legal advice and discussing actions requested by counsel are blatantly privileged. *AT&T Corp. v. Microsoft Corp.*, 2003 U.S. Dist. LEXIS 8710, at *7-8 (N.D. Cal. April 18, 2003).

The next two documents challenged by Plaintiffs, Documents 3 and 4, are also communications between TCS employees, including TCS Counsel. The communications involve

---

[4] Stephen Irudayaraj is a TCS Project Manager using his client-based email address; as other produced documents clearly indicate, he remains a TCS employee. *See* TCSLTD006441792.

[5] Akula Dorababu is a TCS Senior Technical Project Manager using his client-based email address; as other produced documents clearly indicate, he remains a TCS employee. *See* TCSLTD006828575.

6

discussion of legal implications and actions taken at the direction of counsel to assist with an employment law issue regarding a TCS employee and are also clearly privileged. *AT&T Corp.* 2003 U.S. Dist. LEXIS 8710, at *7-8.

The final four challenged documents in this section—Documents 5-8—are iterations of the same email discussion between TCS employees, TCS counsel, and a TCS recruiting partner, Diverse Lynx, regarding potential joint legal action against a former TCS employee and are all clearly privileged under the common interest doctrine. *United States v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005); *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990).

### (C) Emails on the Williams Log:

All four Williams Log documents challenged by Plaintiffs are privileged. Document 9 is a draft employment offer template with edits reflecting legal advice provided by TCS Counsel. Document 10 is a parent email sent by TCS Counsel to TCS employees regarding legal edits made to a draft employment offer template. Document 11 is the draft referenced in the preceding parent email and contains legal edits made by TCS Counsel. Finally, Document 12 is an email communication between TCS employees discussing legal advice received from TCS Counsel and taking actions as directed by TCS Counsel regarding TCS employment forms. All of these communications with TCS Counsel or relaying counsel legal advice and draft documents are undeniably privileged. *AT&T Corp.* 2003 U.S. Dist. LEXIS 8710, at *7-8; *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002); *Chattler v. United States*, 2009 U.S. Dist. LEXIS 43304, at *11 (N.D. Cal. May 12, 2009).

### (D) Plaintiffs' Exhibit A Challenge Issues

To circumvent this Court's four-page limit on letter briefs, Plaintiffs' have resorted to piecemeal attacks on TCS' privilege log and have filed another motion attacking the same log (the "Exhibit A Challenge"). As set forth below, and further addressed in the other letter brief, TCS respectfully requests that Plaintiffs be barred from making further challenges to TCS' log.

As to the substance Plaintiffs' "Ex. A" challenge, TCS is addressing Plaintiffs' complaints in a timely manner.  In order to address Plaintiffs' barrage of attacks, TCS has a dedicated team of attorneys working full time reviewing documents and drafting responses to the never-ending parade

of easy to lodge complaints. Plaintiffs' Exhibit A not only requests production of 13,825 parent emails, but also their corresponding attachments, which has forced TCS to review over 26,000 documents and provide a specific, written reply regarding each and every one of them. Despite the obvious burden, TCS has diligently reviewed and responded to these items by adding a column to Plaintiffs' Exhibit A spreadsheet, as requested by Plaintiffs.

Since receiving TCS' log in May 2018, Plaintiffs' have sent TCS fourteen separate "exhibits," each seeking production of documents from the log. In total, Plaintiffs' exhibit challenges have sought production of nearly 40,000 documents PLUS all attachments to those documents. As a result, TCS has been forced to expend excessive time and resources to review documents and reply to never ending demands. Not only should Plaintiffs' two motions be denied in their entirety, TCS respectfully requests that the Court put an end to Plaintiffs' piecemeal attacks and bar further motion practice over TCS' privilege log. In the alternative, while TCS has met its burden of demonstrating that the withheld documents are privileged, for the avoidance of doubt, TCS would agree to an *in camera* review of the 13 documents at issue, which TCS believes will make the unfounded nature of Plaintiffs' challenges evident to the Court.

JOINT LETTER BRIEF RE PRIVILEGE LOGS                                    No. 4:15-cv-01696-YGR (SK)

Dated:    August 13, 2018                    LOEB & LOEB LLP

                                             By: /s/ Patrick N. Downes
                                                 Patrick N. Downes
                                                 *Attorney for Tata Consultancy Services, Ltd.*


                                             KOTCHEN & LOW LLP

                                             By: /s/ Michael von Klemperer
                                                 Michael von Klemperer
                                                 *Attorney for Plaintiffs and the Class*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system.

Dated: August 13, 2018                              By: /s/Michael von Klemperer
                                                        Michael von Klemperer

JOINT LETTER BRIEF RE PRIVILEGE LOGS                    No. 4:15-cv-01696-YGR (SK)