MICHELLE M. LA MAR (SBN 163038)
mlamar@loeb.com
BERNARD R. GIVEN (SBN 134718)
bgiven@loeb.com
ERIN M. SMITH (SBN 235039)
esmith@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER SLAIGHT, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>Defendant. | Case No.: 4:15-cv-01696-YGR<br><br>**DEFENDANTS' MOTION IN LIMINE NO. 1TO EXCLUDE EVIDENCE OF TCS' FINANCES AND WEALTH**<br><br>**CLASS ACTION** |

Defendant Tata Consultancy Services, Ltd. ("TCS") hereby moves the Court for an order, *in limine*, excluding any evidence, inquiry or argument relating to TCS' finances, revenue, and profit pursuant to Fed. R. Evid. 402 and 403 and decisional authority, *see, e.g., Phillip Morris USA v. Williams*, 549 U.S. 346 (2007); *State Farm Mutual Auto Insurance Co. v. Campbell,* 538 U.S. 408 (2003); *Beck v. The Boeing Company,* 60 Fed. Appx. 38, 39-40 (9th Cir. 2003).

## 1. INTRODUCTION

Plaintiffs' August 31, 2018 preliminary exhibit list includes a number of documents regarding TCS' corporate ownership structure, taxes, finances, revenue and profit. These exhibits include annual reports, tax returns and tax related documents. *See* Ex. A[1], appended hereto. These exhibits are not relevant to plaintiffs' claim that TCS discriminates against non-South Asians in termination decisions. As such, they should be excluded as irrelevant.[2] Fed. R. Evid. 402. To the extent the documents have any relevance, the documents would be more prejudicial than probative because jurors might consider TCS' wealth, revenue and profit in deciding if there was discrimination. The two topics are not related. Thus, financial records pertaining to TCS' wealth and ownership structure are more prejudicial than probative and should be excluded. *See* Fed. R. Evid. 403.

Indeed, as the Court noted in Pre-Trial Order No. 1, the parties may not refer to the wealth of any party except in the punitive damages phase. Dkt. No. 431, p.2:14-16. The punitive damage consideration in Phase I is whether plaintiffs are entitled to such damages at all. The assessment or amount of punitive damages awardable to each class member should not be decided, if at all, until Phase II. Therefore, the portion of the Court's Pre-Trial Order No. 1 excluding references to wealth should govern.

## 2. Financial Records and TCS' Wealth Are Not Relevant to the "Availability" of Punitive Damages

Contrary to plaintiffs' "trial plan," (Dkt. No. 403-1, p. 4:5-8), the November 5, 2018 trial is *not* to determine an amount of punitive damages for the class (should plaintiffs prevail). Instead, as the Court indicated at class certification, the "availability" of punitive damages (*not* the amount) will be decided in Phase I. Dkt. No. 244, at pp. 39-40.

---

[1] To date, the exhibits are Plaintiffs' Preliminary Exhibit Nos. 879; 1405-16; 1419-29; 1441-42; 1446; 1450-52. Excerpts of each exhibit are being filed due to their size.

[2] Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable. Fed. R. Evid. 401

As to the "availability" of punitive damages, the issue presented is whether TCS knew that its actions risked violating federal law and acted with malice or reckless indifference, which is a showing beyond the level of intentional discrimination required for compensatory damages. *See Christopher v. Spectra Elec. Servs.*, 637 Fed. Appx. 383, 384 (9th Cir. 2016) (in the punitive damage context, malice and reckless indifference pertain to an employer's knowledge that it may be acting in violation of federal law). The wealth and profitability of TCS are not relevant factors regarding whether TCS acted with alleged malice or reckless indifference to a federally protected right. In other words, the issue at trial will not be the amount of any punitive award, but whether, on a class-wide basis, plaintiffs can show malice or reckless indifference.[3] Malice and reckless indifference, on the one hand, and TCS' wealth and corporate structure, on the other, are not related topics. Thus, documents and testimony showing TCS' wealth, finances and structure should be excluded.

**3. The Amount of Punitive Damages To the *Class* Should Not be Decided On a Class-Wide Basis As That Would Violate TCS' Due Process Rights**

Plaintiffs' trial plan envisions that the jurors in Phase I will determine *an amount* of punitive damages owed to the *class*. Dkt. No. 403-1, p. 4:5-8. Plaintiffs invite error. An award of punitive damages to the class, untethered to compensatory damages, denies TCS due process. *See Phillip Morris USA v. Williams*, 549 U.S. 346, 353-54 (2007)("Due Process Clause forbids the imposition of a punitive damages award to punish a defendant for injury … [to] victims who are not part of the litigation" because it denies defendant the opportunity to put on all defenses); *State Farm Mutual Auto Insurance Co. v. Campbell,* 538 U.S. 408, 425-26 (2003) (punitive damages untethered to compensatory damages violates due process); *see also Beck v. The Boeing Company,* 60 Fed. Appx. 38, 39-40 (9th

[3] While Title VII includes a cap on compensatory and punitive damages (*See Arizona v. Asarco LLC,* 773 F.3d 1050, 1057 (9th Cir. 2014), Section 1981 claims for race discrimination do not include a cap. *Swinton v. Potomac Corp.,* 270 F.3d 794, 820 (9th Cir. 2001) (the Title VII cap on punitive damages, while a useful benchmark, does not apply to Section 1981 claims).

Cir. 2003) (if punitive damages are determined on a class-wide basis, "the beneficiaries of the punitive damages award would necessarily include those class members not affected by the alleged discriminatory policy as well as those that were …. [t]his may not be done").[4]

The decision in *Ellis* is instructive. The court in *Ellis* structured the phased trial in that case such that "the aggregate amount of punitive damages owed to the class, and the share of said damages owed to *each* class member" would be decided at the conclusion of Phase II, *not* in Phase I. *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 545-46 (N.D. Cal. 2012).[5] The *Ellis* court permitted the *named* plaintiffs to prove up compensatory damages in Phase I, and had the jury in Phase I determine the availability of punitive damages, but the amount of punitive damages owed to the class *and* the share owed to *each* class member was not decided until Phase II. *Id.* A class-wide determination of punitive damages cannot be decided without knowing the full extent of compensatory damages owed to the class and only after TCS has the opportunity to put on all defenses as to the class members.

**4. The Availability of Punitive Damages Should Not be Decided in Phase I**

TCS recognizes that the Court has already ruled that the "availability" of punitive damages will be part of the November 5 trial. As the court knows, TCS disagrees and

---

[4] If the named plaintiffs contend that the amount of punitive damages awarded to each of them should be based on individualized factors regarding each respective termination, then the Court should *not* determine the "availability" of punitive damages on a class-wide basis in Phase I. On the other hand, if punitive damages are decided on a class wide basis, as plaintiffs urge, compensatory damage awards to the few named plaintiffs are *not* sufficient to determine the full scope of punitive damages to award the entire class.

[5] The Court in *Ellis* criticized on due process grounds the decision in *Dial v. E.E.O.C.,* 259 F. Supp. 2d 710 (N.D. Ill. 2003), on which the plaintiffs have relied for their position that the amount of punitive damages is a Phase I issue. *See, Ellis,* 285 F.R.D. at 541-43 (N.D. Cal. 2012). Other courts have also refused to follow *Dial. See E.E.O.C. v. Sterling Jewelers,* 788 F.Supp.2d 83, 89-90 (W.D. N.Y. 2011)(refused to follow reasoning in *Dial*); *United States v. Performance Food Group, Inc.*, 16 F. Supp. 3d 576, 580-82 (D. Md. 2014)(same). The plaintiffs reliance on *Barefield v. Chevron U.S.A., Inc.*, 1988 U.S. Dist. LEXIS 15816 (N.D. Cal. Dec. 6, 1988) and *Satchell v. FedEx Corp.*, 2005 U.S. Dist. LEXIS 37354 (N.D. Cal. Sept. 27, 2005) is equally unavailing for the same reasons. *See Ellis*, 285 F.R.D. at 541-43 (N.D. Cal. 2012)(declining to follow *Barefiled* or *Satchell*). Both *Barefield* and *Satchell* predate the U.S. Supreme Court decision in *Phillip Morris USA*, 549 U.S. at 353-54 (2007).

continues its objection here in order to preserve it. Class-wide treatment of punitive damages, particularly in Phase I, raises due process concerns, where, as here, the amount of exculpatory evidence that TCS is able to put on in a three week "pattern and practice" trial is limited. Whether TCS acted with malice or indifference to a federal right will depend on the actions of many, and the circumstances of each project release and termination (*see, e.g.*, Dkt. No. 336, Ex. I; Dkt. No. 337, at ¶ ¶ 11-14), which distinguishes this action from those cases where the availability of punitive damages was decided in Phase I. *See Phillip Morris USA*, 549 U.S. at 353-54 (2007)(due process forbids the imposition of punitive damages as to victims who are not part of the litigation because it denies defendant opportunity to put on all defenses); *Beck v. The Boeing Company*, 60 Fed. Apppx. At 39-40 (9th Cir. 2003) (punitive damages do not "flow" from a pattern and practice finding); *see also E.E.O.C. v. Sterling Jewelers,* 788 F.Supp.2d 83, 91-92 (W.D. N.Y. 2011). Here, termination decisions were made by multiple TCS employees which makes a determination of the availability of punitive damages inappropriate for class treatment in this case.

**5. CONCLUSION**

For the foregoing reasons, plaintiffs' exhibits (and related testimony) regarding TCS' wealth, finances, and corporate ownership structure, such as annual reports and tax returns, should be excluded from the November 5, Phase I trial for all purposes.

Dated: September 28, 2018

LOEB & LOEB LLP
MICHELLE M. LA MAR
BERNARD R. GIVEN
ERIN M. SMITH

By: */s/ Michelle M. La Mar*
Michelle M. La Mar
Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing were served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system on September 28, 2018.

Dated: September 28, 2018

/s/ *Michelle M. La Mar*
Michelle M. La Mar