DANIEL LOW, SBN 218387
dlow@kotchen.com
DANIEL KOTCHEN (*pro hac vice*)
dkotchen@kotchen.com
MICHAEL von KLEMPERER (*pro hac vice*)
mvk@kotchen.com
LINDSEY GRUNERT (*pro hac vice*)
lgrunert@kotchen.com
AMY ROLLER (*pro hac vice*)
aroller@kotchen.com
KOTCHEN & LOW LLP
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: 202.471.1995

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| CHRISTOPHER SLAIGHT, et al. | Case No.: 4:15-cv-01696-YGR (SK) |
| Plaintiffs, | **CLASS ACTION** |
| v. | **PLAINTIFFS' MOTION IN LIMINE NO. 9 TO EXCLUDE LAY OPINION EVIDENCE REGARDING STEREOTYPES** |
| TATA CONSULTANCY SERVICES, LIMITED, | |
| Defendant. | Trial Date: November 5, 2018
Pre-Trial Conference: October 12, 2018 |

Plaintiffs will present statistical and documentary evidence demonstrating that TCS has a company-wide pattern or practice of discriminating against non-South Asian and non-Indian employees in allocation and termination decisions. In response, TCS seeks to offer lay opinion testimony—based upon conjecture and stereotypes—that South Asian or Indian employees generally possess certain qualifications that non-South Asian and non-Indian employees generally lack. Any lay opinion testimony based on stereotypical impressions of employees of particular races or national origins violates Federal Rule of Evidence 701 and should be excluded.

## I. BACKGROUND

TCS's "Leadership Team" devised a "Leadership Directive" that expats should be utilized to the maximum extent. Pursuant to this directive, vast numbers of TCS's requisitions, and emails discussing open positions, express an explicit preference for "expats only," "expats preferred," or the like. TCS has asserted that prioritizing expats is permissible because being Indian is a Bona Fide Occupational Qualification ("BFOQ") for certain U.S. positions at TCS. *See* TCS's Statement of the Elements of Proof in Phase One § F (Sept. 6 Draft) (Ex. 1).

TCS's President, Surya Kant, and Vice President and Head of Human Resources, Narasimhan Srinivasan, both of whom appear on TCS's witness list (Ex. 2 at 2, 5), testified that preferring Indian expats was appropriate given the expats' superiority over locals. TCS now purports that expats are better able to execute its Global Network Delivery Model—the business model TCS utilizes on essentially every project in the United States. Srinivasan Dep. Tr. 71:12-15, 74:23-75:13 (May 11, 2018) (Ex. 3) (Q: "So are there certain positions that are better filled by ex-pats?" A: "If there is a global delivery model involved, then yes."); *see also* Kant Dep. Tr. 123:24-124:10 (Apr. 30, 2018) (Ex. 4) (testifying that a team in U.S. would be requesting only visa-ready candidates for positions because project involved "global network delivery model"). Mr. Srinivasan posited three frivolous reasons for why expats are generally superior to locals. First, expats are purportedly more familiar with TCS's processes and methodologies than locals. Srinivasan Dep. Tr. 72:2-12, 73:2-22 (Ex. 3); *see also* Kant Dep. Tr. 141:11-16 (Ex. 4) (offering similar assessment on the superiority of expats over locals). Second, unlike locals, expats are "used to working with different time zones."

1

Srinivasan Dep. Tr. 72:12-13, 73:23-74:6 (Ex. 3). Third, expats are superior to locals because expats are "used to" moving back and forth between the U.S. and India. *Id.* 72:15-21, 74:8-22.

TCS's Statement of the Elements of Proof and Witness List indicate an intention to offer comparable testimony at trial from Mr. Kant, Mr. Srinivasan, and others. *See* TCS Statement of the Elements of Proof in Phase One § F (Sept. 6 Draft) (Ex. 1); TCS's Witness List at 1-2, 5 (Ex. 2) (describing testimony regarding TCS's staffing policies, practices, and business model from Mr. Kant, Mr. Srinivasan, Ms. Gwalani, Mr. Seetharaman, Ms. Smalley, Ms. Blandford, and Mr. Ganapathy).

## II. LEGAL STANDARD

Under Rule 701, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

## III. ANALYSIS

TCS cannot rely on stereotypical views of the superiority of expats over locals to rebut Plaintiffs' *prima facie* case or to support its defenses, as any such testimony would (A) not be based on firsthand knowledge, (B) would not be relevant in Phase One, and (C) would properly be the subject of expert testimony to the extent it would be admissible at all.

### A. The Proposed Testimony Is Not Based on the Witnesses' Perceptions.

Any testimony based on a stereotypical belief that individuals of a certain race or national origin (*i.e.*, expats) are superior to those of another race or national origin (*i.e.* locals) in qualifications, skill, or otherwise would be pure speculation and not based on any firsthand knowledge. No TCS witness is familiar with the abilities of entire classes of individuals, and TCS has offered no expert testimony on the subject. Unlike experts, lay witnesses may only testify to opinions and inferences "rationally based on witness's perception," Fed. R. Evid. 701(a), which requires the proponent to satisfy the personal knowledge requirement of Rule 602.[1] *United States v. Lopez*, 762 F.3d 852, 864-

---

[1] "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602.

2

65 (9th Cir. 2014) (explaining that "the personal knowledge requirement under Rule 602 is the same as that under Rule 701(a)" and holding that district court clearly erred by admitting lay opinion testimony that failed to satisfy the personal knowledge requirement of Rule 602). This requires that lay opinion testimony be "'predicated upon concrete facts within [the witnesses'] own observation and recollection—that is, facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts.'" *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir. 1982) (quoting *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 847-48 (10th Cir. 1979)).

Moreover, a lay witness cannot testify to generalities. Rule 701 prefers that lay witnesses "testify in a specific and particular vein . . . and not in generalities." CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 7:2 (3d ed. 2007). Generalizations about the capabilities of employees of a particular national origin or race that are based on observations from a distance, second-hand experience, or limited experience with a fraction of TCS's 32,000+ U.S.-based employees (or hundreds of thousands of foreign employees) are barred by Rule 701. The Rule prohibits this kind of testimony based on "amateur psychoanalysis." *Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 659 (7th Cir. 1991).

**B.     The Testimony Is Not Helpful to Clearly Understanding the Witness's Testimony or to Determining a Fact in Issue.**

Phase One will determine whether TCS engages in a pattern or practice of discrimination, which Plaintiffs will prove through direct evidence of a discriminatory scheme and overwhelming statistical evidence of a discriminatory result. "In such cases the employer's burden is to provide a nondiscriminatory explanation for the apparently discriminatory result." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360 n.46 (1977). "[T]o meet its rebuttal burden, the employer must demonstrate that the plaintiffs' statistical evidence 'is either inaccurate or insignificant.'" *Beck v. Boeing*, 60 F. App'x 38, 39 (9th Cir. 2003) (quoting *Teamsters*, 431 U.S. at 360). Testimony based on stereotypical views on the relative skills of certain groups of individuals is itself discriminatory, and may not be presented to rebut Plaintiffs' *prima facie* case. *See City of L.A. Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 (1978) (noting in sex discrimination case that "[i]t is now well recognized that employment decisions cannot be predicated on mere 'stereotyped' impressions about the characteristics of males or females").

3

Nor may TCS introduce such stereotypical views to support its BFOQ defense. *Fernandez v. Wynn Oil Co.*, 653 F.2d 1273, 1276 (9th Cir. 1981) ("stereotypic impressions of male and female roles do not qualify gender as a BFOQ");[2] *see also Breiner v. Nev. Dep't of Corr.*, 610 F.3d 1202, 1215-16 (9th Cir. 2010) (rejecting BFOQ defense and explaining that employment decision "'based on assumptions of the comparative employment characteristics of' protected class "'in general' will not support a BFOQ") (quoting 29 C.F.R. § 1604.2(a)(1)); *Torres v. Wis. Dept' of Health & Soc. Servs.*, 859 F.2d 1523, 1527 (7th Cir. 1988) ("'Myths and purely habitual assumptions about a woman's [or a man's] inability to perform certain kinds of work are no longer acceptable reasons for refusing to employ qualified individuals'") (quoting *Manhart*, 435 U.S. at 707).

## C. The Testimony Is Based on Specialized Knowledge Within the Scope of Rule 702,

TCS should not be permitted to explain away the statistical disparity in terminations from the bench by offering lay opinion testimony that expats' superiority as employees accounts for the disparity. Rule 701(c) was drafted "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing," and to "ensure[] that a party will not evade the expert witness disclosure requirements set forth in [Fed. R. Civ. P.] 26." Fed. R. Evid. 701 Advisory Committee Note (2000 amendments). If TCS wanted to counter Plaintiffs' statistical evidence by offering an alternative explanation of the statistical skew, the company should have obtained expert testimony to that effect. However, TCS failed to do so. *See* Pls.' Mot. in Limine No. 2 (discussing limited scope of TCS's experts' analyses). The Court should reject TCS's last-ditched effort to subvert Fed. R. Civ. P. 26(a)'s disclosure requirements and Fed. R. Evid. 702's reliability requirements by offering unsubstantiated lay opinion testimony setting forth an alternative explanation of Plaintiffs' statistics.

## IV. CONCLUSION

Accordingly, any testimony based on stereotypical views should be excluded.

---

[2] "Nor does stereotyped customer preference justify a … discriminatory practice." *Id.* at 1276-77.

4

| | | |
|---|---|---|
| Dated: September 28, 2018 | | KOTCHEN & LOW LLP |
| | | By: /s/ Daniel Kotchen |
| | | Daniel Low (SBN 218387) |
| | | Daniel Kotchen (*pro hac vice*) |
| | | Michael von Klemperer (*pro hac vice*) |
| | | Lindsey Grunert (*pro hac vice*) |
| | | Amy Roller (*pro hac vice*) |
| | | KOTCHEN & LOW LLP |

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system.

Dated: September 28, 2018                    By: /s/ Daniel Kotchen
                                                                    Daniel Kotchen