MICHELLE M. LA MAR (SBN 163038)
mlamar@loeb.com
BERNARD R. GIVEN (SBN 134718)
bgiven@loeb.com
ERIN M. SMITH (SBN 235039)
esmith@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER SLAIGHT, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>Defendant. | Case No.: 4:15-cv-01696-YGR (SK)<br><br>Assigned to Hon. Yvonne Gonzalez Rogers<br><br>**NOTICE OF DEFENDANT TATA CONSULTANCY SERVICES, LTD.'S OBJECTIONS TO SLIDES 2, 13 AND 14 OF PLAINTIFFS' OPENING POWERPOINT PRESENTATION; AND TCS' OPPOSITION TO PLAINTIFFS' OBJECTIONS TO TCS' OPENING DEMONSTRATIVE EXHIBITS**<br><br>**CLASS ACTION** |

.

## TCS' OBJECTIONS TO PLAINTIFFS' OPENING SLIDES 2, 13 AND 14

TCS hereby objects to three (of 21) PowerPoint slides that plaintiffs intend to present during opening statements. The three slides include information regarding TCS' non-U.S. operations and should be excluded as irrelevant. Even if the slides had some relevance, they are highly misleading and prejudicial. The prejudice far outweighs any probative value. Fed. R. Evid. 401, and 403.

The objectionable slides are appended hereto as Exs. A (slide 2) and B (slides 13, and 14).

### I. HEADSHOTS OF TCS' MANAGEMENT TEAM IN INDIA (SLIDE 2) ARE NOT RELEVANT TO PLAINTIFFS' ALLEGATIONS OF DISCRIMINATION IN THE U.S.

Plaintiffs intend to show the jury during opening statements the headshots of TCS' management team, most of whom live and work in India (or outside the U.S.). Ex. A hereto. TCS' Indian-based management team, however, has nothing whatever to do with plaintiffs' allegations that TCS engages in a pattern and practice of discrimination in terminating U.S.- based employees. With the exception of Mr. Kant, none of the management team on slide 2 (Ex. A) has been deposed. Nor have plaintiffs provided any evidence linking any of the management team to an issue in this case. Mr. Kant and Mr. Srinivasan, who are witnesses in this case, are pictured in slide 3 (Ex. C.) TCS does ***not*** object to plaintiffs' slide 3.

As this Court stated at the October 26 pre-trial conference: "I don't care what they are doing in China, or Brazil, or India. It bears no relationship to what is happening here in America." Dkt. No. 625, at pp. 19:25 – 20:2. TCS is a global company, but its global operations are not on trial and its Indian-based management team is totally irrelevant to this lawsuit.

Plaintiffs hope to mislead the jury into believing that the 15 TCS managers depicted in slide 2 discriminate against U.S. employees, a proposition for which they offer no proof. Indeed, slide 2 may be viewed as an attempt to play into any prejudices a juror might have

about foreigners or men of Indian race. Thus, it is highly prejudicial, with no (or little) probative value. Slide 2 should be excluded. Fed. R. Evid. 401, 403.

**II. PLAINTIFFS STATISTICS REGARDING TCS' NON-U.S. TERMINATIONS (Slide 14) ARE NOT RELEVANT OR ACCURATE**

Slide 14 (Ex. B) in plaintiffs' opening PowerPoint slide deck includes information regarding TCS' alleged terminations "from the bench" that occurred "*outside the U.S.*" But, as this Court recently made clear: "I don't care what they are doing in China, or Brazil, or India. It bears no relationship to what is happening here in America." Dkt. No. 625, at pp. 19:25 – 20:2. Slide 14 should be excluded because it is irrelevant to plaintiffs' allegations in this case. Fed. R. Evid. 401. The information in Slide 14 is also inaccurate, as set forth below.

During the parties' meeting of counsel, plaintiffs took the position that TCS put at issue terminations outside the U.S. by arguing that plaintiffs' expert, Dr. Neumark, erred because he did not account for terminations in India. Therefore, plaintiffs reason, non-U.S. terminations are relevant. Plaintiffs misinterpret TCS' argument. TCS contends that Dr. Neumark should not count existing TCS employees transferred to the U.S. as being "hired" when they arrive in America, but refuse to count those same employees as being terminated when they are transferred back to India (or their home country). Dr. Neumark, and only Dr. Neumark, believes that determining whether these returning employees are terminated in India is relevant to this case. In contrast, TCS has always maintained Dr. Neumark's analysis of termination rates in India misses the point. India is an entirely different labor market, with an entirely different set of available job openings. Thus, the analysis is not whether TCS employees returning to India are terminated there, but whether it is fair and reasonable to count transferred employees as being hired when they arrive in the U.S, but fail to count those same employees as being terminated from the U.S. labor market when they return to India.

Because TCS maintains, and the Court has found, that TCS' non-U.S. operations are irrelevant, Slide 14 (Ex. B) should be excluded.

## III. PLAINTIFFS' STATISTICS REGARDING U.S. TERMINATIONS (Slides 13 and 14) IS UNDISCLOSED EXPERT TESTIMONY AND NOT CONSISTENT WITH THE LISTED SOURCE DATA

Slides 13 and 14 (Ex. B) also include data regarding TCS' involuntary terminations in the U.S. The source of the data in slides 13 and 14 is listed as a "chart" of involuntary terminations prepared by plaintiffs' counsel. The chart is plaintiffs' trial exhibit no. 1199, appended hereto as Ex. D (the "Chart"). TCS timely objected to the Chart when it was first listed on plaintiffs' exhibit list. The Chart appears to be based on data from the expert report of Dr. Neumark (*see* Neumark chart, Ex. E, appended hereto), but the data in the Chart does not match the data in Dr. Neumark's report. In other words, the data in the Chart (Ex. D) is not consistent with the data in Dr. Neumark's report (Ex. E).

Plaintiffs' originally listed only one source– TCSPROD000002430, for the Chart (Ex. F hereto is the original "Chart" exchanged by plaintiffs), but when that source was questioned, plaintiffs' revised the source of the Chart to include the source data at Ex. D. It appears that plaintiffs used Dr. Neumark to somehow update the information in his expert report (Ex. E), so it could include that information in the Chart (Ex. D) and thereby create Slides 13 and 14 based on the Chart. But, plaintiffs did not serve a supplemental expert report with this new updated information. Moreover, TCS contends the data in the Chart is not consistent with TCS' own data at TCSPROD000002430.[1] Had plaintiffs timely disclosed the information in the Chart during the expert phase, TCS would have objected, or at the least, been able to provide an expert to rebut. It is now too late.[2]

---

[1] TCS' counsel will have an electronic copy of TCSPROD000002430 at the hearing. It is also plaintiffs' trial exhibit no. 645.

[2] As late as November 1, plaintiffs again shifted positions regarding the source of the data in its Slides 13 and 14. (See Ex. H hereto.) TCS can never be certain of the "source" of information in plaintiffs demonstratives because plaintiffs revise sources and change exhibit numbers in response to each TCS challenge.

**TCS' OPPOSITION TO PLAINTIFFS' OBJECTIONS TO TCS' OPENING SLIDES 2-6 (TCS' REASONS FOR TERMINATING EMPLOYEES)**

Plaintiffs object to TCS' opening slide nos. 2-6 (appended hereto as Ex. G)[3]. TCS' opening slides 2-6 provide the reasons that TCS involuntarily terminated or released potential class members to the bench. Plaintiffs' contend that Pre-trial Order No. 6 (Dkt. No. 605) excluded these slides. But, Pre-trial Order No. 6 does not address these slides at all. Plaintiffs repeat the same argument they raised in the Joint Statement of Issues (Dkt. No. 613, p. 1), which was submitted prior to the October 26 pre-trial conference. As the Court explained at the October 26 pre-trial conference:

> MY VIEW ON THIS IS THAT IF THE LAW PROVIDES THAT A PLAINTIFF CAN INTRODUCE ANECDOTAL EVIDENCE IN ADDITION TO STATISTICAL EVIDENCE TO PROVE THEIR CASE, THE SAME RULE SHOULD BE TRUE FOR A DEFENDANT.
>
> *****
>
> BUT THE BEST I HAVE AT THIS POINT IS MY VIEW THAT EVIDENTIARY ISSUES NEED TO BE FAIR ON BOTH SIDES. AND THE SAME RULES SHOULD APPLY EXCEPT IN UNIQUE CIRCUMSTANCES, OF WHICH I DO NOT FIND THIS IS ONE, WHERE, IF I'M ALLOWING IN ANECDOTAL EVIDENCE FROM ONE SIDE, I'M GOING TO ALLOW IT IN FROM THE OTHER SIDE.
>
> ******
>
> **THE TERMINATION FORMS I DON'T BELIEVE ARE APPROPRIATE EVIDENCE FOR THE REASONS I PUT FORTH IN MY ORDER. THAT DOESN'T MEAN THAT EVIDENCE OF NONDISCRIMINATORY INTENT OR MOTIVE IS NOT ALLOWED. THAT IS NOT WHAT I SAID. WHAT I SAID WAS THAT THE SPECIFIC ISSUE IN FRONT OF ME, I.E., THE TERMINATION FORMS, DO NOT CONSTITUTE ADMISSIBLE EVIDENCE. THOSE ARE TWO SEPARATE ISSUES. YOU ALL SEEM TO FORGET REPEATEDLY THAT I**

---

[3] TCS exchanged two sets of opening slides as reflected in Ex. G. The first set includes the evidence TCS intends to offer at trial and the second set does not reference the actual evidence. *See* Ex. G hereto. The second set was exchanged as a back-up in case the Court does not allow the jury to view evidence during opening statements.

**AM GOING TO RULE ON THE ISSUE IN FRONT OF ME. ALL RIGHT?**

Dkt. No. 625, pp. 30:12-15; 30:23 – 31:3; and 31:4-12 (emphasis added).

The Court's Pre-Trial Order No. 8 is in accord. Dkt. No. 622, at p. 2, ¶ 4 (notwithstanding the Order deeming TCS' termination files inadmissible, "[i]in the interest of fairness, the Court notes that because plaintiffs are permitted to offer into evidence anecdotal information, defendant will be allowed to do the same for purposes of rebutting plaintiffs' *prima facie* case.")

TCS intends to offer the testimony of its HR personnel regarding the reasons that potential class members were released from a project (to the bench) and/or eventually terminated. (These reasons are related.) For example, Mr. Ashok Seetharaman signed off on most of the terminations at issue in this case and, therefore, has first-hand knowledge regarding TCS' motive or intent in terminating class members. Mr. Seetharaman is familiar with the termination forms which include data regarding TCS' reason for terminating 845 employees "from the bench." He approved (at the time) most of the 845 terminations and is familiar with each termination form (and its underlying data). The termination forms and underlying data form the basis of slides 2-6. To the extent necessary, other HR personnel, such as Ms. Blandford and Ms. Smalley will testify regarding the reasons that TCS terminated various employees.

Plaintiffs contend the data in slides 2-6 is somehow inaccurate (offering no explanation as of yet) and/or that TCS did not accurately review the termination forms in arriving at the information in the slides. TCS contends otherwise, making this an issue that goes to weight, and not to admissibility (or to their use during opening statements).[4] In Pre-trial Order No. 6 (Dkt. No. 605), the Court indicated that TCS can show a termination form template and let the jury know how much data is included in the forms. As the Court

[4] Plaintiffs may argue that the related termination form summary is not accurate, but the summary includes ONLY quotes directly from the termination forms. If the summary left off information which plaintiffs contend should fairly be included, they can cross examine.

made clear, TCS will be permitted to testify regarding its motive for terminating employees, which is precisely the information in slides 2-6. Plaintiffs will have ample opportunity to cross-examine TCS' witnesses on the accuracy of this testimony.

Plaintiffs cannot limit the trial to only evidence that they contend supports their claims and exclude all evidence of TCS' non-discriminatory intent or motive *See Int'l Bhd. of Teamsters v. United States,* 431 U.S. 325, 360, fn. 46 (1977)("We do not mean to suggest that there are any particular limits on the type of evidence an employer may use" to rebut the serious allegation of intentional discrimination based on race); *see also Spaulding v. Univ. of Wash.,* 740 F.2d 686, 700 (9th Cir. 1984) ("disparate treatment cases necessarily require direct or circumstantial proof of discriminatory motive. …"). Here, in summary fashion, TCS intends to have a witness (or witnesses) testify as to the reasons class members were unallocated (benched) and eventually terminated. The testimony is not individualized, but class wide. To rebut a claim that an alleged policy resulted in intentional discrimination, "the employer's burden is to provide a non-discriminatory explanation for the apparently discriminating result." *Teamsters,* 431 U.S. 324, 360, fn. 46 This evidence is found in slides 2-6.

Plaintiffs' argument appears to be that they may dictate what rebuttal evidence TCS may introduce at trial by carefully selecting only those class members to testify that plaintiffs believe present their best case. As a result, plaintiffs are attempting to unfairly limit the evidence TCS may offer to rebut a claim of class-wide intentional discrimination. By cherry picking witnesses, plaintiffs are doing exactly what the U.S. Supreme Court has forbidden. *Id.* Plaintiffs' approach is patently unfair. It is not and should not be the law. Plaintiffs misuse the data in TCS' files in an attempt to show intentional discrimination through statistics. TCS should not be precluded from offering the same type of summary data in rebuttal.

Dated: November 1, 2018

LOEB & LOEB LLP
MICHELLE M. LA MAR
BERNARD R. GIVEN
ERIN M. SMITH

By: */s/Michelle M. La Mar*
Michelle M. La Mar
Attorneys for Defendant
TATA CONSULTANCY SERVICES, LTD.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing were served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system on November 1, 2018.

Dated: November 1, 2018

*/s/ Michelle M. La Mar*
Michelle M. La Mar