DANIEL LOW, SBN 218387
dlow@kotchen.com
DANIEL KOTCHEN (*pro hac vice*)
dkotchen@kotchen.com
MICHAEL von KLEMPERER (*pro hac vice*)
MvK@kotchen.com
LINDSEY GRUNERT (*pro hac vice*)
lgrunert@kotchen.com
AMY ROLLER (*pro hac vice*)
aroller@kotchen.com
KOTCHEN & LOW LLP
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: 202.471.1995

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| CHRISTOPHER SLAIGHT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TATA CONSULTANCY SERVICES, LTD., <br><br> Defendant. | Case No. 4:15-cv-01696-YGR (SK) <br><br> **CLASS ACTION** <br><br> **PHASE II PROCEDURES** |

# PHASE II PROCEDURES

If Plaintiffs prevail in Phase I of this case, Tata Consultancy Services, Ltd. ("TCS") will be a "proved wrongdoer" and the case will proceed to Phase II. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 359 n.45 (1977). In Phase II, the Court should appoint one or more special masters to oversee a streamlined process to collect information and resolve the claims of approximately 1,000 class members.

Under the *Teamsters* framework, when "an employer 'fails to rebut the inference that arises from the [] prima facie case,' the analysis proceeds to the Remedial Phase where plaintiffs are entitled an 'inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy.'" *Buchanan v. Tata Consultancy Servs.*, No. 15-cv-01696-YGR, 2017 U.S. Dist. LEXIS 212170, at *34 (N.D. Cal. Dec. 27, 2017) (quoting *Teamsters* 431 U.S. at 361; *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1106-07 n.7 (10th Cir. 2001)). "When plaintiffs seek individual relief such as monetary damages, 'a district court must usually conduct additional proceedings . . . to determine the scope of individual relief.'" *Id.* (citations omitted). During Phase II, TCS can assert individual defenses, but bears the burden to show that it would have terminated the class member anyway, in the absence of discrimination. *Id.*

## A. The Court Should Appoint One or More Special Masters

Plaintiffs propose that the Court appoint one or more special masters to oversee remedial proceedings, resolve class members' individual claims, and award damages. "[P]erhaps the most common method, approved by courts in most circuits, is that the trial court refers the determination and distribution of damages claims to a magistrate judge or to a special master in accordance with Rule 53." 4 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 11:9 & n.9 (5th ed.) (collecting cases); *see also Kraszewski v. State Farm Gen. Ins. Co.*, 912 F.2d 1182, 1183 (9th Cir. 1990) (noting that district court appointed seven special masters to adjudicate individual hearings); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004) ("While each plaintiff must prove some individualized factual issues to support his RICO claim, [t]here are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including:

1

'appointing a magistrate judge or special master to preside over individual damages proceedings'") (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001)); *Berger v. Iron Works Reinforce Rodmen*, 170 F.3d 1111, 1117 (D.C. Cir. 1999) (one special master adjudicated claims of about 100 claimants); *In re Live Concert Antitrust Litigation*, 247 F.R.D. 98, 148–49 (C.D. Cal. 2007).[1]

If TCS agrees, the special master(s) can be appointed by consent under Fed. R. Civ. P. 53(a)(1)(A). If TCS disagrees, Plaintiffs believe both exceptional conditions (the number of claims to be resolved) and the complexity of damages calculations justify the appointment. *See* Fed. R. Civ. P. 53(a)(1)(B)(i)-(ii). The appointment order must provide for some method to appeal the special masters' decisions to the Court. *See Stauble v. Warrob*, 977 F.2d 690, 696 (1st Cir. 1992). Because TCS will have already been found to have engaged in a pattern or practice of discrimination, it should be responsible for paying the special master costs in Phase II.

## B. Discovery Should Be Streamlined and Adapted to the Disputed Issues

Plaintiffs propose that the special master(s) collect three categories of information. First, each class member should provide a verified claims form with core facts regarding class membership (their benching, race, and national origin), information on their employment (*e.g.*, positions filled and sought), and damages suffered. *See Spears v. First Am. eAppraiseIT*, No. 5:08-cv-00868-RMW, 2014 U.S. Dist. LEXIS 130521, at *3 (N.D. Cal. Sept. 16, 2014) (adopting verified claims approach). The Manual for Complex Litigation supports this approach. Manual for Complex Litigation (Fourth) § 32.45 ("consider identifying those entitled to relief before the parties proceed with discovery and possible trial regarding the amount of damages. One approach is to require class members to complete information forms disclosing the critical facts on which their claims of individual injury is based"). The verified claims forms should be distributed to class members along with the notice concerning the Phase I verdict.

---

[1] *See also* Manual for Complex Litigation (Fourth) § 11.52; Fed. Judicial Ctr., Masters' Incidence and Activity: Report to the Judicial Conference's Advisory Committee on Civil Rules and Its Subcommittee on Special Masters (2000); Douglas L. Parker, *Escape from the Quagmire: A Reconsideration of the Role of Teamsters Hearings in Title VII Litigation*, 10 BERKELEY J. EMP. & LABOR L. 171 (1988).

2

Second, TCS should submit all of its allocation and terminations data, which the special master(s) will analyze and develop a methodology for determining whether TCS placed Indian or South Asian employees in positions to which a class member could have been placed, taking into account any relocation restrictions.

Third, with respect to any class member whose entitlement to relief is disputed, TCS should submit contemporaneous documentation to the special master (not the litigation-driven termination forms) that forms the basis of TCS's claim that the class member would have been terminated even in absence of discrimination.

Should the Special Master determine that any additional documentation or information is required, he or she should be empowered to request such information.

## C.     The Special Master Can Resolve Issues Based on Data and Written Documentation.

Plaintiffs believe that the foregoing information will be sufficient to resolve most individual claims, in light of the presumption that any given employment decision was made pursuant to TCS's pattern or practice of discrimination. If the special master is not satisfied, based on his review of the record, that an individual class member was the victim of discrimination, the special master(s) would then convene a streamlined hearing—by phone or videoconference—to resolve the particular disputed issue. *See* 4 RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 11:9 & n.10 ("individual damages may be assessed easily for many class members, with the remaining class members being provided the opportunity for a streamlined trial."); Manual for Complex Litigation (Fourth) § 32.45. Once liability has been established, backpay can be determined based on income documentation and affidavits. *See* Manual for Complex Litigation (Fourth) § 32.45. A method for quantifying the value of class member's emotional distressed can be determined after consultation with the special master(s).

A similar procedure was employed in *Kyriazi v. W. Elec. Co.*, 465 F. Supp. 1141 (D.N.J. 1979). There, three special masters (paid by defendant) were appointed to oversee Phase II proceedings for 10,000 class members. *Id.* at 1143, 1148. Following Phase I, the defendant was ordered to provide notice and a proof of claim form to each class member. *Id.* at 1144. These forms

3

were the only evidence each class member was required to present to establish their claims (upon which the burden shifted to the defendant to defeat their claims). *Id.* The court then established the formula to be used by the masters in calculating damages and resolving other issues. *Id.* at 1145-46.

**D.      Plaintiffs Would Be Amenable to Some Other Reasonable Agreed Upon Structure**

"[I]n other situations, the damage assessment process is, by agreement of the parties, undertaken through some alternative dispute resolution mechanism, such as an arbitrator or mediator." 4 RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 11:9 & n.11. Plaintiffs are open to discussing such options with TCS.

| | | |
|---|---|---|
| 1 | Dated: November 16, 2018 | Respectfully submitted, |
| 2 | | By: /s/Daniel Kotchen |
| 3 | | Daniel Kotchen (*pro hac vice*)<br>Daniel Low (SBN 218387) |
| 4 | | Michael von Klemperer (*pro hac vice*)<br>Lindsey Grunert (*pro hac vice*) |
| 5 | | Amy Roller (*pro hac vice*)<br>KOTCHEN & LOW LLP |
| 6 | | *Attorneys for Plaintiffs and the Class* |

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system.

Dated: November 16, 2018                                            By: /s/Daniel Kotchen
                                                                                            Daniel Kotchen