DANIEL LOW, SBN 218387
dlow@kotchen.com
DANIEL KOTCHEN (*pro hac vice*)
dkotchen@kotchen.com
MICHAEL von KLEMPERER (*pro hac vice*)
MvK@kotchen.com
LINDSEY GRUNERT (*pro hac vice*)
lgrunert@kotchen.com
AMY ROLLER (*pro hac vice*)
aroller@kotchen.com
KOTCHEN & LOW LLP
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: 202.471.1995

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER SLAIGHT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TATA CONSULTANCY SERVICES, LTD., <br><br> Defendant. | Case No. 4:15-cv-01696-YGR (SK) <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' PROPOSED PHASE II PROCEDURES: SUPPLEMENTAL BRIEF ON SPECIAL MASTER FEES** |

# **PLAINTIFFS' PROPOSED PHASE II PROCEDURES: SPECIAL MASTER FEES**

If a special master is appointed for Phase II, one-hundred percent of those fees should be apportioned to TCS.

## **I. BACKGROUND**

The parties agree that, if this case proceeds to Phase II, the Court should appoint a special master to oversee remedial proceedings, resolve class members' individual claims, and award damages.[1] *See* Nov. 16 Trial Tr. at 1589:23-24 (Dkt. #663). In Phase II, the master will administer a streamlined process to collect information and resolve the claims of approximately 1,000 class members.

## **II. LEGAL STANDARD**

Rule 53 requires courts to "fix the master's compensation on the basis and terms stated in the appointing order." Fed. R. Civ. P. 53(g)(1). Generally, "[t]he [master's] compensation must be paid . . . by a party or parties." Fed. R. Civ. P. 53(g)(2). "The court must allocate payment among the parties after considering [1] the nature and amount of the controversy, [2] the parties' means, and [3] the extent to which any party is more responsible than other parties for the reference to a master." Fed. R. Civ. P. 53(g)(3).

District courts have the discretion to apportion the whole expense to one party. *See* Fed. R. Civ. P. 53(g)(2); *see also K-2 Ski Co. v. Head Ski Co.*, 506 F.2d 471, 477 (9th Cir. 1974) (apportioning one-hundred percent of master's fees to defendant); *Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 546 (9th Cir. 1987) (apportioning one-hundred percent of master's fees for overseeing defendant's compliance with a preliminary injunction); *Aird v. Ford Motor Co.*, 86 F.3d

---

[1] Even if TSC did not consent, the Court can appoint the master without a showing of exceptional circumstances. *White v. Gen. Servs. Admin.*, 652 F.2d 913, 915 (9th Cir. 1981) (holding that appointing a special master does not require a showing of extraordinary circumstances in Title VII cases because 42 U.S.C. § 2000e-5(f)(5) waives the requirement).

216, 221 (D.C. Cir. 1996) ("Rule 53 vests the district court with authority to allocate master's fees in favor of the prevailing party.").

### III. ANALYSIS

If this case proceeds to Phase II, TCS will be a proven wrongdoer and Plaintiffs will be proven victims of their discrimination. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 359 n.45 (1977) (after Phase I, employer is a "proved wrongdoer"). Accordingly, the special master appointment order should preliminarily apportion one-hundred percent of the master's fees and expenses to TCS in light of: (1) the broad remedial nature of federal civil rights laws; (2) TCS's vastly greater means; (3) TCS's discriminatory practices, which necessitate the master's appointment; and (4) because TCS will eventually be required to cover any share apportioned to Plaintiffs, pursuant to § 1988 and Rule 54(d).

**(1) Nature of the Dispute**. When apportioning the master's fees, "[t]he nature of the dispute . . . may be important—parties pursuing matters of public interest, for example, may deserve special protection." Fed. R. Civ. P. 53, Advisory Comm. Note to 2003 Amendment; *see also Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, No. 2:11-cv-03471, 2015 U.S. Dist. LEXIS 86909, at *6 (E.D. Cal. July 2, 2015) (apportioning one-hundred percent of master's fee to defendant where "plaintiffs are nonprofit associations [pursuing] a free appropriate public education on behalf of their members' children with disabilities").

Here, Plaintiffs' are pursuing race and national origin discrimination claims under federal civil rights statutes with broad remedial purposes, Title VII and § 1981. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights."); *Corder v. Gates*, 947 F.2d 374, 377 (9th Cir. 1991) ("Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large"). The nature of Plaintiffs' claims strongly support apportioning the master's fees to TCS. See *Christiansburg Garment Co. v. EEOC*, 434 U.S.

2
Pls.' Proposed Phase II Procedures, Supp. Br. on Master's Fees   No. 4:15-cv-01696-YGR (SK)

412, 420 (1978) ("Congress desired to 'make it easier for a plaintiff of limited means to bring a meritorious suit'").

**(2) Parties' Relative Means**. The stark disparity between the parties' means favors apportionment of fees to TCS. TCS is a multi-national corporation that generated $18.6 billion in revenue and $3.9 billion in profit (after taxes) last year,[2] (with comparable revenues and profits in prior years). Plaintiffs are a class of individuals who lost their jobs as a result of TCS's discriminatory scheme, many enduring prolonged periods of unemployment or under-employment. In fact, the Supreme Court has stated that, "victims [of discrimination] ordinarily cannot afford to purchase legal services at the rates set by the private market," which is why Congress provided for fee-shifting in civil rights cases. *Riverside v. Rivera*, 477 U.S. 561, 576 (1986). Accordingly, Plaintiffs would incur undue hardship unless TCS bears the full fees of the special master.[3]

**(3) Responsibility for Appointment**. TCS should bear the fees because the conduct necessitating a master's appointment is solely attributable to TCS—not its victims. This case will only proceed to Phase II if Plaintiffs prove that TCS maintained a pattern or practice of discriminating against class members. *See Teamsters*, 431 U.S. at 359 n.45 (after Phase I, employer is a "proved wrongdoer"). The master's task—making individualized damages determinations—directly results from that wrongful conduct, which continues to this day. *See United States v. High Plains Livestock, LLC*, No. 1:15-cv-00680, 2018 U.S. Dist. LEXIS 135449, at *17 (D.N.M. Aug. 9, 2018) ("a special master was appointed, not because the United States filed a motion, but because the Defendants' conduct forming the basis for that motion was a continuing risk to its customers and the public"). The large volume of damages determinations is also attributable to TCS—if the company had not

---

[2] *See* TCS 2017-2018 Annual Report, at 111, lines I & VII (Apr. 19, 2018) (revenue of 123,104 crore ₹ and total profit of 25,880 crore ₹), https://goo.gl/GswteJ. Rupees were converted to dollars using the exchange rate effective at the close of TCS's fiscal year. *See* U.S. FED. RESERVE, *Historical Rates for the Indian Rupee* at 30-Mar-18 (Nov. 19, 2018), https://goo.gl/xnrWxu.

[3] Nor can Plaintiffs' counsel bear the cost. Counsel has been representing the class for nearly four years on a contingent-fee basis, during which time they have received no compensation or reimbursement for expenses. *See Morgan Hill*, 2015 U.S. Dist. LEXIS 86909, at *6 ("plaintiffs' counsel represents they 'are comparably restrained in their ability to finance the services of a special master as they are presently receiving no compensation for their time or reimbursement of costs.'").

maintained such a wide-ranging, long-lasting discriminatory scheme affecting so many employees, this case would not require a master.

**(4) Presumptively Recoverable Costs**. In addition to the three factors laid out under Rule 53, the Court should preliminarily apportion the fees to TCS because Plaintiffs will ultimately be entitled to reimbursement for the masters' costs under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, or Rule 54(d). Section 1988 allows "'the prevailing party' in . . . suits brought under [Title VII and § 1981], to recover 'a reasonable attorney's fee,'" *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (per curiam),[4] including "those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citations omitted).[5] Because this case will only proceed to Phase II if Plaintiffs succeed in Phase I, entitling them to injunctive relief, a master will only be appointed if Plaintiffs are the prevailing party. *See Teamsters*, 431 U.S. at 361 (pattern or practice finding sufficient for injunctive relief); *Lefemine*, 568 U.S. at 4-5 (holding that plaintiff prevails under § 1988 if she obtains meaningful injunction).

A master's fee is also a taxable cost presumptively recoverable under Rule 54(d). *See* Civ. L.R. 54-3(f) ("Fees to masters and receivers are allowable."); *Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.*, 260 F.3d 1054, 1061 (9th Cir. 2001) (holding that masters' fees are taxable costs); *K-2 Ski Co.*, 506 F.2d at 477 ("[a]lthough a plaintiff may not sustain his entire claim, if judgment is rendered for him he is the prevailing party" under Rule 54 and is entitled to the master's fees); *see generally* FEDERAL PRACTICE AND PROCEDURE § 2670. Accordingly, the Court should

---

[4] *See also* 42 U.S.C. § 1988(b) (listing § 1981 and § 1981a (which codifies Title VII's remedial structure)). Title VII contains a second fee-shifting provision, 42 U.S.C. § 2000e-5(k), which predates § 1988; however, the statutes are "are sufficiently similar so that decisions interpreting one are applicable to all." 10 FEDERAL PRACTICE AND PROCEDURE § 2675.4 & n.12 (collecting cases).

[5] The Court should not credit speculation regarding the remote possibility that TCS would overcome § 1988's heavy burden. *See* MOORE'S FEDERAL PRACTICE § 54.171(3)[d] & n.155 (3d ed. 2000) ("Under any of the civil rights fee-shifting provisions, a prevailing plaintiff is entitled to a fee award unless special circumstances make an award unjust. The district court's discretion to deny fees under this standard is 'narrow.'"). In the unlikely event that TCS could somehow show "special circumstances," any necessary adjustments could be made at a later date. *See* Fed. R. Civ. P. 53(g)(3) ("An interim allocation may be amended to reflect a decision on the merits.").

assign the master's costs to TCS at the outset, rather than crafting a preliminary apportionment that is almost certain to require re-apportionment.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should preliminarily apportion responsibility for any special master's fees and expenses to TCS.

Dated: November 25, 2018     Respectfully submitted,

By: /s/Daniel Kotchen
Daniel Kotchen (*pro hac vice*)
Daniel Low (SBN 218387)
Michael von Klemperer (*pro hac vice*)
Lindsey Grunert (*pro hac vice*)
Amy Roller (*pro hac vice*)
KOTCHEN & LOW LLP

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system.

Dated: November 25, 2018     By: /s/Daniel Kotchen
Daniel Kotchen