MICHELLE M. LA MAR (SBN 163038)
E-mail: mlamar@loeb.com
BERNARD R. GIVEN II (SBN 134718)
E-mail: bgiven@loeb.com
ERIN M. SMITH (SBN 235039)
E-mail: esmith@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

*Attorneys for Defendant Tata
Consultancy Services, Ltd.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| CHRISTOPHER SLAIGHT, et al.<br><br>　　　　Plaintiffs,<br>　v.<br>TATA CONSULTANCY SERVICES, LTD.,<br><br>　　　　Defendant. | Case No. 4:15-cv-01696-YGR<br><br>**CLASS ACTION**<br><br>**TATA CONSULTANCY SERVICES, LTD.'S PROPOSED PHASE II PROCEDURES: SUPPLEMENTAL BRIEF ON ALLOCATION OF SPECIAL MASTER PAYMENT**<br><br>Trial Date: November 5, 2018 |

17117739.4
205625-10015

TCS'S SUPPLEMENTAL BRIEF ON
ALLOCATION OF SPECIAL MASTER PAYMENT
Case No.: 4:15-cv-01696-YGR

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

# DEFENDANT'S PROPOSED PHASE II PROCEDURES:
# ALLOCATION OF SPECIAL MASTER PAYMENT

If this case proceeds to Phase II, Defendant Tata Consultancy Services, Ltd. ("TCS") requests that a Magistrate be appointed to oversee individual damage proceedings.[1] If the Court cannot accommodate this request and a special master must be appointed, TCS proposes that (i) the parties equally split the special master's payment, but (ii) if payment is initially allocated to TCS, the allocation be amended based on the actual resolution of the individual claims determined during Phase II.

# ARGUMENT

Federal Rule of Civil Procedure 53(g)(3) provides the Court broad discretion to allocate payment of a special master's compensation:

> (3) *Allocating Payment.* The court must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master. An interim allocation may be amended to reflect a decision on the merits.

*See United States v. Suquamish Indian Tribe,* 901 F.2d 772, 775 (9th Cir. 1990) (compensation divided equally between parties, four tribes and United States); 9 *Moore's Federal Practice - Civil* § 53.52 (2018) (listing examples of compensation allocated to parties equally, in differing amounts, or entirely against one party, even if party has prevailed).

## I. THE PARTIES SHOULD EQUALLY SPLIT THE SPECIAL MASTER'S PAYMENT.

Relying on *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), Plaintiffs assert that one hundred percent of the special master's fees and expenses should be allocated to TCS because if the case proceeds to Phase II, "TCS will be a proven wrongdoer." Pl. Supp. Br. at 2. While Phase I determines whether there was a pattern and practice of discrimination and a rebuttable presumption of individual liability, the purpose of Phase II is to

---

[1] Magistrate Judge Sallie Kim is familiar with this matter and presided over pre-trial discovery disputes in this action. TCS would not object to her appointment to preside over Phase II.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17117739.4
205625-10015

1

TCS'S SUPPLEMENTAL BRIEF ON
ALLOCATION OF SPECIAL MASTER PAYMENT
Case No.: 4:15-cv-01696-YGR

conclusively determine individual liability and damages. Plaintiffs' assertion incorrectly assumes that Plaintiffs have already prevailed on their individual claims and are entitled to be treated presently as prevailing parties, before any award has issued and before a special master has resolved a single claim. Until a special master has made the individualized determinations of liability for the members of the plaintiff class, or any other award has issued, Plaintiffs should not be considered to be "prevailing parties."[2]

Plaintiffs have argued that the factors listed in Rule 53(g)(3) should result in the allocation of one hundred percent of the special master's fees and expenses to TCS regardless of the outcome of Phase 2. First, while Plaintiffs may characterize their claims as "matters of public interest," the claims are in reality purely private individuals pursuing claims for monetary damages against another private party. Unlike the plaintiffs in the cases they cite, Plaintiffs here are not a nonprofit association, as in *Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, No. 2:11-cv-03471-KJM-AC, 2015 U.S. Dist. LEXIS 86909, at *6 (E.D. Cal. July 2, 2015), or the EEOC, as in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), and Plaintiffs are not suing a government entity or employees, as in *City of Riverside v. Rivera*, 477 U.S. 561, 564 (1986) (city entity and employees as defendants) and *Corder v. Gates*, 947 F.2d 374, 376 (9th Cir. 1991) (city and county entities and employees as defendants). The first factor—considering the nature or amount of the controversy—therefore does not favor Plaintiffs here.

Second, TCS acknowledges that it has greater financial means than Plaintiffs, but the parties' means are just one factor in the analysis and the Court has significant discretion to allocate special master payments based on a range of factors.[3] Moreover, the underlying premise in

---

[2] Moreover, it is neither "speculative" nor a "remote possibility" that TCS would succeed in rebutting a presumption of discrimination or demonstrate the "special circumstances" used to shift fees under 42 U.S.C. § 1988 in light of the class members' testimony that occurred in Phase 1.

[3] Beyond its unsupported assertion, Plaintiffs' counsel has not established that it cannot bear the costs of a special master, as it claims in its supplemental brief. On its website, for example, Plaintiffs' counsel advertises that it has taken "leadership roles in . . . Plaintiffs litigation (both class action and non-class cases) that involved settlements up to $220 million." Kotchen & Low LLP Firm Profile, http://kotchen.com/firm-profile.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17117739.4
205625-10015

2

TCS'S SUPPLEMENTAL BRIEF ON
ALLOCATION OF SPECIAL MASTER PAYMENT
Case No.: 4:15-cv-01696-YGR

Plaintiffs' argument regarding the third factor—that TCS is responsible for ongoing "wrongful conduct" and should therefore pay for the reference to a special master—has not yet been established on the merits as to any individual plaintiff. Pl. Supp. Br. at 3. As stated above, Plaintiffs seek to prematurely assign liability to TCS. Instead, this factor is neutral at this stage in the litigation, with no liability having been established.

Furthermore, courts commonly apply a presumption towards equally splitting the special master's payment until the prevailing party is established or if there are other factors that require changing the allocation. *See, e.g.*, *Prag Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2008 U.S. Dist. LEXIS 79624, at *10 (N.D. Cal. Aug. 19, 2008) ("The presumption shall be that the Special Master's fees will be split evenly between the parties; the Special Master shall, however, have discretion to allocate and assess the payment of his fees among the parties as he believes appropriate, for each issue that arises.") Especially where the court determines that neither party bears more responsibility than the other for a complex or lengthy litigation, it should allocate a special master's payment equally. *See T.B. v. San Diego Unified Sch. Dist*, 293 F. Supp. 3d 1177, 66 (S.D. Cal. 2018) (applying Rule 53(g)(3) factors to equally allocate special master's fees at close of proceeding).

For these reasons, TCS submits that the parties equally split the special master's payment.

## II. IF PAYMENT IS ALLOCATED TO TCS FOR THE INTERIM, THE ALLOCATION SHOULD BE AMENDED TO REFLECT A DECISION ON THE MERITS OR AS JUSTICE MAY REQUIRE.

Rule 53(g)(3) provides a safeguard that "[a]n interim allocation may be amended to reflect a decision on the merits." There is a presumption that courts will award a Special Master's payment to the prevailing party, and courts routinely reallocate a Special Master's payment under Rule 53(g)(3)'s safeguard to reflect this. For example, in *Gressett v. Contra Costa County*, No. 12-cv-03798-EMC, 2015 U.S. Dist. LEXIS 167675, at *6-7 (N.D. Cal. Dec. 15, 2015), the defendants had initially been required to pay 75% of the special master's fees. However, when they became prevailing parties, the Court applied Rule 53(g)(3)'s safeguard and awarded them all

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17117739.4
205625-10015

3

TCS'S SUPPLEMENTAL BRIEF ON
ALLOCATION OF SPECIAL MASTER PAYMENT
Case No.: 4:15-cv-01696-YGR

of their special master's fees as a result. *Id*. ("While the special master's allocation of fees provided that Defendants should pay 75% of the fees, this represents only an 'interim allocation' that 'may be amended to reflect a decision on the merits.' Fed. R. Civ. P. 53(g). Therefore, the presumption remains in favor of awarding costs to the prevailing party, and the Court exercises its discretion to add the special master's fees to the Clerk's taxation of costs.") (citation omitted); *accord Morgan Hill*, 2015 U.S. Dist. at *7 ("this is an interim allocation . . . if defendant prevails in this matter, it may arguably recover special master fees as costs . . . or ask the court to make a different allocation, under all the circumstances existing" at the conclusion of litigation); *Fulton Fed. Sav. & Loan Ass'n v. American Ins. Co*., 143 F.R.D. 292, 296 (N. D. Ga. 1991) (where parties initially agreed to each pay one-half of master's fees and expenses, reallocating fees and expenses to be paid by losing party: "Absent a determination that [Plaintiff] unnecessarily multiplied the proceedings, the court sees no reason to depart from the custom of having the master's fees paid by the losing party.").

If the Court allocates payment to TCS in the interim, it should ultimately apply Rule 53(g)(3)'s safeguard and the presumption in favor of awarding a Special Master's payment to the prevailing party. TCS expects the resolution of Plaintiffs' individual claims to demonstrate that TCS terminated Plaintiffs for reasons unrelated to any alleged discrimination. Accordingly, if a special master is utilized, after each individual adjudication in Phase II, the Court should re-evaluate the allocation of payment to the special master to reflect each decision on the merits, including which party prevailed based on the individual damages determination.

Dated: November 28, 2018

LOEB & LOEB LLP
MICHELLE M. LA MAR
BERNARD R. GIVEN II
ERIN M. SMITH

By: */s/ Michelle M. La Mar*
    Michelle M. La Mar
    Attorneys for Defendant
    TATA CONSULTANCY SERVICES, LTD.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

17117739.4
205625-10015

4

TCS'S SUPPLEMENTAL BRIEF ON
ALLOCATION OF SPECIAL MASTER PAYMENT
Case No.: 4:15-cv-01696-YGR

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system on November 28, 2018.

Dated:  November 28, 2018         /s/ *Michelle M. La Mar*
                                         Michelle M. La Mar

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17117739.4
205625-10015

5

TCS'S SUPPLEMENTAL BRIEF ON
ALLOCATION OF SPECIAL MASTER PAYMENT
Case No.: 4:15-cv-01696-YGR