DANIEL LOW, SBN 218387
dlow@kotchen.com
DANIEL KOTCHEN (*pro hac vice*)
dkotchen@kotchen.com
MICHAEL von KLEMPERER (*pro hac vice*)
MvK@kotchen.com
LINDSEY GRUNERT (*pro hac vice*)
lgrunert@kotchen.com
AMY ROLLER (*pro hac vice*)
aroller@kotchen.com
KOTCHEN & LOW LLP
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: 202.471.1995

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER SLAIGHT, et al., | Case No. 4:15-cv-01696-YGR (SK) |
| Plaintiffs, | **CLASS ACTION** |
| v. | |
| TATA CONSULTANCY SERVICES, LTD., | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REVIEW OF CLERK'S TAXATION OF COSTS** |
| Defendant. | |

**NOTICE OF MOTION AND MOTION FOR REVIEW OF CLERK'S TAXATION OF COSTS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:** Please take notice that, pursuant to Federal Rule of Civil Procedure 54(d)(1), at 2:00 p.m. on April 30, 2019, in Courtroom 1, 4th Floor of the above-titled court, located at 1301 Clay Street, Oakland, California 94612, Plaintiffs Christopher Slaight, Seyed Amir Masoudi, Nobel Mandili, and the Class will, and hereby do, move this Court for review of the Clerk's Taxation of Costs (Dkt. #709). For the reasons set forth in the accompanying memorandum, the Court should vacate the Clerk's taxation of costs in its entirety.

Date: February 22, 2019

/s/Daniel Kotchen
Daniel Kotchen (*pro hac vice*)
Daniel Low (SBN 218387)
Michael von Klemperer (*pro hac vice*)
Lindsey Grunert (*pro hac vice*)
Amy M. Roller (*pro hac vice*)
KOTCHEN & LOW LLP

*Attorneys for Plaintiffs and the Class*

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION FOR REVIEW OF CLERK'S TAXATION OF COSTS ............................................................................................................. ii

TABLE OF CONTENTS ................................................................................................. iii

TABLE OF AUTHORITIES ........................................................................................... iv

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR REVIEW ........... 1

   I.   BACKGROUND ............................................................................................. 1

   II.   LEGAL STANDARD ...................................................................................... 1

   III.  ANALYSIS ..................................................................................................... 2

      A.   **Costs Cannot Be Taxed Against the Class** ........................................ 2

      B.   **The Court Should Exercise Its Discretion to Decline to Tax Costs.** ....... 2

      C.   **TCS's Bill of Costs Contains Non-Taxable, Unnecessary, and Unsupported Expenses.** ............................................................................................. 9

          1.   Not All Discovery Expenses May Be Taxed as Copying Fees Under § 1920(4) ................................................................................ 10

               a.   *TCS's File Processing Costs Are Not Copying or Exemplification, Were Not Necessarily Obtained for Use in this Case, and Are Insufficiently Documented* ........................ 12

               b.   *TCS's TIFF Conversion Costs Were Not Necessarily Obtained for Use in this Case, and/or Are Insufficiently Documented* ........... 13

               c.   *TCS's Hard Drive Costs Were Not Necessarily Obtained for Use in this Case and/or Are Insufficiently Justified* ........................ 14

               d.   *TCS's Costs Associated with Printing and Blowbacks Are Insufficiently Justified and/or Were Not Necessarily Obtained for Use in the Case* ................................................ 15

          2.   TCS's Deposition Transcript Costs Exceed Those Allowed by Local Rule ... 17

          3.   TCS's Deposition Exhibit Printing Costs Exceed Those Allowed by Local Rule .................................................................................. 18

          4.   TCS's Costs for Reporter's Transcripts Exceed Those Allowed by Local Rule and Were Not Necessarily Obtained for Use in this Case ............. 19

          5.   TCS's Trial Exhibit Printing Is Not Taxable and Insufficiently Documented 20

          6.   TCS's Costs for Trial Visual-Aid Preparation Exceed Those Allowed by Local Rule and/or Are Not Acts of Copying or Exemplification ................... 22

          7.   TCS's Witness Travel Costs Are Insufficiently Documented and/or Exceed the Expenses Allowed by Statute ................................................ 23

   IV.  CONCLUSION ............................................................................................. 25

**Cases**

*Adams v. Ameritech Servs., Inc.*, 231 F.3d 414 (7th Cir. 2000) ...........................................5

*Allison v. Bank One - Denver*, 289 F. 3d 1223 (10th Cir. 2002) ......................................2

*Am. Color Graphics, Inc. v. Travelers Property Cas. Ins. Co.*, No. 04-3518, 2007 U.S. Dist. LEXIS 22641 (N.D. Cal. Mar. 19, 2007) .......................................................................22

*Ancora Techs., Inc. v. Apple, Inc.*, No. 11-06357 YGR, 2013 U.S. Dist. LEXIS 121225 (N.D. Cal. Aug. 26, 2013) ..................................................................................................passim

*Anderson v. Zubieta*, 180 F.3d 329 (D.C. Cir. 1999) ........................................................5

*Ass'n of Mex.-Am. Educators v. California*, 231 F.3d 572 (9th Cir. 2000)................................passim

*Avalos v. Carpenter*, No. 1:15-00369, 2018 U.S. Dist. LEXIS 7552 (E.D. Cal. Jan. 17, 2018)...........7

*Bowoto v. Chevron Corp.*, No. 99-02506, 2009 U.S. Dist. LEXIS 38174 (N.D. Cal. Apr. 22, 2009)..4

*Burgis v. N.Y. City Dep't of Sanitation*, 798 F.3d 63 (2d Cir. 2015) ......................................5

*Camesi v. Univ. of Pittsburgh Med. Ctr.*, 818 F.3d 132 (3d Cir. 2016) ...................................12

*Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003) .......................1

*City of Alameda, Cal. v. Nuveen Mun. High Income Opportunity Fund*, No. 08-4575, 2012 U.S. Dist. LEXIS 7403 (N.D. Cal. Jan. 23, 2012) ................................................................17

*Comput. Cache Coherency Corp. v. Intel Corp.*, No. C-05-01766, 2009 U.S. Dist. LEXIS 122596 (N.D. Cal. Dec. 18, 2009)...................................................................................22

*Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249 (4th Cir. 2013) ..11, 13, 22

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)...................................1, 10

*Crevier-Gerukos v. Eisai, Inc.*, No. 11-0434, 2014 U.S. Dist. LEXIS 2597 (S.D. Tex. Jan. 9, 2014)25

*Darensburg v. Metro Transp. Comm'n*, No. 05-01597, 2009 U.S. Dist. LEXIS 71461 (N.D. Cal. Aug. 4, 2009)......................................................................................3, 6, 7

*Draper v. Rosario*, 836 F.3d 1072 (9th Cir. 2016)........................................................3, 7, 9

*Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236 (9th Cir. 2014)................................passim

*F.B.T. Prods., LLC v. Aftermath Records*, No. 07-3314, 2009 U.S. Dist. LEXIS 134998 (C.D. Cal. June 25, 2009) ...............................................................................................23

*Fitbug Ltd. v. Fitbit, Inc.*, No. 13-1418, 2015 U.S. Dist. LEXIS 62879 (N.D. Cal. May 13, 2015)..17, 18

*Golden Voice Tech. & Training, L.L.C. v. Rockwell Elec. Commerce Corp.*, No. 6:01-1036, 2004 U.S. Dist. LEXIS 22064 (M.D. Fla. Jan. 30, 2004) .........................................................25

*Guerrero v. Cal. Dep't of Corr. & Rehab.*, No. 13-05671 WHA, 2017 U.S. Dist. LEXIS 203444 (N.D. Cal. Dec. 9, 2017)...................................................................................17

*Hermosillo v. City of San Bernardino*, No. 15-00033, 2017 U.S. Dist. LEXIS 196188 (C.D. Cal. June 19, 2017) ...............................................................................................4

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914 (9th Cir. 2015)................................passim

*Intermedics, Inc. v. Ventritex, Inc.*, No. 90-20233, 1993 U.S. Dist. LEXIS 17803 (N.D. Cal. Dec. 2, 1993) ................................................................................................................................21

*Jones v. City of Oakland*, No. 11-4725-YGR, 2013 U.S. Dist. LEXIS 100750 (N.D. Cal. July 18, 2013) ................................................................................................................................10

*Kalitta Air LLC v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955 (9th Cir. 2013)....................10, 17, 22

*Kemart Corp. v. Printing Arts Research Labs., Inc.*, 232 F.2d 897 (9th Cir. 1956) .........................25

*Lankhorst v. Indep. Sav. Plan Co.*, No. 3:11-390, 2015 U.S. Dist. LEXIS 130283 (M.D. Fla. Sep. 28, 2015) ..................................................................................................................................2

*Lopez v. Nguyen*, No. 13-3870, 2017 U.S. Dist. LEXIS 18017 (N.D. Cal. Feb. 8, 2017) ..................7

*Marx v. Gen. Revenue Corp.*, 568 U.S. 371 (2013) ........................................................................1

*Memory Lane, Inc. v. Classmates, Int'l, Inc.*, No. 11-940, 2014 U.S. Dist. LEXIS 199030 (C.D. Cal. July 25, 2014) ..........................................................................................................16, 21

*Moujaes v. S.F. City & Cty.*, No. 15-03129, 2017 U.S. Dist. LEXIS 65329 (N.D. Cal. Apr. 28, 2017) ................................................................................................................................7, 8

*Nuance Commc'ns, Inc. v. Abbyy USA Software House, Inc.*, No. 3:08-2912, 2014 U.S. Dist. LEXIS 192662 (N.D. Cal. Jan. 9, 2014)..........................................................................................21

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) ............................................................11

*Pac. Marine Ctr., Inc. v. Phila. Indem. Ins. Co.*, No. 1:13-992, 2017 U.S. Dist. LEXIS 210478 (E.D. Cal. Dec. 20, 2017) ....................................................................................................16

*Parker v. Comcast Cable Communc'ns Mgmt.*, LLC, No. 1505673, 2017 U.S. Dist. LEXIS 98623 (N.D. Cal. June 26, 2017)......................................................................................................9

*Phx. Techs. Ltd. v. VMWare, Inc.*, No. 15-01414, 2018 U.S. Dist. LEXIS 169596 (N.D. Cal. Sep. 30, 2018) ................................................................................................................................20

*Pixion Inc. v. PlaceWare Inc.*, No. 03-02909, 2005 U.S. Dist. LEXIS 11351 (N.D. Cal. May 25, 2005) ................................................................................................................................18

*Plantronics, Inc. v. ALIPH, Inc.*, No. 09-01714, 2012 U.S. Dist. LEXIS 152297 (N.D. Cal. Oct. 23, 2012) ....................................................................................................................13, 15, 22

*Quan v. Computer Scis. Corp.*, 623 F.3d 870 (9th Cir. 2010).............................................................3

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012)............................11

*Salinas-Ibarra v. Ellis*, No. 17-01137, 2018 U.S. Dist. LEXIS 130227 (N.D. Cal. Aug. 2, 2018) ..7, 8

*Sams v. State Attorneys Gen.* (*In re Cardizem CD Antitrust Litig.*), 481 F.3d 355 (6th Cir. 2007)......9

*Stanley v. Univ. of S. Cal.*, 178 F.3d 1069 (9th Cir. 1999).........................................................3, 6, 7

*Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.*, 646 F. Supp. 2d 1206 (E.D. Cal. 2009) ................................................................................................................................20

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012) ............................................................10

*TransPerfect Global, Inc. v. MotionPoint Corp.*, No. 10-02590, 2014 U.S. Dist. LEXIS 47179 (N.D. Cal. Apr. 4, 2014)..........................................................................................................20

*Vectren Comm'ns Servs. v. City of Alameda*, No. 08-3137, 2014 U.S. Dist. LEXIS 100227 (N.D. Cal. July 22, 2014)..........................................................................................................24

v

*W. Va. Univ. Hosps. v. Casey*, 499 U.S. 83 (1991) ...............................................................10

*Waisome v. Port Auth. of N.Y. & N.J.*, 948 F.2d 1370 (2d Cir. 1991) ...............................5

*Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984) ...............................................................2

*Zeen v. City of Sonoma*, No. 17-02056, 2018 U.S. Dist. LEXIS 175568 (N.D. Cal. Oct. 11, 2018)....3

**Statutes**

28 U.S.C. § 1821 ...............................................................................................................24

28 U.S.C. § 1920 ........................................................................................................passim

**Other Authorities**

*The Sedona Conference Glossary: E-Discovery & Digital Information Management*, 15 SEDONA
CONF. J. 305 (4th ed. 2014) ...........................................................................................14

**Rules**

Fed. R. Civ. P. 54 ............................................................................................................1, 9

**Treatises**

WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS (4th ed. 2002) .............................2

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR REVIEW**

Plaintiffs move for review of the Clerk's taxation of costs. First, costs cannot be taxed against the class. Second, Tata Consultancy Services, Ltd.'s ("TCS's") request to recover nearly half a million dollars in costs from the three class representatives in this matter should be denied in its entirety. Plaintiffs pursued solid claims—obtaining class certification, overcoming summary judgment, and presenting strong evidence at trial. TCS's effort to recover exorbitant costs appears designed to discourage future civil rights litigants. The Court should exercise its discretion to deny costs outright. Third, TCS's Bill of Costs grossly overreaches. Most of TCS's costs are affirmatively unallowable or inadequately documented. And TCS has failed to submit an affidavit explaining the charges and their necessity to this case, they should be disallowed in full for this reason alone.

## I. BACKGROUND

Following entry of judgment (Dkt. #683), TCS filed its bill of costs (Dkt. #691) on January 2, 2019. Shortly after receiving Plaintiffs' objections to TCS's Bill of Costs, the Clerk taxed costs of $489,537.60 against Named Plaintiffs and the Class, *see* Min. Entry & Bill of Costs (Dkt. #709), the latter of which TCS had not sought.

## II. LEGAL STANDARD

"An award of standard costs in federal district court is normally governed by Federal Rule of Civil Procedure 54(d)." *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022, 1032 (9th Cir. 2003) (affirming denial of costs in breach of contract action). Under Rule 54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "[T]he word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013). Accordingly, Rule 54(d) grants courts discretion to disallow otherwise taxable costs. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987); *Ass'n of Mex.-Am. Educators v. California*, 231 F.3d 572, 591-93 (9th Cir. 2000) (affirming denial of costs to defendant in civil rights action regarding discrimination in schools).

The party seeking costs bears the burden of showing that its requests are allowable under § 1920 by proving the nature, amount, and necessity of the costs. *See Ancora Techs., Inc. v. Apple, Inc.*,

No. 11-06357 YGR, 2013 U.S. Dist. LEXIS 121225, at *4-5 (N.D. Cal. Aug. 26, 2013); *see also Allison v. Bank One - Denver*, 289 F. 3d 1223, 1248-49 (10th Cir. 2002). This requires the prevailing party to "itemize its costs with sufficient detail to establish that each expense is taxable under section 1920." *Ancora Techs.*, 2013 U.S. Dist. LEXIS 121225, at *5; s*ee also* L.R. 54-1(a) ("bill [of costs] must state separately and specifically each item of taxable costs claimed. It must be supported by an affidavit[.] . . . Appropriate documentation to support each item claimed must be attached to the bill of costs."). Only after the "prevailing party establishes that the expense is taxable under section 1920, [does] the presumption [that a cost is taxable] appl[y]." *Ancora Techs.*, 2013 U.S. Dist. LEXIS 121225, at *5 (citation omitted).

### III.    ANALYSIS

The Clerk's taxation of costs errs in three ways. First, costs cannot be taxed against the class. Second, the Court should exercise its discretion to decline to tax costs against the Named Plaintiffs, as an award of costs would be inequitable. Third, the Clerk's award of $489,537.60 of TCS's requested $489,576.17 in costs is inadequately documented and contains non-taxable expenses.

### A.    Costs Cannot Be Taxed Against the Class

The docket entry accompanying the Clerk's Taxation of costs states "Costs Taxed in amount of $ 489,537.60 against Named Plaintiffs and Class." Dkt. #709. Costs cannot be taxed against absent class members. *See* WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 16:13 (4th ed. 2002) ("Absent class members who do not request exclusion are passive and not considered formal parties to the litigation. They are not liable for costs, though they may be otherwise bound by the judgment, whether favorable or unfavorable."); *Lankhorst v. Indep. Sav. Plan Co.*, No. 3:11-390, 2015 U.S. Dist. LEXIS 130283, at *32-33 (M.D. Fla. Sep. 28, 2015) (thoughtfully evaluating precedent and holding that "class members cannot be subjected to an award of costs" after extensive consideration of available precedent); *see also Wright v. Schock*, 742 F.2d 541, 545 (9th Cir. 1984) ("Absent class members have no obligation to pay attorneys' fees and litigation costs, except when they elect to accept the benefit of the litigation").

### B.    The Court Should Exercise Its Discretion to Decline to Tax Costs.

The equities warrant denying costs to TCS, a multi-billion-dollar company, from three of its

terminated employees. The Ninth Circuit has held that "[a]ppropriate reasons for denying costs include," but are not limited to:

> (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties.

*Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247-48 (9th Cir. 2014) (citing *Mex.-Am. Educators*, 231 F.3d at 592-93); *see also Quan v. Computer Scis. Corp.*, 623 F.3d 870, 888-89 (9th Cir. 2010). "Each of the factors listed above is an '[a]ppropriate reason[] for denying costs,' or for a reduction in the amount awarded to the prevailing party." *Draper v. Rosario*, 836 F.3d 1072, 1089 (9th Cir. 2016) (alteration in original) (quoting *Escriba*, 743 F.3d at 1247-48). "In addition, the amount of costs is relevant in determining whether a district court's cost award is an abuse of discretion." *Id.* (reversing taxation of $3,018.35 against civil rights plaintiff).

The foregoing factors all weigh against taxing costs. In addition, the sheer size of TCS's cost bill—nearly half a million dollars—warrants denial of costs. *See id.*

**First,** this case presented issues of "substantial public importance"—discrimination affecting over a thousand class members and countless other current and former TCS employees nationwide. Discrimination is an issue of "the gravest public [concern.]" *Mex.-Am. Educators*, 231 F.3d at 593 (affirming denial of costs where class discrimination claim involved "thousands of Californians" and presented issues that are "extraordinarily important"); *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1080 (9th Cir. 1999) (finding abuse of discretion in taxation of costs where individual discrimination case under Equal Pay Act raised "important issues and that the answers were far from obvious"); *Darensburg v. Metro Transp. Comm'n*, No. 05-01597, 2009 U.S. Dist. LEXIS 71461, at *7-8 (N.D. Cal. Aug. 4, 2009) (denying costs in "class action case alleging race discrimination . . . on behalf of tens of thousands of minority riders," as case raised "issues of substantial importance"). And "a case is considered to be of great importance when … the issues raised in the litigation have ramifications beyond the parties and concerns immediately involved in the litigation." *Zeen v. City of Sonoma*, No. 17-02056, 2018 U.S. Dist. LEXIS 175568, at *9, 12 (N.D. Cal. Oct. 11, 2018) (citation omitted) (denying costs); *see also Escriba*, 743 F.3d at 1248, 1249 (costs properly denied given single-plaintiff case's potential impact on "civil rights for women in the work place").

This discrimination case addressed a major concern in the IT industry—the proliferation of IT companies (including TCS, Infosys, Wipro, Cognizant, and others) that appear to favor South Asians (particularly South Asian visa workers) in hiring, employment, and termination decisions. While South Asians make up only a fraction of the relevant IT labor market, these companies' workforces are a majority South Asian, and as demonstrated at trial in this matter, the relatively few non-South Asian workers who are hired face substantially worse career prospects than their South Asian colleagues. *See, e.g.,* Pls.' Ex. 1214. At trial, Plaintiffs sought to answer whether TCS's staffing practices were discriminatory—a question with major ramifications for the more than one thousand class members in this case as well as the broader IT industry. *See* Laura Francis, *Tata Immigration Case Could Shake IT Companies to 'Very Core,'* BLOOMBERG L. (Sept. 12, 2018), https://bit.ly/2EmI3aa ("Should a court rule that Tata Consultancy's and other consulting firms' use of those visas violates antidiscrimination laws, it could force the companies to change their long-standing hiring and business models."). Accordingly, this factor weighs heavily against costs.

**Second,** this case was more than close—rather, the jury's verdict for TCS was against the great weight of the evidence—making an award of costs against the named Plaintiffs inequitable. *See generally* Pls.' Mot. For New Trial (Dkt. #697). Courts have found "the closeness and difficulty of the issues in the case" to support denial of costs where the plaintiff survived summary judgment, where the jury deliberated for numerous hours regarding complex or difficult issues, and where the case turned "on the careful evaluation of witness testimony and circumstantial evidence." *Escriba*, 743 F.3d at 1248; *Draper*, 836 F.3d 1088 (finding case close that survived summary judgment and, after closings, "the jury deliberated for the remaining half-day and then for several more hours the next morning before returning a verdict"); *Bowoto v. Chevron Corp.*, No. 99-02506, 2009 U.S. Dist. LEXIS 38174, at *13 (N.D. Cal. Apr. 22, 2009) (finding case close where plaintiffs survived summary judgment and "the evidence presented at trial required the jury to decide a complicated set of facts."). "The closer the case, the more it weighs against awarding costs to the prevailing party." *Hermosillo v. City of San Bernardino*, No. 15-00033, 2017 U.S. Dist. LEXIS 196188, at *9 (C.D. Cal. June 19, 2017) (citing *Escriba*, 743 F.3d at 1248).

Here, after Plaintiffs defeated TCS's motion for summary judgment in its entirety, *see*

Omnibus Order at 30, 42 (Dkt. #244), Plaintiffs presented overwhelming (and unrebutted) statistical evidence that alone was sufficient to prove their claims. *See* Pls.' Mot. For New Trial at 5-9 (Dkt. #697). For instance, Plaintiffs presented evidence that TCS's workforce in the U.S. was over 75% South Asian, but that South Asians had less than a 1% chance of being benched and terminated, compared to a greater than 10% chance for non-South Asians. *Id.* at 7 (citing Pls.' Trial Exs. 583A, 583B; Tr. 78:2-4, 85:3-9, 89:8-90:13). This was a disparity of over 55 standard deviations—far higher than the 2 to 3 standard deviations that courts and statisticians consider sufficient to prove intentional discrimination. *Id.* at 8 (citing *Burgis v. N.Y. City Dep't of Sanitation*, 798 F.3d 63, 70 n.6 (2d Cir. 2015); *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 424 (7th Cir. 2000); *Anderson v. Zubieta*, 180 F.3d 329, 341 (D.C. Cir. 1999); *Waisome v. Port Auth. of N.Y. & N.J.*, 948 F.2d 1370, 1376 (2d Cir. 1991); *cf.* Tr. 86:1-3 ("You don't really see standard deviations in this kind of work of 60 or 30 or 55 . . . . This is remarkably strong evidence [of discrimination].")). These statistics were unrebutted. *Id.* at 9 (citing Tr. 1442:17-18, 1445:25-1446:1 ("I'm not disputing his numbers")).[1]

In addition, Plaintiffs presented substantial corroborating evidence through the testimony of TCS's executives, contemporaneous documents, and testimony from class members regarding their personal experiences of discrimination. This included evidence of discrimination at TCS based on TCS managers' "comfort and familiarity" with South Asian and Indian workers. *See id.* at 11 (citing Pls.' Trial Exs. 714 at 1; 678 at 11; 736 at 6). It also included evidence that TCS executives instituted a "leadership directive" to utilize the company's South Asian visa workers "to the maximum extent." *See id.* Following the implementation of the directive, the company's local attrition rates spiked dramatically, a fact known to the executives. *Id.* at 12-13. Yet the directive remains in place today, and the executives kept the directive secret from both the company's HR department and its head of diversity, presumably because they understood it was discriminatory. *See id.* at 12. Finally, Plaintiffs' evidence included substantial testimony from class members regarding the discrimination they faced

---

[1] In addition to reiterating that he was not challenging Dr. Neumark's numbers, TCS's expert presented a deeply flawed and irrelevant analysis. *Id.* at 9-10.

at the company. *See id.* at 13. TCS did not convincingly respond to this evidence. *See id.* at 13-16.[2]

Following closing arguments, the jury deliberated for over 10 hours. *See* Minute Entries (Dkts. #670, #675). After the return of the verdict, the Court recognized that Plaintiffs' case had merit, noting "I thought Plaintiffs had a valid argument; that [TCS] had a process in place that seemed to favor placing individuals with a visa, and you weren't working as hard, you weren't doing your job in HR to place the non-South Asian, non-Indians." Tr. 1920:5-7, 15-19 (noting further that "[s]ummary judgment in this case was denied because the plaintiffs had a valid argument to make").

Beyond the merits, the case also presented a variety of difficult, complex questions. *See Darensburg*, 2009 U.S. Dist. LEXIS 71461, at *14 (denying costs, in part, because "Plaintiffs' claims in this case presented complex questions"). For instance, at the outset of this case, the Court expressed skepticism for Plaintiffs' class claims, stating that "[e]ven if I deny the motion to dismiss, it is not at all clear to me how this case is going to end up a class action. . . . *Wal-Mart*, you know, makes it very difficult to get these employment actions teed up in a class action way." Hr'g Tr. 12:15-20 (Sept. 15, 2015) (Dkt. #72). Yet Plaintiffs vigorously prosecuted the case and brought a successful motion to certify a nation-wide terminations class that encompassed over a thousand class members. *See* Omnibus Order at 35, 39, 42 (Dkt. #244). The case also involved numerous hotly contested issues including visa law, statistical evidence, the *Teamsters* framework, arbitration agreements, evidentiary disputes, and many more. Accordingly, this factor weighs heavily against awarding costs.

**Third,** costs should be denied because they would have a "chilling effect on future similar actions." *Escriba*, 743 F.3d at 1248. The Court must take care to avoid "discouraging potential plaintiffs from bringing such cases at all." *Mex.-Am. Educators*, 231 F.3d at 593. "Without civil rights litigants who are willing to test the boundaries of our laws, we would not have made much of the progress that has occurred in this nation since *Brown*." *Stanley*, 178 F.3d at 1080 (citation omitted). Thus, "it is an abuse of discretion to fail to consider this chilling effect on civil rights litigants when determining whether to tax costs." *Salinas-Ibarra v. Ellis*, No. 17-01137, 2018 U.S. Dist. LEXIS

---

[2] The Court also erroneously excluded key evidence that supported Plaintiffs' claims and rebutted TCS's defenses, and permitted TCS to introduce inadmissible evidence central to its defense. *Id.* at 16-23. These errors substantially prejudiced Plaintiffs at trial, helping TCS win a case it should not have won.

130227, at *5 (N.D. Cal. Aug. 2, 2018) (citing *Stanley*, 178 F.3d at 1079-80). "[I]n civil rights litigation ... larger costs awards ... have been denied to prevailing defendants." *Darensburg*, 2009 U.S. Dist. LEXIS 71461, at *7 (collecting cases denying costs over $16,268).

Imposing a nearly half-million-dollar bill of costs on three terminated former employees who sought to advance the claims of over a thousand class members in an important civil rights case would almost certainly discourage future such actions. Few—if any—individuals would agree to take the role of class representative when faced with the prospect of a substantial fee award. *See Stanley*, 178 F.3d at 1080 ("the imposition of such high costs [of $46,711] on losing civil rights plaintiffs of modest means may chill civil rights litigation in this area"); *Draper*, 836 F.3d at 1088-89 (finding abuse of discretion where court awarded $3,018 against civil rights plaintiff, and explaining that "such a large cost award could chill similar lawsuits"); *Escriba*, 743 F.3d at 1248 (affirming denial of $13,958 in costs given "serious danger of chilling future FMLA actions"); *Salinas-Ibarra*, 2018 U.S. Dist. LEXIS 130227, at *5 (denying costs where "awarding $3,215.04 in costs could have a chilling effect on similar civil rights actions in the future"); *Moujaes v. S.F. City & Cty*., No. 15-03129, 2017 U.S. Dist. LEXIS 65329, at *8 (N.D. Cal. Apr. 28, 2017) ("imposition of a cost award of $3,517.25 may have a chilling effect on future civil rights litigation"); *Darensburg*, 2009 U.S. Dist. LEXIS 71461, at *10 ("Imposition of [the $45,747] cost award ... taxed by the Clerk on Plaintiffs of modest means could chill litigation in this area."). Accordingly, this factor weighs heavily against awarding fees.

**Fourth and Fifth,** "[b]oth the limited financial resources of the losing party and any economic disparity between the parties weigh against awarding costs." *Lopez v. Nguyen*, No. 13-3870, 2017 U.S. Dist. LEXIS 18017, at *7 (N.D. Cal. Feb. 8, 2017) (citing *Mex.-Am. Educators*, 231 F.3d at 592-93). Costs may be denied where the party seeking costs has "vastly greater resources" than the other side. *Moujaes*, 2017 U.S. Dist. LEXIS 65329, at *9-10 (finding large disparity in resources weighed in favor of denying costs despite lack of evidence that plaintiff had "significantly limited financial means"). Additionally, "[i]n civil rights cases, a court abuses its discretion when it awards costs against a losing plaintiff without considering the plaintiff's limited financial resources." *Avalos v. Carpenter*, No. 1:15-00369, 2018 U.S. Dist. LEXIS 7552, at *3 (E.D. Cal. Jan. 17, 2018) (citing *Mex.-Am. Educators*, 231 F.3d at 592). For instance, costs may properly be denied where the

costs sought exceed the plaintiff's yearly income or where the plaintiff has had difficulty securing steady employment following his termination by the defendant. *See Escriba*, 743 F.3d at 1248.

TCS is a multi-national corporation that generated $18.6 billion in revenue and pocketed $3.9 billion in profit (after taxes) last year, with comparable revenues and profits in prior years. *See TCS 2017-2018 Annual Report*, at 111, *ll.* I & VII (Apr. 19, 2018), https://on.tcs.com/2SkY3NG (revenue of 123,104 crore ₹ and total profit of 25,880 crore ₹ in 2018, revenue of 117,966 crore ₹ and total profit of 26,357 crore ₹ in 2017).[3] Yet the company seeks to recover nearly half a million dollars from three terminated employees with relatively limited resources. The extraordinary financial disparity between TCS and the Plaintiffs weighs against awarding costs. *See Mex.-Am. Educators*, 231 F.3d at 592, 593 ("great economic disparity" between plaintiffs and prevailing defendant coupled with "extraordinarily high" costs warrants denial of costs award); *Moujaes*, 2017 U.S. Dist. LEXIS 65329, at *10 (finding that City of San Francisco's "vastly greater resources" than individual public interest attorney weighed against awarding costs).

Moreover, such a large cost award would place significant financial strain on each of the Plaintiffs. "Whether the financial resources in question are of a sufficient level to deny an award of costs can be inferred from the economic circumstances of the plaintiff." *Salinas-Ibarra*, 2018 U.S. Dist. LEXIS 130227, at *6 (citation omitted). Mr. Slaight made about $74,000 a year at TCS. Tr. 1002:9-15. He was then out of work for three months before finding another job that paid only about $52,000 a year. *Id.* 1004:9-13. He now makes just over $65,000 a year. *Id*. 1004:19-22. Mr. Mandili made about $92,000 a year at TCS. *Id*. 733:15-16. After his termination, he was out of work for weeks and spent years looking for permanent, long-term employment. *See id.* 734:2-11, 21-22, 735:1-9, 736:21-737:1. He made only about $42,000 in 2016 and about $28,000 in 2017. *Id*. 738:20-23. Upon being terminated, he incurred debt and was forced to rely on credit cards to pay his bills. *Id*. 741:5-8. Finally, Mr. Masoudi made only about $70,000 a year at TCS. *Id*. 563:23-564:9. He was then unemployed for about a month. *Id*. 565:22-24. He then secured another position that paid about $135,000 but was forced to find employment again when that company closed. *Id*. 597:11-18, 598:8-

---

[3] Rupees were converted to dollars using the exchange rate effective at the close of TCS's fiscal year. *See Historical Rates for the Indian Rupee*, U.S. FED. RESERVE, at 30-Mar-18 (last updated Jan. 22, 2019), https://bit.ly/2IuhWlN.

9. Accordingly, a half-million-dollar cost award, even divided by three, would exceed each of the Plaintiffs' yearly incomes, would cause them significant financial strain, and should be denied. *See Escriba*, 743 F.3d at 1248 (denying costs that exceeded plaintiff's average annual earnings).

Additionally, while TCS has suggested that Plaintiffs' counsel should pay any cost award, federal law allows costs to be levied only against parties, not counsel. *Sams v. State Attorneys Gen. (In re Cardizem CD Antitrust Litig.)*, 481 F.3d 355, 359 (6th Cir. 2007) ("Rule 54(d) and § 1920 do not permit district courts to impose costs on attorneys, as opposed to the parties they represent."). Thus, the financial resources of a losing party's counsel is irrelevant to determining whether to tax costs against the losing party. Nor did Plaintiffs' counsel agree to cover costs for the Plaintiffs, as TCS suggested during the meet and confer discussions.

"Each of the factors listed above is an '[a]ppropriate reason[] for denying costs.'" *Draper*, 836 F.3d at 1089 (quoting *Escriba*, 743 F.3d at 1247-48). Given that all factors weigh against awarding costs, the Court should exercise its discretion under Rule 54(d).[4]

## C.     TCS's Bill of Costs Contains Non-Taxable, Unnecessary, and Unsupported Expenses.

TCS's Bill of Costs grossly overreaches by seeking $489,576.17 in costs, which far exceeds what it is entitled to under 28 U.S.C. § 1920, Fed. R. Civ. P. 54, and Local Rule 54. Among the costs that TCS seeks are a substantial number of affirmatively unallowable costs and costs without sufficient explanation.  Nearly every cost falls into the latter category because, despite seeking almost half a million dollars, TCS *did not submit an affidavit explaining the costs it seeks and the reasons they were incurred*. This renders effective evaluation of TCS's claimed costs extremely difficult, and constitutes a wholesale failure to meet its burden under the Local Rule 54(a) and Ninth Circuit precedent. Costs have been denied outright based on identical documentation deficiencies. *See Jones v. City of Oakland*, No. 11-4725-YGR, 2013 U.S. Dist. LEXIS 100750, at *6 (N.D. Cal. July 18,

---

[4] Courts can also consider "whether the losing party litigated in good faith." *Quan*, 623 F.3d 888-89 (citation omitted). Here, Plaintiffs undeniably litigated in good faith. As discussed above, Plaintiffs' claims warranted class certification, survived summary judgment, and were only unsuccessful at trial because of the jury's idiosyncratic and erroneous application of the law to the facts and prejudicial erroneous evidentiary rulings. *See Parker v. Comcast Cable Communc'ns Mgmt.*, LLC, No. 1505673, 2017 U.S. Dist. LEXIS 98623, at *4-5 (N.D. Cal. June 26, 2017) (finding that plaintiff brought case in good faith where she brought a meritorious claim, followed all deadlines and procedures, and properly raised discovery disputes with magistrate judge). Accordingly, this factor weighs in favor of denying costs.

2013) (holding that "[t]he City's Bill of Costs, though filed timely, did not comply with the affidavit requirement of the Local Rule. Its submission of supporting documentation, after Plaintiff's objection and well after the 14-day time limit for submission of a bill of costs had passed, was untimely and unexcused."); *see also* City's Bill of Costs at 1, Dkt. #153, *Jones v. City of Oakland*, No. 11-4725-YGR (N.D. Cal. Mar. 23, 2013) (containing boilerplate "Declaration" stating that "the foregoing costs are correct and were necessarily incurred in this action" rather than a factual affidavit explaining the costs sought and the purpose for which each expense was incurred). Costs should be denied outright.[5]

Although courts have discretion to deny otherwise taxable costs, they lack discretion to award costs beyond those specifically enumerated in 28 U.S.C. § 1920. *Crawford Fitting Co.*, 482 U.S. at 441-42; *see also W. Va. Univ. Hosps. v. Casey*, 499 U.S. 83, 86 (1991) (holding that § 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further."); *Ancora Techs*, 2013 U.S. Dist. LEXIS 121225, at *3 ("The types of costs that may be awarded under Rule 54(d) are limited to those enumerated in 28 U.S.C. § 1920."). These are limited to: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; and (6) Compensation of court appointed experts [or] interpreters . . . ." 28 U.S.C. § 1920(1)-(6). Nothing else may be taxed. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 572-73 (2012); *W. Va. Univ. Hosps.*, 499 U.S. at 86; *Crawford Fitting Co.*, 482 U.S. at 441-42.

When interpreting these categories, courts must "hew closely to the statute's language, scheme, and context" because "§ 1920 is narrow, limited, and modest in scope," *Kalitta Air LLC v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013) (citing *Taniguchi*, 566 U.S. at 572-73), and "[t]axable costs are limited to relatively minor, incidental expenses." *Taniguchi*, 566 U.S. at 573. This narrow construction is mandated by the Supreme Court's 2012 decision in *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012), which abrogated many older cases.

**1.    Not All Discovery Expenses May Be Taxed as Copying Fees Under § 1920(4)**

---

[5] Plaintiffs reserve the right to supplement their objections, should TCS get around to adequately documenting and supporting their attempt to tax half a million dollars in costs.

TCS's Bill of Costs includes $300,383.57 in discovery costs, most of which are not taxable. *See* A-96–A-186. Section 1920(4) permits taxation of "fees for exemplification and the cost of making copies" but only if "necessarily obtained for use in this case." This imposes two requirements.

First, the costs must be for "copying." *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 930 (9th Cir. 2015). Certain electronic discovery tasks may constitute "making copies" under § 1920(4). *See id.*; *see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 160, 166 (3d Cir. 2012) (holding that e-discovery processing does not constitute "exemplification"). "Making copies" is afforded its ordinary meaning, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 927, of "producing imitations or reproductions of original works," *Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249 (4th Cir. 2013). "[W]hether certain [electronic discovery] tasks are taxable" as copying "calls for some common-sense judgments guided by a comparison with the paper-document analogue." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 930 (internal quotation omitted).

Second, "Section 1920(4) further . . . require[s] that recoverable costs be restricted to the making of copies 'necessarily obtained for use in the case.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 927. To effectuate a "[a] narrow construction of § 1920(4)" as required by the Supreme Court's 2012 decision in *Taniguchi*, "the circumstances in which a copy will be deemed 'necessarily obtained' for use in a case will be extremely limited." *Id.* at 930. "That a chosen 'document production process' requires the creation of a copy does not establish that the copy is necessarily obtained for use in the case." *Id.* Rather, the act of copying must be (1) necessary to comply with some agreed up or court-ordered production formatting obligation, and (2) that the resultant copy have been "necessarily obtained for use in the case." *Id.* at 928 ("When copies are made in a fashion necessary to comply with obligations such as these, costs are taxable so long as the copies are also 'necessarily obtained for use in the case.'"). A copy is "necessarily obtained for use in the case" where it was "obtained to be produced pursuant to Rule 34 or other discovery rules." *Id.* at 927. This limited construction accords with "the presumption is that the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978).

For example, since a lawyer reviewing documents for privilege purposes might review those

documents on either her own computer or the client's computer, the costs of transferring those documents from the client's computer to her computer are not "necessarily" incurred for the litigation. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 930. Copies obtained for the use or convenience of the party seeking recovery and its counsel are not taxable. *Id.* at 929. Nor are costs for "the efforts incurred in assembling, collecting, or processing [the] documents." *Ancora Techs.*, 2013 U.S. Dist. LEXIS 121225, at *10.

The defendant must make a factual showing that a given discovery cost satisfies these two elements because "[t]he proper application of a narrowly construed § 1920(4) requires that the tasks and services for which an award of costs is being considered must be described and established with sufficient specificity, particularity, and clarity as to permit a determination that costs are awarded for making copies." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 928; *see also Camesi v. Univ. of Pittsburgh Med. Ctr.*, 818 F.3d 132, 138 (3d Cir. 2016) ("The increasing attention to the scope of § 1920(4) and rising cost of ESI discovery requires that we fully understand the ESI charges at issue when determining whether these are taxable."). "'Document production' and other similarly generic statements on the invoices are unhelpful in determining whether those costs are taxable." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 928 (internal quotation marks omitted) (citation omitted). "Further, a description of a task is useful only to the extent it accurately reflects the task for which copying costs are sought." *Id.*

### a. TCS's File Processing Costs Are Not Copying or Exemplification, Were Not Necessarily Obtained for Use in this Case, and Are Insufficiently Documented

TCS seeks **$216,213.04** for various discovery processing costs.[6] ESI processing charges are not taxable expenses because they are not "copying." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 930-31 (native review processing, exporting documents, populating custom fields, and prepping for further processing not taxable); *see also Ancora Techs.*, 2013 U.S. Dist. LEXIS 121225, at *10 (costs not permitted for "assembling, collecting, or processing [the] documents") (citing *Plantronics, Inc. v. ALIPH, Inc.*, No. 09-01714, 2012 U.S. Dist. LEXIS 152297, at **44-46 (N.D.

---

[6] *See* Dkt. #691-2 at A117 ($50.44), A118 ($50), A119 ($50), A120 ($50), A122 ($665.18), A149 ($7.91), A151 ($27,330), A152 ($42,033), A153 ($113,832), A156 ($50), A157 ($346.89), A158 ($4,635.75), A166 ($27,076).

Cal. Oct. 23, 2012) (pre-production document collection and processing costs not taxable)).

Even if some of the ESI processing *were* "copying" each act must be necessary to comply with production formatting obligations and the resultant copy must have been necessarily obtained for use in the case. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 928 ("When copies are made in a fashion necessary to comply with obligations such as these, costs are taxable so long as the copies are also 'necessarily obtained for use in the case.'").

For most tasks, TCS fails to identify the processed documents or explain the function, significance, or necessity of each act of processing. Without an affidavit attesting to the nature of the work and the purpose of these copies, the Plaintiffs (and the Court) have no means of discerning whether the task was "copying" and the copies were necessarily obtained for use in the case or for the use and/or convenience of the party seeking recovery. This is insufficient to discharge its burden to provide a "useful" description "that accurately reflects the task for which copying costs are sought." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 928 ("because "[t]he proper application of a narrowly construed § 1920(4) requires that the tasks and services for which an award of costs is being considered must be described and established with sufficient specificity, particularity, and clarity as to permit a determination that costs are awarded for making copies"); *Ancora Techs.*, 2013 U.S. Dist. LEXIS 121225, at *5 (party seeking costs must "itemize its costs with sufficient detail to establish that each expense is taxable under section 1920"). Because TCS bears the burden of sufficiently describing the task and showing its necessity to the case, the costs should be disallowed.

Accordingly, costs should be reduced by $216,213.04 for discovery processing.

### b. TCS's TIFF Conversion Costs Were Not Necessarily Obtained for Use in this Case, and/or Are Insufficiently Documented

TCS seeks $6,967.15 for tasks such as "tiff/ocr/format exels [sic]," A-96, "TIFF/OCR," A-98–101, "tiff/elabel/print," A-102, and "Full Tiff Processing Per GB," which appear to be charges associated with converting files to TIFF[7] format.[8] The Ninth Circuit has held that converting a file to

---

[7] "The .tif extension connotes a TIFF file, '[a] widely used and supported graphic file format [ ] for storing . . . images.'" *Country Vintner*, 718 F.3d at 253 n.5 (citation omitted).

[8] *See* Dkt. #691-2, at A-96 ($342.96), A-98 ($40.29), A-99 ($66.76), A-100 ($633.60), A-101 ($115.02), A-102 ($222.88), A-107 ($737.29), A-114 ($1,216.98), A-122 ($21.12), A-124 ($7.50), A-142 ($5.00), A-148 ($40.00), A-152 ($1,701.00), A-178 ($1,816.75).

TIFF format may qualify as "copying," however, "the further determination is required whether the copies were necessarily obtained for use in the litigation." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 928-30. However, "[t]hat a chosen 'document production process' requires the creation of a copy does not establish that the copy is necessarily obtained for use in the case." *Id.* at 930.

TCS's TIFF conversion expenses were not necessarily incurred. Based on a review of TCS's receipts, TCS had all collected native files[9] converted to TIFF in order to load them into Relativity for internal pre-production review using that software. *E.g.*, A-98 (requesting Relativity load files and noting TIFFs were needed "ASAP!!!" because "[t]he attorney needs to review these docs & do redactions"); A-96 (converting documents in a given range of internal control numbers, which are used for internal review and not used for produced documents). This is the type of expense that is non-taxable under the reasoning of *In re Online DVD-Rental Antitrust Litig. See* 779 F.3d at 930 ("Although the latter method of review requires the creation of a copy, the ability to conduct the review by looking at the original document establishes that the uploaded copy was not necessarily obtained for use in the case.").

For the remainder, TCS neither identifies the files processed or explains the processing's purpose. This is insufficient to discharge its burden to provide a "useful" description "that accurately reflects the task for which copying costs are sought." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 928; *Ancora Techs.*, 2013 U.S. Dist. LEXIS 121225, at *5 (party seeking costs must "itemize its costs with sufficient detail to establish that each expense is taxable under section 1920"). Because TCS "fails to establish the copies were necessarily obtained for use in the case . . . these charges are non-taxable under § 1920(4)." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 930.

Accordingly, the discovery expenses should be reduced by $6,967.15 for TIFF processing.

### c.    *TCS's Hard Drive Costs Were Not Necessarily Obtained for Use in this Case*

---

[9] A "native" file is a file in its original format. *See* Sedona Conference, *The Sedona Conference Glossary: E-Discovery & Digital Information Management*, 15 SEDONA CONF. J. 305, 341 (4th ed. 2014) ("Electronic documents have an associated file structure defined by the original creating application. This file structure is referred to as the native format of the document.").

***and/or Are Insufficiently Justified***

TCS seeks $18,561.86 for 86 hard drives (including sales tax).[10] While TCS produced 13 hard drives containing documents to Plaintiffs, MvK Decl. ¶ 2, TCS seeks costs for an extra 74 hard drives, far exceeding the number used for production. Moreover, some of the invoices make clear that the hard drives were used in TCS's data collection process, not the production process, *e.g.*, A-153 (hard drive expenses labeled as "collection kits"), rendering them non-taxable. *See Ancora Techs.*, 2013 U.S. Dist. LEXIS 121225, at *10 (costs not permitted for "assembling, collecting, or processing [the] documents") (citing *Plantronics, Inc.*, 2012 U.S. Dist. LEXIS 152297, at **44-46 (pre-production document collection and processing costs not taxable)). Accordingly, the cost of 74 extra hard drives should be disallowed, and TCS's request should be reduced by $15,756.71.[11]

> **d.**   ***TCS's Costs Associated with Printing and Blowbacks Are Insufficiently Justified and/or Were Not Necessarily Obtained for Use in the Case***

TCS seeks $57,390.61 for printing 355,276 pages of mostly unspecified documents, in a case that involved no hard copy document production.[12] Copies of discovery documents created for the convenience of counsel, rather than for production, are not necessarily obtained for use in the case. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 929-30.

Of the few print jobs with identifiable purposes, none were necessarily obtained for use in this case. TCS was under no obligation to make hard copies of its electronic documents and TCS produced no documents in hardcopy. MvK Decl. ¶ 2. Rather, the expenses were clearly incurred for the convenience of counsel, who chose to review thousands of electronic documents in hard copy, *e.g.*:

- A-97: Accompanying email instructs the printer to "[k]eep family docs . . . physically clustered together to indicate to the reviewing attorney when she grabs a family of docs that it is inclusive."

- A-113: Although there is no explanation on the invoice, TCS's Costs spreadsheet indicates

---

[10] *See* Dkt. #691-2 at A-110 (15 hard drives, $2,861.25), A-151 (21 hard drives, $4,005.75), A-153 (32 hard drives, $6,104.00), A-158 (1 hard drive, $190.75), A-159 (1 hard drive, $174.40), A-163 (1 hard drive, $163.50), A-165 (1 hard drive, $196.20), A-166 (6 hard drives, $2,289.00), A-167 (1 hard drive, $321.55), A-175 (5 hard drives, $1,907.50), A-178 (2 hard drives, $348.80). All prices include applicable California sales tax.

[11] Plaintiffs calculated the average per hard drive price including sales tax ($215.85) and multiplied that figure by thirteen because TCS's 86 hard drives were of varying costs.

[12] Dkt. #691-2 at A-97, A-101–A-106, A-108–A-116, A-125, A-126, A-128–A-135, A-137, A-139, A-141, A-143–A-147, A-149, A-150, A-152, A-154–A-157, A-160–A-165, A-168–A-186.

15

that TCS printed a rolling document production. However, no documents were produced in hard copy.

- A-135: Although there is no explanation in the invoice, TCS's Costs spreadsheet indicates it is an excel-printing project. There is no case-related reason to print excel spreadsheets, which were all produced natively.

- A-143: Accompanying email explains "can you print out the termination files, banded by folder, that Lauren will send you? The client sent us termination files organized by employee, we want to be able to look at a hard copy by folder structure. Ideally with a slip sheet and rubber band-maybe folder name on the slip sheet? One set. Thx."

- A-162, A-164: Invoice reflects that these are expenses for printing "hot docs," which TCS would only separately delineate and print for internal review.

Because these copies were created solely for the convenience of counsel they were not "necessarily obtained for use in the case" under the Ninth Circuit's jurisprudence.

For the remainder (and vast majority) of printing expenses, TCS has not sufficiently documented the costs to show what was being printed and why. The invoices simply identify the expenses as prints, copies, blowbacks, or "11x17." *E.g.*, A-109, A-147, A-149, A-150, A-152. This is insufficient to discharge TCS's burden to identify the papers being copied and their purpose. *See Pac. Marine Ctr., Inc. v. Phila. Indem. Ins. Co.*, No. 1:13-992, 2017 U.S. Dist. LEXIS 210478, at *10-11 (E.D. Cal. Dec. 20, 2017) (disallowing costs "[g]iven the lack of information about what was copied and why the copying was necessary . . . the court cannot conclude that any of these expenses were 'necessarily' incurred in the litigation"). Because TCS "fails to establish the copies were necessarily obtained for use in the case . . . these charges are non-taxable under § 1920(4)." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 930.

In addition, certain line items are clearly impermissible. For example, TCS incurred a large number of costs for unnecessary premium printing services. For example, TCS printed 38,578 pages in color, at a cost of $15,944.98,[13] but has offered no justification for why the higher cost of color copies was reasonable or necessary. *See Memory Lane, Inc. v. Classmates, Int'l, Inc.*, No. 11-940, 2014 U.S. Dist. LEXIS 199030, at *9 (C.D. Cal. July 25, 2014) ("reduc[ing] the costs for color copies by 90%" where they were not necessary). Costs should be disallowed for this reason as well.

---

[13] *See* Dkt. #691-2 at A-106 (697 pages, $493.82), A-112 (3,751 pages, $367.97), A-125 (1,018 pages, $832.22), A-129 (1,822 pages, $496.50), A-130 (2,920 pages, $1,750.54), A-145 (120 pages, $72.27), A-178 (22,440 pages, $6,507.02), A-179 (243 pages, $206.02), A-180 (3,168 pages, $3,295.51), A-181 (1,097 pages, $1,141.15), A-183 (178 pages, $106.80), A-185 (27 pages, $16.96), A-186 (1,097 pages, $658.20).

Accordingly, the Court should disallow $58,004.33 in discovery reproduction costs.

**2.     TCS's Deposition Transcript Costs Exceed Those Allowed by Local Rule**

TCS seeks $62,688.15 in various deposition-transcription expenses. *See* Dkt. #691-2 at A-9–A-53. Local Rule 54-3(c)(1) allows taxation of "an original and one copy of any deposition (including videotaped depositions)," "[t]he cost of reproducing exhibits to depositions," notary fees, "[t]he attendance fee of a reporter when a witness fails to appear," and nothing else.

<u>Shipping</u>. TCS seeks shipping and handling costs for every deposition transcript save one. *See* A-10–A-54. "The cost of shipping deposition transcripts . . . does not fall within the ambit of allowable costs under [the Northern District] Civil Local Rules." *Guerrero v. Cal. Dep't of Corr. & Rehab.*, No. 13-05671 WHA, 2017 U.S. Dist. LEXIS 203444, at *11 (N.D. Cal. Dec. 9, 2017) (citing *City of Alameda, Cal. v. Nuveen Mun. High Income Opportunity Fund*, No. 08-4575, 2012 U.S. Dist. LEXIS 7403, at *12 (N.D. Cal. Jan. 23, 2012)); *see also Fitbug Ltd. v. Fitbit, Inc.*, No. 13-1418, 2015 U.S. Dist. LEXIS 62879, at **18-19 (N.D. Cal. May 13, 2015) ("Fitbug rightly objects that the other charges for shipping and handling of transcripts . . . fall outside Section 1920"); L.R. 54-3(c)(1)-(5) (not listing transcript shipping costs). Accordingly, the deposition expenses should be reduced by $1,425.00 for shipping.

<u>Videography Expenses</u>. TCS seeks $21,472.50 for synchronization[14] fees and $1,623.80 for "transcript video surcharges."[15] The Ninth Circuit has squarely held that "the costs of deposition editing and synchronizing are not authorized by § 1920." *Kalitta Air*, 741 F.3d at 958-59 (reversing district court's award of those costs because "synchronizing deposition videotapes with their transcripts, while convenient, was not an act of copying or exemplification and was not truly *necessary* for trial."). Accordingly, the synchronization fees are disallowed

---

[14] "Synchronization enables a video deposition to be cut according to designated lines of transcript and for the text of the testimony to be displayed when the video is played." *Kalitta Air*, 741 F.3d at 956 n.2 (internal quotation marks omitted).

[15] *See* A-15 ($77.70 and $1,092.50), A-16 ($81.30 and $1,325.00), A-18 ($73.80 and $1,286.25), A-19 ($45.30 and $860.00), A-21 ($40.50 and $898.75), A-22 ($51.00 and $666.25), A-23 ($29.10 and $705.00), A-24 ($48.90 and $1,015.00), A-25 ($68.10 and $976.25), A-29 ($113.00 and $1,268.75), A-34 ($91.50 and $1,006.25), A-35 ($60.00 and $787.50), A-36 ($40.00 and $612.50), A-37 ($136.40 and $1,400.00), A-40 ($160.00 and $1,443.75), A-42 ($60.60 and $1,131.25), A-43 ($85.80 and $1,015.00), A-44 ($70.50 and $1,480.00), A-45 ($110.80 and $1,015.00), A-53 ($179.50 and $1,487.50).

If the "transcript video surcharge" represents a service fee, the cost should be disallowed for the same reason. Alternatively, the "transcript video surcharge" could represent a charge for the video itself. "Local Rule 54-3(c)(1) allows costs for an original and a copy, *i.e.*, two versions of the deposition transcript." *Ancora Techs*, 2013 U.S. Dist. LEXIS 121225, at *18 (holding that party may seek reimbursement for "a combination of any two copies of the final, rough (ASCII), videotape, RealTime, or electronic (e-trans)," but not "more than two copies of the transcript") (citing L.R. 54-3(c)(1)). Because each video deposition invoice also contains a charge for an original plus one copy of the transcript ("Transcript O+1 – Business Litigation"), the video would constitute a third copy, exceeding those permitted by Local Rule 53. *See Fitbug*, 2015 U.S. Dist. LEXIS 62879, at *18-19. Accordingly, the deposition expenses should be reduced by $23,096.30 for non-taxable synchronization and video transcript surcharges.

Excess Copies. In addition, TCS attempts to tax more than two copies of the transcripts from TSG Reporting. *See* A-10–A-14, A-17, A-20, A-26–A-28, A-33, A-41, A-54. TSG essentially offers transcript packages including the certified transcript and two copies (compressed and ASCII), which are "complimentary" with the purchase of a certified transcript. *See, e.g.*, A-10. These costs should be reduced by a third ($1,787.75) to account for the third copy. *See Fitbug*, 2015 U.S. Dist. LEXIS 62879, at **18-19 (holding that "transcript packages contain[ing] more than an original and a single copy" exceed the taxable amount). In addition, A-17, A-26, and A-54 each contain a fourth rough transcript in addition to the three-transcript package. These extra costs, which total $826, should be deducted. In total, these expenses should be reduced by $2,613.75 for excess copies.

Accordingly, the deposition transcript expenses should be reduced by $27,135.05 in total.

**3.      TCS's Deposition Exhibit Printing Costs Exceed Those Allowed by Local Rule**

TCS seeks $10,903.59 for "deposition exhibit printing." *See* A-56–A-95. Under the Local Rules, "[t]he cost of reproducing exhibits to depositions is allowable if the cost of the deposition is allowable." L.R. 54-3(c)(3). This rule encompasses the cost of obtaining copies of the actual deposition exhibits from the court reporter. *See Pixion Inc. v. PlaceWare Inc.*, No. 03-02909, 2005 U.S. Dist. LEXIS 11351, at *6-7 (N.D. Cal. May 25, 2005) ("The Court reads this rule to allow recovery of copying costs for one set of exhibits, but not for an unlimited number of reproductions

made internally by a prevailing party's counsel.").

TCS seeks costs that exceed the deposition exhibit costs from the deposition invoices (A-9 to A-53, discussed in Section III.B.2, *supra*), which total $1,772.25.[16] The excess results from TCS's attempt to tax printing costs for a large number of documents printed in anticipation of the deposition. These expenses fall outside the ambit of "reproducing exhibits to depositions." *See Pixion Inc.*, 2005 U.S. Dist. LEXIS 11351, at *6-7. TCS should be limited to the costs of obtaining the exhibits from the reporters and the excess costs should be denied.

Even if that were not the case, most of the copies were not "necessarily obtained for use in this case" because TCS printed an extraordinary number of unnecessary documents that were not introduced at the depositions. These unnecessary expenditures should be disallowed. *See Shum*, 682 F. Supp. 2d at 998 ("A district court may [also] reduce costs which are unreasonably large or which are not supported by adequate documentation.").

Accordingly, TCS's deposition exhibit costs should be reduced by $9,131.34.

### 4. TCS's Costs for Reporter's Transcripts Exceed Those Allowed by Local Rule and Were Not Necessarily Obtained for Use in this Case

TCS seeks $9,681.36 in costs for transcripts of the court reporter. *See* Dkt. #691-2 at A-1–A-8. Section 1920 permits taxation of "fees for printed or electronically recorded transcripts" but limits those expenses to those "necessarily obtained for use in this case." 28 U.S.C. § 1920(2). The Local Rules provide further guidance: "(1) The cost of transcripts necessarily obtained for an appeal is allowable," and "(2) The cost of a transcript of a statement by a Judge from the bench which is to be reduced to a formal order prepared by counsel is allowable." L.R. 54-3(b)(1)-(2). However, "[t]he cost of other transcripts is not normally allowable unless, before it is incurred, it is approved by a Judge or stipulated to be recoverable by counsel." L.R. 54-3(b)(3).

<u>Miscellaneous Hearings</u>. TCS seeks costs for miscellaneous hearing transcripts. *See* A-1, A-2, A-4–A-8. Under the Local Rules, absent prior approval of a judge or stipulation of the parties, miscellaneous hearing transcripts are generally not recoverable absent a specific showing of

---

[16] *See* Dkt. #691-2 at A-15 ($84.60), A-16 ($76.70), A-18 ($36.55), A-19 ($10.35), A-21 ($29.35), A-22 ($26.10), A-23 ($32.40), A-24 ($76.20), A-25 ($27.90), A-29 ($29.15), A-34 ($33.55), A-35 ($68.20), A-36 ($11.55), A-37 ($73.15), A-40 ($69.30), A-42 ($79.60), A-43 ($51.00), A-44 ($47.25), A-45 ($69.20), A-53 ($28.05).

19

necessity. *See TransPerfect Global, Inc. v. MotionPoint Corp.*, No. 10-02590, 2014 U.S. Dist. LEXIS 47179, at *16 (N.D. Cal. Apr. 4, 2014) ("TransPerfect provides no authority for an award of costs for transcripts of the other hearings where it did not obtain prior approval of a judge or [a] stipulation . . . under Local Rule 54-3(b)(3). It also does not explain why the transcripts were 'necessarily obtained for use in the case.'"). TCS did not obtain prior approval or a stipulation, nor does it explain the necessity of these transcripts. Accordingly, the transcript cost should be reduced by $1,551.20.

Daily Delivery. TCS seeks costs for daily trial transcripts. However, daily trial transcripts were not necessarily obtained for use in the case, and daily delivery was certainly not "necessarily obtained for appeal." *See TransPerfect Global*, 2014 U.S. Dist. LEXIS 47179, at *13-15 (denying requests hourly transcripts because "any appeal would be weeks or months after the jury's verdict, rendering hourly delivery and real time services unnecessary and inappropriate for an award of costs"); *Phx. Techs. Ltd. v. VMWare, Inc.*, No. 15-01414, 2018 U.S. Dist. LEXIS 169596, at *9 (N.D. Cal. Sep. 30, 2018) ("The Court also finds, however, that such cost should be reduced by the amount Defendant seeks for expedited, hourly, and real-time transcripts, as such services are not necessary to bring an appeal."); *Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1219 (E.D. Cal. 2009) (holding that expedited transcripts were not "necessarily obtained" in absence of a compelling specific articulable necessity). Accordingly, the costs should be disallowed.

Second Copy. TCS seeks costs for two copies of the daily trial transcripts. A party is limited to one copy of a reporter's transcript taxed pursuant to L.R. 54-3(b) (although up to two copies of a deposition transcript can be taxed under L.R. 54-3(c)). *See TransPerfect Global*, 2014 U.S. Dist. LEXIS 47179, at *13-15 (disallowing "costs for multiple copies of each day's trial transcripts"). Accordingly, the transcript expenses should be reduced by $1,150.80, to deduct the additional copies.

**5.      TCS's Trial Exhibit Printing Is Not Taxable and Insufficiently Documented**

The Clerk taxed $52,783.18 for trial exhibit printing, of $52,821.76 sought by TCS. A-187–A-209. Under L.R. 54-3(d) "[t]he cost of reproducing trial exhibits is allowable to the extent that a Judge requires copies to be provided."

Plaintiffs' Exhibits. TCS seeks $5,192.97 for printing copies of Plaintiffs' exhibits. *See* A-190. These falls outside the permissible costs. *See Nuance Commc'ns*, *Inc. v. Abbyy USA Software*

*House, Inc.*, No. 3:08-2912, 2014 U.S. Dist. LEXIS 192662, at *18 (N.D. Cal. Jan. 9, 2014) (disallowing costs for printing a copy of opposing parties' exhibits). Nor were they required by the judge. Accordingly, the exhibit expense should be reduced by $5,192.97.

    <u>Defendant's Exhibits</u>. The Clerked taxed $47,590.21 for printing TCS to print various duplicative copies of its own exhibits. A-187–A-189, A-191–A-209. Although the Court required one full set of exhibits for the jury, TCS seeks costs beyond that single set. These copies, created for TCS's convenience, are not allowed. *Nuance Commc'ns*, 2014 U.S. Dist. LEXIS 192662, at *23-24 ("The undersigned finds no indication that the creation of courtroom copies of these identified exhibits was required by the court. Rather, the copies were clearly for the convenience of counsel, and thus are not 'necessarily' obtained for use in the case.").

    And TCS's single set (A-208) is unreasonable. In total, TCS seeks over $36,000 for printing all documents listed on its 1,713-page long exhibit list. *See* Trial Tr. 897:16-21 (THE COURT: "Do you know how – I've told so many judges about that list I can't tell you. It is absurd."). The documents total 120,000 pages. This includes printing 23,354 pages of documents that appear to correspond to the excluded termination files, *see* A-143 (similar print job which corresponds to the termination files), at a cost of $3,970. *See* A-208.It also includes 19,708 pages of color printing, at a cost of $18,722.60,[17] but TCS offered no justification for why the higher cost of color copies was reasonable or necessary in a case that primarily concerned internal emails and austere corporate documents. *See Memory Lane, Inc.*, 2014 U.S. Dist. LEXIS 199030, at *9 ("reduc[ing] the costs for color copies by 90%" where they were not necessary). These costs should be disallowed as patently unreasonable.

    In any event, TCS provides no explanation of the exhibits printed or their purpose. This is insufficient to meet its burden to show the costs are taxable. *Intermedics, Inc. v. Ventritex, Inc.*, No. 90-20233, 1993 U.S. Dist. LEXIS 17803, at *19 (N.D. Cal. Dec. 2, 1993) (denying cost where "Ventritex did not provide support or reasoning to justify an award of this expense as a taxable cost. Ventritex did not suggest, for example, that the court required Ventritex to make these copies."); *see*

---

[17] *See* Dkt. #691-2 at A-106 (697 pages, $493.82), A-112 (3,751 pages, $367.97), A-125 (1,018 pages, $832.22), A-129 (1,822 pages, $496.50), A-130 (2,920 pages, $1,750.54), A-145 (120 pages, $72.27), A-178 (22,440 pages, $6,507.02), A-179 (243 pages, $206.02), A-180 (3,168 pages, $3,295.51), A-181 (1,097 pages, $1,141.15), A-183 (178 pages, $106.80), A-185 (27 pages, $16.96), A-186 (1,097 pages, $658.20).

*also* L.R. 54-1(a). Accordingly, the defense exhibit expense should be denied in full and $47,590.21 should be deducted from the cost bill.

In total, the full $52,783.18 for printing trial exhibits should be disallowed.

**6.     TCS's Costs for Trial Visual-Aid Preparation Exceed Those Allowed by Local Rule and/or Are Not Acts of Copying or Exemplification**

TCS seeks $36,093.75 in visual-aid costs for "on-site support" and "communication design." *See* Dkt. #691-2 at A-210, A-211. Section 1920 permits taxation of "fees for exemplification"[18] but only if "necessarily obtained for use in this case." 28 U.S.C. § 1920(4). Under the Local Rules, "[t]he cost of preparing charts, diagrams, videotapes and other visual aids to be used as exhibits is allowable if such exhibits are reasonably necessary to assist the jury or the Court in understanding the issues at the trial." L.R. 54-3(d)(5). However, "'[o]nly the cost of physical preparation of demonstratives are recoverable . . . ; costs associated with the intellectual effort involved in creating the content of demonstratives are not recoverable." *Ancora Techs*, 2013 U.S. Dist. LEXIS 121225, at *15-16 (quoting *Comput. Cache Coherency Corp. v. Intel Corp.*, No. C-05-01766, 2009 U.S. Dist. LEXIS 122596, at *6 (N.D. Cal. Dec. 18, 2009)); *see also Plantronics*, 2012 U.S. Dist. LEXIS 152297, at *25 (same).

On-Site Support. TCS seeks $19,275 in "on-site support" costs. Technical support and consulting services are "intellectual effort" that is not taxable. *Ancora Techs*, 2013 U.S. Dist. LEXIS 121225, at *14 (citing *Plantronics*, 2012 U.S. Dist. LEXIS 152297, at **9-10; *Am. Color Graphics, Inc. v. Travelers Property Cas. Ins. Co.*, No. 04-3518, 2007 U.S. Dist. LEXIS 22641, at **8-9 (N.D. Cal. Mar. 19, 2007)). Accordingly, the visual aid expenses should be reduced by $19,275 for "on-site support."

Communication Design. TCS seeks $16,818.75 for "communication design." This necessarily encompasses the intellectual effort to "design" the content of the presentation, rather than its basic physical preparation. *See Ancora Techs*, 2013 U.S. Dist. LEXIS 121225, at *15-16 (holding that

_____

[18] "'Exemplification' has appeared in the [costs] statute since 1853, when the word meant 'an illustration by example' or 'an official transcript of a document from public records, made in a form to be used as evidence, and authenticated as a true copy.' Today, the word means 'the act or process' of 'showing or illustrating by example,' or 'an official transcript of a public record, authenticated as a true copy for use as evidence.'" *Kalitta Air*, 741 F.3d at 959 n.4 (quoting *Country Vintner*, 718 F.3d at 262) (alterations in original).

"graphics consulting" costs are not taxable); *F.B.T. Prods., LLC v. Aftermath Records*, No. 07-3314, 2009 U.S. Dist. LEXIS 134998, at *9 (C.D. Cal. June 25, 2009) ("Plaintiffs contend that only the costs for physically producing or duplicating visual materials are taxable; the fees paid for 'computer design,' an 'art director,' and the like are prohibited by [the Ninth Circuit's holdings in] *Zuill* and *Romero*. The Court agrees and will award fees only for the production and exemplification of visual aids, not the cost of designing those materials."). And TCS billed 56.75 hours of this "communication design" work. "The amount of time billed indicates that the costs are more than simply the time to produce the graphics themselves and instead include the 'intellectual effort' needed to create their content." *Ancora Techs*, 2013 U.S. Dist. LEXIS 121225, at *16.

Moreover, most of the "communication design" was completed by Tessa Eckholm, whose qualifications demonstrate the substantive nature of the work. While Ms. Eckholm holds a J.D. and a B.A. (in biology and political science), she does not hold a graphic arts degree. *See* Tessa Eckholm, RLM TRIAXGRAPHIX, https://bit.ly/2T5uoNc (last visited Jan. 24, 2019). Her title at RLM | TrialGraphix is "managing director," a clearly supervisory position, and she serves as "leader of the international arbitration practice." *Id.* In that capacity Ms. Eckholm "uses her extensive experience *to simplify complex legal concepts through the use of clear and compelling graphics; ultimately assisting attorneys in identifying effective case themes and developing persuasive visual presentations*." *Id.* (emphasis added). And she cost TCS $300 per hour. *See* A-211. Ms. Eckholm's role and qualifications make it implausible that she devoted nearly 57 hours exclusively to physically creating graphics—her work clearly entailed intellectual effort. Accordingly, the visual aid expenses should be reduced by $16,818.75 for "communication design."

<u>Insufficiently Documented</u>. In any event, TCS's invoices provide little explanation beyond these cursory descriptions ("on-site support" and "communication design") to explain the nature of the work and the company failed to submit factual affidavits explaining the billing designations. This is insufficient to meet its burden to show the costs it seeks are taxable under 28 U.S.C. § 1920(4). *Ancora Techs*, 2013 U.S. Dist. LEXIS 121225, at *5; *see also* L.R. 54-1(a). Accordingly, TCS's visual aid costs are not recoverable and the visual aid expenses should be reduced by $36,093.75.

### 7. TCS's Witness Travel Costs Are Insufficiently Documented and/or Exceed the Expenses Allowed by Statute

TCS seeks $13,792.40 for witness's airfare. *See* A-236. Section 1920 permits taxation of "fees and disbursement for printing and witnesses," § 1920(3), and federal law "provides, 'A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier *at the most economical rate* reasonably available.'" *Vectren Comm'ns Servs. v. City of Alameda*, No. 08-3137, 2014 U.S. Dist. LEXIS 100227, at *25 (N.D. Cal. July 22, 2014) (quoting 28 U.S.C. § 1821(c)(1)) (emphasis added). As always, the party seeking costs must "itemize its costs with sufficient detail to establish that each expense is taxable under section 1920," *Ancora Techs*, 2013 U.S. Dist. LEXIS 121225, at *5, and "[a]ppropriate documentation to support each item claimed must be attached to the bill of costs." L.R. 54-1(a); *see also* 28 U.S.C. § 1821(c)(1) ("A receipt or other evidence of actual cost shall be furnished.").

<u>Non-Economy Flights</u>. Ticket prices suggest that Mr. Kant ($4,769), Mr. Srinivasan ($1,126 and $838), Mr. Seetharaman ($1,480 and $788), Mr. Ganapathy ($1,508), Ms. Smalley ($1,661), and Ms. Gwalani ($1,248) flew first or business class. These fares, which far exceed other witnesses' travel costs, are not recoverable as they are not "the most economical rate reasonably available.'" *Vectren Commc'ns Servs.*, 2014 U.S. Dist. LEXIS 100227, at *25 (quoting 28 U.S.C. § 1821(c)(1)). Although TCS claims that it "did not tax the full cost of flights that appeared to exceed the average economy class fare," the aggregate fares were discounted by only $2,769.40, which seems insufficient given that Mr. Kant's flight alone was over $4,000 more than the cost of an average domestic flight. And TCS provided no information about its methodology for determining the amount taxed. Accordingly, the above-average airfares should be disallowed in full.

<u>Deficient Documentation</u>. TCS attached only a self-created spreadsheet as documentation of the airfares. A spreadsheet is not a receipt. *See* 28 U.S.C. § 1821(c)(1) (requiring a "receipt or other evidence of actual cost"). The spreadsheet, moreover, lacks any meaningful information regarding type of ticket (e.g. first class), airline, whether it was round trip or one way, direct or layover, and the origin or destination of the flight. These omissions make it impossible to gauge whether TCS is taxing "the most economical rate reasonably available" "to and from [the] witness's residence." 28 U.S.C.

§ 1821(c)(1). Accordingly, the Court should deny $13,792.40 in witness travel costs.

Mr. Srinivasan's Flights. In addition, Mr. Srinivasan's two flights are well before and well after his November 8 testimony. He is not entitled to reimbursement for personal or business travel. And TCS did not explain this discrepancy. His $1,964 flight costs should be disallowed in full.

Mr. Ganapathy's Expenses. Travel costs and witness fees are not taxable for witnesses who appear at trial as corporate representatives. *Golden Voice Tech. & Training, L.L.C. v. Rockwell Elec. Commerce Corp.*, No. 6:01-1036, 2004 U.S. Dist. LEXIS 22064, at *15 (M.D. Fla. Jan. 30, 2004) (citing *Kemart Corp. v. Printing Arts Research Labs., Inc.*, 232 F.2d 897, 901-02 (9th Cir. 1956)); *Crevier-Gerukos v. Eisai, Inc.*, No. 11-0434, 2014 U.S. Dist. LEXIS 2597, at *14-15 (S.D. Tex. Jan. 9, 2014) (denying travel expenses of corporate representative). Because Mr. Ganapahty appeared as TCS's corporate representative, his $3,473.65 in travel expenses and witness fees are not taxable. *See* A-229 ($602.65 for accommodations), A-236 ($2,871 for flights).

Accordingly, TCS's travel costs should be reduced by $14,394.65 ($13,792.40 for witness's airfare and $602.65 for Mr. Ganapathy's expenses).

### IV.    CONCLUSION

For the foregoing reasons, the Court should decline to tax TCS's requested costs.

Dated: February 22, 2019

Respectfully submitted,

By: /s/Daniel Kotchen
Daniel Kotchen (*pro hac vice*)
Daniel Low (SBN 218387)
Michael von Klemperer (*pro hac vice*)
Lindsey Grunert (*pro hac vice*)
Amy Roller (*pro hac vice*)
KOTCHEN & LOW LLP

*Attorneys for Plaintiffs and the Class*

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system.

Dated: February 22, 2019

By: /s/Daniel Kotchen
Daniel Kotchen