3          **UNITED STATES DISTRICT COURT**

4          **NORTHERN DISTRICT OF CALIFORNIA**

5

6     **CHRISTOPHER SLAIGHT, ET AL.,**              CASE NO. 15-cv-01696-YGR

7                    Plaintiffs,
                                                    **ORDER GRANTING IN PART AND DENYING**
8            vs.                                    **IN PART PLAINTIFFS' MOTION FOR**
                                                    **REVIEW OF CLERK'S TAXATION OF COSTS**
9     **TATA CONSULTANCY SERVICES, LTD,**
                                                    Re: Dkt. No. 710
10                   Defendant.

11

12          Plaintiffs Christopher Slaight, Seyed Amir Masoudi, and Nobel Mandili, as well as the

13   class they represent, have filed a Motion for Review of Clerk's Taxation of Costs of prevailing

14   party, defendant Tata Consultancy Services, Ltd ("TCS"). (Dkt. No. 710 ("Motion").) Having

15   carefully considered the papers submitted, and for the reasons set forth below, the Court hereby

16   **GRANTS IN PART** and **DENIES IN PART** the motion as stated herein.

17   **I.      BACKGROUND**

18          On January 2, 2019, following this Court's entry of partial judgment in favor of TCS based

19   on the jury verdict rendered on November 28, 2018, TCS filed with the Clerk of the Court a Bill of

20   Costs seeking $489,576.17 in costs. (Dkt. No. 691 ("BOC").) On January 28, 2019, plaintiffs

21   filed improperly generic objections to TCS's Bill of Costs.[1] (Dkt. No. 698.) On February 15,

22   2019, the Clerk of the Court issued an order awarding TCS $489,537.60. (Dkt. No. 709.) The

23   instant motion followed.

24

25          ───────────────────
          [1] As the Court noted in its February 12, 2019 order striking portions of plaintiffs' objection
26   as well as TCS's response thereto, plaintiffs' objection that "the Court should exercise its
     discretion to decline to tax costs, as an award of costs would be inequitable," (*see* Dkt. No. 698 at
27   2:18-10:5) was not properly characterized as "specific objections to any item of cost claimed in
     [TCS's] bill, succinctly setting forth the grounds of each objection." (*See* Dkt. No. 708 (citing
28   Civil L.R. 54-2(a)).) Accordingly, the Court instructed parties to comply with Federal Rule of
     Civil Procedure 54(d)(1) and Civil Local Rule 54-2. (*See id.*)

## II.    LEGAL STANDARD

"An award of standard costs in federal court is normally governed by Federal Rule of Civil Procedure 54(d)." *Champion Produce, Inc. v. Ruby Robinson Co.,* 342 F.3d 1016, 1022 (9th Cir. Idaho 2003) (denial upheld in breach of contract action). Rule 54(d)(1) states: "[u]nless a federal statute, these rules, or a court order provides otherwise, costs-other than attorney's fees—should be allowed to the prevailing party . . . ." FRCP 54(d). The types of costs that may be awarded under Rule 54(d) are limited to those enumerated in 28 U.S.C. § 1920 ("Section 1920"). *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 572-73 (2012); *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441-442 (1987). Those costs include:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Local Rule 54-1 requires that a prevailing party claiming taxable costs serve a bill of costs no later than 14 days after entry of judgment, stating each item specifically and separately. Civ. L. R. 54-1(a). The bill of costs must be supported by an affidavit that the costs are stated correctly and incurred necessarily, and it must attach supporting documentation for each item claimed. *Id.*

The court reviews *de novo* the Clerk's taxation of costs. *See Lopez v. San Francisco Unified School Dist.,* 385 F.Supp.2d. 981, 1001 (N.D. Cal. 2005). District courts have "wide discretion" in determining whether and to what extent prevailing parties may be awarded costs pursuant to Rule 54(d). *K-S-H Plastics, Inc. v. Carolite, Inc.,* 408 F.2d 54, 60 (9th Cir.1969).

Generally, Rule 54(d)(1) creates a presumption in favor of awarding costs to a prevailing party, but the district court may refuse to award costs within its discretion. *See FRCP 54(d)(1); Association of Mexican-American Educators v. California,* 231 F.3d 572, 591 (9th Cir. Cal. 2000)

(denial of costs upheld in action regarding allegedly discriminatory test by public school districts). The losing party has the burden to "show why costs should not be awarded." *Save Our Valley v. Sound Transit,* 335 F.3d 932, 944-45 (9th Cir. 2003). However, the presumption in favor of awarding costs to the prevailing party does not relieve that party from its obligation to itemize its costs with sufficient detail to establish that each expense is taxable under section 1920. *See Plantronics, Inc. v. Aliph, Inc.*, 09-cv-1714 WHA(LB), 2012 WL 6761576 at *3 (N.D. Cal. Oct. 23, 2012); *Oracle America, Inc. v. Google, Inc.,* No. C 10-03561 WHA, 2012 WL 3822129, at *3 (N.D. Cal. Sept.4, 2012); *accord In re Ricoh Co., Ltd. Patent Litig.,* 661 F.3d 1361, 1368 (Fed. Cir. 2011) (applying Ninth Circuit law to deny costs to a prevailing party that "did not meet its burden" to itemize costs with specificity). "Once a prevailing party establishes that the expense is taxable under section 1920, then the presumption applies." *Plantronics,* 2012 WL 6761576 at *3.

## III. ANALYSIS

Under Federal Rule of Civil Procedure 54(d) there is a presumption in favor of awarding costs to prevailing parties, and the losing party must show why costs should not be awarded even in civil rights cases. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 944-45 (9th Cir. 2003); *see also Draper v. Rosario,* 836 F.3d 1072, 1090 (9th Cir. 2016). Because plaintiffs brought the instant action pursuant to Title VII and 42 U.S.C. § 1981, both of which entitle a prevailing defendant to recover costs, they are liable for such costs. *See NOW v. Bank of Cali., Nat'l Ass'n*, 680 F.2d 1291, 1294 (9th Cir. 1982).

Here, plaintiffs contend that the Clerk's taxation of costs errs in three ways. Plaintiffs contend that (A) TCS's bill of costs contains non-taxable, unnecessary, and unsupported expenses; (B) costs, no matter the amount, cannot be taxed against absent class members; and (C) the Court should exercise its discretion to decline to tax costs based on equity. (*See* Motion at 2.)

### A. Sufficiency of TCS's Bill of Costs

First, plaintiffs argue that nearly every cost sought by TCS is without sufficient explanation because TCS did not submit an affidavit explaining the costs it seeks and the reasons they were incurred and therefore fails to meet its burden under the Civil Local Rule 54(d) and Ninth Circuit precedent. (Motion at 9.) This argument fails because TCS's bill of costs uses Form

CAND 133, the form provided by and available on the website of the United States District Court for the Northern District of California. (*See* BOC.) The form includes the required affidavit pursuant to 28. U. S. C. § 1924. (*Id.* at 2, item 10.)

Next, plaintiffs argue that at least some of TCS's costs are "affirmatively unallowable," and therefore the Court lacks discretion to award them, because those costs are not specifically enumerated in 28 U.S.C. § 1920. (*Id.* at 9-10.) As noted above, the types of costs that may be awarded under Rule 54(d) are limited to those enumerated in Section 1920. *Taniguchi*, 566 U.S. at 572-73; *Crawford Fitting Co.,* 482 U.S. at 441-442. Those costs include:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

18 U.S.C. § 1920. When construing these categories, courts must "hew closely to the statute's language, scheme, and context" because "[Section] 1920 is narrow, limited, and modest in scope," *Kalitta Air LLC v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013) (citing *Taniguchi*, 566 U.S. at 572-73), and "[t]axable costs are limited to relatively minor, incidental expenses." *Taniguchi*, 566 U.S. at 573.

Plaintiffs assert that (1) TCS improperly categorizes many of its discovery expenses as copying fees under Section 1920(4); (2) TCS's deposition transcript costs exceed those allowed by local rule; (3) TCS's deposition exhibit printing costs exceed those allowed by local rule; (4) TCS's costs for reporter's transcripts exceed those allowed by local rule and were not necessarily obtained for use in the case; (5) TCS's trial exhibit printing is not taxable and is insufficiently documented; (6) TCS's costs for trial visual-aid preparation exceed those allowed by local rule and/or are not acts of copying or exemplification; and (7) TCS's witness travel costs are insufficiently documented and/or exceed the expenses allowed by statute. (Motion at 10-23.) The

Court addresses each argument in turn.

### 1. Discovery Expenses as Copying Fees

TCS's Bill of Costs includes $300,383.57 in discovery costs. (BOC, Ex. A ("Index") at A-96–A-196.) TCS describes each of these items as falling into the category of "Disclosure/Formal Discovery Documents, Civil LR 54-3(d)(2)." (*Id.*) That portion of the local rule states that the "cost of reproducing disclosure or formal discovery documents when used for any purpose in the case is allowable." Civil L.R. 54-3(d)(2). Section 1920(4) permits taxation of "fees for exemplification and the cost of making copies" but only if "necessarily obtained for use in this case." 28 U.S.C. § 1920(4). Therefore, in order for the cost of reproduction to qualify for taxation under Section 1920(4), the costs must be for "copying" and necessarily obtained for use in the case. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 929 (9th Cir. 2015).

### a. *TCS's File Processing Costs*

TCS seeks $216,213.04 for various discovery processing costs. (*See* Index at A-117–A-120, A-122, A-149, A-150, A-152, A-153, A-156–A-158, A-166.)[2] Plaintiffs argue that these costs are not for "copying" because they are processing charges for electronically stored information ("ESI"). However, some processing charges for ESI do constitute "copying" and can therefore be taxable under Section 1920(4). *Online DVD-Rental*, 779 F.3d at 930-32 (finding that costs "attributable to optical character recognition ["OCR"], converting documents to TIFF, and 'endorsing activities[,]'" "which include the branding of image files with unique sequential production numbers and confidentiality designations" are taxable costs). The types of processing enumerated by TCS fall into this category. (*See* Index at A-117–A-120, A-122, A-149, A-150, A-152, A-153, A-156–A-158, A-166 (including OCR of documents, TIFF conversion, processing of native files, endorsing images, and branding). Accordingly, the Court finds that these ESI processing costs constitute copying.

\\

---

[2] *See also* BOC, Ex. B ("Receipts") at A-117 ($50.44), A-118 ($50), A-119 ($50), A-120 ($50), A-122 ($665.18), A-149 ($7.91), A-151 ($27,330), A-152 ($42,033), A-153 ($133,832), A-156 ($50), A-157 ($346.89), A-158 ($4,635.75), A-166 ($27,076).

United States District Court
Northern District of California

Plaintiffs further assert that for "most" of these discovery processing costs, "TCS fails to identify the processed documents or explain the function, significance, or necessary of each act of processing." (Motion at 13.) However, plaintiffs misrepresent the Ninth Circuit's direction in *Online DVD-Rental*. Therein, the court instructs that Section 1920(4) "requires that the tasks and services for which an award of costs is begin considered must be described and established with sufficient specificity, particularity, and clarity as to permit a determination that the costs are awarded for making copies." 779 F.3d at 928. This does not require, as plaintiffs assert, that TCS *explain* the significant of each act of processing. Accordingly, the Court finds TCS's discovery processing costs of $216,213.04 appropriate.

b. *TCS's TIFF Conversion Costs*

TCS seeks $6,967.15 for tasks related to the conversion of documents to TIFF format.[3] (*See* Index at A-96, A-98–102, A-107, A-114, A-122, A-124, A-142, A-148, A-152, A-178).[4] As noted above, converting a file may qualify as "copying," but "the further determination is required whether the copies were necessarily obtained for use in the litigation." *Online DVD-Rental*, 779 F.3d at 928-30.

Plaintiffs argue that these TIFF conversion costs were not necessarily incurred because, based on their review of TCS's receipts, TCS had already converted native files to TIFF format in order to load them into the Relativity computer program for internal pre-production review using that software. (Motion at 14 (citing Receipts at A-98).) Plaintiffs further contend that "TCS neither identifies the files processed or explains the processing's purpose." (*Id.*) In support of this argument, plaintiffs rely on an email exchanged providing instructions for a Relativity file load. (*See* Receipts at A-98.) The Court does not agree that this document establishes that TCS had previously converted native files to TIFF rendering the taxed conversion costs duplicative.

---

[3] "The .tif extension connotes a TIFF file, '[a] widely used and supported graphic file format . . . for storing . . . images.'" *Country Vinter of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 253 n.5 (4th Cir. 2013) (internal citation omitted).

[4] *See also* Receipts at A-96, ($342.96), A-98 ($40.29), A-107, A-114, A-122, A-124, A-142, A-148, A-152, A-178

6

Additionally, for the reasons stated above, the Court finds unpersuasive plaintiffs' insistence that TCS must explain the function of each act of processing. Accordingly, the Court finds TCS's TIFF conversion costs appropriate.

### c. *TCS's Hard Drive Costs*

TCS seeks $18,561.86 for the purchase of 86 hard drives, including sales tax. (*See* Index at A-110, A-151, A-153, A-158, A-159, A-163, A-165–A-167, A-175, A-178.)[5] Plaintiffs argue that because TCS produced only 13 hard drives containing documents to plaintiffs, and because the invoices make clear that some of the hard drives were used in TCS's data collection process not its production process, the Court should reduce this request by $15,756.71.[6] (Motion at 15.) TCS does not provide any response regarding the use of the 74 hard drives. Because costs compensable under Section 1920 are only permitted for preparation and duplication of documents, not the efforts incurred in assembling, collecting, or processing those documents, the Court **GRANTS** plaintiffs' motion and **REDUCES** TCS's hard drive costs by $15,756.71. *See Zuill v. Shanahan*, 80 F.3d 1136, 1371 (9th Cir. 1996).

### d. *TCS's Costs Associated with Printing and Blowbacks*

TCS seeks $57,390.61 for printing 355,276 pages of documents. (*See* Index at A-97, A-101–106, A-108–116, A-125, A-126, A-128–135, A-137, A-139, A-141, A-143–147, A-149, A-150, A-152, A-154–157, A-160–165, A-168–186.) Plaintiffs assert that because the case involved no hard copy document production, these copies of discovery documents were created for the convenience of counsel, rather than for production, and are therefore not necessarily obtained. (Motion at 15.) Plaintiffs point to specific printing expenses as "created solely for the convenience of counsel" and assert that for the remainder, TCS has not sufficient documented the costs to show what was printed and why. (*Id.* at 15-16.) Plaintiffs also argue that "certain line

---

[5] *See also* Receipts at A-110 (15 hard drives, $2,861.25), A-151 (21 hard drives, $4,005.75), A-153 (32 hard drives, $6,104.00), A-158 (1 hard drive, $190.75), A-159 (1 hard drive, $174.40), A-163 (1 hard drive, $163.50), A-165 (1 hard drive, $196.20), A-166 (6 hard drive, $2,289.00), A-167 (1 hard drive, $321.55), A-175 (5 hard drives, $1,907.50), A-178 (2 hard drives, $348.80).)

[6] Plaintiffs calculate this amount based on the average hard drive price of $215.85.

7

items are clearly impermissible[,]" such as costs incurred for "premium printing services," including 38,578 pages printed in color. (*Id.* at 16.) TCS does not appear to contest this argument. (*See* Opp. at 21-22 (specifically addressing only plaintiffs' arguments about $216,213.04 in discovery processing costs and TIFF conversion expenses).) TCS does aver that the costs sought each fall into the categories enumerated in the form CAND 133. (Opp. at 20 (citing BOC at ECF 4).) However, this chart lists the "kinds of document *production* costs [that] are generally considered taxable" and therefore does not address plaintiffs' argument that the documents were not used for the purposes of production. (*See* BOC at ECF 4 (emphasis supplied).) Accordingly, the Court **GRANTS** plaintiffs' motion and **REDUCES** TCS's costs for printing and blowbacks by $57,390.61.

### 2. Deposition Transcript Costs

TCS seeks $62,688.15 in expenses related to deposition transcripts. (*See* Index at A-9–A-54.) Local Rule 54-3(c)(1) allows taxation of costs of "an original and one copy of any deposition (including videotaped depositions)," "[t]he cost of reproducing exhibits to depositions," notary fees, and "[t]he attendance fee of a reporter when a witness fails to appear[.]" Civil L.R. 54-3(c)(1). Plaintiffs contend that TCS's deposition transcript expenses extend beyond those allowed by the rule because they include (a) shipping and handling costs, (b) videography expenses, and (c) excess copies. (Motion at 17-18.)

#### a. *Shipping and Handling Costs*

TCS seeks shipping and handling costs for every deposition transcript, except for one. (*See* Index A-10–A-54.) Plaintiffs argue that because the "cost of shipping deposition transcripts . . . does not fall within the ambit of allowable costs[,]" the court should reduce TCS's deposition expenses $1,425.00. (Motion at 17 (citing *Guerrero v. Cal. Dep't of Corr. & Rehab.*, No. 13-05671 WHA, 2017 WL 6270383, at *4 (N.D. Cal. Dec 9, 2017)).) The Court finds that although the costs of shipping and handling are not *per se* unallowable, TCS fails to provide authority for taxation of costs for *overnight* shipping. *See City of Alameda, Cal. v. Nuveen Mun. High Income Opportunity Fund*, No. C 08-4575 SI, 2012 WL 177566, at *3 (N.D. Cal. Jan 23, 2012) (noting that the "normal practice in the Northern District is to disallow any postage and handling charges

8

that exceed the rate of regular first-class mail plus handling" and sustaining objection to overnight delivery charges) (internal citations omitted).[7] Because the Court cannot determine how much of the $55.00 per deposition was for the expedited nature of the overnight delivery of the transcripts (*see* Receipts at A-10–A-54), and no alternative is provided, the Court **GRANTS** plaintiffs' motion and **REDUCES** TCS's shipping and handling costs by $1,425.00.

### b. *Videography Expenses*

TCS seeks $21,472.50 for synchronization fees and $1,623.80 for "transcript video surcharges." (*See* Index A-15, A-16, A-18, A-19, A-21–A-25, A-29, A-34–A-37, A-40, A-42–A-45, A-53.)[8] "[T]he costs of deposition editing and synchronizing are not authorized by § 1920." *Kalitta Air L.L.C. v. Central Texas Airborne System Inc.*, 741 F.3d 955, 958 (9th Cir. 2013).[9] Accordingly, the Court **GRANTS** plaintiffs' motion and **REDUCES** TCS's deposition transcript expenses by $21,472.50.

Plaintiffs argue that the Court should also reduce TCS's deposition expenses by $1,623.80. (Motion at 18.) Specifically, plaintiffs contend that "transcript video surcharges" represent either a service fee, which, plaintiffs argue, should be disallowed under *Kalitta*, or a charge for the video itself. (*Id.*) If the surcharge does represent a charge for the video itself, plaintiffs argue that the video constitutes a *third* copy and therefore exceeds the costs allowed under Local Rule 54-3(c)(1). (*Id.*) The Court agrees. Accordingly, the Court **GRANTS** plaintiffs' motion and **REDUCES**

---

[7] TCS's citation to this Court's decision in *Kranson v. Federal Express Corporation* does not persuade. (Opp. at 19 (citing No. 11-cv-05826-YGR, 2013 WL 6503308, at 13 (N.D. Cal. Dec. 11, 2013).) In *Kranson*, the Court approved taxation of costs associated with shipping and handling fees in the amount of $145.25. *Kranson*, 2013 WL 6503308, at 13. Here, TCS seeks $1,425.00 in such fees.

[8] *See also* Receipts A-15 ($77.70 and 1,092.50), A-16 ($81.30 and $1,325.00), A-18 ($73.80 and $1,286.25), A-19 ($45.30 and $860.00), A-21 ($40.50 and $898.75), A-22 ($51.00 and $666.25), A-23 ($29.10 and $705.00), A-24 ($48.90 and $1,015.00), A-25 ($68.10 and $976.25), A-29 ($113.00 and $1,268.75), A-34 ($91.50 and $1,015.00), A-35 ($60.00 and $787.50), A-36 ($40.00 and $612.50), A-37 ($136.40 and $1,400.00), A-40 ($160.00 and $1,443.75), A-42 ($60.60 and $1,131.25), A-43 ($85.80 and $1,015.00), A-44 ($70.50 and $1,480.00), A-45 ($110,80 and $1,015.00), A-53 ($179.50 and $1,487.50).

[9] Each of the cases to which TCS cites in support of its assertion that videography expenses should be taxed predate the Ninth Circuit's decision in *Kalitta*. (*See* Opp. at 19.)

TCS's deposition transcript expenses by $1,623.80.

### c. *Excess Copies*

Plaintiffs contend that TCS seeks costs for more than two copies of the transcripts from

TSG Reporting.  (*See* Receipts at A-10–A-14, A-17, A-20, A-26–A-28, A-33, A-41, A-54.)

Therefore, they argue, the Court should reduce TCS's deposition transcript costs by one third, or

$1,787.75. (Motion at 18.)  Plaintiffs further assert that the invoices for A-17, A-26, and A-54

each contain a fourth rough transcript in addition to the three-transcript package.  (*See id*. at A-17,

A-26, A-54.)  Therefore, they argue, the Court should further reduce TCS's deposition transcript

costs by an additional $826.  (Motion at 18.)

Although the Court agrees that Local Rule 54-3(c)(1) allows taxation of costs for only one

original and one copy, the Court does not find evidence of taxation of the third and fourth copies

asserted by plaintiffs in the relevant invoices.[10]  Accordingly, the finds TCS's costs for deposition

transcripts for "excess copies" appropriate.

### 3. Deposition Exhibit Printing Costs

TCS seeks $10,903.59 for "deposition exhibit printing."  (*See* Index at A-56–A-95.)

Plaintiffs assert that these costs exceed the deposition exhibit costs from the deposition invoices

that total $1,772.25.[11]  (Motion at 19.)  Plaintiffs contend that this "excess results from TCS's

attempt to tax printing costs for a large number of documents printed in anticipation of the

deposition[,]" which fall outside the ambit of reproducing exhibit to dispositions.  (*Id.*)  Plaintiffs

further argue that "most of these copies were not necessarily obtained for use in this case because

[10]  *See* Receipts at A-10–A-14 (invoice reflects one certified transcript); A-17 (invoice
reflects certified transcript, certified transcript – 3 day delivery, and rough transcript, but Index at
A-17 shows amount taxed for certified transcript, rough transcript, and shipping and handling
only); A-26 (same, for A-26); A-27 (invoice reflects "Certified _MPEG"); A-28 (invoice reflects
one certified transcript); A-33 (same); A-41 (invoice reflects "Certified – MPEG" marked as
"complimentary"); A-54 (invoice reflects one certified and one rough transcript).

[11]  Plaintiffs calculate a total based on the following totals: Receipts at A-15 ($84.60), A-
16 ($76.70), A-18 ($36.55), A-19 ($10.35), A-21 ($29.35), A-22 ($26.10), A-23 ($32.40), A-24
($76.20), A-25 ($27.90), A-29 ($29.15), A-34 ($33.55), A-35 ($68.20), A-36 ($11.55), A-37
($73.15), A-40 ($69.30), A-42 ($79.60), A-43 ($51.00), A-44 ($47.25), A-45 ($69.20), A-53
($28.05).

United States District Court
Northern District of California

TCS printed an extraordinary number of unnecessary documents that were not introduced at the depositions." (*Id.*) Therefore, plaintiffs request that the Court reduce TCS's deposition exhibits costs by $9,131.34. (*Id.*)

Plaintiffs are correct that under the Local Rules, "[t]he cost of reproducing exhibits to depositions is allowable if the cost of the deposition is allowable." (Motion at 18-19 (citing Civil L.R. 54-3(c)(3)).) However, the Local Rules also provide for the "cost of reproducing disclosure of formal discovery documents when used *for any purpose in the case.*" Civil L.R. 54-3(d)(2). Plaintiffs have not presented any authority to suggest that TCS's stated purpose of use in anticipated deposition does not so qualify. Accordingly, the Court finds TCS's costs for deposition exhibit printing are appropriate.

### 4. Reporter's Transcripts

TCS seeks $9,681.36 in costs for transcripts of the court reporter. (*See* Index at A-1–A-8.) Civil Local Rule 54-3(b) permits taxation of "[t]he costs of transcripts necessarily obtained for an appeal." Civil L.R. 54-3(b)(1). The same rule also provides that "[t]he cost of other transcripts is not normally allowable unless, before it is incurred, it is approved by a Judge or stipulated to be recoverable by counsel." Civil L.R. 54-3(b)(3). Plaintiffs argue that these costs are improper because (a) several of these transcripts are for "miscellaneous hearing[s,]" (b) the costs include daily trial transcripts, and (c) TCS seeks costs for two copies of those daily trial transcripts. (Motion 19.)

#### a. *Miscellaneous Hearings*

Plaintiffs assert that because the transcripts invoiced in A-2 and A-4–A-8 relate to miscellaneous hearings, TCS's reporter's transcript costs should be reduced by $1,551.20. (Motion at 19.) The "miscellaneous hearings" reflected in these transcripts include the pretrial conference (*see* A-2; Dkt. No. 616); a further case management conference during which the Court addressed a then-pending motion to strike an amended complaint (*see* A-4; Dkt. No. 69); the hearing on defendant's motion for summary judgment as well as plaintiffs' motions to strike, for leave to file a fourth amended complaint, and to certify a class (*see* A-5; Dkt. No. 229); the hearing on plaintiffs' motions for approval of class notice, for judgment on the pleadings, and for

invalidation of release agreements (*see* A-6; Dkt. No. 410); a discovery hearing regarding requests

from plaintiffs that the court force defendant to answer informal questions about previously

produced documents and appoint a third-party to gather and secure data from defendant (*see* A-7;

Dkt. Nos. 172, 174); a discovery hearing regarding production of a privilege log (*see* A-8; Dkt.

No. 302). The Court finds that these hearings were not "miscellaneous" and, in fact, concern

issues relevant to this pending motion and the motion for a new trial. The Court finds these

transcripts were necessarily obtained for the purposes of appeal.

### b. *Daily Trial Transcripts*

Plaintiffs assert that because daily trial transcripts were not necessarily obtained for use in

the case, and daily delivery was not necessarily obtained for appeal, those costs should be

disallowed.[12] (Motion at 20.) "[V]arious courts in the Northern District tax the costs for pretrial

hearing transcripts for claim construction and summary judgment hearings." *Apple Inc. v.*

*Samsung Elecs. Co., Ltd.*, No. 11-CV-01846, 2014 WL 4745933, at *7 (N.D. Cal. Sept. 19, 2014)

(citations omitted). While the costs of other transcripts are not usually recoverable, parties

"reasonably could incur the expense of obtaining transcripts of all of the court proceedings" where

a case is "contentiously litigated, and the parties ... often made arguments based on the words very

recently spoken by participants or by the court, sometimes using strained interpretations of the

words or pulling them out of context." *Affymetrix, Inc. v. Multilyte Ltd.*, No. C-03-03779 WHA,

2005 WL 2072113, at *2 (citing *Intermedics, Inc. v. Ventritex*, No. C-90-20233 JW (WDB), 1993

WL 515879, at *4 (N.D. Cal. Dec. 2, 1993)). The instant action certainly falls into the latter

category. Accordingly, the Court finds that the daily trial transcripts were necessarily obtained for

use in the case and daily delivery was appropriate.

### c. *Two Copies of Daily Trial Transcripts*

Plaintiffs contend that TCS seeks costs for two copies of the daily trial transcripts and that

its transcript expenses should therefore be reduced by $1,150.80 to deduct the additional copies.

(Motion at 20.) However, the relevant invoice indicates that TCS seeks costs for "ORIGINAL

---

[12] In any event, plaintiffs do not provide a calculation of by how much they would like to reduce TCS's reporter transcript costs.

PLUS ONE (TWO)," which plaintiffs concede allowed by Local Rule 54-3(b). Accordingly the Court finds TCS's costs for reporter transcripts appropriate.

### 5. Trial Exhibit Printing

The Clerk of the Court taxed $52,783.18 of the $52,821.76 TCS sought for trial exhibit printing. (*See* Index at A-187–A-209.) Under the Local Rules, "[t]he cost of reproducing trial exhibits is allowable to the extent that a Judge requires copies to be provided." Civil L.R. 54-3(d). Per the Court's standing order regarding pretrial instructions in civil cases, for a jury trial, the parties must provide two printed sets of exhibits, one for use in the trial and to be provided to jurors and one for the Court, which may also take the form of witness binders.

#### a. *Plaintiffs' Exhibits*

TCS seeks $5,192.97 for printing copies of plaintiffs' exhibits. (*See* Index at A-190.) TCS does not contend (*see* Opp. at 22), and the Court will not assume, that TCS was responsible for printing the plaintiffs' portion of the two required sets of trial exhibits in addition to its own. Accordingly, the Court **GRANTS** plaintiffs' motion and **REDUCES** by $5,192.97 TCS's trial exhibit printing costs.

#### b. *Defendant's Exhibits*

The Clerk of the Court taxed $47,590.21 of the $47,628.79 TCS sought for printing its own exhibits. (*See* Index at A-187–A-189, A-191-209.) Plaintiffs contend that TCS not only seeks costs beyond the single set of exhibits required by the Court, but also avers that TCS's single set (A-208) is unreasonable. (Motion at 21.) Specifically, plaintiffs argue that TCS's effort to seek over $36,000 for printing all of the documents listed on its 1,713-page exhibit list, which totaled 120,000 pages, is unjustified as it includes printing 23,354 pages of documents that appear to correspond to the excluded termination files at a cost of $3,970 as well as 19,708 pages of color printing at the cost of $18,722.60. (*Id.*) Plaintiffs further aver that TCS provides no explanation of the exhibits printed or their purpose and therefore fails to meet its burden to show that the costs are taxable. (*Id.*) Accordingly, plaintiffs ask that the Court deny in full TCS's costs for preparation of trial exhibits. (*Id.* at 22.) The Court agrees. As mentioned during pretrial hearings, defendant's approach to trial exhibits was unreasonable.

TCS fails to provide any information regarding trial exhibits in response to plaintiffs' motion.  Therefore the Court presumes that defendant concedes that plaintiffs are correct that the costs described at A-208 represents the set delivered to the Court pursuant to the Court's pretrial standing order.  It appears, based on the date of the invoices and the accompanying emails, that some of the costs described at A-187–A-189, A-191–A-207, and A-209 represent might represent costs associated with creating the witness binders that constitute the Court set of exhibits required by the Court's pretrial standing order, TCS has made no effort to describe or identify these costs as such.  Accordingly, the Court **GRANTS** plaintiffs' motion and **REDUCES** to an appropriate amount for TCS's costs for printing its own trial exhibits to the $36,172.10 presented in A-208 less an additional fifty (50) percent for a total of $18,086.05.

### 6. Trial Visual Aid Preparation

TCS seeks $36,093.75 in visual-aid costs for "on-site support" and "communication design."  (*See* Index at A-210, A-211.)  Section 1920 permits taxation of "fees for exemplification" but only if "necessarily obtained for use in this case."  28 U.S.C. §1920(4).  Under the Local Rules, "[t]he cost of preparing charts, diagrams, videotapes and other visual aids to be used as exhibits is allowable if such exhibits are reasonably necessary to assist the jury or the Court in understanding the issues at the trial."  Civil L.R. 54-3(d)(5).

Plaintiffs contend that both "on-site support" and "communication design" constitute untaxable "intellectual effort."  (Motion at 22 (citing *Ancora Techs., Inc. v. Apple, Inc.*, No. 11-06357-YGR, 2013 WL 4532927, at *5 (N.D. Cal. Aug. 26, 2013).)  Plaintiffs point to the 56.75 hours TCS billed to the "communication design" work as well as the qualifications of person who did the work, a lawyer without a graphic design degree, as further evidence that the costs are more than simply the time to produce the graphics and instead include the intellectual effort needed to create the content.  (*Id.* at 23.)  Plaintiffs also argue that TCS's invoices fail to explain the nature of the work and therefore did not meet its burden to show the costs it seeks are taxable.  (*Id.*)  The Court disagrees.  As TCS points out, the $36,093.75 in visual aid costs reflect those costs charged by TCS's vendor, TrialGraphix.  (*See* Receipts at A-210, A-211.)  Moreover, TCS requests only those costs that relate to creating the exhibits.  (*See id.*)  Accordingly, the Court finds TCS's visual

1    aid costs appropriate.

2           7. Witness Travel Costs

3           TCS seeks $13,792.40 for witness's airfare. (*See* Index at A-236.) Section 1920 permits

4    taxation of "fees and disbursement for printing and witnesses[.]" 28 U.S.C. § 1920(3). Plaintiffs

5    argue that the Court should reduce these costs because (a) the ticket prices suggest that the

6    witnesses flew first or business class; (b) TCS provided only self-created spreadsheet as

7    documentation; (c) with respect to costs related to Mr. Srinivasan, both of his flights were well

8    before and after his November 8 testimony; and (d) with respect to Mr. Ganapathy, he appeared as

9    TCS's corporate representative so his expenses are not taxable. (Motion at 24-25.)

10          The Court agrees that TCS's provision of an internal spreadsheet does not suffice to

11   provide documentation of the costs incurred. From a practical perspective, invoices for airline

12   travel are not difficult to obtain. Moreover, the authority on which TCS relies for the proposition

13   that "a receipt is not always required" is inapposite as each case cited deals only with Section 1920

14   and does not address the added requirements dealing with witness per diem and travel under 28

15   U.S.C. § 1821. Section 1821(c)(1) provides that a witness who travels by common carrier shall be

16   paid for the actual expenses of travel and that he or she must furnish a receipt or "other evidence

17   of actual cost." 28 U.S.C. § 1821; *see also* Civil L.R. 54-3(e) (per diem, subsistence, and mileage

18   (travel) payments are allowable to the extend reasonably necessary and provided for by 28 U.S.C.

19   § 1821). Therefore, it follows that TCS should likewise furnish a receipt or other *evidence*, rather

20   than an internal undated spreadsheet. Accordingly, the Court **GRANTS** plaintiffs' motion and

21   **REDUCES** TCS's costs by $13,792.40.

22   \\

23   \\

24   \\

25   \\

26   \\

27   \\

28   \\

15

Based on the preceding analysis, the summary of the Court's findings are as follows:

| | | |
|---|---|---|
| Costs Requested | | $489,576.17 |
| Costs Taxed | | $489,537.60 |
| Amount of Costs Tax in Categories Not at Issue in Motion | | $97,406.22 |
| Amount of Costs Taxed in Categories at Issue in Motion | | $392,131.38 |
| *Category at Issue in Motion* | *Amount Requested* | *Reduction* |
| Discovery Costs | | |
| file processing | $216,213.04 | none |
| TIFF conversion | $6,697.15 | none |
| hard drive costs | $18,561.86 | $15,756.71 |
| costs (printing/blowbacks) | $57,390.61 | $57, 390.61 |
| Deposition Transcript Costs | | |
| shipping | $1,425.00 | $1,425.00 |
| videography | $21,472.50 | $21,472.50 |
| surcharges | $1,623.80 | $1,623.80 |
| additional copies | $2,613.75 | none |
| Deposition Exhibit Printing | | |
| | $10,903.59 | none |
| Reporter's Transcript | | |
| | $9,681.36 | none |
| Trial Exhibit Printing | | |
| plaintiffs' exhibits | $5,192.97 | $5,192.97 |
| defendant's exhibits | $47,590.21 | $36,172.10 |
| Trial Visual Aid | | |
| | $36,093.75 | none |
| Witness Travel | | |
| | $13,792.40 | $13,792.40 |
| **Total Reduction** | | $152,826.09 |
| **Total Allowable Costs** | | $336,711.51 |

As noted, the Clerk of the Court taxed $489,576.17 in costs. Less the reduction of $152,826.09 outlined above, the allowable costs total $336,711.51.

## B. Taxation of Costs Against the Class

The Court agrees, and TCS does not appear to contest, that costs should not be taxed against unambiguously *absent* class members, as they are passive participants in the litigation. (*See* Dkt. No. 721 ("Opp.") at 2.) By contrast, TCS argues that the thirty-one (31) class members who later elected to participate in the litigation by choosing to return their severance payments should be responsible for costs. *See* Opp. at 5. The Court disagrees. This case presented a unique

16

situation where, at the last minute, certain class members who had *not* been properly advised of the litigation were provided an opportunity to participate in the final trial stages upon return of severance payments.  These class members had no role in *any* of the pre-trial litigation.  By all accounts, they are properly considered de-facto absent class members despite the last-minute election.  Accordingly, costs will only be taxed against the three named class members.

## C.  Equity of the Taxation of Costs

Next, plaintiffs assert equitable reasons to deny costs.  "Appropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties."  *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247-48 (9th Cir. 2014) (citing *Ass'n of Mex.-Am. Educators*, 231 F.3d at 591-93).  "Each of the factors listen above is an appropriate reason for denying costs, or for a reduction in the amount awarded to the prevailing party.  In addition, the amount of costs is relevant in determining whether a district court's cost award is an abuse of discretion."  *Draper*, 836 F.3d at 1089 (internal citations and quotations omitted).  Plaintiffs contend that each of these factors, including the amount of the costs, weigh in favor of denying the taxation of costs against them on equity grounds.  (*See* Motion at 3-9.)  The Court addresses each.

Factor 1: Public Importance of the Case

Plaintiffs contend that their case presents the issue of "discrimination affecting over a thousand class members and countless other current and former TCS employees nationwide." (Motion at 3.)  Plaintiffs argue that their action therefore presents "an issue 'of the gravest public [concern].'"  (*Id.* (citing *Ass'n of Mex.-Am. Educators*, 231 F.3d at 593).)[13]  Specifically, plaintiffs assert that this action "addresses a major concern in the IT industry—the proliferation of IT companies (including TCS, Infosys, Wipro, Cognizant, and others) that appear to favor South Asians (particularly South Asian visa workers) in hiring, employment, and termination decisions."

---

[13]  Plaintiffs also cite *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1080 (9th Cir. 1999); *Darensburg v. Metro Transp. Comm'n*, No. 05-01597-EDL, 2009 WL 2392094, at *2 (N.D. Cal. Aug. 4, 2009); *Zeen v. City of Sonoma*, No. 17-02056-LB, 2018 WL 4944889, at *9, 12 (N.D. Cal. Oct. 11, 2018).

1    (*Id.* at 4.)  The Court finds this argument unpersuasive.

2        In *Ass'n of Mex.-Am. Educators*, the court found that *several* factors, including the number

3    of potential plaintiffs, rendered the case "extraordinary" – plaintiffs were a group of individuals

4    and nonprofit organizations with limited resources, the action affects tens of thousands of

5    Californians and the state's public school system, and plaintiffs' claims were not without merit as

6    defendants substantially altered their behavior during the pendency of the litigation.  231 F.3d at

7    593 (finding no abuse of discretion in district court's denial of taxation of costs in action claiming

8    that the California Basic Education Skills Test, which is a prerequisite to employment in

9    California public schools, discriminated against Mexican-America, Asian-America, and African-

10   American educators and would-be educators in California).

11       This case does not involve any public school system or public institution at all.  Here, the

12   alleged "major concern" is in the IT industry and the allegedly problematic behavior by a number

13   of IT companies, including defendant.  (Motion at 4.)  Although plaintiffs do not provide any basis

14   for their assertion that other IT companies, including Infosys, Wipro, and Cognizant, have

15   engaged in the alleged behavior, the Bloomberg article to which plaintiffs subsequently cite lists

16   class action litigation against each of these companies.  (*See id.* (citing Laura Francis, *Tata*

17   *Immigration Case Could Shake IT Companies to 'Very Core,'* BLOOMBERG L. (Sept. 12, 2018)).)

18   The Court has reviewed the dockets for each of these actions and found that plaintiffs' counsel in

19   this case, the Washington, D.C. firm of Kotchen & Low LLP, is lead counsel for plaintiffs in each

20   of these other actions.[14]  Plaintiffs have not provided, and the Court cannot find, or conceive of,

21   authority that would allow the fact of a handful of lawsuits brought by the same law firm to

22   substantiate a claim that any one of those actions therefore addresses an issue of the gravest public

23   concern simply by virtue of the existence of the other actions.  Accordingly, the Court finds that

24

25       [14]  Plaintiffs did not advise the Court of this fact.  *See Kohler et al v. Infosys Technologies*
     *Limited Incorporated*, Case No. 2:13-cv-00885-PP-DEJ, Eastern District of Wisconsin (docket
26   identifying Daniel A. Kotchen of Kotchen & Low as Lead Attorney); *Phillips et al v. Wipro, Ltd.*,
     Case No. 4:18-cv-00821, Southern District of Texas (docket identifying Daniel Lee Low of
27   Kotchen & Low as Lead Attorney); *Christy Palmer et al v. Cognizant Technology Solutions*
     *Corporation et al*, Case No. 2:17-cv-06848-DMG-PLA, Central District of California (docket
28   identifying Daniel A. Kotchen of Kotchen & Low as Lead Attorney).

the instant action does not present an issue of the "gravest public concern." *See by contrast Ass'n of Mex.-Am. Educators*, 231 F.3d at 593 (finding an issue of gravest public concern raised by action claiming that the California Basic Education Skills Test, which is a prerequisite to employment in California *public* schools, discriminated against Mexican-America, Asian-America, and African-American educators and would-be educators in California); *Darensburg*, 2009 WL 2392094, at *2 (finding an issue of gravest public concern raised by action alleging racial discrimination in *public* transit funding in the San Francisco Bay Area on behalf of tens of thousands of minority rides of AC Transit); *Zeen*, 2018 WL 4944889, at *4 (finding an issue of gravest public concern in an action involving *police response* to a 911 call for a mental-health welfare check).[15] This factor does not weigh in favor of denying or reducing costs.

<u>Factor 2: Closeness and Difficulty of the Issues Presented in the Case</u>

Plaintiffs next argue that the case "was more than close" as "the jury's verdict for TCS was against the great weight of the evidence[.]" (Motion at 4.) In support of that assertion, plaintiffs contend that they presented "overwhelming (and unrebutted) statistical evidence that alone was sufficient to prove their claims" as well as "substantial corroborating evidence through the testimony of TCS's executives, contemporaneous documents, and testimony from class members regarding their personal experiences of discrimination." (*Id.* at 5.) Plaintiffs also point to the Court's comments following the return of the verdict, the implication of "hotly contested" legal issues, the 10-hour duration of jury deliberations, and their defeat of TCS's motion for summary judgment as further evidence of the closeness and difficulty of the issues presented in the case. (*Id.* at 4-6.) Defendant, not surprisingly, disagrees.

The arguments in this regard parallel those discussed in detail in the accompanying order denying plaintiffs' motion for a new trial. The Court adopts its evaluation of the evidence here. In

---

[15] The Court notes that although plaintiffs also cite to *Stanley*, the court in that opinion did not address or otherwise mention the concept of "gravest public concern" and found instead, that the district court abused its discretion in awarding taxation of costs in light of the plaintiff's indigency and the chilling effect of imposing such high costs on future civil rights litigants. 178 F.3d at 1079 (concluding that the district court abused its discretion "particularly based on [its] failure to consider two factors: Stanley's indigency, and the chilling effect").

short, the Court concludes that this was a triable case.  In terms of complexity, the class action *Teamsters* nature of the matter increased its complexity.  Rarely are these cases tried.  As such, the Court and parties required extra effort to formulate a multi-phased approach to jury deliberations and instructions and evidentiary issues required complicated balancing to ensure the rights of competing interests were addressed.  Accordingly, the Court finds this factor weighs in favor of denying or reducing costs.

Factors 3 & 4: Chilling Effect on Future Similar Actions and Plaintiffs' Limited Financial Resources

Plaintiffs reiterate their assertion regarding the importance of this case and contend that "[i]mposing a nearly half-million-dollar bill of costs on three terminated former employees who sought to advance the claims of over a thousand class members in an important civil rights case would almost certainly discourage future such actions."  (Motion at 7.)  Here, the Court has calculated appropriate costs of $333,711.51 or $111,237.17 per person.

With respect to the financial resources of the three named plaintiffs, plaintiffs assert that (i) Slaight earned approximately $74,000 a year at TCS and was then out of work for three months before finding another job that paid approximately $52,000 a year and now earns just over $65,000 a year; (ii) Mandili earned approximately $92,000 a year at TCS and then "out of work for weeks and spent years looking for permanent, long-term employment," during which he made approximately $42,000 (2016) and $28,000 (2017); and (iii) Masoudi earned approximately $70,000 a year at TCS, was unemployed for about a month, and then secured another reposition that paid approximately $135,000, but was forced to find employment again when that company closed.[16]  (Motion at 8.)  Therefore, according to plaintiffs, the cost award, divided by three, "would exceed each of plaintiffs' yearly incomes [and] would cause them significant financial strain[.]"  (*Id.* at 9.)

\\

---

[16] Plaintiffs do not indicate Mandili's or Masoudi's current income or Mandili's income for the year 2018.

1    The Court agrees that assessing costs against employees where corporations are alleged to

2    discriminate systematically would chill litigation if the Court assessed costs in a lawsuit equaling

3    well-over a plaintiff's annual salary.  This factor weighs in favor of denying or reducing the

4    request for costs.

5                          Factor 5: Economic Disparity Between the Parties

6          Plaintiffs assert that TCS "is a multi-national corporation that generated $18.6 billion in

7    revenue and pocketed $3.9 billion in profit (after taxes) last year, with comparable revenues and

8    profits in prior years[,]" while three named plaintiffs are "terminated employees with relatively

9    limited resources."  (Motion at 8.)  The Court agrees that there is a disparity between the assets

10   and income of the parties.  This factor weighs in favor of denying or reducing the request for costs.

11         In summary, four of the five factors weigh in favor of reducing or denying the taxation of

12   costs.  As the Court has analyzed the details of the requested cost award and the factors for

13   reducing or denying the same.  The Court finds that a substantial reduction is appropriate.

14   Accordingly, an award of $100,000 in costs, or approximately 30% of the total allowable costs, is

15   appropriate.  Divided between the three named plaintiffs, each would be assessed $33,000.  *See*

16   *Haldeman v. Golden*, No. 05-00810-DAE-KSC, 2010 WL 2176089, at *4 (D. Haw. May 28,

17   2010) (finding that the imposition of $22,235.08 in costs in a civil rights case would not "have a

18   chilling effect on future litigants as the costs accumulated in the instant case after years of

19   unsuccessful litigation are not unreasonably high").  This amount is reasonable given plaintiffs'

20   financial abilities.  Moreover, the Court notes that of the $336,711.51 of appropriate costs,

21   $233,813.78 related to document productions and copies that the Court repeatedly warned

22   defendant was excessive and unreasonable.

23   \\

24   \\

25   \\

26   \\

27   \\

28   \\

21

**IV. CONCLUSION**

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** plaintiffs' motion for review of the clerk's taxation of costs. Defendant shall recover $100,000 in costs.

This Order terminates Docket Number 710.

**IT IS SO ORDERED.**

Dated: August 20, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**