**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 8 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CHRISTOPHER SLAIGHT; SEYED AMIR MASOUDI; NOBEL MANDILI, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> TATA CONSULTANCY SERVICES, LTD., <br><br> Defendant-Appellee. | No.   19-16806 <br><br> D.C. No. 4:15-cv-01696-YGR <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted November 19, 2020
San Francisco, California

Before: THOMAS, Chief Judge, and SCHROEDER and BERZON, Circuit Judges.

Memorandum joined by Chief Judge THOMAS and Judge Berzon;
Dissent by Judge Schroeder

In this employment discrimination class action, the plaintiffs-appellants

Christopher Slaight, Seyed Amir Masoudi, and Nobel Mandili argue that the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

district court erred in instructing the jury and excluding certain evidence. We affirm the judgment in favor of the defendant Tata Consultancy Services ("TCS") because any error was harmless.

1. The district court instructed the jury that "plaintiffs must prove by a preponderance of the evidence that TCS had: 1. a pattern or practice 2. of intentionally discriminating on the basis of race against non-South Asian employees or national origin against non-Indian employees 3. who were . . . then terminated." The terms "pattern or practice," "intentional," "race," and "national origin" were subsequently defined. The instructions also explained that "[s]tatistics alone can be sufficient to establish the element of pattern or practice" and that "[p]laintiffs do not assert claims based on citizenship or immigration status itself, but rather race and/or national origin."

A. According to plaintiffs, the district court should have either "omitted the term intent from the instruction altogether" or "combined the pattern or practice and intent instructions."

i. The plaintiffs' first contention is incorrect because a disparate treatment claim requires proof of intentional discrimination. *See, e.g.*, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). In fact, plaintiffs' preferred jury instructions proposed that "plaintiffs must prove a pattern or practice of *intentional* race and/or national origin discrimination." (Emphasis added.) Thus, the inclusion

2

of the word "intentional" was not error.

      ii. The plaintiffs' second contention is best understood as a claim about the formulation of the instructions. The plaintiffs' argument is that "the court's instruction '*necessarily implies*' to the jury that statistics were not sufficient to satisfy the second element [of intentional discrimination]." (Emphasis added.) The plaintiffs preserved their objection, and the instruction could certainly have been more clear with regard to the use of statistics to prove intentional discrimination. But the formulation of the instruction was not sufficiently confusing or misleading to constitute an abuse of discretion. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 860 (9th Cir. 1999), *as amended on denial of reh'g* (July 15, 1999); *Gizoni v. Sw. Marine Inc.*, 56 F.3d 1138, 1142 n.5 (9th Cir. 1995). Based on the instructions, the jury could have found a "pattern or practice" solely based on the statistical evidence. And the only pattern or practice at issue was one of intentional discrimination, which, according to the instructions, meant "conduct that is purposeful." It would have been error for instructions to state that statistics alone could *not* be sufficient to satisfy the plaintiffs' burden as to intentional discrimination, *see Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307-08 (1977), but the instructions did not so state.

      Further, even if the instruction were sub-optimal, "it is more probable than not that [any] error was harmless." *Jenkins v. Union Pac. R.R. Co.*, 22 F.3d 206,

210 (9th Cir. 1994). The plaintiffs spent much of their closing argument discussing the "leadership directive" as a basis for establishing a pattern or practice of intentional discrimination. When the plaintiffs did discuss statistics in their closing argument, they emphasized that "[s]tatistics in discrimination cases are incredibly important" and that the jury must consider whether "the outcomes you are seeing in terminations is as a result of chance as opposed to, for example, *a pattern or practice of discrimination*." (Emphasis added.) Further, while TCS did emphasize in closing that plaintiffs had not met their burden to demonstrate intentional discrimination, including arguing that plaintiffs' statistical expert did not opine on whether TCS intentionally discriminated, TCS did not argue that statistics alone could never suffice to meet the plaintiffs' burden. Instead, TCS emphasized asserted deficiencies in the plaintiffs' statistics as well as the company's own affirmative practice to invest in the training and retention of local employees to fill its many open positions.

   B. The plaintiffs also argue that the district court erred in instructing the jury about the distinction between race or national origin discrimination and citizenship discrimination. According to the plaintiffs, the jury was "*left to believe* that citizenship discrimination and race or national origin discrimination are mutually exclusive concepts." (Emphasis added.) The plaintiffs preserved their objection, but the citizenship instruction is a correct statement of their claims, which do not

4

concern "citizenship or immigration status itself." As the instruction did not misinform the jury about whether citizenship discrimination could indicate race or national origin discrimination, the formulation of the instruction was not an abuse of discretion.

2. The district court granted the defendant's motion *in limine* to exclude specific exhibits in part "as to evidence of discrimination in hiring." The district court did not specify the reason for the exclusion of evidence.

The emails likely were relevant, because they tended to show racial and national origin discrimination in filling positions that could otherwise have been filled by members of the plaintiff class, thereby avoiding termination for those class members. *See* Fed. R. Evid. 401; Fed. R. Evid. 402. But any error in excluding the evidence was harmless. Plaintiffs' burden was to establish a pattern or practice of discrimination. As the jury instructions explained, "[a] 'pattern of practice' means a standard operating procedure." The excluded exhibits reflected a few comments by particular individuals who were not company executives. The few excluded emails stand in stark contrast to the extensive evidence concerning the "leadership directive," which plaintiffs repeatedly alleged reflected a *company-wide* policy to discriminate against the plaintiff class by preferring the placement of Indian and South Asian employees over the placement of class members. The few excluded emails were thus somewhat cumulative and did not

5

themselves illustrate a widespread policy of racial or national origin discrimination at the company. They would not have persuaded a jury not persuaded by the leadership directive that the defendant was engaged in a broad scale pattern or practice of intentional discrimination.

**AFFIRMED.**

FILED

JAN 8 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Christopher Slaight v. Tata Consultancy Services*, No. 19-16806

Schroeder, Circuit Judge, dissenting:

The jury instructions were incorrect, and the error, in my view, could not have been harmless. The jury was told the plaintiffs had to prove (1) a pattern or practice (2) of intentionally discriminating. The instructions thus told the jury the plaintiffs had to prove that each and every employment decision adverse to a person of plaintiffs' race or national origin was an act of intentional discrimination. Reinforcing the notion that intent is separate from pattern and practice, the instructions said plaintiffs had to prove "each element referenced," and said "statistics alone can be sufficient to establish the element of a pattern and practice," thereby leaving the element of intent to be proved some other way.

Such independent proof of intent, however, was unnecessary once the plaintiffs proved a pattern and practice of discrimination. The pattern and practice of choosing members of one group over the other, which can be shown through statistics alone, can supply the element of intent. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977). Just as statistics may establish a prima facie case of racial discrimination in jury selection, "statistics are equally competent in proving employment discrimination." *Id.* at 339.

The jury could not have easily overlooked this error in the instructions. The

defendant argued it to the jury several times in closing.  The majority concludes any error was harmless, and I therefore respectfully dissent.